**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Brunswick, Georgia
**By cking at 6:23 pm, Sep 15, 2010**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **SEA ISLAND COMPANY,** *et al.*, | ) | **Case No. 10-21034** |
| | ) | **Jointly Administered** |
| | ) | |
| **Debtors.** | ) | **Judge John S. Dalis** |
| | ) | |

**ORDER (A) AUTHORIZING AND**
**SCHEDULING AN AUCTION AT WHICH DEBTORS WILL**
**SOLICIT THE HIGHEST OR BEST BID FOR THE SALE OF SUBSTANTIALLY**
**ALL OF DEBTORS' ASSETS, (B) APPROVING PROCEDURES RELATED**
**TO CONDUCT OF AUCTION, (C) APPROVING BREAK-UP FEE, (D) FIXING**
**THE MANNER AND EXTENT OF NOTICE, AND (E) GRANTING RELATED RELIEF**

Upon consideration of the Motion[1] on September 9, 2010, of Sea Island Company, Sea Island Coastal Properties LLC, Sea Island Services, Inc., Sea Island Resort Residences, LLC, Sea Island Apparel, LLC, First Sea Island, LLC and SICAL, LLC (collectively, the "Debtors") seeking entry of an order (A) authorizing and scheduling an auction at which the Debtors will solicit the highest or best bid for the sale of substantially all of the Debtors' assets, (B) approving the procedures related to the conduct of the auction, (C) approving the break-up fee payable to Sea Island Acquisition LP (the "Stalking Horse Purchaser"), a limited partnership formed by certain investment funds managed by Oaktree Capital Management LP and Avenue Capital Group, (D) fixing the manner and extent of notice, and (E) granting related relief; and a hearing with respect to the Motion having been held on September 9, 2010 (the "Bid Procedures Hearing"); and based upon all of the evidence proffered or adduced at the Bid Procedures Hearing; and after consideration of any memoranda, objections, or other pleadings filed in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

connection with the Bid Procedures Hearing; and after consideration of the arguments of counsel made at the Bid Procedures Hearing; and upon the entire record of these cases; and it appearing that the approval of the Bid Procedures as requested in the Motion is in the best interests of the Debtors, their estates, creditors, employees and other stakeholders (including members of the Clubs); and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A.    The form and manner of notice of the Bid Procedures and the Bid Procedures Hearing shall be, and hereby are, approved as sufficient and adequate notice.  No other or further notice in connection with the entry of this Order is or shall be required.

B.    The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of the Business and the Assets for the benefit of all creditors of their estates. The Bid Procedures will facilitate an orderly sale process.

C.    The Breakup Fee was an appropriate inducement to the Stalking Horse Purchaser to (i) make an initial offer which will serve as a "floor" for further bidding, and (ii) negotiate and enter into the Agreement and consummate the transactions contemplated thereby.  Approval of the Breajup Fee is therefore in the best interest of the Debtors and their estates.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion (document no. 24) is granted to the extent set forth in this Order.  The following "Bid Procedures" are hereby approved and shall be used in connection with the proposed sale of the Assets:

(i)    Initial Overbid.  Any third party (other than the Stalking Horse Purchaser) that is interested in acquiring the Assets must submit an "Initial Overbid" in

2

conformance with the Bid Procedures by not later than 5:00 p.m. local time in Brunswick, Georgia on October 4, 2010 (the "Overbid Deadline"). Any such Initial Overbid must:

(a)     Contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Agreement, including all schedules and exhibits to the Agreement) with, at a minimum, the following requirements: (i) having substantially identical terms and conditions as the Agreement, except with higher and better consideration and provided that the Agreement may contain terms that are more favorable to the Debtors and their estates; (ii) containing terms and conditions otherwise no less favorable to the Debtors' estates than the terms and conditions in the Agreement (provided that no Initial Overbid shall provide for the payment to the overbidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement); (iii) provide for a cash purchase price in an amount equal to or greater than the sum of (1) $197,500,000, (2) the Breakup Fee (as defined below), and (3) $1,000,000; and (iv) not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, (3) contingency relating to the approval of the overbidder's board of directors or other internal approvals or consents, or (4) any conditions precedent to the overbidder's obligation to purchase the Assets other than those included in the Agreement; provided, however, nothing herein shall preclude any Qualified Bidder (as defined below) from including in their bid and asset purchase agreement a provision for the assumption of all or part of the Sea Island Company Retirement Plan;

