**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **SEA ISLAND COMPANY,** *et al.*, | ) | **Case No. 10-21034** |
| | ) | **Jointly Administered** |
| | ) | |
| Debtors. | ) | **Judge John S. Dalis** |
| | ) | |

**NOTICE OF FILING OF
<u>SEA ISLAND COMPANY CREDITORS LIQUIDATION TRUST AGREEMENT</u>**

Sea Island Company; Sea Island Coastal Properties LLC; Sea Island Services, Inc.; Sea Island Resort Residences, LLC; Sea Island Apparel, LLC; First Sea Island, LLC; and SICAL, LLC (collectively, the "<u>Debtors</u>") hereby file the executed Sea Island Company Creditors Liquidation Trust Agreement dated as of December 15, 2010.

Dated:  December 21, 2010
        Brunswick, Georgia

Respectfully submitted,

GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.

/s/ Robert M. Cunningham
M. F. Martin, III
Georgia Bar No. 473500
mfmartin@gilbertharrelllaw.com
Robert M. Cunningham
Georgia Bar No. 202228
rcunningham@gilbertharrelllaw.com
777 Gloucester Street, Suite 200
P.O. Box 190
Brunswick, Georgia 31521-0190
Telephone:    (912) 265-6700
Facsimile:    (912) 264-3917

and

KING & SPALDING LLP
Sarah R. Borders
Georgia Bar No. 610649
sborders@kslaw.com
Harris Winsberg
Georgia Bar No. 770892
hwinsberg@kslaw.com
Sarah L. Taub
Georgia Bar No. 556919
staub@kslaw.com
Jeffrey R. Dutson
Georgia Bar No. 637106
jdutson@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5128

COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## **EXHIBIT A**

Execution Version

<br/>
<br/>
<br/>
<br/>

## <u>TRUST AGREEMENT</u>

<br/>

## SEA ISLAND COMPANY CREDITORS LIQUIDATION TRUST

<br/>
<br/>

Dated: December 15, 2010

## TABLE OF CONTENTS

RECITALS ..................................................................................................................................1

DECLARATION OF TRUST ......................................................................................................2

I.  DEFINITIONS/CONSTRUCTION ......................................................................................2

    1.1    DEFINITIONS ..............................................................................................................2
    1.2    GENERAL CONSTRUCTION ..........................................................................................4
    1.3    INCORPORATION OF THE PLAN ..................................................................................4

II.  THE TRUST ..........................................................................................................................4

    2.1    CREATION AND NAME ..............................................................................................4
    2.2    OBJECTIVES ...............................................................................................................4
    2.3    PURPOSES ..................................................................................................................5
    2.4    ACCEPTANCE .............................................................................................................5
    2.5    FURTHER ASSURANCES ..............................................................................................5
    2.6    OWNERSHIP BY TRUSTEE ...........................................................................................6
    2.7    INCIDENTS OF OWNERSHIP ........................................................................................6

III.  THE TRUSTEE ....................................................................................................................6

    3.1    NUMBER AND QUALIFICATIONS .................................................................................6
    3.2    ACTION BY TRUSTEE .................................................................................................6
    3.3    BINDING NATURE OF TRUSTEE'S ACTION .................................................................6
    3.4    TERM OF SERVICE .....................................................................................................6
    3.5    RESIGNATION .............................................................................................................6
    3.6    REMOVAL ..................................................................................................................6
    3.7    APPOINTMENT OF SUCCESSOR TRUSTEE ...................................................................6
    3.8    CONTINUANCE OF TRUST ..........................................................................................7
    3.9    COMPENSATION .........................................................................................................7
    3.10   STANDARD OF CARE; INDEMNIFICATION; EXCULPATION ..........................................8
    3.11   RELIANCE BY TRUSTEE ..............................................................................................9
    3.12   RELIANCE BY PERSONS DEALING WITH THE TRUST ...................................................9
    3.13   NO PERSONAL OBLIGATION FOR TRUST LIABILITIES ................................................9
    3.14   DISCHARGE OF TRUSTEE ...........................................................................................9

IV.  POWERS OF THE TRUSTEE ..........................................................................................10

    4.1    TITLE .......................................................................................................................10
    4.2    MANAGEMENT POWER .............................................................................................10
    4.3    BANKRUPTCY COURT APPROVAL OF TRUSTEE ACTIONS .........................................10
    4.4    OTHER POWERS OF TRUSTEE ...................................................................................11
    4.5    REPRESENTATIVE STATUS OF TRUSTEE ....................................................................13
    4.6    RIGHTS OF ACTION/POTENTIAL RIGHTS OF ACTION/AVOIDANCE ACTIONS ............14
    4.7    ABANDONMENT ........................................................................................................14
    4.8    COMMINGLING OF TRUST ASSETS ...........................................................................14
    4.9    EMPLOYMENT AND COMPENSATION OF PROFESSIONALS .........................................14
    4.10   COSTS ......................................................................................................................15

V.  OBLIGATIONS OF THE TRUSTEE ...............................................................................15

    5.1    CONSULTATION WITH BENEFICIARIES ......................................................................15
    5.2    REPORTS AND RECORDS ...........................................................................................15
    5.3    INVESTMENT GUIDELINES ........................................................................................15
    5.4    ACCESS TO INFORMATION BY BENEFICIARIES ..........................................................16
    5.5    UNITED STATES TRUSTEE FEES AND REPORTS ........................................................16
    5.6    NO IMPLIED OBLIGATIONS .......................................................................................16
    5.7    UNKNOWN PROPERTY AND LIABILITIES ...................................................................16

5.8     TRUST COSTS ................................................................................................................17

**VI. BENEFICIAL INTERESTS** ................................................................................................**17**

6.1     ALLOCATION OF BENEFICIAL INTERESTS TO HOLDERS OF CLASS 4 CLAIMS, CLASS 5 CLAIMS AND CLASS 6 CLAIMS ................................................................................................................17
6.2     TRANSFER OF BENEFICIAL INTERESTS ........................................................................17
6.3     REGISTER ENTRIES REGARDING BENEFICIAL INTERESTS ........................................17
6.4     ALLOCATION OF BENEFICIAL INTERESTS TO HOLDERS OF DISPUTED CLAIMS OR INTERESTS .................18
6.5     REPRESENTATION OF BENEFICIAL INTEREST ..............................................................18
6.6     TRUST REGISTER .........................................................................................................18

**VII. DISTRIBUTION OF THE TRUST ESTATE** ................................................................**18**

7.1     ESTABLISHMENT OF RESERVE ....................................................................................18
7.2     DISTRIBUTIONS TO HOLDERS OF BENEFICIAL INTERESTS ........................................19
7.3     DISPUTED CLAIMS ......................................................................................................22

**VIII. TAX MATTERS** ............................................................................................................**22**

8.1     CERTAIN INCOME TAX MATTERS ...............................................................................22
8.2     TREATMENT OF TRUST ASSETS FOR TAX PURPOSES ................................................23
8.3     WITHHOLDING ...........................................................................................................24
8.4     ALLOCATION OF INCOME AND LOSSES ......................................................................24
8.5     TAX TREATMENT OF TRUST ASSETS AND INCOME/LOSS ATTRIBUTABLE TO DISPUTED CLAIMS .............24

**IX. TERMINATION** ..............................................................................................................**25**

9.1     DURATION ..................................................................................................................25
9.2     DISTRIBUTION OF TRUST ASSETS ..............................................................................25

**X. MISCELLANEOUS** .........................................................................................................**25**

10.1    NOTICES .....................................................................................................................25
10.2    TRANSFEREE LIABILITIES ..........................................................................................26
10.3    AMENDMENT ..............................................................................................................26
10.4    COUNTERPARTS ..........................................................................................................27
10.5    GOVERNING LAW; SEVERABILITY ..............................................................................27
10.6    HEADINGS ..................................................................................................................27
10.7    RELATIONSHIP TO PLAN .............................................................................................27
10.7    CONSENT TO JURISDICTION .......................................................................................27

# TRUST AGREEMENT
## SEA ISLAND COMPANY CREDITORS LIQUIDATION TRUST

THIS TRUST AGREEMENT (the "Trust Agreement") is made as of this 15 day of December 2010 by and between SEA ISLAND COMPANY, SEA ISLAND COASTAL PROPERTIES, LLC, SEA ISLAND SERVICES, INC., SEA ISLAND RESORT RESIDENCES, LLC, SEA ISLAND APPAREL, LLC, FIRST SEA ISLAND, LLC AND SICAL, LLC (each a "Debtor" and collectively, the "Debtors"), for the benefit of the Beneficiaries (as hereinafter defined), and Robert Barnett, as Trustee ("Trustee").

## RECITALS

WHEREAS, on August 10, 2010, each Debtor filed with the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;

WHEREAS, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 (and as may be amended, the "Plan"), which was confirmed by the Bankruptcy Court on November 8, 2010;

WHEREAS, this Trust Agreement is the "Liquidating Trust Agreement" under the Plan that is executed in order to facilitate implementation of the Plan;

WHEREAS, the Trust (as defined herein) is established to receive certain Property of the Debtors and Cash from the Secured Lenders and to distribute such Property and Cash to certain Creditors each in accordance with the Plan; and

WHEREAS, except as otherwise provided in the Plan with respect to Cash, including Sections 3.03, 3.04, 3.05, 3.06 and 3.07 and 3.08 of the Plan, and pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, the Trust shall receive all Property comprising the Estates of the Debtors (including, but not limited to the Accepting Unsecured Creditors Fund and the General Unsecured Creditors Fund) not conveyed to the Purchaser under the Asset Purchase Agreement (each as hereinafter defined) other than Property escrowed pursuant to the Confirmation Order for payment of certain claims under the Plan (the "Trust Assets") so that (i) the Trust Assets can be held in trust for the benefit of the Beneficiaries entitled thereto as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan, (ii) the Claims can be resolved, (iii) distributions may be made in accordance with the Plan, (iv) the Trust Assets can be liquidated, and (v) administrative services relating to the activities of the Trust and relating to the implementation of the Plan can be performed by the Trustee; and

WHEREAS, the Trust Assets shall automatically vest in the Trust, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests of Creditors and equity security holders on the Effective Date (each as defined in the Plan), with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished subject to the

rights of Holders of Allowed Accepting Unsecured Claims, Other General Unsecured Claims and Convenience Claims (each as defined in the Plan) to obtain distributions provided for in the Plan.  In no event shall any property of any kind be returned by, or otherwise transferred from, the Trust to any Debtor; provided, however, if Property is improperly transferred to the Trust, such Property shall be transferred to the appropriate party.

## DECLARATION OF TRUST

NOW, THEREFORE, to declare the terms and conditions hereof, and in consideration of the premises, the confirmation of the Plan pursuant to the Bankruptcy Code, and of other good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged, the Debtors and the Trustee have executed this Trust Agreement for the benefit of the respective Beneficiaries entitled to the Trust Assets, and, at the direction of such Beneficiaries (because the transfer of title to undivided interests in each of the Trust Assets to such Beneficiaries would be impractical), absolutely and irrevocably hereby assign to the Trustee hereby, and to its successors or assigns, all right, title, and interest of the Debtors in and to the Trust Assets as provided for in the Plan;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust and its successors and assigns;

IN TRUST NEVERTHELESS, under and subject to the terms and conditions set forth herein and for the benefit of the Beneficiaries of the Trust, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Trust in accordance with Article IX hereof, this Trust Agreement shall cease, terminate, and be of no further force and effect.

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets conveyed hereby are to be held and applied by the Trustee subject to the further covenants, conditions, and terms set forth below.

## I.  DEFINITIONS/CONSTRUCTION

**1.1**    **Definitions**.    Unless otherwise defined in this Trust Agreement, capitalized terms used herein have the meanings assigned to such terms in the Plan.

Notwithstanding the foregoing, capitalized terms as used in this Trust Agreement shall have the following meanings:

(a)    "Available Cash" means Trust Cash less any Trust Cash held in the Operating Reserve.

2

(b)     "<u>Beneficial Interests</u>" means the beneficial interests in the Trust Assets that shall be allocated to the Beneficiaries pursuant to this Trust Agreement.

(c)     "<u>Beneficiaries</u>" means the holders of Allowed Claims under Classes 4, 5 and 6.

(d)     "<u>Disputed Claims</u>" means the Class 4, Class 5 or Class 6 Claims of Creditors that have not been allowed or disallowed by Final Order of the Bankruptcy Court.  The estimated amount of Disputed Claims shall be set by the Bankruptcy Court after the Effective Date.

(e)     "<u>Estate Representative</u>" means a person who is a representative of the Debtors' Estates under §1123(a)(5), (1)(7) and (b)(3)(B) of the Bankruptcy Code, and who will have the rights and powers of a trustee appointed under section 1104 of the Bankruptcy Code except to the extent specifically limited by the Plan or this Trust Agreement.

(f)     "<u>Operating Reserve</u>" means that certain reserve of Trust Cash to be established by the Trustee pursuant to this Trust Agreement.

(g)     "<u>Trust</u>" means the "Liquidating Trust" under the Plan and is the Trust created by this Trust Agreement.

(h)     "<u>Trust Agreement</u>" means the "Liquidating Trust Agreement" under the Plan, and is this Trust Agreement.

(i)     "<u>Trust Assets</u>" means the "Property" comprising the "Estates" of the Debtors (including, but not limited to the "Accepting Unsecured Creditors Fund" and the "General Unsecured Creditors Fund") not conveyed to the "Purchaser" under the "Asset Purchase Agreement", each as under the Plan, less amounts required to be paid under the Confirmation Order (including any applicable reserves for such amounts and the amounts required to be paid to the Secured Lenders), and are the Trust Assets subject to this Trust Agreement.

(j)     "<u>Trust Cash</u>" means all Cash received and held by the Trust.

(k)     "<u>Trust Cost</u>" means all costs, expenses, liabilities and obligations incurred by the Trust and Trustee in administering and conducting the affairs of the Trust, and those incurred by the Trust and the Trustee in otherwise carrying out the terms of the Trust and the Plan on behalf of the Trust and the Debtors, including without limitation, any taxes owed by the Trust, the fees and expenses of the Trustee and professionals and other persons employed by the Trust or Trustee, and the expenses and obligations otherwise defined as a Trust Cost in this Trust Agreement or the Plan.

7354507.13

(l)   "Trustee" means the "Liquidation Trustee" under the Plan, and is the Trustee under this Trust Agreement.

**1.2   General Construction**.  As used in this Trust Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.   "Includes" and "including" are not limiting, and "or" is not exclusive.   References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Trust Agreement, and the words "herein," "hereafter," and words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section, or subdivision of this Trust Agreement.

**1.3   Incorporation of the Plan**.   The Plan is hereby incorporated into this Trust Agreement and made a part hereof by this reference; provided, however, that in the event of any conflict between the terms of the Plan and this Trust Agreement, the terms of the Plan will control and govern.   A true and complete copy of the Plan is attached hereto as Exhibit A.

## II.  THE TRUST

**2.1   Creation and Name**.  There is hereby created the Trust, which shall be known as the "Sea Island Company Creditors Liquidation Trust", and is the same Trust referred to as the "Liquidating Trust" under the Plan.  The Trustee may conduct the affairs of the Trust under the name of "SIC Creditors Liquidation Trust."

**2.2   Objectives**.  The Trust established pursuant to this Trust Agreement is for the purpose of satisfying claims by liquidating the Trust Assets transferred to it and the Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  The purpose of the Trust is to provide a mechanism for the liquidation of the Trust Assets, and to distribute the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Trust to the Beneficiaries holding certain Allowed Claims in accordance with the terms of the Plan.  No business activities will be conducted by the Trust other than those associated with or related to the liquidation of the Trust Assets.  It is intended that the Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.  In furtherance of this objective, the Trustee shall, in its business judgment, make continuing best efforts to (i) dispose of or liquidate the Trust Assets and resolve claims, (ii) make timely distributions as determined by the Trustee and approved by the Bankruptcy Court, and (iii) not unduly prolong the duration of the Trust, in accordance with this Trust Agreement.

**2.3** **Purposes**. The purposes of the Trust include, but are not limited to the following, in accordance with the Plan:

(a) to make payments to holders of Allowed Claims under Classes 4, 5 and 6 of the Plan as are required under the terms of the Plan and this Trust Agreement;

(b) to marshal, liquidate, sell, abandon, and distribute the Trust Assets and proceeds thereof in an expeditious but orderly manner in accordance with the terms of the Plan and this Trust Agreement;

(c) to perform the functions and take the actions provided for or permitted by this Trust Agreement and the Plan and in any other agreement executed by the Trustee for the Trust pursuant to the Plan;

(d) to prosecute, settle, release, or abandon the Retained Actions (subject only to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan), and other causes of action transferred and assigned to the Trust under the Plan as Trust Assets and to distribute the proceeds of any recoveries thereon in accordance with the terms of the Plan and this Trust Agreement;

(e) to reconcile, object to, prosecute, or settle all Claims against the Debtors under Classes 4, 5 and 6 of the Plan for purposes of determining the appropriate amount of distributions to be made hereunder to the Beneficiaries under the terms and conditions set forth in this Trust Agreement and by the Debtors under the Plan;

(f) to enable the Trustee to perform his duties and comply with his obligations under the Closing Agreement dated December 15, 2010, by and among the Debtors, Synovus Bank, formerly known as Columbus Bank & Trust Company, as agent for certain pre-petition lenders of the Sellers, and the Trustee.

**2.4** **Acceptance**. The Trustee accepts the Trust imposed by this Trust Agreement and agrees to observe and perform that Trust, on and subject to the terms and conditions set forth in the Trust Agreement and in the Plan.

**2.5** **Further Assurances**. The Debtors (and any successors thereto) will, upon reasonable request of the Trustee, execute, acknowledge, and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Trustee any portion of the Trust Assets intended to be conveyed hereby and in the form and manner provided for in the Plan and to vest in the Trustee the powers, instruments, or funds in trust hereunder.

7354507.13

**2.6** **Ownership by Trustee**.  The Trustee may record or register in its name, as Trustee, or in the name or names of any nominee or Person in accordance with section 4.1 hereof, ownership of and title to all Trust Assets received by it as Trustee and comply with all provisions of law that may bear on the evidencing of ownership of and title to any portion of the Trust Assets as are necessary and appropriate and that the Trustee determines are in the best interests of the Trust.