(b)     Include a cashiers' or certified check in the aggregate amount of $10,000,000 (the "Deposit") to be held as a deposit by an escrow agent (it being understood that the Deposit may also be sent by wire transfer of immediately available funds to the escrow agent);

(c)     To the extent not previously provided to the Debtors, be accompanied by evidence satisfactory to the Debtors in the exercise of their business judgment, following consultation with the Prepetition Lenders and the Committee, that the overbidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the Prevailing Bid (as defined below) at the Auction (as defined below); and

(d)     Be submitted to (i) Sea Island Company, 100 Salt Marsh Drive, Sea Island, Georgia 31522, Attention: James B. Gilbert, Jr. (Facsimile: (912) 634-3124), (ii) counsel to the Debtors, King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attention: Sarah R. Borders, Esq. (Facsimile: (404) 572-5100), (iii) counsel to the Prepetition Lenders, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309, Attention: Jason H. Watson (Facsimile: (404) 253-8796), (iv) Goldman, Sachs & Co., 200 West Street, 31st Floor, New York, New York 10282,

Attention: Ben Leahy (Facsimile: (212) 902-3000), (v) Office of the U.S. Trustee, 222 W. Oglethorpe Ave., Suite 302, Savannah, GA 31401, Attention: Matthew Mills (Facsimile: (912) 652-4123), and (vi) counsel to the official committee of unsecured creditors appointed in these cases (the "Committee"), Berger Singerman, P.A., 200 South Biscayne Boulevard, Miami, Florida 33131-5308, Attn: Jordi Guso (Facsimile: (305) 714-4340).

(ii)     Auction.  In the event the Debtors timely receive a conforming Initial Overbid from a prospective purchaser as described above (a "Qualified Bidder") in accordance with the Bid Procedures, then the Debtors will conduct an auction with respect to the sale of the Assets on October 11, 2010 beginning at 10:00 a.m. local time, at the offices of the Debtors' counsel, King & Spalding LLP, located at 1180 Peachtree Street, N.E., Atlanta, Georgia 30309-3521, or at such other location as may be designated by the Debtors, after consultation with the Prepetition Lenders and the Committee (the "Auction").  In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bid Procedures and to submit an Initial Overbid that is timely and that complies in all respects with this Order.  At the Auction, Qualified Bidders and the Stalking Horse Purchaser (it being understood that the Stalking Horse Purchaser shall be deemed to be a Qualified Bidder) may submit successive bids in increments of at least $1,000,000 greater than the prior bid for the purchase of the Assets until there is only one offer that the Debtors, after consulting in good faith with the Prepetition Lenders and the Committee, determine, subject to Court approval, is the highest or best offer for the Assets (the "Prevailing Bid").   When bidding at the Auction, the Stalking Horse Purchaser shall receive a cash "credit" in the amount of the Breakup Fee.  All bidding for the Assets will be concluded at the Auction and there will be no further bidding at the hearing (the "Confirmation Hearing") held in these bankruptcy cases to consider (i) confirmation of the Plan, (ii) approval of the highest or best bid for the Assets and (iii) approval of the Plan Sale.  If no conforming Initial Overbid from a Qualified Bidder shall have been received at or prior to the Overbid Deadline, the Auction will not be held and the Confirmation Hearing will proceed with respect to the Plan, the Plan Sale and the Agreement. In determining the Prevailing Bid, the Debtors, after consulting with the Prepetition Lenders and the Committee, will consider, among other things: (a) the number, type and nature of any changes to the Agreement requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (c) the total consideration to be received by the Debtors; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; and (e) the net benefit to the Debtors' estates.  After the Auction has concluded, the Debtors shall present to the Court for consideration and approval at the Confirmation Hearing the Prevailing Bid.