**2.7** **Incidents of Ownership**.  The Beneficiaries shall be the sole beneficiaries of the Trust and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## III.  THE TRUSTEE

**3.1** **Number and Qualifications**.  There is one Trustee of the Trust.  The Trustee is Robert Barnett, the person appointed by the Bankruptcy Court as Trustee in the Confirmation Order.  The Trustee shall be entitled to engage in such other activities as the Trustee deems appropriate that are not in conflict with the interests of the Trust.

**3.2** **Action by Trustee**.  The Trust shall be managed by the Trustee as set forth in this Trust Agreement.

**3.3** **Binding Nature of Trustee's Action**.  All actions taken and determinations made by the Trustee hereunder in accordance with the provisions of the Plan or this Trust Agreement shall be final and binding upon any and all Beneficiaries.

**3.4** **Term of Service**.  The Trustee shall serve as the Trustee for the duration of the Trust, subject to earlier death, resignation, or removal.

**3.5** **Resignation**.  The Trustee may resign as Trustee of the Trust by an instrument in writing delivered to the Bankruptcy Court and Beneficiaries at least 60 days before the proposed effective date of resignation.  The Trustee shall continue to serve as Trustee after the delivery of the Trustee's resignation until the proposed effective date, unless the Trustee consents to an earlier effective date, which shall be the date of appointment of a successor Trustee in accordance with section 3.7 hereof becomes effective.

**3.6** **Removal.** The Trustee may be removed from office for (i) willful fraud or willful misconduct in connection with the affairs of the Trust, (ii) for such physical or mental disability as substantially prevents the Trustee from performing the duties of Trustee hereunder, or (iii) for cause, which shall include a breach of fiduciary duty other than as specified in the foregoing clauses (i) and (ii), and in each case, upon order and finding of the Bankruptcy Court.

**3.7** **Appointment of Successor Trustee.**

7354507.13                                            6

3.7.1   <u>Appointment of Successor Trustee</u>.   In the event of a vacancy by reason of the death or removal of the Trustee or prospective vacancy by reason of resignation, a successor Trustee shall be appointed by the Bankruptcy Court.   The Bankruptcy Court shall appoint a successor Trustee as soon as practicable, but in any event within 60 days after the occurrence of the vacancy or, in the case of resignation, at least 40 days before the proposed resignation.   Beneficiaries and the retiring Trustee shall have the right to nominate a successor trustee for appointment by the Bankruptcy Court.

3.7.2   <u>Vesting of Rights in Successor Trustee</u>.   Every successor Trustee appointed hereunder shall execute, acknowledge, and deliver to the Trust, the retiring Trustee, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.   The successor Trustee shall provide a bond or surety to the extent required by the Bankruptcy Court.   The successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee, except that the successor Trustee shall not be liable for the acts or omissions of the retiring Trustee.   In no event shall the retiring Trustee be liable for the acts or omissions of the successor Trustee.

**3.8**   **Continuance of Trust**.   The death, resignation, or removal of the Trustee shall not operate to terminate the Trust created by this Trust Agreement or to revoke any existing agency (other than any agency of the Trustee as the Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Trustee.   In the event of the resignation or removal of the Trustee, the Trustee shall promptly (i) execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Trustee to effect the termination of the resigning or removed Trustee's capacity under this Trust Agreement and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee; (ii) deliver to the successor Trustee all documents, instruments, records, and  other writings relating to the Trust as may be in the possession or under the control of the resigning or removed Trustee, provided, the resigning or removed Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Trustee and the cost of making such copies shall be a Trust Cost to be paid by the Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee, provided that the fees and expenses of such assistance and cooperation shall be paid to the resigning or removed Trustee by the Trust as a Trust Cost.   The resigning or removed Trustee hereby irrevocably appoints the successor Trustee as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this <u>section 3.8</u>.   Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment.

**3.9**   **Compensation**.   As compensation for services as Trustee hereunder, and any other services rendered by the Trustee in connection with the Plan, this Trust

Agreement or the Debtors, the Trustee shall receive the following compensation: $425 per hour, adjusted annually upward or downward to reflect the prevailing rate that Trustee charges to other large corporate clients.  The Trustee will also be reimbursed for reasonable and necessary expenses.

Compensation of any successor Trustee shall be determined prior to the time of the Trustee's appointment by the Bankruptcy Court.  The compensation and expenses of the Trustee shall constitute a Trust Cost that will be paid by the Trust.

### 3.10   Standard of Care; Indemnification; Exculpation.

(a) The Trustee, acting in the capacity as the Trustee, on behalf of the Debtors, or in any other capacity contemplated by this Trust Agreement or the Plan, shall not be personally liable to the Trust or to any other Person (including Beneficiaries) in connection with the affairs of the Trust or the Debtors unless it is ultimately determined by Final Order that the Trustee's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Trustee shall not be personally liable to the Trust or any other Person (including Beneficiaries) in connection with the affairs of the Trust or the Debtors, unless it is ultimately determined by Final Order that such acts or omissions by such employee, agent or professional constituted willful fraud, willful misconduct, or gross negligence. In no event shall the Trust or the Trustee, or employees, agents and professionals of the Trust or Trustee, be liable to any Person (including Beneficiaries) if the action or inaction of the Trustee or the Debtors is authorized by the Bankruptcy Court, or if the Trustee takes any action or fails to take any action in good faith with a reasonable basis for taking such action or not taking such action.  The Trustee shall not be personally liable to the Trust or to any Person for the acts or omissions of any employee, agent or professional of the Trust or Trustee unless it is ultimately determined by Final Order that the Trustee acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Trust.

(b)    The Trustee (including each former Trustee) shall be indemnified by the Trust against and held harmless by the Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorney fees, disbursements, and related expenses) to which the Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Trustee in connection with any matter arising out of or related to the Plan,  this Trust Agreement, or the affairs of the Trust or the Debtors, unless it is ultimately determined by Final Order that the acts or omissions of the Trustee constituted willful fraud, willful misconduct, or gross negligence.  If the Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Trust Agreement or the affairs of the Trust or the Debtors, the Trust shall periodically advance or otherwise reimburse on demand the reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) of the Trustee incurred in connection therewith as a Trust Cost, but the Trustee shall be required to

repay promptly to the Trust the amount of any such advanced or reimbursed expenses paid to the Trustee to the extent that it shall be ultimately determined by Final Order that the Trustee engaged in willful fraud, willful misconduct, or gross negligence in connection with the affairs of the Trust or the Debtors with respect to which such expenses were paid.  The Trust shall indemnify and hold harmless the officers, employees, agents, affiliates, and professionals of the Trust and the Trustee to the same extent as provided in this section 3.10 for the Trustee.  The provisions of this section 3.10 shall remain available to any former Trustee or the estate of any decedent Trustee.  The indemnification provided hereby shall be a Trust Cost.

**3.11   Reliance by Trustee**.  The Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Trustee may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee in accordance therewith.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court or any other court of competent jurisdiction concerning the Trust Assets, this Trust Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Trustee in accordance therewith.

**3.12   Reliance by Persons Dealing With the Trust**.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust shall be entitled to rely on the authority of the Trustee to act in connection with the acquisition, management, sale, liquidation, or disposition of Trust Assets and shall have no obligation to inquire into the existence of such authority.

**3.13   No Personal Obligation for Trust Liabilities**.  Persons dealing with the Trustee in matters relating to the Trust shall have recourse only against the Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Trust Agreement or the Plan, and the Trustee shall have no personal or individual obligation to satisfy such liability.

**3.14   Discharge of Trustee.**

3.14.1 Statement of Discharge.  The Trustee shall upon termination of the Trust or upon the Trustee's resignation or removal render a statement of discharge containing the following information: (i) the Trust Assets originally charged under the Trustee's control, (ii) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, and income in connection with the Trust during the Trustee's term of service, and (iii) the ending balance of all assets and funds of the Trust as of the date of discharge.

3.14.2 <u>Approval of Statement of Discharge</u>.  The statement of discharge required by <u>section 3.14.1</u> hereof shall be presented to the Bankruptcy Court for approval.  Upon approval by the Bankruptcy Court, the withdrawing Trustee shall be discharged from all liability to the Trust, Beneficiaries and all Persons for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement or the Plan.  The expenses of any accounting, including, but not limited to any statement of discharge hereunder and obtaining approval from the Bankruptcy Court, shall be a Trust Cost.

## IV.  POWERS OF THE TRUSTEE

**4.1**    **Title**.  Legal title to all Trust Assets shall be vested in the Trustee, except that the Trustee shall have the power to cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee or Person, on such terms, in such manner, and with such powers as the Trustee may determine.

**4.2**    **Management Power**.  The Trustee shall have control and authority over the Trust Assets, including the Retained Actions over the management and disposition thereof, and over the management of the Trust to the same extent as if the Trustee were the sole owner thereof in its own right.

**4.3**    **Bankruptcy Court Approval of Trustee Actions.**

(a)    Except as provided in the Plan or otherwise specified in the Trust Agreement, the Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  The Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action.

(b)    Notwithstanding the foregoing, the Trustee, in its sole discretion and judgment, shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Trust Assets, this Trust Agreement, the Plan, or the Debtors, including the administration and distribution of the Trust Assets.  The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion by the Trustee.

(c)    Unless otherwise directed by the Bankruptcy Court or expressly provided in this Trust Agreement, notice of any motion by the Trustee under any provision of this Trust Agreement need only be given to Beneficiaries, the United States Trustee and any Person named in the motion.  Any such proposed action submitted to the Bankruptcy Court for approval by motion may be approved by the Bankruptcy Court if no person having standing to do so objects to such motion within 20 days of service of the motion.

7354507.13                                       10

If there are objections by any person having standing to object to such action by the Trustee, the Bankruptcy Court shall approve or disapprove such action after hearing. Upon approval of a proposed action by the Bankruptcy Court by order, the Trustee shall be authorized to take the proposed action without any liability with respect thereto. If such action is not approved by the Bankruptcy Court, the Trustee shall not take such action, without any liability with respect thereto. Notwithstanding the foregoing, the Trustee may file a motion with the Bankruptcy Court to limit notice upon good cause shown.

(d)     In addition, the Trustee shall specifically have the power and authority to seek Bankruptcy Court approval to sell any Trust Asset free and clear of all liens, claims and encumbrances.

### 4.4     <u>Other Powers of Trustee</u>.

In connection with the management and use of the Trust Assets and administration of the Trust, the Trustee's powers, except as otherwise expressly limited in this Trust Agreement or the Plan, shall include, but not be limited to, the following:

(i)     to accept, preserve and protect the Trust Assets;

(ii)     to review, reconcile, settle, object to, or request estimation under section 502(c) of the Bankruptcy Code of, Claims against Debtors in Classes 4, 5 and 6, and to succeed to the Debtors in the pursuit of any pending objections, estimation requests, or proceedings relating to such Claims after the Effective Date;

(iii)     except to the extent that any Claim is Allowed, to set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estates, the Debtors or the Trustee may have against such Creditors;

(iv)     to investigate and, if appropriate, prosecute, settle, release or abandon the Retained Actions;

(v)     to make or cause to be made distributions of Available Cash in accordance with the terms of this Trust Agreement and the Plan;

(vi)     to manage, liquidate, sell, assign, transfer, or deal in any other manner with the Trust Assets or any part thereof or any interest therein, and to sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its discretion;

(vii)    to investigate, prosecute, defend, resolve and settle any litigation relating to the Trust;

(viii)   to engage in all acts that would constitute ordinary performance of the obligations of a trustee under a liquidating trust, and to file all returns of the Trust as a grantor trust for the Beneficiaries pursuant to Treasury Regulation section 1.671-4(a) or (b) and any other tax returns that may be required with respect to the Trust;

(ix)    to, on behalf of the Trust and Trustee, appoint, engage, employ, supervise, and compensate employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, and attorneys;

(x)     to open and take all actions with respect to bank accounts on behalf of and in the name of the Trust;

(xi)    to invest and reinvest Trust Cash, pending distribution, and to liquidate such investments;

(xii)    to pay any taxes owed by the Trust, or that may be paid by the Trust on behalf of the holders of Disputed Claims (both of which shall be considered a Trust Cost), and execute, deliver, and perform any closing agreement made with the IRS, with respect to the Debtors or the Trust;

(xiii)   to determine the manner of ascertainment of income and principal, and the apportionment of income and principal, and the apportionment between income and principal of all receipts and disbursements, and to select an annual accounting period, for the Trust;

(xiv)   to appear and participate in any proceeding before the Bankruptcy Court or any other court with respect to any matter regarding or relating to the Chapter 11 Cases, the Plan, or the Trust and be entitled to notice and opportunity for a hearing on all such issues;

(xv)    to establish such funds, reserves and accounts within the Trust estate, as deemed by the Trustee in its discretion to be useful in carrying out the purposes of the Trust;

(xvi)   to sue, defend, and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding (including adversary proceedings and other contested matters) pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere;

7354507.13

(xvii)   to delegate any or all of the discretionary power and authority herein conferred at any time with respect to all or any portion of the Trust estate to any one or more reputable individuals, without liability for any action taken or omission made because of any such delegation, except as provided in <u>section 3.10</u> hereof;

(xviii)  to consult with the Beneficiaries at such times and with respect to such issues relating to the conduct of the Trust as the Trustee considers desirable and in accordance with the terms of the Trust Agreement;

(xix)    to pay all fees, expenses, debts and liabilities of the Trust, including Trust Costs;

(xx)     to execute, deliver and perform such other agreements and documents and to take or cause to be taken any and all such other actions as it may deem necessary or desirable to effectuate and carry out the purposes of this Trust Agreement;

(xxi)    to undertake any action or perform any obligation provided for or required by the Plan;

(xxii)   to terminate this Trust with approval of the Bankruptcy Court;

(xxiii)  to seek to close the Chapter 11 Cases pursuant to 11 U.S.C. § 305(a) and the Plan;

(xxiv)   to exercise such other powers and duties as necessary or appropriate in the discretion of the Trustee to accomplish the purposes of the Trust as set forth herein and in the Plan; and

(xxv)    to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate.

**4.5   <u>Representative Status of Trustee</u>**.   The Trustee will directly and indirectly be an Estate Representative and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to all rights and powers granted in this Trust Agreement.  The Trustee will be the successor-in-interest to the Debtors with respect to any Retained Action which was or could have been commenced by the Debtors prior to the Effective Date, and shall be deemed substituted for the Debtors as the party in such action.  All Retained Actions are preserved and retained and may be enforced by the Trustee as an Estate Representative, subject only

to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan.

**4.6** **Rights of Action/Potential Rights of Action/Avoidance Actions**.

    4.6.1   Investigation and Pursuit.

(a)    The Trustee shall have the authority to investigate, evaluate, and if appropriate, prosecute and pursue the Retained Actions.  Notwithstanding the foregoing, the Trustee shall be required to pursue a Retained Action only to the extent the Trustee, in its discretion, deems reasonable and appropriate.  In making its decision to pursue or not pursue a Retained Action, the Trustee shall be entitled to consider the merits, cost, potential benefit (including the ability to collect), litigation risk, and delay of pursuing any such action.

(b)    Nothing contained in this Trust Agreement or the Plan shall be construed as (i) obligating or requiring the Trustee to evaluate, investigate, or pursue every Retained Action; or (ii) obligating or requiring the Trustee to seek Bankruptcy Court approval of any decision by the Trustee not to pursue a Retained Action.

    4.6.2   Compromise and Settlement.

The Trustee may compromise, settle or release a Retained Action upon approval of the Bankruptcy Court following motion by the Trustee and with notice and opportunity to object by the Beneficiaries and United States Trustee.  Any such compromise and settlement shall be approved or disapproved by the Bankruptcy Court utilizing the standards set forth in Bankruptcy Rule 9019 and related case law.

**4.7** **Abandonment**.  The Trustee may abandon any Trust Asset upon approval of the Bankruptcy Court following motion by the Trustee and with notice and opportunity to object by the Beneficiaries and the United States Trustee.

**4.8** **Commingling of Trust Assets**.  The Trustee shall not commingle any of the Trust Assets with its own property or the property of any other Person.

**4.9** **Employment and Compensation of Professionals**.

(a)    The Trustee shall have the authority to employ and compensate attorneys, accountants, managers, employees, financial advisors, experts, investment advisors and other professionals as determined from time to time by the Trustee to render services for the Trust or the Trustee.  Specifically, the Trustee shall have the right to employ professional retained by the Debtors or the Official Committee of Unsecured Creditors during the Chapter 11 Cases, as well as firms with which the Trustee is associated.  The Trustee shall also have the right to retain professionals on such terms and conditions as the Trustee deems reasonable, including contingency-based fee and expense arrangements for prosecution of Retained Actions.

(b)     The Trustee shall pay the reasonable fees and expenses of such professionals and persons set forth in section 4.9(a) hereof as a Trust Cost without need for approval of the Bankruptcy Court.  The Trustee will have the duty and responsibility for reviewing and approving such fees and expenses.

**4.10    Costs**.  All fees, costs and expenses incurred by the Trustee and the Trust in the exercise of any right, power or authority conferred by section 4 hereof shall be as a Trust Cost.

## V.  OBLIGATIONS OF THE TRUSTEE

**5.1     Consultation with Beneficiaries**.  The Trustee shall have the right, but not the obligation, to consult in good faith with the Beneficiaries regarding all material issues affecting the Trust, including the resolution of Claims, the pursuit of Retained Actions, and the disposition of Trust Assets.

**5.2     Reports and Records.**

5.2.1   Quarterly Reports.  The Trustee shall cause to be prepared within 90 days after the end of each fiscal quarter (for such fiscal quarter), financial statements of the Trust as of the end of and for such periods, including (i) a statement of assets and liabilities, (ii) a statement of cash receipts and disbursements, (iii) a schedule, summarizing by type of investment and asset, all acquisitions and dispositions, and (iv) a summary listing of the status of the resolution of Claims for such fiscal year and disposition of Trust Assets.  In addition, such financial statements shall contain the following supplementary information: (A) a statement of the Beneficial Interests outstanding, (B) the amount of distributions to Beneficiaries, and (C) a schedule of expenses of the Trust, including Trust Costs.

5.2.2   Records.  The Trustee shall maintain records and books of account relating to the Trust Assets, the management thereof and all transactions undertaken by the Trustee.  The Trustee shall also maintain records and books of account relating to all distributions contemplated under the Plan and this Trust Agreement.