(iii)    Confirmation Hearing.  After the conclusion of the Auction and the solicitation of votes with respect to the Plan, the Debtors will ask the Court to confirm the Plan and approve the Plan Sale at the Confirmation Hearing.  At the Confirmation

4

Hearing, the Debtors will seek entry of an order (the "Confirmation Order"), providing, among other things, that (i) the Plan is confirmed and the transactions contemplated therein are approved; (ii) the Agreement (or the agreement evidencing the Prevailing Bid) and the transactions contemplated therein are approved; (iii) on the effective date of the Plan, the Assets shall be sold and/or assigned to the Stalking Horse Purchaser (or to such other party submitting a Prevailing Bid) free and clear of any and all liens, claims and encumbrances (except for certain permitted liens and assumed liabilities); (iv) authorizing the Debtors to assume and assign to the Stalking Horse Purchaser (or to such other party submitting a Prevailing Bid) all contracts and unexpired leases to be transferred pursuant to the terms of the Agreement (or such other Prevailing Bid) in accordance with section 365 of the Bankruptcy Code; and (v) the sale and conveyance of the Assets shall be exempt from any transfer tax, stamp tax or similar tax pursuant to section 1146(a) of the Bankruptcy Code.  The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Confirmation Hearing.  Upon the failure to consummate a sale of the Assets after the Confirmation Hearing because of the occurrence of a breach or default under the terms of the Prevailing Bid, the next highest or otherwise best bid, as disclosed at the Confirmation Hearing, shall be deemed the Prevailing Bid without further order of the Court and the parties shall be authorized to consummate the transaction contemplated by the backup Prevailing Bid.

(iv)   Highest and/or Best Bid.  At all times during the sale process, the Debtors shall retain full discretion and right to determine, in the exercise of their business judgment following consultation with the Prepetition Lenders and the Committee, which bid constitutes the highest or otherwise best offer for the purchase of the Assets, and which bid should be selected as the Prevailing Bid, if any, all subject to final approval by the Court pursuant to the provisions of sections 1123 and 1129 of the Bankruptcy Code.  Without limiting the generality of the foregoing, the Debtors may, at any time before entry of an order of the Court approving a Prevailing Bid, reject any bid that, in the exercise of the Debtors' business judgment following consultation with the Prepetition Lenders and the Committee, the Debtors determine is (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors, their estates, creditors, employees or other stakeholders (including members of the Clubs).  The Debtors may adopt rules for the Auction that, in their judgment following consultation with the Prepetition Lenders and the Committee, will better promote the goals of the Auction.

(v)   Sale Implementation.  Subject to the approval of the Prevailing Bid at the Confirmation Hearing, the Debtors will be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid.

2.   During the sale process (including, without limitation, at the Auction), the Debtors shall consult in good faith (to the extent reasonably practicable) with (a) counsel for the

Debtors' primary prepetition secured creditors in these cases, and (b) counsel for the Official Committee of Unsecured Creditors.

3.      The "cure costs" set forth on Schedule 1 hereto (the "Cure Costs") constitute all of the amounts that must be paid to the nondebtor parties to the Executory Contracts/Leases in connection with the assumption and assignment of the Executory Contracts/Leases. Except as set forth on Schedule 1, each nondebtor party to an Executory Contract/Lease shall be forever barred from asserting against the Debtors, the Stalking Horse Purchaser or any party that submits the Prevailing Bid any monetary or non-monetary default allegedly arising or incurred under such Executory Contract/Lease, any actual pecuniary loss resulting from such default, or any other unpaid or unperformed obligation allegedly arising or incurred under such Executory Contract/Lease.

4.      All objections to the Motion are hereby overruled, including the objections filed by the Committee [Docket No. 143], Sea Island Holdings, L.L.C. [Docket No. 134] and certain members of Sea Island Club [Docket Nos. 145 and 162]. All objections to the Agreement, the Sale and the Plan are expressly preserved. Objections (if any) to approval of any Prevailing Bid (including any objection to approval of any proposed sale of the Assets or any proposed assumption and assignment of executory contracts and unexpired leases (other than any objections relating to Cure Costs, which are governed by Paragraph 3 of this Order) pursuant to any Prevailing Bid) shall be made prior to the deadline for filing objections to the Plan and shall be served upon all parties entitled to receive such objections pursuant to further orders of this Court.