**5.3     Investment Guidelines**.  Trust Cash held pending distribution, including Trust Cash held in reserves, shall, to the extent permitted by applicable law, be invested by the Trustee in (i) direct obligations of, or obligations guaranteed by, or obligations secured by, the United States of America (including without limitation United States Treasury Bills); (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an Act of the Congress of the United States as an agency or instrumentality thereof, or (iii) demand deposits or short-term certificates of deposit at any bank or financial institution approved by the United States Trustee.  However, the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation section

301.7701-4(d) may be permitted to hold, pursuant to any amendment or addition to the Internal Revenue Code or to the Treasury Regulations, or any modification in IRS guidelines whether set forth in IRS rulings, other IRS pronouncements, or otherwise. Such investments shall mature in such amounts and at such times as, in the judgment of the Trustee at the times such investments are made, are necessary, or are desirable with a view to providing funds when needed to make payments from the Trust Assets. Any investment purchased with the Trust Assets shall be deemed a part of the Trust Assets.  All interest, distributions, dividends and proceeds received by the Trustee in respect of such investments shall be a part of the Trust Assets.

**5.4    Access to Information by Beneficiaries.**  Each Beneficiary shall have access to the business records of the Trust for the purpose of obtaining information relating to the management of Trust Assets for any purpose reasonably related to the interests generally of the Beneficiaries, so long as access is reasonably exercised during normal business hours (after at least five business days' notice to the Trustee), does not constitute an undue burden on the Trustee, and is not detrimental to the Trust or other Beneficiaries.  Notwithstanding the foregoing, in the event of any dispute or controversy between a Beneficiary and the Trustee or Trust, such Beneficiary must follow the discovery provisions provided in the Bankruptcy Rules and may not exercise the rights provided by this section in lieu of legal discovery.  Nothing herein contained is intended to restrict any Beneficiary from access to the business records of the Trustee, which the Trustee, in its discretion elects to provide.  For the avoidance of doubt, nothing in this provision grants Beneficiaries access to the business records of the Debtors.  Notwithstanding the foregoing, the Trustee may file a motion with the Bankruptcy Court to modify the Beneficiaries' access to the business records of the Trust upon good cause shown.

**5.5    United States Trustee Fees and Reports**.  After the Effective Date, the Trust shall pay as a Trust Cost, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Trust's disbursements until the Chapter 11 Cases is closed.  After the Confirmation Date, the Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Trust as required by the United States Trustee for as long as the Chapter 11 Cases remain open.

**5.6    No Implied Obligations**.  No other further covenants or obligations of the Trustee shall be implied into this Trust Agreement.  The Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets.

**5.7    Unknown Property and Liabilities**.  The Trustee shall be responsible for only that property delivered to it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

**5.8    Trust Costs**.  From the Trust Assets, the Trustee shall pay all Trust Costs when due if not disputed in good faith by the Trustee, or provide for payment of such Trust Costs in full through reserve, prior to making distributions to any Beneficiaries.

## VI.  BENEFICIAL INTERESTS

**6.1    Allocation of Beneficial Interests to Holders of Class 4 Claims, Class 5 Claims and Class 6 Claims**.

6.1.1  <u>Class 4 Claims</u>.   The Trustee shall allocate to each holder of an Allowed Claim under Class 4, a Beneficial Interest in the Trust equal to its Pro Rata Share of the Accepting Unsecured Creditors Fund.  If the holder of an Accepting Unsecured Claim is not fully satisfied by the distribution from the Accepting Unsecured Creditors Fund, the remainder of the claim will be treated as an Allowed Class 5 Claim and entitled to its Pro Rata share of the General Unsecured Creditors Fund.

6.1.2  <u>Class 5 Claims</u>.  The Trustee shall allocate to each holder of an Allowed Claim under Class 5, a Beneficial Interest in the Trust equal to its Pro Rata Share of the General Unsecured Creditors Fund; provided, however, in calculating the Pro Rata Share held by each holder of an Allowed Claim under Class 5, the Secured Lender Deficiency Claims shall equal fifty percent (50%) of the total Allowed Claims in Class 5.

6.1.3  <u>Class 6 Claims</u>.  The Trustee shall allocate to each holder of an Allowed Claim under Class 6, in full satisfaction, settlement, release and extinguishment of such Allowed Claim, a Beneficial Interest in the Trust equal to an agreed upon percentage of such Allowed Claim from the General Unsecured Creditors Fund.

**6.2    Transfer of Beneficial Interests**.  No transfer of a Beneficial Interest shall be effective or binding upon the Trust or the Trustee for any purpose, unless and until written notification of such transfer or assignment, executed by duly authorized representatives of both the assignor and assignee of such Beneficial Interest, is sent by certified mail to the Trustee and received by the Trustee.

**6.3    Register Entries Regarding Beneficial Interests**.  The Trustee shall make appropriate notations in a Trust Register and calculate the following ratios prior to each distribution to Beneficiaries:

(i)    the Beneficial Interest and Allowed Claim held by each Beneficiary;

(ii)    as to each Beneficiary holding a Class 4 Allowed Claim, the Pro Rata Share of the Accepting Unsecured Creditors Fund;

(iii)    as to each Beneficiary holding a Class 4 Allowed Claim, the amount of the Class 4 Allowed Claim that is not fully satisfied by the distribution from the Accepting Unsecured Creditors Fund;

(iv)    as to each Beneficiary holding a Class 5 Allowed Claim, the Pro Rata Share of the General Unsecured Creditors Fund allocable to each claim holder; recognizing, however, that the Secured Lender Deficiency Claims shall equal fifty percent (50%) of the total Allowed Claims in Class 5; and

(v)    as to each Beneficiary hold a Class 6 Allowed Claim, the amount that is an agreed upon percentage of such Allowed Claim.

**6.4**    **Allocation of Beneficial Interests to Holders of Disputed Claims or Interests**.  No Beneficial Interest shall be allocated to a Creditor under Class 4, Class 5 or Class 6 unless and until such Creditor holds an Allowed Claim.  In the event and upon allowance of additional Allowed Claims under Classes 4, 5 and 6, the Beneficial Interests held by the first and subsequent creditors holding Allowed Claims under Classes 4, 5 and 6 will be adjusted as necessary.

**6.5**    **Representation of Beneficial Interest**.  The Beneficial Interests shall be uncertificated.  The Beneficial Interests shall be represented by appropriate book entries in the Trust Register.

**6.6**    **Trust Register**.

    6.6.1  <u>Register of Beneficial Interests</u>.  The Trustee shall cause the Trust Register to be kept at the office of the Trustee or at such other place or places that shall be designated by the Trustee from time to time.

    6.6.2  <u>Access to Register by Beneficiaries</u>.  Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Trustee, and in accordance with reasonable regulations prescribed by the Trustee, to inspect and at the expense of the Beneficiary make copies of the Trust Register, in each case only for a purpose reasonable and related to such Beneficiary's Beneficial Interest in the Trust.

    6.6.3  <u>Absolute Owners</u>.  The Trustee may deem and treat the Beneficiary of record as determined pursuant to <u>section 6.1</u> or if and when appropriate, <u>section 6.2</u> of this Trust Agreement as the absolute owner of such Beneficial Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

## VII.  DISTRIBUTION OF THE TRUST ESTATE

**7.1**    **Establishment of Reserve**.

The Trustee shall establish an Operating Reserve funded from time to time with Trust Cash in an amount determined by the Trustee to be reasonably necessary to pay

existing and anticipated Trust Costs, to fund litigation, fund contingent liabilities, and otherwise conduct the affairs and satisfy existing and anticipated liabilities and obligations of the Trust.

**7.2** **Distributions to Holders of Beneficial Interests**.

7.2.1 <u>Distributions Generally</u>. The Trustee may make distributions from Available Cash, or from Trust Assets as provided in <u>section 9.2</u> hereof. The Trustee shall make all distributions required under the Plan in a manner consisted with the Plan. A Beneficiary who is the holder of an Allowed Claim under Class 4 shall receive on a distribution date its Pro Rata Share of the Accepting Unsecured Creditors Fund until the amount of such Beneficiary's Class 4 Allowed Claim is paid in full. A Beneficiary who is the holder of an Allowed Claim under Class 5 shall receive on a distribution date its Pro Rata Share of the General Unsecured Creditors Fund until the amount of such Beneficiary's Class 5 Allowed Claim is paid in full. A Beneficiary who is the holder of an Allowed Claim under Class 6 shall receive on a distribution date, in full satisfaction, settlement, release and extinguishment of such Allowed Claim, an agreed upon percentage of such Allowed Claim from the General Unsecured Creditors Fund. All such distributions shall be based on each Creditor's Pro Rata Share (for Classes 4 and 5) or percentage (for Class 6) as outlined in the Plan and in <u>section 6.1</u> hereof; <u>provided</u>, <u>further</u>, that of the net amount distributable, the Trustee shall hold in trust in accordance with <u>section 7.3</u> hereof, such amounts as would be distributable in respect of the estimated amount of Disputed Claims (treating such Disputed Claims, for this purpose only, as if they were Allowed Claims). The Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

7.2.2 <u>Distributions to Holders of Allowed Class 4 Accepting Unsecured Claims</u>. Each Holder of an Allowed Class 4 Accepting Unsecured Claim shall receive its Pro Rata share of the Accepting Unsecured Creditors Fund on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Accepting Unsecured Claim becomes Allowed, and (iii) a date agreed to by the Trustee and the Holder of such Class 4 Accepting Unsecured Claim.

7.2.3 <u>Distributions to Holders of Allowed Class 5 General Unsecured Claims</u>. Each Holder of an Allowed Class 5 Other General Unsecured Claim shall receive its Pro Rata Distribution of the General Unsecured Creditors Fund on either (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Other General Unsecured Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court. On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Trustee shall continue to make Pro Rata Distributions to Holders of Allowed Class 5 Other General Unsecured Claims of any available funds in the General Unsecured Creditors Fund until the Consummation Date.

7.2.4   <u>Distributions to Holders of Allowed Class 6 Convenience Class Claims</u>.  Each Holder of an Allowed Class 6 Convenience Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, Cash in an amount equal to an agreed upon percentage of such Allowed Claim from the General Unsecured Claims Fund on either (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Convenience Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

7.2.5   <u>Distributions to Beneficiaries After Allowance</u>.   As soon as practicable after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) the Disputed Claim becomes an Allowed Claim, the Trustee will distribute to the Holder thereof all Distributions to which such Holder is then entitled under this Trust Agreement and the Plan.  All Distributions made under this <u>section 7.2.5</u> will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Holders included in the applicable Class.

7.2.6   <u>Remaining Trust Assets</u>.  In the event that (a) the amount of all Class 4 Allowed Claims and all Class 5 Allowed Claim are paid in full by the Trust, (b) an agreed upon percentage of each Allowed Class 6 Claim is paid by the Trust, (c) Trust Assets or Trust Cash remain available for distribution after such payment, and (d) upon approval by the Bankruptcy Court, then such remaining Trust Assets and Trust Cash (less any reserve deemed appropriate by the Trustee to pay anticipated Trust Costs) shall be transferred by the Trust to the Purchaser.

7.2.7   <u>Place and Manner of Payments or Distributions</u>.  The Trustee shall make distributions to the Beneficiaries of record as of the distribution date by mailing such distribution to the Beneficiary at the address of such Beneficiary as listed in the Schedules, or any proof of claim filed by the Beneficiary, or as listed in the Trust Register, or at such other address as such Beneficiary shall have specified for payment purposes in a written notice to the Trustee at least 20 days before a distribution date. The Trustee shall distribute any cash by check or such other method as the Trustee deems appropriate under the circumstances.  Prior to receiving any distributions, all Beneficiaries, at the Trustee's request, must provide to the Trustee written notification of their respective Federal Tax Identification Numbers or Social Security Numbers.  The Trustee may suspend distributions to any Beneficiary that has not provided its Federal Tax Identification Number or Social Security Number, as the case may be.

7.2.8   <u>Unclaimed or Undeliverable Distributions</u>.

(a)   If a distribution to any Beneficiary is returned as undeliverable, no further distributions to such Beneficiary shall be made unless and until the Debtors or

7354507.13                                    20

the Trustee is notified of such Beneficiary's then current address, at which time all missed distributions shall be made to such Beneficiary without interest.

(b)     If such Beneficiary does not provide an updated address within 6 months after the date of the first returned distribution, with approval of the Bankruptcy Court upon motion by the Trustee, (a) such Person shall no longer be deemed to be a Beneficiary, and (b) any Trust Assets, Trust Cash and interest and proceeds thereon allocable to such Person, net of any allocable portion of taxes paid by the Trust, shall become part of the Trust Assets free and clear of and from any claim to such property by or on behalf of such Person (who shall be deemed to have released such claim or interest) and shall be distributed to the other Beneficiaries as provided in the Trust Agreement, with such adjustments as are required to take into account that such person is no longer deemed a Beneficiary.

(c)     Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Any amounts returned to the Debtors or the Trustee in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Trustee or the Debtors, as the case may be.  Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.  All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after the date on which the check is voided; or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.08 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtors or their respective assets, the Trustee or the Trust.

7.2.9   <u>De Minimis Distributions</u>.   Except for payments to Holders of Allowed Class 6 Claims, no Cash payment of less than fifty ($50.00) shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.  Notwithstanding anything to the contrary in the Plan, Cash payments of less than fifty ($50.00) may be made to holders of Allowed Class 6 Claims.

7.2.10   <u>Distribution Date</u>.   Notwithstanding anything in the Plan, "Distribution Date" means (i) the Initial Distribution Date, and (ii) the first Business Day after the end of the months June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Final Distribution Date; <u>provided</u>, <u>however</u>, that a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of all Allowed Claims on such Distribution Date is less than an amount that the Trustee reasonably believes warrants distribution, in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

7354507.13

21

**7.3**     **Disputed Claims**.

7.3.1   <u>General</u>.  All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtors or the Liquidation Trustee and the Holder of such Claim, by operation of law, by Final Order, or by the Plan. Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.  The Trustee shall hold in trust for the holders of Disputed Claims any amounts attributable to the estimated amount of Disputed Claims as calculated in accordance with the Plan and <u>section 6.1</u> hereof, and any amounts treated as set aside on account of Disputed Claims in accordance with <u>section 7.2.1</u>.   Such distributable amounts shall be made in accordance with the Plan and with <u>section 7.2.5</u> hereof.

7.3.2   <u>Taxable Income Allocable to Disputed Claims</u>.  As more fully set forth in <u>section 8.5</u>, taxes with respect to income of the Trust attributable to the estimated amount of Disputed Claims shall be the responsibility of the Trust.  In the event and to the extent the amount held in trust for the holders of Disputed Claims produce insufficient cash to pay such taxes, the Trust shall fund such taxes and deduct an amount equal to such taxes from subsequent earnings with respect to the amount held in trust for Disputed Claims or amounts that may be subsequently distributed to holders of Disputed Claims that have become Allowed Claims; holders of Disputed Claims will in all circumstances bear the cost of Trust taxes attributable to their respective shares of Trust assets and income.

## VIII.  TAX MATTERS

**8.1**     **Certain Income Tax Matters**.  The Trust established pursuant to this Trust Agreement is established for the purpose of satisfying claims by liquidating the Trust Assets transferred to it and the Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  The purpose of the Trust is to provide a mechanism for the liquidation of the Trust Assets conveyed by the Debtors to the Trust, and to distribute the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Trust, to the holders of Beneficial Interests in accordance with the terms of the Plan and this Trust Agreement.  No business activities will be conducted by the Trust other than those associated with or related to the liquidation of the Trust Assets.  It is intended that the Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.  All parties hereto shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including, sections 61(12), 483, 1001, 1012, and 1274).  All the parties hereto shall treat the transfers in trust as if all the transferred assets, including all the Trust Assets, had been first transferred to the Beneficiaries and then transferred by

the Beneficiaries to the Trust.  The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Trust and the owners of the Trust.  The Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) or (b), to the extent interests of the Trust are attributable to Allowed Claims.  The parties hereto, including the Trustee and the Beneficiaries shall value the property transferred to the Trust consistently and such valuations shall be used for all federal income tax purposes.  Each Beneficiary with an Allowed Claim shall be responsible for payment of any taxes due to the operation of their share of the Trust, and the Trust shall pay the taxes attributable to the shares of the Trust allocable to the estimated amount of Disputed Claims (which will reduce the amount available to distribute to holders of Disputed Claims that may become Allowed Claims).  During its existence, the Trust shall not receive or retain cash or cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities or to maintain the value of its assets during liquidation.  The Trustee shall use its continuing best efforts to dispose of the Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Trust.  The Trustee is authorized to take any action as may be necessary or appropriate to minimize any potential tax liability of the Trust and, thereafter, the Beneficiaries, arising out of the operations of the Trust.  The Trustee is directed to allocate all costs, charges, expenses and deductions, or any of them in whole or in part, to income or principal at such time and in such a manner as the Trustee shall determine will reduce or eliminate the Trust's taxes, if any.  Subject to section 7.2.1, the Trustee shall generally attempt to distribute at least annually to the holders of Beneficial Interests all net cash income plus all net cash proceeds from the liquidation of assets of the Trust; provided, however, the Trustee shall be required to make such distributions only if cash exists to be distributed after retaining and setting aside such amounts of cash (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Trust during liquidation, the amount of which will be determined by the Trustee in its discretion, (ii) to pay existing and anticipated Trust Costs (including any taxes imposed on the Trust or in respect of the assets of the Trust) including the Operating Reserve, the amount of which will be determined by the Trustee in its discretion, and (iii) to satisfy other existing or anticipated liabilities incurred or assumed by the Trust (or to which the assets are otherwise subject) in accordance with the Plan or the Trust Agreement, the amount of which will be determined by the Trustee in its discretion.  In addition, the Trustee shall, not less often than annually, provide to Beneficiaries such information as is appropriate or necessary, to enable the Beneficiaries to determine their respective tax obligations, if any, arising out of the operations of the Trust.  The Beneficiaries shall each report their share of the net income of the Trust as reported to them by the Trustee and pay any tax owing thereon on a current basis.  Each taxable year, all income of the Trust will be taxed either to the Beneficiaries or to the Trust.  No Beneficiary shall have any claim to or with respect to any specific property held in trust and shall have no claim to or for a distribution of property in kind.

**8.2**    **Treatment of Trust Assets for Tax Purposes**.  The Trustee shall have the right to request the Bankruptcy Court to determine the aggregate value of the Trust Assets which shall be reported to the Beneficiaries.  The value of the Trust Assets shall

be consistently reported for federal income tax purposes by the Debtors, the Trust, and the Beneficiaries.