5.      Upon the consummation of a sale of all or substantially all of the Assets to any third party (other than the Stalking Horse Purchaser) who submits a Prevailing Bid for the

Assets, the Debtors shall pay to the Stalking Horse Purchaser (or such person or persons as the Stalking Horse Purchaser may designate) solely from the proceeds of the Sale, cash or other immediately available funds in an amount equal to $5,925,000 (the "Breakup Fee"); provided, however, the Breakup Fee shall not be due and payable if the Stalking Horse Purchaser has committed a material breach of the Agreement prior to any termination of the Agreement pursuant to Section 14.1(g) or Section 14.1(h) of the Agreement and at the time of such termination the Agreement is not terminable by the Stalking Horse Purchaser pursuant to Section 14.1(d) of the Agreement. The Breakup Fee shall be treated in the Debtors' bankruptcy cases as an administrative expense claim under Section 503(b)(1) and Section 507(a)(1) of the Bankruptcy Code, shall be paid to the Stalking Horse Purchaser (or such person or persons as the Stalking Horse Purchaser may designate) at the closing of and from the proceeds of such sale to the third party, and shall be paid to the Stalking Horse Purchaser (or such person or persons as the Stalking Horse Purchaser may designate) prior to the payment of the proceeds of such sale to any third party asserting a lien on the Assets (and no lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee).

6.      The Bid Procedures (including the Breakup Fee) are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtors' estates. The Bid Procedures represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

7.      The Debtors shall serve a copy of this Order as contemplated in the Motion.

**SO ORDERED**, this ⏄ day of September 2010.
Brunswick, Georgia

**JOHN S. DALIS**
UNITED STATES BANKRUPTCY JUDGE

Prepared and presented by:

KING & SPALDING LLP
Sarah R. Borders
Georgia Bar No. 610649
sborders@kslaw.com
Harris Winsberg
Georgia Bar No. 770892
hwinsberg@kslaw.com
Austin Jowers
Georgia Bar No. 405482
ajowers@kslaw.com
Sarah L. Taub
Georgia Bar No. 556919
staub@kslaw.com
Jeffrey R. Dutson
Georgia Bar No. 637106
jdutson@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5128

     and

GILBERT, HARRELL, SUMERFORD & MARTIN, P.C.
Robert M. Cunningham
Georgia Bar No. 202228
rcunningham@gilbertharrelllaw.com
777 Gloucester Street, Suite 200
P.O. Box 190
Brunswick, Georgia 31521-0190
Telephone:     (912) 265-6700
Facsimile:     (912) 264-3917

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## SCHEDULE 1

## EXECUTORY CONTRACTS/LEASES AND CURE AMOUNTS

| EXECUTORY CONTRACTS/LEASES | CURE AMOUNT |
|---|---|
| Agreement by and among Sea Island Company and E-Z-GO dated August 25, 2008. | $0.00 |
| Agreement by and among Sea Island Company and Georgia Turf & Tractor, Inc. and John Deere Equipment Company dated March 31, 2008. | $0.00 |
| Master Lease Agreement by and among Textron Financial Corporation and Sea Island Company dated September 26, 2007. | $0.00 |
| Master Lease Agreement by and among Textron Financial Corporation and Sea Island Company dated November 6, 2002. | $0.00 |
| Letter Agreement by and among PGA TOUR, INC., David Love III Foundation and Sea Island Company dated January 22, 2010. | $0.00 |
| Caddie Services Agreement by and among Sea Island Company d/b/a Ocean Forest Golf Club and GCI, LLC. | $0.00 |
| Services Agreement by and among Exclusive Resorts Club Management, LLC and Sea Island Company dated May 15, 2007, as amended. | $0.00 |
| Management Agreement by and among MeadWestvaco Coated Board, Inc. and MWV Cabin Bluff, LLC and Sea Island Company dated December 2009. | $0.00 |
| Software License Agreement by and among Host Analytics, Inc. and Sea Island Company dated December 12, 2005. | $0.00 |
| Software License Agreement by and among InvoTech Systems, Inc. and Sea Island Company dated April 11, 2003. | $0.00 |
| Database Management Services Agreement by and among LMG Data Mining and Sea Island Company dated December 3, 2007. | $0.00 |
| Licensing and Services Agreement by and among Littleton Marketing Group LLC and Sea Island Company dated December 3, 2007. | $0.00 |
| Landscape Service Agreements by and among Sea Island Company and certain property owners. | $0.00 |
| Outsourcing Services Agreement by and among Sea Island Company and Network Services Plus, Inc. dated November 7, 2008. | $0.00 |
| Music Services Agreement by and among Sea Island Company and Muzak, LLC dated July 26, 2007. | $0.00 |
| Statement of Work by and among Sea Island Company and Network Services Plus, Inc. dated November 11, 2009. | $0.00 |