**8.3    Withholding**.  The Trustee may withhold from the amount distributable from the Trust at any time to any Person such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges that have been or may be imposed on such Person or upon the Trust with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for in Article VIII, whenever such withholding is determined by the Trustee in its discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement, and the Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.  Notwithstanding the foregoing but without prejudice to the Trustee's rights hereunder, such Person shall have the right with respect to the United States, or any state, or any political subdivision of either, to contest the imposition of any tax or other charge by reason of any distribution hereunder.

**8.4    Allocation of Income and Losses**.  Unless otherwise determined by the Trustee in its reasonable discretion, allocations between Beneficiaries of taxable income of the Trust for each of its tax years shall be determined by reference to the manner in which an amount of cash equal to the amount of such taxable income would be distributed (without regard to any restrictions on distributions described in the Plan) if, immediately before such deemed distribution, the Trust had, with respect to the portion of the Trust treated as a grantor trust, distributed all its other assets (valued for this purpose at their tax book value) in respect of the Beneficial Interests, taking into account all prior and concurrent distributions from the Trust made in accordance with the Plan.  Similarly, taxable loss generally will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of the Trust.  The tax book value of assets for purpose of Article VIII and Article IX hereof means their fair-market value on the Effective Date or, if later, the date on which such assets were acquired by the Trust, adjusted in either case in accordance with applicable tax accounting principles.  With regard to transfers of Beneficial Interests in accordance with Article VI hereof, the Trustee shall promptly establish a standard convention for allocating and apportioning taxable income and loss between a transferor and its transferee and shall not be required to so allocate and apportion based on the actual Trust activities prior and subsequent to the date of any transfer.  The Trustee shall notify the Beneficiaries of the convention adopted promptly after such adoption.  The Trustee shall use its sole discretion to establish a fair and equitable convention to apply and may, but is not required to, adopt a monthly, quarterly, or similar record date convention.

**8.5    Tax Treatment of Trust Assets and Income/Loss Attributable to Disputed Claims**.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon

audit if not contested by the Trustee), the Trustee shall (i) treat the portion of the Trust assets attributable to the estimated amount of Disputed Claims as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of the estimated amount of each Disputed Claim, in accordance with the trust provisions of the Internal Revenue Code (sections 641 et seq.), (ii) treat the taxable income or loss of the Trust attributable to such portion of the Trust assets allocated to the estimated amount of Disputed Claims as taxable income or loss with respect to which the Trust will pay the tax liability (but only with respect to the portion of the year with respect to which such claims are Disputed Claims), (iii) after a Disputed Claim is allowed by Final Order of the Bankruptcy Court, treat the holder of such Allowed Claim as a grantor of the liquidating trust as described in <u>section 8.1</u> hereof, and as the party responsible for payment of all taxes on its share of any income of Trust after the Claim is Allowed, and (iv) to the extent permitted by applicable law, shall report consistent with the foregoing for state and local income tax purposes.  All holders of Allowed Claims in Class 4, Class 5 and Class 6 shall report, for tax purposes, consistent with the foregoing.

## IX.  TERMINATION

**9.1** <u>**Duration**</u>.  The Trust shall terminate upon the earlier of (i) the date which is 5 years after the Effective Date (the date this Trust is created); or (ii) the disposition of the Trust Assets; or (iii) the fulfillment of Trust purposes as determined by the Trustee as evidenced by an order of the Bankruptcy Court closing the Chapter 11 Cases and discharging the Trustee.  Notwithstanding the foregoing, with Bankruptcy Court approval, the Trustee may extend the term of the Trust for one or more finite terms based upon the particular facts and circumstances at that time, if it is in the best interest of the Beneficiaries and an extension is necessary to the liquidating purpose of the Trust.

**9.2** <u>**Distribution of Trust Assets**</u>.  The Trust may not be terminated at any time by the Beneficiaries.  If permitted under the applicable law and not contrary to the classification of the Trust as a liquidating trust and a pass-through entity under applicable income tax law, and if in the best interests of the Beneficiaries and with approval of the Bankruptcy Court, the Trustee may distribute interests in the Trust Assets, or contribute the Trust Assets to another Person and then distribute interests in such Person to the Beneficiaries.  Trust Assets to be distributed in kind shall be valued by the Trustee in its reasonable discretion at their tax book value.  After all liabilities of the Trust have been satisfied or duly provided for, such remaining Trust Assets shall be distributed to Beneficiaries as a final distribution.

## X.  MISCELLANEOUS

**10.1** <u>**Notices**</u>.  Any notice required to be given by this Trust Agreement to Beneficiaries, the Trustee, or any other Person shall be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

a)    <u>If to the Trustee</u>:
Robert Barnett
Conway MacKenzie, Inc.
7000 Central Parkway, NE
Suite 1325
Atlanta, GA 30328
Facsimile:    (770) 393-3702

b)    <u>If to the Debtors</u>

Sea Island Company
100 Salt Marsh Drive
Sea Island, Georgia 31522
Attention:    Alfred W. Jones III
Facsimile:    (912) 634-3124

(c)    if to any Beneficiary, at such Beneficiary's address as listed in the Schedules, proof of claim filed by the Beneficiary, the Trust Register, or as identified in a written request for notice delivered to the Trustee.

Notice mailed shall be effective on the date mailed or sent.  Any Person may change the address at which it is to receive notices under this Trust Agreement or elect to receive notice by email or facsimile by furnishing written notice pursuant to the provisions of this <u>section 10.1</u> to the entity to be charged with knowledge of such change.

**10.2    Transferee Liabilities**.  The Trust shall have no liability for, and the Trust Assets shall not be subject to, any claim arising by, through or under the Debtors except as expressly set forth in the Plan or this Trust Agreement.  In no event shall the Trustee have any personal liability for such claims.  If any liability shall be asserted against the Trust or the Trustee as the transferees of the Trust Assets on account of any claimed liability of, through or under the Debtors, the Trustee may use such part of the Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Trustee as a Trust Cost.

**10.3    Amendment**.  This Trust Agreement may be amended by the proposal of the Trustee of an amendment through motion filed with notice to the Beneficiaries, and approval of such proposed amendment by the Bankruptcy Court.  As long as any amendment of this Trust Agreement does not conflict with the terms of the Plan, this Trust Agreement may be amended without amending or modifying the Plan.  This Trust Agreement may be amended by the Trustee without the approval of any Beneficiaries or the Bankruptcy Court to correct typographical errors or if such amendment is not material, and in either case if such amendment does not adversely affect the interests of

any Beneficiary, but such amendment shall not be effective until 45 days after the Beneficiaries shall have been given notice of such amendment.

**10.4   Counterparts**.  This Trust Agreement may be executed in one or more Counterparts, all of which shall taken together to constitute one and the same instrument.

**10.5   Governing Law; Severability**.  This Trust Agreement shall be governed by construed under and interpreted in accordance with the laws of the State of Georgia. If it shall be determined by a court of competent jurisdiction that any provision of this Trust Agreement shall be invalid or unenforceable under such applicable law, such invalidity or unenforceability, shall not invalidate the entire Trust Agreement.  In that case, this Trust Agreement shall be construed so as to limit any term or provision so as to make it enforceable or valid within the requirements of applicable law, and, if such term or provision cannot be so limited, this Trust Agreement shall be construed to omit such invalid or unenforceable provisions provided that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

**10.6   Headings**.  Sections, subheadings and other headings used in this Trust Agreement are for convenience only and shall not affect the construction of this Trust Agreement.

**10.7   Relationship to Plan**.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore the entirety of this Trust Agreement is incorporated into the Plan.  To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and shall be bound by the terms of the Plan.  If any provision of this Trust Agreement is found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

**10.7   Consent to Jurisdiction**.   Each of the parties hereto (and each Beneficiary by its acceptance of the benefits of the Trust created hereunder) consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement or construction of any right, remedy, obligation, or liability arising under or by reason of this Trust Agreement or the Plan.

Remainder of page intentionally left blank; signatures follow

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

**TRUSTEE:**

By: _____

Name: Robert  Barnett

Title:  Trustee of the Sea Island Company
         Creditors Liquidation Trust

DEBTORS:

SEA ISLAND COMPANY

By: _____
Name: David Bansmer
Title: President and Chief Operating Officer

SEA ISLAND COASTAL PROPERTIES LLC

By Sea Island Company
   its manager

By: _____
Name: David Bansmer
Title: President and Chief Operating Officer

SEA ISLAND RESORT RESIDENCES, LLC

By Sea Island Company
   its Sole Member

By: _____
Name: David Bansmer
Title: President and Chief Operating Officer

SEA ISLAND APPAREL, LLC

By Sea Island Company
   its Sole Member

By: _____
Name: David Bansmer
Title: President and Chief Operating Officer

FIRST SEA ISLAND, LLC

By Sea Island Company
   its Sole Member

By: _____
      Name: David Bansmer
      Title: President and Chief Operating Officer

SICAL, LLC

By Sea Island Company
   its Sole Member

By: _____
      Name: David Bansmer
      Title: President and Chief Operating Officer

SEA ISLAND SERVICES, INC.

By: _____
      Name: David Bansmer
      Title: President and Chief Operating Officer

7354507.13

**<u>EXHIBIT A</u>**

Debtors' Amended and Restated Joint Chapter 11 Plan as of August 10, 2010

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **SEA ISLAND COMPANY**, *et al.*, | ) | **Case No. 10-21034** |
| | ) | **Jointly Administered** |
| | ) | |
| **Debtors.** | ) | **Judge John S. Dalis** |
| | ) | |

## DEBTORS' AMENDED AND RESTATED JOINT CHAPTER 11 PLAN AS OF AUGUST 10, 2010

The above-captioned debtors and debtors in possession hereby submit their Amended and Restated Joint Chapter 11 Plan dated as of August 10, 2010.


Dated:  August 10, 2010
Atlanta, Georgia

KING & SPALDING LLP
Sarah R. Borders
Georgia Bar No. 610649
sborders@kslaw.com
Harris Winsberg
Georgia Bar No. 770892
hwinsberg@kslaw.com
Sarah L. Taub
Georgia Bar No. 556919
staub@kslaw.com
Jeffrey R. Dutson
Georgia Bar No. 637106
jdutson@kslaw.com
1180 Peachtree Street
Atlanta, Georgia  30309-3521
Telephone:    (404) 572-4600
Facsimile:    (404) 572-5128

COUNSEL FOR THE
DEBTORS IN POSSESSION

# TABLE OF CONTENTS

Page

**ARTICLE I.**        DEFINITIONS, INTERPRETATION AND EXHIBITS ........................................................1
     Section 1.01      Definitions ........................................................................................................1
     Section 1.02      Rules of Interpretation ....................................................................................17
     Section 1.03      Exhibits ............................................................................................................17
     Section 1.04      SICAL, LLC ....................................................................................................17

**ARTICLE II.**        CLASSIFICATION OF CLAIMS AND INTERESTS ........................................17
     Section 2.01      Summary..........................................................................................................17
     Section 2.02      Unclassified Claims ........................................................................................18
     Section 2.03      Unimpaired Classes Deemed to Accept ..........................................................18
     Section 2.04      Impaired Classes Entitled to Vote ..................................................................18
     Section 2.05      Impaired Classes Deemed to Reject ................................................................18

**ARTICLE III.**       PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS...........19
     Section 3.01      Satisfaction of Claims and Interests ................................................................19
     Section 3.02      Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified
                                Interests. ..........................................................................................................19
     Section 3.03      Administrative Claims. ....................................................................................19
     Section 3.04      DIP Facility Claims ........................................................................................20
     Section 3.05      Priority Tax Claims..........................................................................................21
     Section 3.06      Class 1: Miscellaneous Secured Claims..........................................................21
     Section 3.07      Class 2: Secured Lender Claims ......................................................................21
     Section 3.08      Class 3: Other Priority Claims ........................................................................22
     Section 3.09      Class 4: Accepting Unsecured Claims ............................................................22
     Section 3.10      Class 5: Other General Unsecured Claims ......................................................23
     Section 3.11      Class 6: Convenience Claims. ........................................................................23
     Section 3.12      Class 7: Interests in the Debtors. ....................................................................24

**ARTICLE IV.**       ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ....................24
     Section 4.01      Acceptance by Impaired Classes of Claims and Interests................................24
     Section 4.02      Voting Classes ................................................................................................24
     Section 4.03      Ballot Instructions ..........................................................................................24
     Section 4.04      Cramdown ........................................................................................................25

**ARTICLE V.**        PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN................25
     Section 5.01      Timing of Distributions....................................................................................25
     Section 5.02      Distributions to Holders of Allowed Claims ..................................................25
     Section 5.03      Distributions After Allowance. ......................................................................25
     Section 5.04      Liquidating Trust ............................................................................................26
     Section 5.05      Delivery of Distributions ................................................................................26
     Section 5.06      Method of Cash Distributions ........................................................................26
     Section 5.07      Failure to Negotiate Checks ............................................................................27
     Section 5.08      Unclaimed Distributions ................................................................................27
     Section 5.09      Limitation on Distribution Rights ..................................................................27
     Section 5.10      Fractional Dollars ............................................................................................27
     Section 5.11      Compliance With Tax Requirements ..............................................................27
     Section 5.12      Character of Distributions ..............................................................................28
     Section 5.13      De Minimis Distributions ..............................................................................28

| Section 5.14 | No Payment or Distribution Pending Allowance | 28 |
| Section 5.15 | Distributions on Insured Claims | 28 |
| | | |
| ARTICLE VI. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS | 29 |
| Section 6.01 | Treatment of Executory Contracts and Unexpired Leases | 29 |
| Section 6.02 | Cure of Defaults for Assumed Contracts and Leases | 29 |
| Section 6.03 | Bar Date for Claims for Rejection Damages | 29 |
| Section 6.04 | Treatment of Rejection Claims | 29 |
| Section 6.05 | Employee Benefit Programs | 30 |
| Section 6.06 | Club Member Agreements | 33 |
| | | |
| ARTICLE VII. | MEANS FOR IMPLEMENTATION OF THE PLAN | 34 |
| Section 7.01 | The Sale | 34 |
| Section 7.02 | Substantive Consolidation | 34 |
| Section 7.03 | Continued Corporate Existence | 35 |
| Section 7.04 | Powers and Duties of the Liquidation Trustee | 35 |
| Section 7.05 | Approval of Agreements | 35 |
| Section 7.06 | Corporate Action | 35 |
| | | |
| ARTICLE VIII. | PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST | 36 |
| Section 8.01 | Preservation of Rights | 36 |
| Section 8.02 | Rights of Action | 36 |
| Section 8.03 | Setoffs | 37 |
| Section 8.04 | Resolution of Disputed Claims | 37 |
| | | |
| ARTICLE IX. | CONDITIONS TO CONSUMMATION OF THE PLAN | 38 |
| Section 9.01 | Confirmation Order | 38 |
| Section 9.02 | Conditions to Effective Date | 38 |
| Section 9.03 | Waiver of Conditions to Consummation | 38 |
| Section 9.04 | Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan | 39 |
| | | |
| ARTICLE X. | EFFECTS OF CONFIRMATION | 39 |
| Section 10.01 | Injunction | 39 |
| Section 10.02 | Exculpation | 40 |
| Section 10.03 | Releases | 40 |
| Section 10.04 | Other Documents and Actions | 42 |
| Section 10.05 | Term of Injunctions or Stays | 42 |
| Section 10.06 | Preservation of Insurance | 42 |
| Section 10.07 | Guaranties | 42 |
| Section 10.08 | Subordination Rights | 42 |
| Section 10.09 | No Successor Liability | 42 |
| | | |
| ARTICLE XI. | RETENTION OF JURISDICTION | 43 |
| Section 11.01 | Exclusive Jurisdiction of Bankruptcy Court | 43 |
| Section 11.02 | Failure of Bankruptcy Court to Exercise Jurisdiction | 45 |
| | | |
| ARTICLE XII. | MISCELLANEOUS PROVISIONS | 45 |
| Section 12.01 | Binding Effect of Plan | 45 |
| Section 12.02 | Withdrawal of the Plan | 46 |
| Section 12.03 | Final Order | 46 |
| Section 12.04 | Modification of the Plan | 46 |
| Section 12.05 | Business Days | 46 |
| Section 12.06 | Severability | 46 |

Section 12.07   Governing Law ...................................................................................46
Section 12.08   Dissolution of Committee ....................................................................47
Section 12.09   Post-Confirmation Operating Reports...................................................47
Section 12.10   Notices .................................................................................................47
Section 12.11   Filing of Additional Documents ..........................................................48
Section 12.12   Section 1125 of the Bankruptcy Code ..................................................48
Section 12.13   Section 1146 Exemption ......................................................................48
Section 12.14   Section 1145 Exemption ......................................................................48
Section 12.15   Time .....................................................................................................48
Section 12.16   No Attorneys' Fees ..............................................................................49
Section 12.17   No Injunctive Relief ............................................................................49
Section 12.18   Continued Confidentiality Obligations .................................................49
Section 12.19   No Admissions or Waivers ...................................................................49
Section 12.20   Entire Agreement .................................................................................49
Section 12.21   Waiver ..................................................................................................49
Section 12.22   Confirmation of Plans for Separate Debtors..........................................49
Section 12.23   Name Change .......................................................................................49

## INTRODUCTION

This joint chapter 11 plan (as amended or modified hereafter in accordance with its terms, the "Plan"), dated as of August 10, 2010, is proposed by Sea Island Company, Sea Island Coastal Properties LLC, Sea Island Services, Inc., First Sea Island, LLC, Sea Island Apparel, LLC, SICAL, LLC and Sea Island Resort Residences, LLC (each a "Debtor" and collectively, the "Debtors").  Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters.  The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof.  The Debtors have obtained Bankruptcy Court authority to have the Chapter 11 Cases jointly administered for administrative and procedural purposes only.  Accordingly, the Plan is being proposed as a joint plan of the Debtors.  Claims against, and Interests in, the Debtors (other than Administrative Claims and Priority Tax Claims) are classified in Article II hereof and treated in Article III hereof.

## ARTICLE I.
## DEFINITIONS, INTERPRETATION AND EXHIBITS.

Section 1.01   Definitions.  Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise.  As used herein:

"Accepting Unsecured Claims" means Holders of General Unsecured Claims and Convenience Claims that voted to accept the Plan.

"Accepting Unsecured Creditors Fund" means Cash in the amount of $3,000,000, which the Secured Lenders will fund from their allocation of proceeds from the sale under the Asset Purchase Agreement, to the Liquidating Trust for the benefit of the Accepting Unsecured Claims subject to (i) the acceptance of the Plan by Classes 5 and 6, and (ii) an allocation of proceeds from the Sale under the Asset Purchase Agreement between encumbered and unencumbered property that is acceptable to the Secured Lenders.