| | |
|---|---|
| Hardware Maintenance Agreement by and among Sea Island Company and Postec, Inc. dated June 16, 2005. | $0.00 |
| Client Pricing Agreement by and among Sea Island Company and Pre-employ.com, Inc. dated May 29, 2009. | $0.00 |
| Contract by and among Sea Island Company and Southern Nights dated April 1, 2005. | $0.00 |
| Maintenance Agreement by and among Sea Island Company and Southern Nights dated April 14, 2009. | $0.00 |
| Marketing and Management Services Agreement by and among Sea Island Company and TIG Global dated October 15, 2007. | $0.00 |
| Consulting Services Agreement by and among Sea Island Company and Ultimate Software dated July 18, 2008. | $0.00 |
| Lease Agreements by and among Sea Island Company and GMAC. | $0.00 |
| Essentials Renewal Service Agreement and Extended Warranty by and among Sea Island Company d/b/a Sea Island Golf Club and Toro National Support Network dated May 28, 2008. | $0.00 |
| Classic 36 Renewal Service Agreement and Extended Warranty by and among Sea Island Company d/b/a Retreat Golf Club and Toro National Support Network dated May 28, 2008. | $0.00 |
| Lease Agreement by and among Sea Island Company and Golden Isles dated October 1, 2009. | $0.00 |
| Lease Agreement by and among Sea Island Company and Satilla Riverkeeper dated February 15, 2010. | $0.00 |
| Lodging Official Appointment Agreement by and among Sea Island Company and the American Automobile Association dated May 28, 2009. | $0.00 |
| Membership Agreement by and among the Cloister and the Lodge at Sea Island and Associated Luxury Hotels International Holdings, LLC dated January 1, 2010. | $0.00 |
| Agreement by and among the Cloister Hotel and American Express Travel Related Services Company, Inc. dated July 24, 2009. | $0.00 |
| Agreement by and among the Lodge at Sea Island and American Express Travel Related Services Company, Inc. dated July 24, 2009. | $0.00 |
| Agreement by and among Sea Island Company and Due South Publishing, Inc. dated April 8, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Elite Meetings International dated September 30, 2009. | $0.00 |
| Subscription Agreement by and among Sea Island Company and Hoovers dated November 28, 2009. | $0.00 |
| Membership Agreement by and among Sea Island Company and IAGTO dated February 15, 2010. | $0.00 |

2

| | |
|---|---|
| Participation Agreement by and among The Cloister at Sea Island and Kiwi Collection, Inc. dated January 25, 2010 (Visa Luxury Hotel Collection). | $0.00 |
| Agreement by and among Sea Island Company and Preferred Hotel Group, Inc. dated July 1, 2009. | $0.00 |
| Agreement by and among The Cloister at Sea Island and Signature Travel Network effective January 1, 2010. | $0.00 |
| Agreement by and among Sea Island Company and SpearTek, Inc. effective October 1, 2002. | $0.00 |
| Marketing and Management Services Agreement by and among Sea Island Company and TIG Global, LLC effective January 1, 2010. | $0.00 |
| Subscription Agreement by and among The Cloister at Sea Island and TravelCLICK, Inc. dated December 7, 2009. | $0.00 |
| Preferred Supplier Agreement by and among Sea Island – The Cloister and Virtuoso, Ltd. effective January 1, 2010. | $0.00 |
| Preferred Supplier Agreement by and among Sea Island – The Lodge and Virtuoso, Ltd. effective January 1, 2010. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Roger and Anne Ditmer dated November 26, 2008. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Ellen Rogers dated September 12, 2008. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Celeste Pittman dated February 17, 2009. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Dulany Hall dated October 2, 2008. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Audrey Wood dated October 3, 2008. | $0.00 |
| Agreement by and among Sea Island Company and William Lewis Mason dated July 27, 2009. | $0.00 |
| Letter Agreement by and among Sea Island Company and Davis M. Love III dated August 10, 2006. | $0.00 |
| Independent Contractor Agreement by and among Sea Island Company and Coastal Commercial Laundry Services, Inc. dated January 5, 2009. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and J&S Associates, Inc. dated July 23, 2010. | $0.00 |
| Product Purchase Agreement by and among Sea Island Company and Institution Food House, Inc. dated August 1, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Pristine Water Coffee dated May 4, 2010. | $0.00 |