"Adequate Protection Claims" means all liens and claims of the Secured Lenders granted pursuant to the Cash Collateral Order or subsequent order of the Bankruptcy Court, including but not limited to, any debtor in possession financing order.

"Administrative Claim" means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of any of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtors' respective Estates or operating the businesses of the Debtors, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of their respective businesses, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtors' respective Estates under section 1930 of title 28 of the United States Code; and (c) any Allowed administrative claim or superpriority claim granted to the Secured Lenders pursuant to the Cash Collateral Order; provided, however, that the term Administrative Claim does not include any Assumed Liabilities under the Asset Purchase Agreement.

"Administrative Claim Bar Date" means the first Business Day that is thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may have been amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date (or the Administrative Claim Bar Date if an Administrative Claim), provided that at the time of the Effective Date the Debtors have not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"Allowed Claim" means a Claim that is Allowed.

"Allowed Interest" means an Interest that is Allowed.

"Asset Purchase Agreement" means that certain Asset Purchase Agreement dated as of August 4, 2010 by and among the Debtors, as sellers, and the Stalking Horse Bidder, as buyer, which provides for the sale of certain or substantially all of the Debtors' assets, or such other asset purchase agreement submitted at or prior to the Auction and subsequently determined by the Debtors pursuant to the Sale and Bid Procedures to be the highest or otherwise best offer for such assets.

"Assumed Contracts" means the certain executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Purchaser, as set forth on the Schedule of Assumed Contracts.

"Assumed Liabilities" means those liabilities of the Debtors assumed by the Purchaser pursuant to the Asset Purchase Agreement, including, without limitation, the Ordinary Course Trade Claims and the Gift Certificate Obligations.

"Auction" means the auction for the sale of the Debtors' assets to be held in accordance with the Sale and Bid Procedures.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estates or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws, excluding Specified Avoidance Claims.

"Ballot" means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Georgia, Brunswick Division or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court.

"BoA" means Bank of America, N.A.

"BoS" means Bank of Scotland, plc.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Georgia are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Cash Collateral Order" means the interim or Final Order, as in effect from time-to-time, entered by the Bankruptcy Court authorizing and approving the Debtors' use of cash collateral pursuant to section 363 of the Bankruptcy Code, and any extensions or amendments thereof.

"Causes of Action" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors, including, but not limited to, the Avoidance Actions.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of: (a) 120 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) above.

"Class" means each class, subclass or category of Claims or Interests as classified in Article II of the Plan.

"Club Member Agreements" means all agreements entered into by one or more of the Debtors with Club Members and relating to Debtors' golfing, club, dining, social or other membership programs, including, without limitation, the Specified Member Club Agreements.

"Club Members" means all Persons who are members under the Sea Island Club Membership Program or the Ocean Forest Golf Club Membership Program.

"Closing" shall have the meaning set forth in section 2.9 of the Asset Purchase Agreement.

"Closing Date" means the date of the Closing.

"Coastal" means Sea Island Coastal Properties LLC, a Georgia limited liability company.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Committee Members" means the members of the Committee.

"Confirmation" or "Confirmed" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Convenience Claims" means Allowed General Unsecured Claims within the Convenience Class Cap.

"Convenience Class Cap" means Allowed General Unsecured Claims less than or equal to Fifty Dollars ($50.00).

"Creditor" means any Person that is the Holder of any Claim against any of the Debtors.

"Cure Amounts" means all amounts that must be paid and all obligations that otherwise must be satisfied, including pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with the assumption and/or assignment of the Assumed Contracts to Purchaser as provided in the Asset Purchase Agreement and the Sale and Bid Procedures Order.

"Consummation Date" means the date on which the Liquidation Trustee makes the final Distribution of the Accepting Unsecured Creditors Fund and General Unsecured Creditors Fund in accordance with the Plan.

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Debtors" shall have the meaning set forth in the Introduction.

"Deferred Compensation Plan" means the Sea Island Company Executive Deferred Compensation Plan as amended and restated effective as of January 1, 2008.

"DIP Credit Documents" means that certain senior debtor-in-possession credit agreement, dated as of August [___], 2010, as amended, supplemented or otherwise modified from time to time, and all documents executed in connection therewith by and between the Debtors, Synovus, BoA, and BoS and the other Lenders signatory thereto from time to time.

5

"DIP Facility Claims" means all Secured Claims arising under or pursuant to the DIP Credit Documents.

"DIP Lenders" means the Secured Parties as defined by the DIP Credit Documents.

"Disallowed" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (a) has been withdrawn, in whole or in part, by agreement of the Debtors or the Liquidation Trustee, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disallowed Interest" means an Interest, or any portion thereof, that is Disallowed.

"Disbursing Agent" means the Debtors or the Liquidation Trustee or such other Entity that is designated by the Debtors or the Liquidation Trustee to disburse Property pursuant to the Plan.

"Disclosure Statement" means the Debtors' Disclosure Statement With Respect to the Joint Chapter 11 Plan Dated as of August 10, 2010, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Debtors, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed.  For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Disputed Interest" means an Interest, or any portion thereof, that is Disputed.  For purposes of the Plan, an Interest that has been neither Allowed nor Disallowed shall be considered a Disputed Interest.

"Distribution" means any distribution by the Debtors or the Liquidation Trustee to a Holder of an Allowed Claim or Interest.

"Distribution Date" means (i) the Initial Distribution Date, and (ii) the first Business Day after the end of the months June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Final Distribution Date; provided, however, that a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate value of the consideration

to be distributed on account of all Allowed Claims on such Distribution Date is less than **[___]**, in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

"D&O Releasees" means the directors, members, and managers of the Debtors, in each case as of the Petition Date or that have become directors, members, or managers thereafter but prior to the Effective Date, but only to the extent each such party agrees to forever release, waive and discharge those Claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the Debtors, the Estates, the Liquidating Trust, or the Liquidation Trustee, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Case, the Plan, the Liquidating Trust or the Liquidation Trustee; provided, however, that the foregoing released parties shall be released only from liabilities arising out of actions taken in such capacity.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"Employee Benefit Plan" means any "employee benefit plan" (as defined in ERISA § 3(3)) and any other benefit or compensation plan, program, agreement or arrangement maintained, sponsored, or contributed or required to be contributed to by any Debtor or any ERISA Affiliate or with respect to which any Debtor or any ERISA Affiliate has any liability, including, but not limited to, the Sea Island Retirement Plan.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations promulgated and rules issued thereunder.

"ERISA Affiliate" means any Person that, at any relevant time, is or was treated as a single employer with any Debtor for purposes of section 414 of the Internal Revenue Code.

"Estates" means the estates created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

"Excluded Assets" means those assets that the Purchaser is not acquiring pursuant to the Asset Purchase Agreement, including but not limited to Retained Actions.

"Exculpated Persons" means: (a) directors, officers and employees of the Debtors, as of the Petition Date but prior to the Effective Date, and the Debtors' agents and professionals; (b)

Secured Lenders (if Class 2 votes to accept the Plan); (c) the Committee and the Committee Members (if Classes 5 and 6 vote to accept the Plan); (d) the Purchaser; (e) the Liquidation Trustee; and (f) to the extent that such parties are deemed to be Exculpated Persons, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, attorneys advisors and professionals of the parties identified in subclauses (a) through (f).

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final Distribution" means the Distribution by the Liquidation Trustee that satisfies all Allowed Other General Unsecured Claims or Convenience Claims to the extent provided in accordance with this Plan.

"Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"General Unsecured Claims" means, collectively, the Rejection Claims, the Litigation Claims, and any other Claim that is not an Administrative Claim, DIP Facility Claim, Priority Tax Claim, Professional Fee Claim, Miscellaneous Secured Claim, Other Priority Claim, Secured Lender Claim or Secured Lender Deficiency Claim.

"General Unsecured Creditors Fund" means the Sale Proceeds obtained from the Debtors from the Sale or liquidation of unencumbered Property and Excluded Assets after the satisfaction of Allowed Administrative Claims, DIP Facility Claims, the Secured Lender Claims, the Miscellaneous Secured Claims, Priority Tax Claims, Other Priority Claims and Cure Amounts under the Asset Purchase Agreement and subject to (i) the acceptance of the Plan by Classes 5 and 6, and (ii) an allocation of proceeds from the Sale under the Asset Purchase Agreement between encumbered and unencumbered property by the Debtors that is acceptable to the Secured Lenders.

"Gift Certificate Obligations" means the Debtors' obligations in respect of all gift certificates and gift cards issued by Debtors and unredeemed as of the Closing Date.

"Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Impaired Interest" means an Interest which is Impaired.

"Initial Distribution Date" means the Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than sixty (60) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

"Interests" means any and all equity interests, ownership interests or shares in the Debtors issued by the Debtors prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a corporation or limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"Liquidating Trust" means the trust to be established in accordance with Section 5.04 of the Plan.

"Liquidating Trust Agreement" means the agreement to be executed between the

Liquidation Trustee and the Debtors establishing the Liquidating Trust, which will be filed with the Plan Supplement.

"Liquidating Trust Documents" means the Liquidating Trust Agreement and any ancillary documents relating thereto.

"Liquidation Trustee" means the trustee of the Liquidating Trust; provided that in no event shall any Debtor or any Affiliate of any Debtor be the Liquidation Trustee.

"Litigation Claims" means Claims relating to pending litigation or other filed or unfiled Causes of Action against any of the Debtors as of their respective Petition Dates.

"Miscellaneous Secured Claims" means any Secured Claim other than the Secured Lender Claims, including without limitation, any Secured Claim arising from a Tax.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"Ocean Forest Golf Club Membership Program" means the Ocean Forest Golf Club Rules and Regulations dated 2004.

"OCGA" means the Official Code of Georgia Annotated.

"Ordinary Course Trade Claims" means all trade accounts payable related to the Business (as defined in the Asset Purchase Agreement) incurred by the Debtors in the ordinary course of business and outstanding as of the Closing Date.

"Other General Unsecured Claims" means General Unsecured Claims that voted to reject the Plan or were deemed to have rejected the Plan, plus (i) the Secured Lender Deficiency Claims and (ii) the remaining portion of Accepting Unsecured Claims that were not fully satisfied by the Accepting Unsecured Creditors Fund.

"Other Priority Claims" means any Claim against the Debtors entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Parent" means Sea Island Company, a Georgia corporation.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental

units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor of; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Petition Date" means August 10, 2010.

"Plan" means this Joint Chapter 11 Plan dated as of August 10, 2010, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtors, including the Plan Supplement, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the terms hereof, provisions of the Bankruptcy Code and the provisions of the Bankruptcy Rules, the Confirmation Order and the terms and conditions of Section 12.04 of the Plan.

"Plan Supplement" means the supplement to this Plan to be Filed with the Bankruptcy Court on or before the date that is five (5) days prior to the Confirmation Hearing.

"Prepetition Bridge Loan" means that certain loan made to Coastal and SIC pursuant to that certain Loan Agreement, dated as of August 7, 2008, by and among Coastal, SIC and Synovus, pursuant to which Synovus extended a non-revolving loan to Coastal and SIC.

"Prepetition Synovus Lot Notes" means those certain promissory notes, assigned by SIC to Synovus pursuant to that certain Assignment between SIC as assignor and Synovus as assignee dated August 30, 2002, modified pursuant to that certain Amended and Restated Modification Agreement between Coastal and Synovus dated July 21, 2009.

"Prepetition Construction Loan" means that certain construction loan facility made to SIC by Synovus under to the Prepetition Restructuring Agreement and pursuant to which, among other things, Synovus agreed to make a construction loan available to finance the completion of construction of certain condominium units.

"Prepetition Credit Agreement" means that certain Loan and Line of Credit Agreement dated as of June 6, 2007 (as amended, restated, supplemented or otherwise modified from time to time), pursuant to which, among other things, the Secured Lenders agreed to provide loans and other financial accommodations to Coastal and SIC.

"Prepetition Letters of Credit" means the LOC 9266 and the LOC 9079.

"Prepetition Restructuring Agreement" means that certain Restructuring Agreement dated as of July 20, 2009 (as amended, restated, supplemented or otherwise modified from time to time), pursuant to which, among other things, the Secured Lenders agreed to (i) consolidate, restructure and amend certain indebtedness and hedging obligations of Coastal and SIC under the Prepetition Credit Agreement (which indebtedness and obligations were guaranteed by the other Subsidiary Debtors) and (ii) waive certain defaults specifically set forth therein.

11

"Prepetition Revolver" means that certain revolving loan facility provided by Synovus to SIC and Coastal pursuant to the Prepetition Restructuring Agreement.

"Prepetition Term Loan A" means that certain term loan facility provided by Synovus to SIC and Coastal pursuant to the Prepetition Restructuring Agreement.

"Prepetition Term Loan B-1" means that certain term loan facility provided by Synovus to SIC and Coastal pursuant to the Prepetition Restructuring Agreement.

"Prepetition Term Loan B-2" means that certain term loan facility provided by BoA and BoS to SIC and Coastal pursuant to the Prepetition Restructuring Agreement.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

"Professional Fee Claim" means a claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application made to the Bankruptcy Court by Professionals in the Chapter 11 Cases.

"Professionals" means any professional employed in these Chapter 11 Cases pursuant to sections 327, 363 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code.

"Property" means all assets or property of the Debtors' respective Estates of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtors, or acquired by the Debtors' respective Estates, as defined in section 541 of the Bankruptcy Code.

"Purchase Price" means that certain amount of Cash and any other related payments provided by the Purchaser to the Debtors in connection with the purchase of the Purchased Assets as set forth in the Asset Purchase Agreement.

"Purchased Assets" means those assets of the Debtors that the Purchaser is acquiring pursuant to the Asset Purchase Agreement.

"Purchaser" means the purchaser under the Asset Purchase Agreement.

"Reinstated or Reinstatement" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such

Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Claims" means: (a) claims of any non-Debtor counterparty to any unexpired leased of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan or the Asset Purchase Agreement; and (b) any claims arising from the termination of or withdrawal from any pension plan of the Debtors qualified under ERISA.

"Releasees" means: (a) the Debtors, (b) the Secured Lenders (if Class 2 votes to accept the Plan), (c) the Committee and members of the Committee (if Classes 5 and 6 vote to accept the Plan), (d) the Purchaser, (e) if it is not the Purchaser, the Stalking Horse Bidder (except with respect to Claims, if any, arising from a breach of the Asset Purchase Agreement), (f) the Liquidation Trustee, (g) to the extent such parties are deemed Releasees, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors and professionals of the D&O Releasees, and (h) to the extent such parties are deemed Releasees, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors and professionals of the parties identified in subclauses (a) through (f), except as set forth in the D&O Releasees; provided, however, that the foregoing released parties identified in subclauses (a) through (h) above shall be released only from liabilities arising out of actions taken in such capacity; provided, further, however, the Debtors' former directors, members, managers, officers and employees shall not be considered Releasees.

"Retained Actions" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person (other than Specified Avoidance Claims), including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (iii) claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of any of the Debtors'

13

accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' businesses, including, without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

"Sale" means the sale of certain or substantially all of the Debtors' assets under or in connection with the Plan and the Asset Purchase Agreement.

"Sale and Bid Procedures" means the sale, bid and auction procedures set forth in the Sale and Bid Procedures Order.

"Sale and Bid Procedures Motion" means the Debtors' motion Filed with the Bankruptcy Court on August 10, 2010, seeking approval of, among other things, sale and auction procedures in connection with the Sale.

"Sale and Bid Procedures Order" means an order of the Bankruptcy Court in the Chapter 11 Cases approving the Sale and Bid Procedures Motion.

"Sale Documents" means the Asset Purchase Agreement, the Schedule of Assumed Contracts, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms. The Disclosure Statement will include a form of the Sale Documents of the Stalking Horse Bidder in substantially the form to be implemented on the Effective Date.

"Sale Proceeds" means the net proceeds of the Sale.

"Schedule of Assumed Contracts" means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Purchaser under or in connection with the Asset Purchase Agreement, which schedule shall be set forth in or as an attachment or exhibit to the Asset Purchase Agreement.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by any of the Debtors in the Chapter 11 Cases, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

"Sea Island Club Membership Program" means the Sea Island Club Membership Program dated October 1, 2000.

"Sea Island Retirement Plan" means that certain Sea Island Company Retirement Plan and Trust Agreement, as amended and restated as of January 1, 2009, as subsequently amended.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtors' respective Estates has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

"Secured Lender Credit Facilities" means the 2001 Bond Credit Agreement, the 2003 Bond Credit Agreement, the Prepetition Term Loan A, the Prepetition Term Loan B-1, the Prepetition Term Loan B-2, the Prepetition Credit Agreement, the Prepetition Revolver, the Prepetition Bridge Loan, the Prepetition Construction Loan, and the Prepetition Synovus Lot Notes.

"Secured Lenders" means (a) Synovus, as lender under the Prepetition Bridge Loan; (b) Synovus, as lender and agent, BoA, as lender, and BoS, as lender, under (i) that certain Prepetition Term Loan A, (ii) that certain Prepetition Term Loan B-1; (iii) that certain Prepetition Term Loan B-2; and (iv) that certain Prepetition Restructuring Agreement; and (c) Synovus, as sole lender, under that certain  Prepetition Construction Loan executed and delivered pursuant to the terms of the Prepetition Restructuring Agreement.

"Secured Lender Claims" means Claims of the Secured Lenders arising under the Secured Lender Credit Facilities but only to the extent that such Claims are Secured Claims.

"Secured Lender Deficiency Claims" means Claims of the Secured Lenders arising under the Secured Lender Credit Facilities but only to the extent such Claims are not Secured Claims.

"Securities Act" means the Securities Act of 1933, as amended.

"SIC" means Sea Island Company, a Georgia corporation.

"Specified Avoidance Claims" means all avoidance claims of the Debtors arising under Sections 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code or any similar state Law against any of the Debtors' vendors, Transferred Employees (other than persons who have served as an officer, director or executive of the Debtors) or Club Members, in each case, in such Person's capacity as a vendor, employee or Club Member, whether arising under the Bankruptcy Code or applicable state Law, and whether asserted or unasserted, all of which claims shall be released by Purchaser on the Closing Date.

"Specified Deferred Compensation Obligations" means those obligations under the Deferred Compensation Plan to the employees and former employees and in the amounts specified on Schedule 2.3(d) to the Asset Purchase Agreement.