| | |
|---|---|
| Master Maintenance Agreement by and among Sea Island Company and Schindler Elevator Corporation dated May 5, 2010. | $0.00 |
| Rental/Service Agreements by and among Sea Island Company and Aqua/Quench USA. | $0.00 |
| Service Agreement by and among Sea Island Company and Audio Visual Services Group, Inc. dated September 2, 2009. | $0.00 |
| Agreement by and among Sea Island Company and E-Z-GO dated September 10, 2009. | $0.00 |
| Lease Agreement by and among Sea Island Company and Action Mobile Industries Inc. dated November 1, 2007. | $0.00 |
| Planned Maintenance Agreement by and among Sea Island Company and Agri-Business Technologies, Inc. dated February 11, 2010. | $0.00 |
| Lease Agreement by and among Sea Island Company and Sea Island Coastal Properties LLC and CSI Leasing, Inc. dated January 22, 2009. | $0.00 |
| Lease by and among Sea Island Company and Donald C. McCaskill III and Annie Bell McCaskill Friedman dated February 5, 2008. | $0.00 |
| Agreement by and among Sea Island Company and Emery Hardware and Rental Center dated December 1, 2009. | $0.00 |
| Service Agreement by and among Sea Island Company and G&K Services dated September 12, 2006. | $0.00 |
| Gas Service Agreement by and among Sea Island Company and SouthStar Energy Services, LLC d/b/a Georgia Natural Gas dated April 27, 2009. | $0.00 |
| Finance Agreement by and among Sea Island Company and Imperial Credit Corporation dated March 16, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Modular Mailing Systems dated May 8, 2007. | $0.00 |
| Lease Agreement by and among Sea Island Company and Hasler Financial Services, LLC date July 9, 2007. | $0.00 |
| Meter Agreement by and among Sea Island Company and Hasler Financial Services, LLC dated July 9, 2007. | $0.00 |
| Agreement by and among Sea Island Company and Otis Elevator Company dated July 10, 2002, as amended. | $0.00 |
| Care Management Services Agreement by and among Sea Island Company and Primary PhysicianCare, Inc. dated December 17, 2007. | $0.00 |
| Agreement by and among Sea Island Company and Stromberg dated December 23, 2005. | $0.00 |
| Service Agreement by and among Sea Island and Georgia Trane Service Company dated January 20, 2005. | $0.00 |

| | |
|---|---|
| Service Agreement by and among Sea Island and Georgia Trane Service Company dated June 15, 2006 (New Chiller Plant). | $0.00 |
| Service Agreement by and among Sea Island and Georgia Trane Service Company dated June 15, 2006 (Cloister Hotel). | $0.00 |
| Service Agreement by and among Sea Island and Georgia Trane Service Company dated July 20, 2006. | $0.00 |
| Service Agreement by and among Sea Island and Georgia Trane Service Company dated December 6, 2007. | $0.00 |
| Agreement by and among Sea Island Company and Tennant Capital Services dated May 28, 2008. | $0.00 |
| Agreement by and among Sea Island Company and Waste Management of Brunswick dated September 8, 2009. | $0.00 |
| Lease Agreement by and among Sea Island Company and Williams Scotsman, Inc. dated July 21, 2009. | $0.00 |
| Agreement by and among Sea Island Company and Yates-Astro Termite & Pest Co. | $0.00 |
| Lease Agreement by and among Sea Island Company and PNCEF, LLC (f/n/a National City Commercial Capital Company) dated September 24, 2009, as amended January 11, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Hasty's Communications East, Inc. | $0.00 |
| Agreement by and among St. Simons Island Club and Estate Management Services dated September 30, 1996. | $0.00 |
| Agreement by and among Cannon Point Lake and Estate Management Services, Inc. dated June 17, 2004. | $0.00 |
| Agreement by and among Ocean Forest and Estate Management Services dated September 30, 1996. | $0.00 |
| Agreement by and among Lake Sinclair and Estate Management Services dated May 19, 2000. | $0.00 |
| Agreement by and among The Sea Island Golf Club and Estate Management Services dated January 6, 1999. | $0.00 |
| Lease Agreement by and among Sea Island Company and Ecolab Inc. dated June 23, 2005. | $0.00 |
| Lease Agreement by and among Sea Island Company and the United States Postal Service dated March 17, 2008. | $0.00 |
| Agreement by and among Sea Island Company and Agilysys, NV, LLC dated January 7, 2010. | $0.00 |
| Products and Services Agreement by and among Sea Island Company and The Active Network, Inc. dated April 1, 2010. | $0.00 |