"Specified Georgia Tax Obligation" means any obligation or liability (i) under OCGA § 48-8-46 for any Taxes imposed pursuant to Chapter 8 of Title 48 of the OCGA (Sales and Use Taxes), (ii) under OCGA § 48-7-106 for any Taxes imposed pursuant to Chapter 7 of Title 48 of the OCGA (Income Taxes), (iii) under OCGA § 48-9-7 for any Taxes imposed pursuant to Article 1 of Chapter 9 of Title 48 of the OCGA (Motor Fuel Tax), (iv) under OCGA § 48-13-53.1 for any Taxes imposed pursuant to Article 3 of Chapter 13 of Title 48 of the OCGA (Excise Tax on Rooms, Lodgings and Accommodations) or (v) under OCGA § 34-8-175 for any Taxes imposed pursuant to Chapter 8 of Title 34 of the OCGA (Employment Security).

"Stalking Horse Bidder" means Sea Island Acquisition LP, a Delaware limited partnership.

"Subsidiary Debtors" means all of the Debtors other than the Parent.

15

"Subsidiary Interests" means any and all authorized, issued and outstanding Interests in any of the Subsidiary Debtors as of the Petition Date.

"Synovus" means Synovus Bank, formerly known as Columbus Bank and Trust Company.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem,* estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed by, or collected by any such federal, state, local or foreign governmental authority.

"Tort Claim" means any Claim (including punitive damage claims to the extent permitted by the Bankruptcy Court and not otherwise subordinated under applicable law), which arose prior to the Petition Date, that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment, including any products liability or tort claim asserted against any of the Debtors.

"Transferred Employees" shall have the meaning set forth in section 10.1 of the Asset Purchase Agreement.

"Unclaimed Property" means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors or the Liquidation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Cases, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.07 of the Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of Georgia.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtors' Estates pursuant to section 1930(a)(6) of title 28 of the United States Code.

"Voting Agent" means Epiq Bankruptcy Solutions, LLC.

"2001 Bond Credit Agreement" means that certain Credit Agreement dated February 1, 2001 (as amended, restated, supplemented and otherwise modified from time to time), pursuant to which, among other things, Synovus agreed to issue a letter of credit.

"2003 Bond Credit Agreement" means that certain Credit Agreement dated March 1,

2003 (as amended, restated, supplemented and otherwise modified from time to time), pursuant to which, among other things, Synovus agreed to issue a letter of credit.

Section 1.02    Rules of Interpretation.    All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code).    Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.    The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.    The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.    Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).    Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.15 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

Section 1.03    Exhibits.    All Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

Section 1.04    SICAL, LLC.    Notwithstanding anything to the contrary in the Plan, SICAL, LLC is not a party to the Asset Purchase Agreement, and the Purchaser is not acquiring any assets, or assuming or otherwise becoming responsible for any liabilities, of SICAL, LLC pursuant to the Asset Purchase Agreement or the Plan.

# ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01    Summary.    Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.    A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.    A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.    The classification of Claims under this Plan is as follows:

| Class | Claim | Status | Entitled to Vote |
|-------|-------|--------|------------------|
| 1 | Miscellaneous Secured Claims | Unimpaired | No |
| 2 | Secured Lender Claims | Impaired | Yes |
| 3 | Other Priority Claims | Unimpaired | No |
| 4 | Accepting Unsecured Claims | Impaired | Yes |
| 5 | Other General Unsecured Claims | Impaired | Yes |
| 6 | Convenience Claims | Impaired | Yes |
| 7 | Interests in the Debtors | Impaired | No |

Section 2.02   <u>Unclassified Claims</u>.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan.  The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

Section 2.03   <u>Unimpaired Classes Deemed to Accept</u>.  The Plan classifies the following Unimpaired Claims that are not entitled to vote on the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims and is not entitled to vote to accept or reject the Plan:

Class 1 shall consist of all Miscellaneous Secured Claims.

Class 3 shall consist of all Other Priority Claims

Section 2.04   <u>Impaired Classes Entitled to Vote</u>.   The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 2 shall consist of all Secured Lender Claims.

Class 4 shall consist of all Accepting Unsecured Claims.

Class 5 shall consist of all Other General Unsecured Claims.

Class 6 shall consist of all Convenience Claims.

Section 2.05   <u>Impaired Classes Deemed to Reject</u>.   The Plan classifies the following Impaired Class of Interests as an Impaired Class that is not entitled to vote to accept or reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each

18

Holder of an Interest in this Class is conclusively presumed to have rejected the Plan in respect of such Interests because the Plan does not entitle the Holders of such Interests to receive or retain any Property under the Plan on account of such Interests.   Accordingly, Holders of such Interests are not entitled to vote to accept or reject the Plan:

Class 7 shall consist of all Interests in the Debtors.

## ARTICLE III.

## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Section 3.01   <u>Satisfaction of Claims and Interests</u>.   The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, and extinguishment of their respective Claims against or Interests in the Debtors and the Debtors' respective Estates, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02   <u>Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests</u>.   Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively.   Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.  In addition, Class 1 Claims and Class 3 Claims are classified as Classes of Claims that are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Class 2 Claims, Class 4 Claims, Class 5 Claims, and Class 6 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims.  Class 7 Interests are Impaired under the Plan and the Holders thereof will neither receive nor retain any Property on account of such Interests and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Interests are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Interests.

Section 3.03   <u>Administrative Claims</u>.

    (a)   <u>General</u>.   Unless otherwise provided for herein, and subject to (x) the bar date provisions set forth in this Section 3.03(c) hereof and (y) additional requirements for Professionals and certain other entities set forth below, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and extinguishment of such Claim:  (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, (iii) a date agreed to in writing by the Debtors and the Holder of such Administrative Claim, and (iv) the date on which the Administrative Claim becomes due in accordance with its terms; or (b) such other treatment on such

other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors or as the Bankruptcy Court may order. Ordinary Course Trade Claims that, but for the proviso to the definition of Administrative Claims, would constitute Administrative Claims shall be assumed by the Purchaser.

(b) <u>Payment of Statutory Fees</u>. All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtors.

(c) <u>Bar Date for Administrative Claims</u>.

  (i) General. Except for Administrative Claims of Professionals for Professional Fee Claims, which are addressed in Section 3.03(c)(ii) below, and except as otherwise provided herein, requests for payment of Administrative Claims must be Filed and served on counsel for the Debtors no later than (x) the Administrative Claim Bar Date, or (y) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of the Administrative Claim Bar Date. Holders of Administrative Claims (including, without limitation, the holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against any of the Debtors, the Liquidation Trustee or any of their respective properties.

  (ii) Professionals. Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date shall be Filed no later than ninety (90) days after the Effective Date or such later date as the Bankruptcy Court approves. Such applications shall be served on: (a) the Debtors; (b) Sarah Robinson Borders, King & Spalding LLP, 1180 Peachtree Street NE, Atlanta, Georgia 30309, counsel to the Debtors; (c) Robert M. Cunningham, Gilbert, Harrell, Sumerford & Martin, P.C., 777 Gloucester Street, Suite 200, PO Box 190, Brunswick, Georgia 31521-0190, co-counsel to the Debtors; (d) the Office of the United States Trustee; (e) Jason H. Watson, Alston & Bird, LLP, 1201 West Peachtree Street NE, Atlanta, Georgia 30309, counsel for the Secured Lenders; and (f) Jordi Guso, Berger Singerman, P.A., 200 South Biscayne Boulevard, Miami, Florida 33131-5308, counsel to the Committee. Applications that are not timely Filed will not be considered by the Court. The Debtors or Liquidation Trustee, as the case may be, may pay any Professional fees and expenses incurred after the Effective Date without any application to the Bankruptcy Court.

Section 3.04   <u>DIP Facility Claims</u>. Except to the extent that Holders of the DIP Facility Claims agree to different treatment, the DIP Facility Claims shall be repaid by the Debtors in full, in Cash, on the Effective Date in full and final satisfaction, settlement and release of such

DIP Facility Claims.

Section 3.05    Priority Tax Claims.    Each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, in full satisfaction, settlement, release, and extinguishment of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed and (iii) a date agreed to by the Debtors and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtors or as the Bankruptcy Court may order.    Prior to the Effective Date, the Debtors shall have the right, in their sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

Section 3.06    Class 1: Miscellaneous Secured Claims.

(a)    Classification:  Class 1 consists of all Miscellaneous Secured Claims against the Debtors.

(b)    Treatment:  The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Allowed Miscellaneous Secured Claims.  Each Holder of an Allowed Class 1 Miscellaneous Secured Claim shall receive, in the sole discretion of the Debtors in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Miscellaneous Secured Claim on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Miscellaneous Secured Claim becomes Allowed, and (iii) a date agreed to by the Debtors and the Holder of such Class 1 Miscellaneous Secured Claim; (b) Reinstatement of such Allowed Miscellaneous Secured Claim; (c) the Property securing such Miscellaneous Secured Claim without representation or warranty by or recourse against the Debtors; or (d) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors.

(c)    Voting:    Class 1 is Unimpaired and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

Section 3.07    Class 2: Secured Lender Claims.

(a)    Classification:  Class 2 consists of all Secured Lender Claims against the Debtors.

(b)    Treatment:  Class 2 Secured Lender Claims are Impaired.  On the Effective Date, each Holder of an Allowed Class 2 Secured Lender Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, and as a condition precedent thereto, its share of an amount equal to (i) the portion of the

21

Purchase Price under the Asset Purchase Agreement allocated to the collateral in which the Secured Lender has a Lien, <u>less</u> (ii) certain amounts required to be paid by the Debtors under the Asset Purchase Agreement (including but not limited to Cure Amounts), <u>less</u> (iii) provided that (a) Classes 5 and 6 vote to accept the Plan and (b) an allocation of proceeds from the Sale under the Asset Purchase Agreement between encumbered and unencumbered property by the Debtors that is acceptable to the Secured Lenders, the Accepting Unsecured Creditor Fund, <u>less</u> (iv) an amount necessary to pay Administrative Claims, the DIP Facility Claims, the Priority Tax Claims, Other Priority Claims, and Miscellaneous Secured Claims, to be distributed in accordance with the Prepetition Restructuring Agreement.

(c)   Voting:  Class 2 is Impaired and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

Section 3.08   <u>Class 3: Other Priority Claims</u>.

(a)   Classification:  Class 3 consists of all Other Priority Claims against the Debtors entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than Allowed Administrative Claims and Allowed Priority Tax Claims.

(b)   Treatment:  Each Holder of an Allowed Class 3 Other Priority Claim shall receive, in the sole discretion of the Debtors, in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Other Priority Claim on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Other Priority Claim becomes Allowed, and (iii) a date agreed to by the Debtors and the Holder of such Class 3 Other Priority Claim; (b) or such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors.

(c)   Voting:   Class 3 is Unimpaired and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

Section 3.09   <u>Class 4: Accepting Unsecured Claims</u>.

(a)   Classification:  Class 4 consists of all Accepting Unsecured Claims against the Debtors.

(b)   Treatment:  Each Holder of an Allowed Class 4 Accepting Unsecured Claim shall receive its Pro Rata share of the Accepting Unsecured Creditors Fund on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Accepting Unsecured Claim becomes Allowed, and (iii) a date agreed to by the

Liquidation Trustee and the Holder of such Class 4 Accepting Unsecured Claim. To the extent that the Allowed Accepting Unsecured Claims are not satisfied through the distribution of the Accepting Unsecured Creditors Fund, the remaining portion of such Allowed Accepting Unsecured Claims shall be treated as Other General Unsecured Claims entitled to the treatment set forth in Section 3.10 of the Plan.

(c)   Voting:  Class 4 is Impaired and pursuant to section 1126 of the Bankruptcy Code Holders of Allowed Class 4 Accepting Unsecured Claims are entitled to vote to accept or reject the Plan.

Section 3.10   Class 5: Other General Unsecured Claims.

(a)   Classification:  Class 5 consists of all Other General Unsecured Claims against the Debtors.

(b)   Treatment:  On either (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Other General Unsecured Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court, each Holder of an Allowed Class 5 Other General Unsecured Claim shall receive its Pro Rata Distribution of the General Unsecured Creditors Fund.  On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Liquidation Trustee shall continue to make Pro Rata Distributions to Holders of Allowed Class 5 Other General Unsecured Claims of any available funds in the General Unsecured Creditors Fund until the Consummation Date.

(c)   Voting:  Class 5 is Impaired and pursuant to section 1126 of the Bankruptcy Code Holders of Allowed Class 5 Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

Section 3.11   Class 6: Convenience Claims.

(a)   Classification:  Class 6 consists of all Convenience Claims against the Debtors.

(b)   Treatment:  On either (i) the first Distribution Date after the Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Convenience Claim is settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court, each Holder of an Allowed Class 6 Convenience Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, Cash in an amount equal to an agreed upon percentage of such Allowed Claim from the General Unsecured Claims Fund.  Any Holder of an Allowed General Unsecured Claim in excess of the Convenience Class Cap may elect to

reduce its Claim to the Convenience Class Cap.

(c) Voting:  Class 6 is an Impaired Class and pursuant to section 1126 of the Bankruptcy Code, Holders of Allowed Class 6 Convenience Claims are entitled to vote to accept or reject the Plan.

Section 3.12   <u>Class 7: Interests in the Debtors</u>.

(a) Classification:  Class 7 consists of all Interests in the Debtors.

(b) Treatment:  Holders of Class 7 Interests in all of the Debtors shall not receive or retain any Property under the Plan on account of such Interests.  On the Effective Date, all Interests shall be cancelled.

(c) Voting:  Class 7 is an Impaired Class.  Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Class 7 Interests are conclusively deemed to have rejected this Plan and, therefore, are not entitled to vote to accept or reject the Plan.

**ARTICLE IV.**
**ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN**

Section 4.01   <u>Acceptance by Impaired Classes of Claims and Interests</u>.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.  No Class of Interests is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

Section 4.02   <u>Voting Classes</u>.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 2, 4, 5 and 6 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan.  Classes of Claims Unimpaired under the Plan (Miscellaneous Secured Claims (Class 1) and Other Priority Claims (Class 3)) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Class of Interests that is Impaired under the Plan and whose Holders neither receive nor retain any property on account of such Interests under the Plan (Interests in the Debtors (Class 7)) shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan.  Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 4.03   <u>Ballot Instructions</u>.  Each Holder of a Claim or Interest entitled to vote

on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

Section 4.04    Cramdown.  If all applicable requirements for Confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTIONS
## UNDER THE PLAN

Section 5.01    Timing of Distributions.  Except as specifically set forth in the Plan and as otherwise provided in this Article V, distributions to be made on the Effective Date to Holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (i) 30 days after the Effective Date or (ii) 30 days after such later date when the applicable conditions of Section 6.02 (regarding cure payments for executory contracts and unexpired leases being assumed) and Section 5.05 (regarding undeliverable Distributions) are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Section 5.03 of the Plan.

Section 5.02    Distributions to Holders of Allowed Claims.  Except as otherwise provided herein, the Debtors or the Liquidation Trustee shall make all distributions required under the Plan in a manner consistent with the Plan.  Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan.  Payments and other distributions to be made pursuant to the Plan will be made by the Debtors or the Liquidation Trustee and will be available from the proceeds of the Sale and assets and funds transferred to or otherwise held by the Liquidation Trustee or the Debtors as of and after the Effective Date.  If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Liquidation Trustee or the Debtors shall, as appropriate and in lieu of making such distribution to such Holder, delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03    Distributions After Allowance.  As soon as practicable after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) the Disputed Claim becomes an Allowed Claim, the Debtors or the Liquidation Trustee, as the case may be, will distribute to the Holder thereof all Distributions to which such Holder is then entitled under this Plan.  All Distributions made under this Section of the Plan will be made together with any dividends, payments, or other Distributions made on

account of, as well as any obligations arising from, the distributed property as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Holders included in the applicable Class.

Section 5.04   Liquidating Trust.   The Liquidating Trust shall be established to receive certain Property of the Debtors and Cash from the Secured Lenders and to distribute such Property and Cash to certain Creditors in accordance with the Plan.  Except as otherwise expressly provided in the Plan with respect to Cash, including Sections 3.03, 3.04, 3.05, 3.06 and 3.07, 3.08 hereof, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all Property comprising the Estates of the Debtors (including, but not limited to the Accepting Unsecured Creditors Fund and the General Unsecured Creditors Fund) not conveyed to the Purchaser under the Asset Purchase Agreement shall automatically vest in the Liquidating Trust, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests of Creditors and equity security holders on the Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished subject to the rights of Holders of Allowed Accepting Unsecured Claims, Other General Unsecured Claims and Convenience Claims to obtain distributions provided for in this Plan.  In no event shall any property of any kind be returned by, or otherwise transferred from, the Liquidating Trust to any Debtor.

The Liquidating Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d) and shall be treated as a grantor trust for United States federal income tax purposes.  The Debtors with the agreement of the Secured Lenders and any Committee shall appoint the Liquidation Trustee, who shall have the authority to manage the day-to-day operations of the Liquidating Trust, including, without limitation, by disposing of the assets of the Liquidating Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in Section 7.04 of the Plan and the Liquidating Trust Agreement.  Expenses of the Liquidating Trust, including the expenses of the Liquidation Trustee and his representatives and professionals, will be satisfied from the assets of the Liquidating Trust and its proceeds, as set forth in the Liquidating Trust Agreement.

Section 5.05   Delivery of Distributions.   Distributions to Holders of Allowed Claims shall be made by the Debtors or the Liquidation Trustee, as appropriate: (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee, as appropriate.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors or the Liquidation Trustee is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.

Section 5.06   Method of Cash Distributions.   Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Liquidation Trustee or the Debtors.

Section 5.07    Failure to Negotiate Checks.    Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  Any amounts returned to the Debtors or the Liquidation Trustee in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Liquidation Trustee or the Debtors, as the case may be.  Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.  All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after the date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.08 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidating Trust.

Section 5.08    Unclaimed Distributions.    All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Section 5.07 of the Plan.  All Unclaimed Property will be retained by and will vest in the Liquidating Trust.  All full or partial payments made by the Debtors and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtors or the Liquidation Trustee pursuant to the Plan.  Nothing contained in the Plan shall require the Debtors or the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtors and any Claims filed in the Chapter 11 Cases.  Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.08 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidating Trust.

Section 5.09    Limitation on Distribution Rights.    If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

Section 5.10    Fractional Dollars.    Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 5.08 of this Plan.