| | |
|---|---|
| Agreement by and among Sea Island Company and Crystal Enterprises, Inc. dated March 4, 2009. | $0.00 |
| Agreement by and among Sea Island Company and OpenCourse Solutions, LLC dated October 15, 2004. | $0.00 |
| Software License and Support Agreement by and among Sea Island Company and Datavision Technologies, Inc. dated December 27, 2005. | $0.00 |
| Agreement by and among Sea Island Company and Tri H Friesians LLC dated February 4, 2010. | $0.00 |
| Shared Equity Financing Agreement by and among C. Allen Brown and Sea Island Company. | $0.00 |
| Shared Equity Financing Agreement by and among Todd W. Anderson, Stacey L. Anderson and Sea Island Company. | $0.00 |
| Land Lease Agreement by and among Sea Island Company and Verizon Wireless of the East LP dated March 8, 2004 (The Cloisters). | $0.00 |
| Land Lease Agreement by and among Sea Island Company and Verizon Wireless of the East LP dated March 24, 2004 (Sea Island Lodge). | $0.00 |
| Land Lease Agreement by and among Sea Island Company and Verizon Wireless of the East LP dated March 8, 2004 (Ocean Forest). | $0.00 |
| Master Lease Agreement by and among Sea Island Company and Sea Island Coastal Properties LLC and Computer Sales International, Inc. dated March 10, 2004. | $0.00 |
| Agreement by and among Sea Island Company and AG-Hill Farms, Inc. dated August 16, 2007. | $0.00 |
| Agreement by and among Sea Island Company and Tabby House, Inc. dated December 6, 2007. | $0.00 |
| Agreements by and among Sellers and any customer entered into in the ordinary course of business for services or accommodations to be provided to such customer by Sellers. | $0.00 |
| Rental agreements for the rental of the Beach Club Suites, the Cloister Ocean Residences Sea Island Cottages and Beach Club Condominiums by Sea Island Company on behalf of unit owners. | $0.00 |
| Rental management agreements for the rental of the Beach Club Suites, the Cloister Ocean Residences, Sea Island Cottages and Beach Club Condominiums between Sea Island Company and the unit owners. | $0.00 |
| Master Lease Agreement by and among Sea Island Company and Deere Credit, Inc. dated July 8, 2008. | $0.00 |
| Agreement by and among Sea Island Resorts and CapSure, Inc. dated May 5, 2007. | $0.00 |
| Agreement by and among Sea Island Company and Procleansed, Inc. dated September 17, 2008. | $0.00 |

| | |
|---|---|
| National Service Agreement by and among Sea Island Company and Verizon Wireless dated December 23, 2008. | $0.00 |
| Travel Directory Marketing Agreement by and among The Cloister at Sea Island and Andrew Harper dated October 16, 2009. | $0.00 |
| Agreement by and among Sea Island Resorts and Fortibus Marketing of Charleston, LLC July 17, 2009. | $0.00 |
| Affiliate Hotel Agreement by and among Sea Island Resort and Clubcorp USA, Inc. dated August 7, 2009. | $0.00 |
| Cable Television Service Agreement and License by and among Sea Island Company and Owensboro-Brunswick, Inc. d/b/a Adelphia Cable Communications dated March 28, 2006. | $0.00 |
| Bulk Services Agreement by and among Sea Island Company and Comcast of Florida/Georgia, LLC dated April 23, 2008. | $0.00 |
| Container Lease Agreement #GGL 104459 by and among Sea Island Company and Con Global Industries dated February 29, 2008. | $0.00 |
| Container Lease Agreement #GGL 105115 by and among Sea Island Company and Con Global Industries dated February 29, 2008. | $0.00 |
| Net Lease Agreement by and among Sea Island Company and JLV VASI, LLC dated September 5, 2008, as amended December 31, 2008. | $0.00 |
| Professional Services Agreement by and among Sea Island Company and Nancy Adcock. | $0.00 |
| Google Message Delivery Contract by and among Google, Inc. and Sea Island Company dated January 1, 2009. | $0.00 |
| Lease Agreement by and among Sea Island Company and Alfred W. Jones, III dated October 8, 2007. | $0.00 |
| Microsoft Enterprise Enrollment and Pricing for Office Pro Sea Island dated November 1, 2006 under Business Agreement U9423233 and Master Agreement Number 01E611258. | $0.00 |
| Software License Agreement by and among Sea Island Company and Newmarket International, Inc. dated December 30, 2003. | $0.00 |
| Property Exposure Contract No. 000902-0609-31 by and among The Cloister at Sea Island and Kiwi Collection Inc. dated June 23, 2009. | $0.00 |
| Property Exposure Contract No. 001403-0110-250 by and among The Lodge at Sea Island Golf Club and Kiwi Collection Inc. dated January 15, 2010. | $0.00 |
| Premium Finance Agreement and Disclosure Statement and Security Agreement by and among Sea Island Company and Imperial Credit Corporation dated June 17, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Barry's Beach Service, Inc. dated June 30, 2006. | $0.00 |