Section 5.11    Compliance With Tax Requirements.    In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors and/or the

27

Liquidation Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors or the Liquidation Trustee within thirty (30) days from the date of such request, the Debtors or the Liquidation Trustee may, at their or its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

Section 5.12    Character of Distributions.  The Debtors shall treat all distributions to Holders of Secured Lender Claims pursuant to this Plan as repayments of principal amounts due with respect to such Claims, with no amounts allocable to the payment of any accrued but unpaid interest thereon.  Consistent with that treatment, Holders of Secured Lender Claims covenant and agree to treat the entire amount of such distributions as repayments of principal amounts due on their claims and shall not allocate any portion of such distributions to accrued but unpaid interest.

Section 5.13    De Minimis Distributions.  No Cash payment of less than fifty ($50.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

Section 5.14    No Payment or Distribution Pending Allowance.  All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtors or the Liquidation Trustee and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 5.15    Distributions on Insured Claims.  If any Holder has asserted a Claim that is covered as to liability, in whole or in part, by an insurance policy that is assumed or otherwise remains in effect pursuant to the terms of this Plan, such Holder will have an Allowed Claim entitled to a Distribution under this Plan only to the extent of any deductible or self-insured retention under the applicable insurance policy that was unpaid or otherwise unexhausted as of the Petition Date.  Notwithstanding the foregoing, the Holder shall be entitled to pursue recovery of any amount in excess of such unpaid deductible or self-insured retention from the applicable insurance carrier, and, in connection therewith, such Holder may continue to pursue the balance of such Claim against the Debtors solely for the purposes of liquidating such Claim and obtaining payment of the balance of such liquidated Claim from any otherwise applicable insurance policy.  Except as otherwise provided in the applicable insurance policy, the applicable insurance carrier may, at its expense, employ counsel, direct the defense, and determine whether and on what terms to settle any Claim for the purposes of determining the amount of insurance proceeds that will be paid on account of such Claim.  If after liquidation of a Claim pursuant to this Section, it is determined that there are insufficient insurance proceeds available to satisfy the amount of such Claim that is in excess of any unpaid deductible or self-insured retention, then the Holder of such Claim shall have an Allowed Claim in the amount of such insufficiency.

28

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

Section 6.01    Treatment of Executory Contracts and Unexpired Leases.    All executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts, provided, however, that the Debtors and the Purchaser shall have the right, on or before two (2) days prior to the Auction, to amend the Schedule of Assumed Contracts in any manner set forth in the Asset Purchase Agreement, the Sale and Bid Procedures Order, or by any other means approved by the Court or to delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Section 6.01 or to add any executory contract or unexpired lease thereto, thus providing for its assumption and assignment pursuant to this Section 6.01 and the terms of the Asset Purchase Agreement.  The assumption, assumption and assignment, and rejection of executory leases and unexpired contracts under this Plan shall be governed by the terms of the Asset Purchase Agreement, the Sale Documents, the Sale and Bid Procedures, and other orders of the Court.

Section 6.02    Cure of Defaults for Assumed Contracts and Leases.  The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Asset Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms and conditions of the Sale and Bid Procedures, the Asset Purchase Agreement, the Sale Documents, any order approving the Asset Purchase Agreement or authorizing the Sale, and other orders of the Court.  All such cure amounts shall be satisfied by the Purchaser.

Section 6.03    Bar Date for Claims for Rejection Damages.  Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article VI of the Plan must be filed with the Bankruptcy Court no later than the later of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease.  Any Claim not filed within such time period shall be forever barred. The Debtors and the Liquidation Trustee shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of Section 8.04 of this Plan.

Section 6.04    Treatment of Rejection Claims.    The Bankruptcy Court shall determine any objections Filed in accordance with Section 8.04 hereof at a hearing to be held on a date to be determined by the Bankruptcy Court.  Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as either Class 4, Class 5 or Class 6 Claims in accordance with Article III of the Plan.

Section 6.05   <u>Employee Benefit Programs</u>.

    (a)   <u>Employment Agreements</u>.   Except and to the extent previously rejected by an order of the Bankruptcy Court on or before the Effective Date, all employment and severance agreements between the Debtors and their employees entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Section 6.01 of the Plan, except for any such employment agreement that is specifically assumed under Section 6.01 of the Plan.  Any Claim arising out of such rejection shall be treated in accordance with Section 6.04 of the Plan.

    (b)   <u>Employee Benefit Plans</u>.   Except and to the extent previously rejected by an order of the Bankruptcy Court on or before the Effective Date, all Employee Benefit Plans, except for the Sea Island Company Retirement Plan, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Section 6.01 of the Plan.  Any Claim arising out of such rejection shall be treated in accordance with Section 6.04 of the Plan.

    (c)   <u>Post-Closing Employee Obligations</u>. Notwithstanding anything to the contrary in this Plan:

    (i)   On the Closing Date, Purchaser shall offer employment to all employees of Debtors that are actively at work at the Closing, including those employees who are away from work due to vacation or short-term illness.  Purchaser shall also offer employment to each other person employed by Debtors at Closing, to be effective as of the date such person is available to return to active employment, <u>provided</u> that the Purchaser shall not be obligated to offer employment to any person who cannot return to active employment on or before the 90th day following Closing.  In each case, such offers of employment shall be on terms and with benefits agreed to between Purchaser and such persons and, except as expressly set forth in the Asset Purchase Agreement, without regard to, and without assumption or continuation of, any compensation, benefits or arrangements provided by Debtors.  Effective as of the Closing Date, Purchaser shall assume responsibility for the Transferred Employees, but, except as expressly set forth in the Asset Purchase Agreement, only to the extent related to (i) services rendered after the Closing Date, (ii) any termination by Purchaser of a Transferred Employee after the Closing Date or (iii) any actions by Purchaser.  Debtors shall retain all liabilities in respect of all Debtors' employees, including Transferred Employees, except (a) liabilities associated with (x) the Transferred Employees' service with Purchaser after the Closing Date, (y) any termination of a Transferred Employee by Purchaser after the Closing Date, or (z) any violation by Purchaser of applicable law or Section 10.1 of the Asset Purchase Agreement, and (b) as otherwise expressly set forth in the Asset Purchase Agreement.  For the avoidance of doubt, nothing in the Asset Purchase Agreement (A) guarantees any Transferred Employee employment with

Purchaser for any period of time, (B) causes any Transferred Employee to be employed on any basis other than on an "at-will" basis or (C) in any way restricts Purchaser's right to terminate the employment of any Transferred Employee after the Closing Date.

(ii) The Specified Deferred Compensation Obligations shall be paid by Purchaser at the time and in the manner provided for by the terms of the Deferred Compensation Plan, including employee elections thereunder.  Information as to such payment dates (including any employee elections) shall be provided to Purchaser by Debtors as soon as reasonably practicable, but in no event later than 10 business days after Closing.  From and after the date the respective amounts of Specified Deferred Compensation Obligations listed on Schedule 2.3(d) to the Asset Purchase Agreement were determined, such amounts shall be credited quarterly with interest at an annual rate equal to the "Prime Rate" that is reported in the Money Rates section of the Wall Street Journal published on the first business day of such quarter.

(iii) From and for a period of one year following Closing, Purchaser shall make available to the retirees listed on Schedule 10.3 to the Asset Purchase Agreement the same health benefit plan as is in effect from time to time for active employees of Purchaser at a level of contribution not greater than the level of contribution in effect for such retirees at the time of Closing under the Sea Island Company Healthgram employee benefits plan designed and maintained by the Sea Island Company to provide health care benefits; provided that for a retiree or any beneficiary thereof eligible for Medicare, the benefits under such health benefit plan shall be secondary to Medicare benefits.  Nothing in the immediately preceding sentence shall be construed to limit Purchaser's right to modify the terms of its health benefit plan or, following the period specified therein, to modify the level of contribution required from retirees, or the eligibility of retirees to participate in such health benefit plan; provided, however, that, if Purchaser at any time directly or indirectly ceases to make coverage under its health benefits plan applicable to active employees available to the retirees listed on Schedule 10.3 to the Asset Purchase Agreement and their beneficiaries, Purchaser shall promptly establish a trust or other funding vehicle to make medical benefits available to such retirees and their beneficiaries and shall contribute to such trust or vehicle an amount, if any, equal to the remainder of (i) $1,448,957 million minus (ii) the costs incurred by Purchaser prior to such cessation of coverage to provide medical benefits coverage to such retirees and their beneficiaries.  The retiree health benefits provided pursuant to this Section shall be subject to a lifetime maximum for each participant of (x) $50,000 minus (y) the total amount of retiree health benefits received by each such participant prior to Closing.  Schedule 10.3 to the Asset Purchase Agreement shall indicate the total amount of benefits received by each retiree health plan participant, and the amount of the remaining benefits each participant is eligible to receive.

(iv)  <u>Employee Plans</u>.

1)  Each Transferred Employee shall be eligible to receive benefits consistent with Purchaser's applicable human resources policies.  As promptly as reasonably practicable after the Closing Date (and as permitted by Purchaser's employee benefit plans and employee policies), Purchaser shall enroll the Transferred Employees in Purchaser's employee benefit plans for which such employees are eligible (and as permitted by Purchaser's employee benefit plans and employee policies).  Purchaser shall, as permitted by Purchaser's employee benefit plans and employee policies, recognize the prior service with Debtors of each of the Transferred Employees for purposes of eligibility to participate under such employee benefit plans of Purchaser.  Transferred Employees will be eligible to participate in Purchaser's employee benefit plans (including Purchaser's health plans), as permitted by Purchaser's employee benefit plans and employee policies, and will be treated under such plans on the same terms and conditions as any other similarly situated employee of Purchaser with similar service (after giving effect to the Asset Purchase Agreement) with Purchaser.  Notwithstanding anything to the contrary contained herein, (i) Purchaser shall recognize the prior service with the Debtors of each of the Transferred Employees for purposes of eligibility to participate under Purchaser's health plans and 401(k) defined contribution plan, if any, and shall enroll the Transferred Employees in such plans without waiting periods so long they have satisfied prior service requirements (after giving effect to the foregoing recognition of prior service with Debtors) and (ii) Purchaser shall provide coverage to such employees who are eligible under Purchaser's health, medical, life insurance and other welfare plans (A) without the need to undergo a physical examination or otherwise provide evidence of insurability; (B) by taking into account the period of coverage under Debtors' (or its Affiliates') plans for purposes of applying any pre-existing condition or similar limitations or exclusions; and (C) by applying and giving credit for amounts paid for the plan year in which the Closing Date occurs as deductibles, out of pocket expenses and similar amounts paid by individuals and their beneficiaries. Except as expressly provided by the Asset Purchase Agreement, the Purchaser shall retain the right to modify, amend or terminate any and all employee benefit plans and policies at any time.

2)  Effective as of Closing, Purchaser shall assume and make available to Transferred Employees the accrued vacation amounts indicated on the list provided pursuant to Section 5.9 of the Asset Purchase Agreement, which accrued vacation amounts shall be determined and administered consistently with the policies of Debtors as of the date of the Asset Purchase Agreement. Purchaser may adopt differing policies with respect to any vacation benefits accruing on or after the Closing Date.

3)  Effective as of Closing, Purchaser shall adopt a policy to provide severance payments to Transferred Employees who are terminated without cause and

who have provided at least one complete year of service to the business.  If any employee of Debtors who accepts an offer of employment from Purchaser is subsequently terminated by Purchaser within the 6-month period after the Closing Date, then Purchaser shall make severance payments to such employee in an amount that is not less than the amount of severance that such employee would have been entitled to receive under Debtors' severance policy in effect on the date hereof if such employee had been terminated by Debtors as of the Closing Date.

4) From and after the Closing Date, Debtors shall remain solely responsible for any and all liabilities relating to or arising in connection with the requirements of Section 4980B of the Internal Revenue Code to provide continuation of health care coverage in respect of (A) employees and their covered dependents with respect to any qualifying event occurring prior to the Effective Date and (B) employees other than Transferred Employees with respect to any qualifying event occurring after the Effective Date.  Purchaser shall be responsible for any and all liabilities relating or arising in connection with the requirements of Section 4980B of the Internal Revenue Code to provide continuation of health care coverage in respect of Transferred Employees and their covered dependents with respect to any qualifying event occurring after the Effective Date.

5) Neither Purchaser nor any of its affiliates shall have any liability or responsibility for any (i) claims arising out of the employment by the Debtors of any current or former employee or a beneficiary or dependent thereof or (ii) benefits payable in respect of any current or former employee under any Employee Benefits Plan, in each case, other than the Specified Deferred Compensation Obligations.  The Debtors shall remain solely responsible for any and all liabilities, obligations and commitments in respect of such current or former employee relating to or arising out of or as a result of the employment or the actual or constructive termination of employment of any such current or former employee by the Debtors (including in connection with the consummation of the Sale).  The Debtors shall remain responsible for the payment of any and all severance, retention, change in control or other similar compensation or benefits under the various plans and arrangements maintained or entered into by the Debtors and that are or may become payable in connection with the consummation of the Sale.

(v) On the Closing Date, the Purchaser will assume (i) the Debtors' accrued and unpaid payroll as of the Closing Date, excluding any amounts payable under any retention or incentive programs; and (ii) the Debtors' incurred and, in the ordinary course of business consistent with past practice, not yet remitted payroll Taxes for the current period as of the Closing Date.

Section 6.06    Club Member Agreements.    Except and to the extent previously rejected by an order of the Bankruptcy Court on or before the Effective Date, all Club Member

Agreements entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Section 6.01 of the Plan. Notwithstanding the above, each party (other than the Debtors) to any Club Member Agreement shall be entitled to elect to have its Claims against the Debtors arising under the Club Member Agreement treated pursuant to the terms of Section 11 of the Asset Purchase Agreement in full satisfaction of such Claims. In the event a Club Member does not elect in writing to have his or her Claim treated as provided by Section 11 of the Asset Purchase Agreement, all Claims under the applicable Club Member Agreement, including any Rejection Claim shall be treated in accordance with Section 6.04 of the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.01    The Sale.   This Plan contemplates the Sale of substantially all of the Debtors' assets to a Purchaser (as more fully outlined in the Sale and Bid Procedures) pursuant to sections 365, 1123(b)(4), 1129(b)(2)(A), 1145 and 1146(a) of the Bankruptcy Code, and provides for the orderly distribution of the Sale Proceeds as well as the proceeds or rights in the Accepting Unsecured Creditor Fund and the General Unsecured Creditor Fund under the terms and conditions of this Plan. The Debtors have entered into a "stalking horse" Asset Purchase Agreement and, in connection therewith, Filed the Sale and Bid Procedures Motion, in the Chapter 11 Cases, pursuant to section 363 of the Bankruptcy Code, seeking entry of the Sale and Bid Procedures Order, and approval of the Sale at the conclusion of the Auction in connection with the Confirmation Hearing. The Sale shall be consummated pursuant to this Plan.

In accordance with this Plan, the Debtors and the Purchaser shall, prior to the Effective Date, take all steps necessary to consummate the Sale in accordance with the Sale and Bid Procedures Order and this Plan. On the Closing Date, pursuant to the Asset Purchase Agreement, the Debtors shall transfer the Purchased Assets to the Purchaser for the aggregate consideration of the Purchase Price plus the assumption by the Purchaser of the Assumed Liabilities. Pursuant to the Sale, the Debtors will transfer the Purchased Assets to the Purchaser free and clear of all Liens (as defined in the Asset Purchase Agreement), including, but not limited to, the Secured Lenders' Liens, and Claims except for Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities. Distributions of the Sale Proceeds shall be in accordance with the priorities set forth in the provisions of this Plan, as well as any subsequent Final Order(s) of the Bankruptcy Court with respect to the distribution of such amounts. Upon consummation of the Sale, the Assumed Liabilities shall be obligations of the Purchaser and, from and after the Closing Date, shall no longer be obligations of the Debtors or their Estates, and any Holder of any Claim with respect thereto shall have no recourse on account of such Claim against the Debtors or their Estates.

Section 7.02    Substantive Consolidation.   The Plan is premised on the substantive consolidation of all of the Debtors with respect to the treatment of all Claims and Interests. This Plan shall serve as a request by the Debtors, in lieu of a separate motion, to the Bankruptcy Court, that it grant substantive consolidation with respect to the treatment of all Claims and Interests as follows:  on the Effective Date, (a) all assets and liabilities of the Debtors will be merged or treated as though they were merged; (b) all guarantees of the Debtors of the obligations of any of Debtor and any joint and several liability of any of the Debtors shall be

eliminated; and (c) each and every Claim and Interest against any Debtor shall be deemed Filed against the consolidated Debtors and all Claims Filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Debtors.

Section 7.03   <u>Continued Corporate Existence</u>.  Each Debtor will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which it is incorporated or otherwise formed and pursuant to its certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, without prejudice to the right of any Debtor to dissolve (subject to its obligations under this Plan) under applicable law and file a certificate of dissolution (or its equivalent) with the secretary of state or similar official of the jurisdiction of incorporation after the Effective Date.

Section 7.04   <u>Powers and Duties of the Liquidation Trustee</u>.   The Liquidation Trustee shall administer the Liquidating Trust and its assets in accordance with this Plan, the Liquidating Trust Agreement, and the other Liquidating Trust Documents and shall be responsible for, among other things, making certain distributions required under this Plan.  From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall: (a) possess the rights of a party in interests pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtors in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Bankruptcy Court.   Professionals and personnel retained or employed by the Liquidating Trust or the Liquidation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

Section 7.05   <u>Approval of Agreements</u>.  The solicitation of votes on the Plan shall be deemed a solicitation of the Holders of Claims for the approval of the Asset Purchase Agreement and the Sale in accordance with the Sale and Bid Procedures Order.  Entry of the Confirmation Order shall constitute approval of such agreements and transactions and the Confirmation Order shall so provide.

Section 7.06   <u>Corporate Action</u>.  The entry of the Confirmation Order shall constitute authorization for the Debtors to take or to cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the execution and delivery of the Asset Purchase Agreement.  Subject to the terms and conditions of the Asset Purchase Agreement, all

such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtors.  On the Effective Date, the appropriate officers and managers of the Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan, the Plan Supplement and the Sale Documents in the name and on behalf of the Debtors.