7

| | |
|---|---|
| Letter Agreement by and among Sea Island Company and Atlantic Bike Shop, Inc. dated March 11, 2010. | $0.00 |
| Agreement by and among Sea Island Company and Steve Hightower dated November 30, 2008. | $0.00 |
| Agreement by and among Sea Island Company and Resort Photography, LLC dated March 6, 2000. | $0.00 |
| Yacht Charter Agreement by and among Sea Island Company and Captain Brian Quinn dated August 2008. | $0.00 |
| Agreement by and among Sea Island Company and Georgia Power Company dated January 23, 2004. | $0.00 |
| Equipment Service Agreement by and among Sea Island Company and BancTec, Inc. dated January 22, 2007. | $0.00 |
| Merchant Agreement by and among Sea Island Resort and Columbus Bank and Trust dated March 11, 2009. | $0.00 |
| Business Rental Preferred Rate Agreement by and among Sea Island and Enterprise Leasing Company -- Southeast dated July 8, 2010. | $0.00 |
| Concessionaire Agreement by and among Sea Island Company and Enterprise Rent-A-Car Southeast dated September 8, 2008. | $0.00 |
| Extended Warranty Agreement by and among Sea Island Company and SAFLOK, Inc. dated December 3, 2007. | $0.00 |
| Product Service Agreement by and among Sea Island Company and Dowling-Douglas Co. dated July 22, 2010. | $0.00 |
| Contract Service Arrangement Agreement by and among Sea Island Company and Bellsouth Telecommunications, Inc. dated February 4, 2005. | $0.00 |
| Contract Service Arrangement Agreement by and among Sea Island Company and Bellsouth Telecommunications, Inc. dated May 18, 2006. | $0.00 |
| Transport Payment Plan by and among Sea Island Company and BellSouth Telecommunications, Inc. dated February 4, 2005. | $0.00 |
| Services Master Agreement by and among Sea Island Co. and BellSouth Company dated October 4, 2006. | $0.00 |
| Marketing Support Agreement by and among Sea Island Company and American Express Travel Related Services Company, Inc. dated November 20, 1998. | $0.00 |
| Card Acceptance Agreement by and among Sea Island Company and American Express Travel Related Services Company, Inc. dated November 20, 1998, as amended November 20, 1998 and January 15, 2002. | $0.00 |
| Master Services Agreement by and among Sea Island Company and International Business Machines Corporation dated December 28, 2005. | $0.00 |

8

| | |
|---|---|
| Service Agreement by and among Sea Island Company and Badger Meter, Inc. dated January 10, 2006. | $0.00 |
| Service Agreement by and among Sea Island Company and Badger Meter, Inc. dated July 10, 2001. | $0.00 |
| Software License Agreement by and among Sea Island Company and Badger Meter, Inc. dated July 10, 2001. | $0.00 |
| Agreements entered into in the ordinary course of business with certain unaffiliated Persons for the short-term leasing of resort and event space. | $0.00 |
| Commercial lease contract by and among Sea Island Company and Island Acquisitions, LLC dated September 28, 2009. | $0.00 |