## ARTICLE VIII.
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

Section 8.01   <u>Preservation of Rights</u>.   Except to the extent that any Claim is Allowed during the Chapter 11 Cases or expressly by this Plan, the Asset Purchase Agreement, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtors to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Cases, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors or the Liquidation Trustee with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors or the Liquidation Trustee to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

Section 8.02   <u>Rights of Action</u>.   Except as otherwise provided in this Plan, the Asset Purchase Agreement or the Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee (as a representative of the Debtors' Estates) will retain and may exclusively enforce any Retained Actions subject only to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and the Confirmation Order's approval of the Plan shall be deemed a res judicata determination of such rights to retain and exclusively enforce such Retained Actions, and none of such Retained Actions is deemed waived, released or determined by virtue of the entry of the Confirmation Order or the occurrence of the Effective Date, notwithstanding that the specific Retained Actions are not identified or described.  Absent such express waiver or release by the Debtors, the Liquidation Trustee may pursue Retained Actions, as appropriate, in accordance with the best interests of the Liquidating Trust.

Absent an express waiver or release as referenced above, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Liquidation Trustee from utilizing, pursuing, prosecuting or otherwise acting upon all or any of its Retained Actions and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Actions upon or after Confirmation, the Effective Date or the consummation of the Plan.  By example only, and without limiting the foregoing, the utilization or assertion of a Retained Action, or the initiation of any proceeding with respect thereto against a Person, by the Liquidation Trustee shall not be barred (whether by estoppel, collateral estoppel, res judicata or otherwise) as a result of (a) the solicitation of a vote on the Plan from such Person or such Person's predecessor in interest; (b) the Claim, Interest or Administrative Claim of such Person or such Person's predecessor in interest having been listed in a Debtor's Schedules, list of Holders of Interests, or in the Plan, Disclosure Statement or any exhibit thereto; (c) prior

objection to or allowance of a Claim or, Interest of the Person or such Person's predecessor in interest; or (d) Confirmation of the Plan.

Notwithstanding any allowance of a Claim, the Debtors and the Liquidation Trustee reserve the right to seek, among other things, to have such Claim disallowed if the Debtor or the Liquidation Trustee, as the case may be, at the appropriate time, determines that it has a defense under section 502(d) of the Bankruptcy Code, e.g., the Debtor or the Liquidation Trustee holds an Avoidance Action against the Holder of such Claim and such Holder after demand refuses to pay the amount due in respect thereto.

Section 8.03    Setoffs.    Except to the extent that any Claim is Allowed, the Debtors or the Liquidation Trustee, as applicable, may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estates, the Debtors or the Liquidation Trustee may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors or the Liquidation Trustee of any such claims or Causes of Action the Debtors or the Liquidation Trustee may have against such Creditors, and all such claims and Retained Actions which are not expressly released, conveyed or compromised pursuant to the Plan, the Asset Purchase Agreement or the Sale and Bid Procedures Order shall be conveyed to the Liquidating Trust.

Section 8.04    Resolution of Disputed Claims.    Unless otherwise ordered by the Court after notice and a hearing, the Debtors and the Liquidation Trustee shall have the right, on and after the Effective Date, to File objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline.  The foregoing deadlines may be extended by order of the Court. An objection to any Claim shall be deemed properly served on the Holder thereof if the Liquidation Trustee effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases.  An objection is deemed to have been timely Filed as to all Tort Claims, thus making each such Claim a Disputed Claim as of the Claims Objection Deadline. Each such Tort Claim shall remain a Disputed Claim until it becomes an Allowed Claim in accordance with Section 5.02.

After the Effective Date, the Debtors or the Liquidation Trustee, as the case may be, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court; provided that (a) the Debtors or the Liquidation Trustee, as the case may be, shall promptly File with the Bankruptcy Court a written notice of any settlement or compromise of a Claim that results in an Allowed Claim in excess of $500,000 and (b) the United States Trustee and the Secured Lenders shall be authorized to contest the proposed settlement or compromise by Filing a written objection with the Bankruptcy Court and serving such objection on the Debtors or the

Liquidation Trustee, as the case may be, within 20 days of the service of the settlement notice. If no such objection is Filed, the applicable settlement or compromise shall be deemed final without further action of the Bankruptcy Court.

## ARTICLE IX.
## CONDITIONS TO CONSUMMATION OF THE PLAN

Section 9.01    <u>Confirmation Order</u>.  The Confirmation Order shall not be entered unless and until all conditions to entry of the Confirmation Order set forth in the Asset Purchase Agreement have been met.

Section 9.02    <u>Conditions to Effective Date</u>.  The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or been duly waived (if waivable) pursuant to Section 9.03 below:

(a)    the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate;

(b)    the Confirmation Order shall have been entered and shall not be stayed by order of a court of competent jurisdiction;

(c)    all conditions precedent to the obligations of the Debtors and Purchaser under the Asset Purchase Agreement have occurred;

(d)    the transactions contemplated in the Asset Purchase Agreement have been consummated;

(e)    the Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

(f)    all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained;

(g)    the Debtors shall have appointed the Liquidation Trustee, the Liquidating Trust Agreement and the other Liquidating Trust Documents shall have been executed, and the Liquidation Trust shall have received the Accepting Unsecured Creditor Fund and the General Unsecured Creditor Fund; and

(h)    no order of a court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan.

Section 9.03    <u>Waiver of Conditions to Consummation</u>.  The conditions to consummation in Section 9.02 (other than Sections 9.02(a), (b) and (d)) may be waived at any time by a writing signed by an authorized representative of each of the Debtors without notice or

order of the Bankruptcy Court or any further action other than proceeding to consummation of the Plan.   The conditions to consummation in Section 9.02 and the Asset Purchase Agreement may only be waived in accordance with the terms of the Asset Purchase Agreement.

Section 9.04    Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan.  In the event that one or more of the conditions specified in Section 9.02 of the Plan have not occurred (or been waived), upon notification submitted by the Debtors to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estates shall revest in the Debtors' Estates; (d) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Asset Purchase Agreement shall become null and void; and (f) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

## ARTICLE X.
## EFFECTS OF CONFIRMATION

Section 10.01  **Injunction.**

(a)  **Claims and Interests.  Except as otherwise expressly provided for in the Plan or the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 thereof, the entry of the Confirmation Order shall, provided that the Effective Date occurs, permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability or an Interest or other right of an equity security holder that is Impaired or terminated pursuant to the terms of the Plan from taking any of the following actions against the Debtors, the Liquidating Trust, the Liquidation Trustee, the Purchaser, or the Property of any of the foregoing on account of any such Claims, debts or liabilities or such terminated Interests or rights:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (d) asserting any setoff, offset, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtors; and (e) proceeding in any manner in any place whatsoever, including employing any process, that does not conform to or comply with or is inconsistent with the provisions of the Plan.**

(b) **Released Claims.**  As of the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to Section 10.03 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against (i) any Debtor, (ii) the Liquidating Trust, (iii) any Releasee, (iv) any D&O Releasee, or (v) any Exculpated Person, or any of their respective Property, based on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date with respect to or in any way relating to the Chapter 11 Cases, all of which claims, demands, debts, rights, Causes of Action or liabilities shall be deemed released on and as of the Effective Date; provided, however, that with respect to the former directors, officers and employees of the Debtors, this injunction shall apply only to the enforcement of Claims, demands, debts, rights, Causes of Action or liabilities with respect to which such former directors, officers and employees would be entitled to indemnification from the Debtors under contract or law; and, provided further, however, that this injunction shall not apply to (a) any claims Creditors may assert under the Plan to enforce their rights thereunder to the extent permitted by the Bankruptcy Code or (b) any claims Creditors or other third parties may have against each other, which claims are not related to the Debtors, it being understood, however, that any defenses, offsets or counterclaims of any kind or nature whatsoever which the Debtors may have or assert in respect of any of the claims of the type described in (a) or (b) of this proviso are fully preserved.

Section 10.02 **Exculpation.**   None of the Debtors, the Liquidation Trustee, the Purchaser or any Exculpated Person shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Cases, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtors or these Chapter 11 Cases, provided, however, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.

Section 10.03 **Releases.**

(a) **Releases by Debtors.  (i)** Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, in their individual capacities and as debtors in possession, will be

deemed to have forever released, and waived the Releasees and the D&O Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or the Liquidation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, that (a) no Releasee or D&O Releasee shall be released from any Claims, obligations, suits, judgments, debts or Causes of Action arising out of or in connection with indebtedness for money borrowed by any such person from any of the Debtors and (b) no Cause of Action against any insurer arising out of or relating to matters for which the Debtors would otherwise be liable or suffer an insurable loss shall be released, including without limitation, any Cause of Action against the Debtors' Directors and Officers insurance carrier(s).

(b) **Releases by Holders of Claims and Interests.** Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of the Persons set forth below under the Plan and, if applicable, the Cash, securities, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim or Interest who votes in favor of the Plan or is presumed to have voted in favor of the Plan pursuant to section 1126(f) of the Bankruptcy Code shall be deemed to have forever waived and released (i) the Debtors, (ii) the Liquidation Trustee, (iii) the Liquidating Trust, (iv) the Releasees, and (v) the D&O Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or Liquidation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, that this Section 10.03(b) shall not release any Releasees or the D&O Releasee from

41

**any Causes of Action held by a Governmental Unit existing as of the Effective Date based on (i) criminal laws of the United States or any domestic state, city or municipality or (ii) sections 1104-1109 and 1342(d) of ERISA.**

Section 10.04 <u>Other Documents and Actions</u>.   The Debtors are authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

Section 10.05 <u>Term of Injunctions or Stays</u>.  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.06 <u>Preservation of Insurance</u>.  Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair (a) the enforceability of insurance policies that may cover Claims against the Debtors or any other Person or Entity or (b) the continuation of workers' compensation programs in effect, including self-insurance programs.

Section 10.07 <u>Guaranties</u>.  Notwithstanding the existence of guaranties by the Debtors of obligations of any Entity or Entities, and the Debtors' joint obligations with another Entity or Entities with respect to the same obligations, all Claims against the Debtors based upon any such guaranties shall be satisfied and released in the manner provided in this Plan and the Holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtors.

Section 10.08 <u>Subordination Rights</u>.  Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

Section 10.09 <u>No Successor Liability</u>.  Except as otherwise expressly provided in the Plan or the Asset Purchase Agreement, the Debtors, the Liquidation Trustee, the Purchaser and the Purchaser's Affiliates do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other party relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on, or after the Effective Date.  The Liquidating Trust, the Liquidation Trustee, the Purchaser and the Purchaser's Affiliates are not, and shall not be, successors to the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Liquidation Trustee and the Liquidation Trust shall assume the obligations specified in the Plan, the Liquidating Trust Agreement, the other Liquidating Trust Documents, and the Confirmation Order and the Purchaser shall assume the obligations specified in the Asset Purchase Agreement.

Without limiting the foregoing and in conjunction with Section 12.13 of the Plan, (i) under Ga. Comp. R & Regs. 560-12.1-.07, the transfer of the Purchased Assets to Purchaser or any of its Affiliates as contemplated by the Asset Purchase Agreement is exempt from taxation under Chapter 8 of Title 48 of the OCGA (Sales and Use Taxes); (ii) under OCGA § 48-6-2(a)(7.1) and Section 1146(a) of the Bankruptcy Code, the transfer of the Purchased Assets to Purchaser or any of its Affiliates as contemplated by the Asset Purchase Agreement is exempt from taxation under OCGA § 48-6-1 (Real Estate Transfer Tax); (iii) upon the payment of the Purchase Price by Purchaser pursuant to the Asset Purchase Agreement, any obligation or liability Purchaser or any of its Affiliates may have under any applicable Law to withhold, deduct or deposit any amount from the Purchase Price and any obligation or liability Purchaser or any of its Affiliates may have under any applicable Law as successor or transferee for Taxes of any Debtor or any Affiliate of any Debtor shall hereby be satisfied and Purchaser and its Affiliates shall hereby be released and discharged from any such obligation or liability (in each case, including, without limitation, all Specified Georgia Tax Obligations); (iv) the Purchased Assets and the business transferred to Purchaser or any of its Affiliates as contemplated by the Asset Purchase Agreement shall be free and clear from, and shall not be subject to, any Liens for or arising from any Tax delinquencies or deficiencies of any Debtor or any Affiliate of any Debtor (including, without limitation, any Liens for or arising with respect to any Specified Georgia Tax Obligation); and (v) any bank account designated in writing by the Debtors pursuant to Section 2.6(a) of the Asset Purchase Agreement shall be approved by the Bankruptcy Court to be an account in which the Purchase Price may be deposited, and all amounts deposited therein by Purchaser shall be distributed only pursuant to the Plan and Confirmation Order.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Section 11.01 <u>Exclusive Jurisdiction of Bankruptcy Court</u>.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Cases to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)    classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

(b)    grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the Effective Date;

(c)    determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)    ensure that all payments due under the Plan and performance of the

provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(e)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Liquidation Trustee in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

(f)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan and the Plan Supplement) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(g)     hear any application of the Debtors or the Liquidation Trustee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(h)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(i)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Asset Purchase Agreement, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, the Asset Purchase Agreement or the Confirmation Order, except as otherwise provided in the Plan;

(k)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)     hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(m)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Asset Purchase Agreement;

(n)     enter one or more Final Decrees closing each of the Chapter 11 Cases;

(o)     determine and resolve any and all controversies relating to the rights and obligations of the Liquidation Trustee or the Disbursing Agent in connection with the Chapter 11 Cases;

(p)     allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(q)     permit the Debtors (and the Liquidation Trustee or the Purchaser, to the extent provided for in the Plan, the Asset Purchase Agreement or the Liquidating Trust Agreement) to recover all assets of the Debtors and Property of their respective Estates, wherever located;

(r)     hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtors or the Debtors' respective Estates arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Cases, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(s)     hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed or commenced after the Effective Date that may be commenced by the Liquidation Trustee thereafter, including Retained Actions, proceedings with respect to the rights of the Liquidation Trustee to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any claim or Cause of Action that the Debtors may have had; and

(t)     hear any other matter not inconsistent with the Bankruptcy Code.

Section 11.02 <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.   If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtors, including with respect to the matters set forth above in Section 11.01 hereof, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

Section 12.01 <u>Binding Effect of Plan</u>.  The provisions of the Plan shall be binding upon

and inure to the benefit of the Debtors, the Estates, the Liquidation Trustee, the Liquidating Trust, the Purchaser, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

Section 12.02 <u>Withdrawal of the Plan</u>.  The Debtors reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan.  If the Plan is withdrawn, the Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

Section 12.03 <u>Final Order</u>.  Except as otherwise expressly provided in the Plan or the Asset Purchase Agreement, any requirement in the Plan for a Final Order may be waived by the Debtors or, after the Effective Date, the Liquidation Trustee upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

Section 12.04 <u>Modification of the Plan</u>.  The Debtors may alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtors may, so long as the treatment of Holders of Claims or Interests under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; <u>provided</u>, <u>however</u>, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

Section 12.05 <u>Business Days</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.06 <u>Severability</u>.   Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal.   Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Debtors reserve the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

Section 12.07 <u>Governing Law</u>.      EXCEPT TO THE EXTENT THAT THE

BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF GEORGIA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF GEORGIA.

Section 12.08  Dissolution of Committee.  On the Effective Date, the Committee shall be automatically dissolved and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Chapter 11 Cases, the Plan or its implementation.

Section 12.09  Post-Confirmation Operating Reports.  The Liquidation Trustee shall file quarterly operating reports as required by the United States Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Bankruptcy Cases.

Section 12.10  Notices.  Any notice required or permitted to be provided under this Plan to the Debtors, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

SEA ISLAND COMPANY
P.O. Box 30861
Sea Island, Georgia 31561-0861
Attn: David Bansmer
Email: davidbansmer@seaisland.com

With a copy to:

Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street, Suite 200
P.O. Box 190
Brunswick, GA 31521-0190
Attn: Robert M. Cunningham
Email: rcunningham@gilbertharrelllaw.com

-and-

King & Spalding LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309

Attn.: Sarah Robinson Borders
Email: sborders@kslaw.com

Section 12.11 <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Debtors shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

Section 12.12 <u>Section 1125 of the Bankruptcy Code</u>.  The Debtors have, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and (b) the Debtors (and each of their respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals), have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

Section 12.13 <u>Section 1146 Exemption</u>.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtors or the Liquidating Trust, shall not be taxed under any state or local law imposing a document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or fee or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

Section 12.14 <u>Section 1145 Exemption</u>.  To the fullest extent permitted under section 1145 of the Bankruptcy Code, the issuance of any interests in the Liquidating Trust on or around the Effective Date shall be exempt from the registration requirements of Section 5 of the Securities Act and any and all federal, state and local laws requiring the registration or licensing of an issuer, underwriter, broker or dealer in such securities.

Section 12.15 <u>Time</u>.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

Section 12.16 <u>No Attorneys' Fees</u>.   No attorneys' fees will be paid by the Debtors with respect to any Claim or Interest except as expressly specified herein or by order of the Bankruptcy Court.

Section 12.17 <u>No Injunctive Relief</u>.   No Claim or <u>Interest</u> shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

Section 12.18 <u>Continued Confidentiality Obligations</u>.   Pursuant to the terms thereof, members of and advisors to any Committee, any other Holder of a Claim or Interest, the Purchaser, and their <u>respective</u> predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

Section 12.19 <u>No Admissions or Waivers</u>.   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed <u>an</u> admission or waiver by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Section 12.20 <u>Entire Agreement</u>.   The Plan (and all Exhibits to the Plan and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.   The Debtors shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.21 <u>Waiver</u>.   The Debtors reserve the right to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtors and/or their officers or directors.

Section 12.22 <u>Confirmation of Plans for Separate Debtors</u>. In the event the Debtors are unable to confirm this Plan with respect to all Debtors, the Debtors reserve the right, unilaterally and unconditionally, to proceed with this Plan with respect to any Debtor for which the confirmation requirements of the Bankruptcy Code are met.

Section 12.23 <u>Name Change</u>. No later than two (2) Business Days following the Closing Date, each Debtor <u>shall</u> (a) amend its governing documents and take all other actions necessary to change its name to one that does not include, and is not similar to, the term "Sea Island" or any other name included as part of the intellectual property; and (b) take all actions requested by Purchaser to enable Purchaser, if so desired, to change its name to one utilizing the "Sea Island" name or something similar, and (c) shall provide Purchaser reasonable documentation confirming the foregoing required name changes.

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: August 10, 2010

SEA ISLAND COMPANY, SEA ISLAND
COASTAL PROPERTIES LLC, SEA ISLAND
SERVICES, INC., SEA ISLAND APPAREL, LLC,
FIRST SEA ISLAND, LCC, SICAL, LLC AND
SEA ISLAND RESORT RESIDENCES, LLC

By:   /s/ David Bansmer
Name:  David Bansmer
Title: President and Chief Operating Officer of Sea
Island Company