**FILED**
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By cking at 1:11 pm, Sep 27, 2012*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASE |
| | ) | NUMBER <u>10-21034</u> |
| SEA ISLAND COMPANY, et al. | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| DENNIE MCCRARY | ) | |
| | ) | |
| Objecting Creditor | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT BARNETT, AS THE | ) | |
| LIQUIDATION TRUSTEE UNDER THE | ) | |
| SEA ISLAND COMPANY TRUST, | ) | |
| | ) | |
| Movant | ) | |

**OPINION AND ORDER OVERRULING DENNIE MCCRARY'S OBJECTION TO THE
LIQUIDATION TRUSTEE'S FIFTH MOTION TO EXTEND THE CLAIMS OBJECTION
DEADLINE AND SUSTAINING DENNIE MCCRARY'S OBJECTION TO THE
TRUSTEE'S MOTION TO EXTEND THE INITIAL DISTRIBUTION DEADLINE AND
GRANT RELATED RELIEF**

This matter is before me on creditor Dennie McCrary's
Limited Objection to the Liquidation Trustee's Fifth Motion to
Extend the Claims Objection Deadline and the Initial Distribution
Deadline and Grant Related Relief ("Limited Objection") filed on

September 7, 2012. (ECF No. 988.) The Liquidation Trustee filed his motion on August 21, 2012 (ECF No. 981), and I entered an order granting the motion subject to objection on August 22, 2012 (See Order Granting, Subject to Objection on the Terms Set Forth Below, the Fifth Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief, Aug. 22, 2012, ECF No. 982).

A hearing was held on September 13, 2012, after which I took the matter under advisement. Mr. McCrary's Limited Objection is overruled in part and sustained in part for the reasons that follow.

### FINDINGS OF FACT

The Sea Island Company, et al. ("Debtor"), filed a petition for chapter 11 bankruptcy relief on August 10, 2010. (ECF No. 1.) On September 24, 2010, Debtor filed its Amended Chapter 11 Plan of Reorganization ("Plan")(ECF No. 217), and on November 8, 2010, I entered an order confirming the Plan (See Order Confirming the Amended and Restated Joint Chapter 11 Plan, Nov. 8, 2010, ECF No. 372). The Plan contemplated the sale of all or substantially all of the Debtor's assets. (ECF No. 217 § 7.01.) The Debtor's

2

remaining assets were transferred to a newly created trust ("Trust") where the Liquidation Trustee ("Trustee") was to liquidate the property and distribute the proceeds to the Trust beneficiaries. (ECF No. 217 § 5.04.) In ensuring proper distribution of the Trust money, the Trustee was tasked with evaluating over 5500 claims. (Tr. of Hr'g Held May 17, 2012, ECF No. 953 at 47.)

Dennie McCrary claims to be a Trust beneficiary and unsecured creditor who began working for the Debtor in 1975 as the company's vice president of finance. (ECF No. 953 at 33-34; see also ECF No. 867, Ex. 1, Retirement Agreement of Dennie McCrary.) In 1998, he was promoted to president, a position he retained until his resignation in 2003. (ECF No. 953 at 34; see also ECF No. 867, Ex. 2, reflecting McCrary's title change in 1998.) During his employment, Mr. McCrary represented the Debtor in working with the law firm of King and Spalding to draft stock appreciation rights ("SARs") and unit appreciation rights ("UARs") for employees. (ECF No. 953 at 34.) He also served on the Debtor's Board of Directors from around 1998 until he resigned from that post in 2009. Furthermore, he served as the secretary of the Compensation Committee, a committee tasked with

3

overseeing the SARs and UARs. (Id. at 34-35; see also ECF No. 867, Exs. 3, 4, and 5.)

Mr. McCrary asserts claims against the Debtor that combined amount to more than $29 million. His claims, stemming from his employment, are for membership deposits (Cl. # 0000000718), deferred compensation from SARs (Cl. # 0000000722), indemnification rights (Cl. # 0000000717), deferred executive compensation (Cl. # 0000000721), prepaid fees and dues (Cl. # 0000000719, Cl. # 0000000720), and deferred compensation from UARs (Cl. #0000000723.) Of his $29 million in claims, over $19 million comprise SAR and UAR claims. (Cl. # 0000000722, Cl. # 0000000723.)

After the commencement of Debtor's bankruptcy case, Mr. McCrary was appointed to the Unsecured Creditor Committee by the United States Trustee. (ECF No. 118.) Since that time, Mr. McCrary has had extensive involvement in the progression of the case.[1] Because of his involvement with both the Debtor and the

---

[1] See ECF No. 319, Objection to Debtors' Amended and Restated Joint Chapter 11 Plan; ECF No. 361, Notice of Resolution of Objection of Retirement Creditors to Debtors' Amended and Restated Joint Chapter 11 Plan; ECF No. 719, Objection to Liquidation Trustee's Motion for Express Authorization to Use Funds from the Accepting Unsecured Creditors Fund to Pay Trust Costs; ECF No. 799, Motion to Extend Time to Respond to Liquidation Trustee's Motion for Summary Judgment; ECF No. 811, Opposition Brief of Dennie McCrary to Liquidation Trustee's Motion for Summary Judgment on the Liquidation Trustee's Motion for Express Authorization to Use Funds from the Accepting Unsecured Creditors Fund to Pay Trust Costs; ECF No. 846, Notice of Appeal of Order Granting the Liquidation Trustee's Motion for Summary Judgment; ECF No. 848, Motion to Stay Pending

4

case, by order dated May 18, 2012, I granted the Trustee's motion for a Rule 2004 Examination of Mr. McCrary. (See Order Granting the Liquidation Trustee's Motion for a Rule 2004 Examination of and Document Production by Dennie McCrary, May 18, 2012, ECF No. 880.)

To date, the Trustee has reviewed 17,301 pages of documents that Mr. McCrary has produced[2] (ECF No. 981 ¶ 23), and has objected to Mr. McCrary's claims (ECF No. 947). However, at the joint request of the Trustee and Mr. McCrary (ECF No. 976), I have stayed the proceedings on that objection pending global settlement negotiations between the parties (See Order on Joint Motion to Stay the Liquidation Trustee's Objection to the Claims of Dennie McCrary Pursuant to Bankruptcy Rules 3001 and 3007, Aug. 9, 2012, ECF No. 977). In addition to the settlement negotiations, the parties have stipulated that they have entered into a private agreement that governs the claims they have against each other. (ECF No. 990.)

In this particular matter before me, Mr. McCrary objects to the Trustee's Fifth Motion to Extend the Claims Objection

Appeal and Request for Expedited Hearing; ECF No. 861, Copy of Emergency Motion of Dennie McCrary for a Stay of Bankruptcy Court Order; ECF No. 862, Copy of Brief in Support of Emergency Motion of Dennie McCrary for a Stay of Bankruptcy Court Order.

[2] The parties still dispute whether Mr. McCrary has produced all the relevant documents in his possession. (ECF No. 990.)

Deadline and the Initial Distribution Deadline and Grant Related Relief. (ECF No. 988.)

Under the Plan, the initial claims objection deadline was April 14, 2011. (ECF No. 217 at 8, stating that the claims objection deadline is 120 days after the Plan's effective date, which was December 16, 2010.) However, Section 8.04 of the Plan permitted the Court by order to extend the deadline. (ECF No. 217 at 41.) After some confusion about the initial distribution date, I clarified that for claims to which the Trustee had not objected by the claims objection deadline (April 14, 2011), the initial distribution date was May 16, 2011. (See Order Granting Motion to Clarify Distribution Timing, Mar. 10, 2100, ECF No. 547.) However, for claims to which the Trustee had objected on or before the claims objection deadline, the initial distribution date was 30 days after the entry of a final order for such claim, or a later date agreed to by the holder of the claim. (Id.)

On March 16, 2011, the Liquidation Trustee filed an Expedited Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline (ECF No. 551), and with no party objecting, on April 1, 2011, I granted the motion and extended the claims objection deadline to August 12, 2011 ("First Order") (See Order Granting Expedited Motion to Extend the Claim

6

Objection Deadline and the Initial Distribution Date, Apr. 1, 2011, ECF No. 574). Subsequently, pursuant to a second motion for extension by the Trustee (ECF No. 621), on July 27, 2011, I extended the claims objection deadline temporarily to August 22, 2011, and permanently to December 12, 2011, subject to an objection by any party ("Second Order")(See Order Granting, Subject to Objection on the Terms Set Forth Below, the Second Expedited Motion to Extend the Claim Objection Deadline and the Initial Distribution Date, Jul. 27, 2011, ECF No. 622). In each order, I included language that tied the initial distribution date to the claims objection deadline; consequently, each of these orders also extended the initial distribution date.

On November 28, 2011, the Trustee made a third motion to extend the claims objection deadline and the initial distribution date. (ECF No. 705.) The title of this motion included, for the first time, a request for "related relief." (Id.) The "related relief," as set forth in the body of the motion, dealt partially with the link between the claims objection deadline and the initial distribution date, and partially with how the claims objection deadline applied to claims to which an objection, adversary proceeding, or other pleading had been filed. (Id.) Thus, while the Trustee requested very similar relief in his

7

first two extension motions, and while I granted very similar relief in the First[3] and Second Orders,[4] the Trustee's third

---

[3] The First Order included the following similar provisions:

> FURTHER ORDERED that, once an objection or adversary proceeding is filed as to any Claim, the Claim Objection Deadline shall no longer apply to such Claim as to any further objection, adversary proceeding, or amendment to any of the foregoing; and it is

> FURTHER ORDERED that, all provisions of the Plan or the Trust notwithstanding, for Claims as to which the Liquidation Trustee has not objected on or before August 12, 2011, the Initial Distribution Date (as defined in the Plan) shall be, and the Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan), occurring after August 12, 2011; and it is

> FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

> FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies making the Distribution . . . .

[4] The Second Order included the following similar provisions:

> FURTHER ORDERED that, once an objection, adversary proceeding, or other pleading is filed as to any Claim (as defined by the Plan), the Claim Objection Deadline shall no longer apply to such Claim, including, but not limited to: (i) any amendment to the objection, adversary proceeding, or other pleading with respect to such Claim; or (ii) any further objection, adversary proceeding, other pleading, or amendment to any of the foregoing with respect to such claim; and it is

> FURTHER ORDERED that, all provisions of the Plan or the Trust notwithstanding, for Claims as to which the Liquidation Trustee has not filed an objection, adversary proceeding, or other pleading on or before December 12, 2011, the Initial Distribution Date (as defined in the Plan) shall be, and the Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan) occurring more than 30 days after December 12, 2011; and it is

AO 72A

(Rev. 8/82)

motion to extend the deadline was the first time he included the term "related relief" in the title of his motion with provisions so identified in the body of the motion. (Id.)

In his proposed order, the Trustee included the following five paragraphs, now referenced as the "related relief" provisions:

> FURTHER ORDERED that, once an objection, adversary proceeding, or other pleading is filed as to any Claim, the Claims Objection Deadline shall no longer apply to such Claim, including, but not limited to, the following: (i) any amendment to the objection, adversary proceeding, or other pleading with respect to such Claim; or (ii) any further objection, adversary proceeding, other pleading, or amendment to any of the foregoing with respect to such Claim; and it is

> FURTHER ORDERED that, all provisions of the Plan or the Trust notwithstanding, for Claims as to which the Liquidation Trustee has not filed an objection, adversary proceeding, or other pleading on or before the Claims Objection Deadline, the Initial Distribution Date (as defined in the Plan) shall be, and the

---

FURTHER ORDERED that, all provisions of the Plan or Trust notwithstanding, the Liquidation Trustee shall not be required to make a distribution on account of any Claim, to which the Liquidation Trustee has filed an objection, adversary proceeding, or other pleading unless and until the next Distribution Date occurring more than 30 days after the entry of a Final Order (as defined in the Plan) allowing some or all of the Claim; and it is

FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies make the Distribution . . . .

9

Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan) occurring more than 30 days after the Claims Objection Deadline; and it is

FURTHER ORDERED that, all provisions of the Plan or Trust notwithstanding, the Liquidation Trustee shall not be required to make a distribution on account of any Claim, to which the Liquidation Trustee has filed an objection, adversary proceeding, or other pleading unless and until the next Distribution Date occurring more than 30 days after the entry of a Final Order (as defined in the Plan) allowing part or all of the Claim; and it is

FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies making the Distribution . . . .

(Id.)

On November 29, 2011, I entered an order extending the claims objection deadline temporarily to February 1, 2012, and permanently to April 23, 2012, subject to objection by any party ("Third Order"). (See Order Granting, Subject to Objection on the Terms Set Forth Below, The Third Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief, Nov. 29, 2011, ECF No. 710.) In the order,

10

I included the proposed "related relief" provisions referenced above. (Id.) No party objected to the Trustee's motion or the order.

Subsequently, on April 9, 2012, the Trustee again moved to extend the claims objection deadline and initial distribution date and grant related relief ("Trustee's Fourth Motion"). (ECF No. 835.) In his proposed order, the Trustee included "related relief" provisions substantively identical to those provisions contained in the Third Order. (Compare ECF No. 835 to ECF No. 710.) On April 10, 2012, I entered an order granting the Trustee's motion and extending the claims objection deadline temporarily to June 16, 2012, and permanently to August 27, 2012, subject to an objection by any party ("Fourth Order"). (See Order Granting, Subject to Objection on the Terms Set Forth Below, the Fourth Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief, Apr. 12, 2012, ECF No. 844.) The Fourth Order contained the proposed "related relief" provisions.[5]

---

[5] The Fourth Order included the following provisions:

> FURTHER ORDERED that, once an objection, adversary proceeding, or other pleading is filed as to any Claim, the Claims Objection Deadline shall no longer apply to such Claim, including, but not limited to, the following: (i) any amendment to the objection, adversary proceeding, or other pleading with respect to such Claim; or (ii) any further objection, adversary proceeding, other

11

AO 72A

(Rev. 8/82)

On May 7, 2012, Mr. McCrary filed an objection to the Trustee's Fourth Motion. (ECF No. 866.) He asserted that cause to extend the deadline did not exist, and that the "related relief" provisions requested by the Trustee's Fourth Motion (and reflected in the Fourth Order) improperly modified the terms of the Plan. (Id.)

On May 17, 2012, I held a hearing on Mr. McCrary's objection. (ECF No. 879.) During the hearing, counsel for Mr.

---

pleading, or amendment to any of the foregoing with respect to such claim; and it is

FURTHER ORDERED that, all provisions of the Plan or the Trust Agreement notwithstanding, for Claims as to which the Liquidation Trustee has not filed an objection, adversary proceeding, or other pleading on or before the Claims Objection Deadline, the Initial Distribution Date (as defined in the Plan) shall be, and the Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan) occurring more than thirty (30) days after the Claims Objection Deadline; and it is

FURTHER ORDERED that, all provisions of the Plan or Trust Agreement notwithstanding, the Liquidation Trustee shall not be required to make a distribution on account of any Claim, to which the Liquidation Trustee has filed an objection, adversary proceeding, or other pleading unless and until the next Distribution Date occurring more than thirty (30) days after the entry of a Final Order (as defined in the Plan) allowing part or all of the Claim; and it is

FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust Agreement notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies make the Distribution . . . .

12

McCrary acknowledged my authority to extend the claims objection deadline, but explained that the issue with further extending the deadline was that the "related relief" requested by the Trustee (and reflected by the "related relief" provisions in the Fourth Order) converted the simple extension of the claims objection deadline into an improper modification of the Plan. (Tr. of Hr'g Held May 17, 2012, ECF No. 953 at 15-18.)

On May 18, 2012, I entered an order overruling Mr. McCrary's objection ("Appealed Order"). (See Order Overruling Dennie McCrary's Objection to the Liquidation Trustee's Fourth Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief, May 18, 2012, ECF No. 883.) In this order, I held that all of the provisions in the Fourth Order, including the provisions extending the claims objection deadline to August 27, 2012, remained in full effect. (Id.) On June 1, 2012, Mr. McCrary filed notice of appeal to the United States District Court for the Southern District of Georgia ("District Court"). (ECF No. 902.)

Most recently, on August 21, 2012, the Trustee filed his fifth motion to extend the claims objection deadline and the initial distribution date and grant related relief ("Trustee's Fifth Motion"). (ECF No. 981.) I entered an order temporarily

13

extending the claims objection deadline to September 28, 2012, and further extending the deadline to December 20, 2012, absent an objection by any party ("Fifth Order"). (See Order Granting, Subject to Objection, the Fifth Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief, Aug 22, 2012, ECF No. 982.) The Fifth Order included "related relief" provisions substantially identical to those present in the Third and Fourth Orders. (Compare ECF No. 982 to ECF Nos. 710 and 844.) On September 7, 2012, Mr. McCrary filed his Limited Objection (ECF No. 988), and I heard oral argument on September 13, 2012 (ECF No. 990).

### CONCLUSIONS OF LAW

Mr. McCrary objects to the Trustee's Fifth Motion for several reasons. First, he contends that his appeal operates to divest this Court of jurisdiction to extend the claims objection deadline, to extend the initial distribution date, and to grant "related relief." Furthermore, he argues that the "related relief" requested by the Trustee improperly modifies the Plan. Finally, he asserts that the Trustee has not shown cause sufficient to justify further extending the claims objection

14

deadline to Mr. McCrary's personal claims. Notably, Mr. McCrary objects to my extending the deadline only as to his own claims and does not object to extending the deadline as to the claims of other creditors.

Before addressing the merits of his objections, I determine as a preliminary matter that the First, Second, Third, and Fourth Orders were each separate and final orders.[6] Each one resolved a specific request to extend the claims objection deadline, and each one granted distinct relief by creating a new deadline and by granting additional relief. Regardless of the fact that the additional relief granted in the Second, Third, and Fourth Orders was very similar to the additional relief granted in the First, the three subsequent orders were not mere amendments to the First. Instead, each ended the controversy present at the time it was entered, and each left nothing for the Court to do but execute its judgment; thus, each was separate and final. Likewise, the Appealed Order ended the controversy over whether

---

[6] See In re Hughes, No. 09-11676, 2009 WL 4730403, at *1 (11th Cir. Dec. 11, 2009)("[A] final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment.")(quoting In re Culton, 111 F.3d 92, 93 (11th Cir. 1997)); see also In re Martin Bros. Toolmaker, Inc. v. Indus. Dev. Bd. of the City of Huntsville, 796 F.2d 1435, 1437 (11th Cir. 1986)("[F]inality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole."); see also Commodore Holdings, Inc. v. Exxon Mobil Corp., 331 F.3d 1257, 1259 (11th Cir. 2003) ("In bankruptcy, it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation.")(citing In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985)).

15

there was cause to extend the claims objection deadline for a fourth time and whether the "related relief" provisions in the Fourth Order improperly modified the plan.   Therefore, I find that the First, Second, Third, Fourth, and Appealed Order were all final orders and as such were properly appealable.[7]

## I.    Jurisdiction

In considering Mr. McCrary's objection, I must first determine the impact his appeal has on my jurisdiction to overrule his objection and in doing so, fully enforce the provisions of the Fifth Order. Mr. McCrary contends that the Trustee's Fifth Motion requests the same "related relief" that I previously granted in the Fourth Order. He argues that under the "divestiture rule," since he is appealing the appropriateness of that "related relief," I cannot grant the Trustee any further "related relief" until the District Court determines whether such relief is proper. Therefore, he urges me to sustain his objection to the Trustee's Fifth Motion and to prevent the Fifth Order from taking any further effect. Mr. McCrary is only partially correct.

---

[7] See 28 U.S.C.A. § 158(a)(1).

16

AO 72A

(Rev. 8/82)

The divestiture rule "is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." In re Brown, No. 6:05-Bk-15294-ABB, 2007 WL 3326684, at *1 (M.D. Fla. Nov. 6, 2007)(citing In re Padilla, 222 F.3d 1184, 1190 (9th Cir. 2000)). According to the rule, "[t]he filing of a notice of appeal generally 'confers jurisdiction on the court of appeals and divests the [lower] court of its control over those aspects of the case involved in the appeal.'" In re Roberts, 291 F. App'x 296, 298 (11th Cir. 2008)(citing In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007)). However, "[t]he general rule . . . does not apply to collateral matters not affecting the questions presented on appeal." United States v. Reed, 404 F. App'x 464, 464 (11th Cir. 2010)(citing Weaver v. Fla. Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999)). In addition, courts have recognized that the vast number of unrelated and unconnected issues that arise in a bankruptcy case prevents the strict application of the divestiture rule in this context. See In re Urban Dev. Ltd., 42 B.R. 741, 744 (Bankr. M.D. Fla. 1984); see generally, In re Standard Bldg. Assocs., Ltd., 85 B.R. 644 (Bankr. N.D. Ga. 1988); In re Poch, No. 08-68429-MHM, 2010 WL 2802639, at *1-2 (Bankr. N.D. Ga. Jul. 1, 2010). Thus, while

17

"[t]he filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with matters raised by such appeal . . . [it does not divest a bankruptcy court of jurisdiction] as to matters that are 'uniquely separable' from or collateral to the merits of the appeal." In re Brown, 2007 WL 3326684, at *1 (citing In re St. Clair, 251 B.R. 660, 669 (D.N.J. 2000)).

Therefore, my first step is to determine what specific issues are being presented on appeal. In his appellate brief, Mr. McCrary challenges my determination that the "related relief" requested in the Trustee's Fourth Motion and granted in the Fourth Order does not improperly modify the Plan. (ECF No. 988, Ex. A.) He asks the District Court to reverse the Appealed Order and to vacate the "related relief" granted in the Fourth Order. Significantly, however, he makes those requests subject to the newly extended claims objection deadline, which was created by the Fourth Order. (Id. at 29.) By adding that "subject to" language, Mr. McCrary clarifies that he is not appealing the entire Fourth Order; specifically, he is not appealing the extension of the claims objection deadline. Instead, he is appealing only the "related relief" portions of the Fourth Order

18

and my determination in the Appealed Order that those "related relief" provisions do not improperly modify the Plan.

Furthermore, the Limited Objection confirms that Mr. McCrary's appeal is based solely on the "related relief" in the Fourth Order and my determinations regarding that relief in the Appealed Order. (See, ECF No. 988 at 2 ("As the Court is aware, Mr. McCrary objected to the 'related relief' requested in connection with the Liquidation Trustee's fourth extension motion, and the Court overruled that objection [citation omitted.]. Mr. McCrary has appealed this Court's order only with respect to this ruling . . . .").) Therefore, I find that substantively, Mr. McCrary appeals only the "related relief" and not the extension of the claims objection deadline.

Having come to that conclusion, I agree with Mr. McCrary that I am divested of jurisdiction over the "related relief" requested in the Trustee's Fifth Motion; however, I fail to see how that specific divestiture also deprives me of jurisdiction to extend the claims objection deadline. The divestiture rule deprives me of authority over issues presented on appeal, and in this case, the issues on appeal relate only to the "related relief." Since the District Court is currently addressing the appropriateness of that relief, a clear application of the

19

divestiture rule prevents me from considering "related relief" issues.

Additionally, since the issues surrounding the extension of the initial distribution date make up part of the "related relief," the divestiture rule also stops me from extending that date. While Mr. McCrary requests that the District Court reverse the Appealed Order and vacate the "related relief" in the Fourth Order subject to the newly extended initial distribution date (just as he requests that the District Court do the same thing subject to the newly extended claims objection deadline), other portions of his appeal convince me that the initial distribution date extension actually makes up part of his appeal. For instance, several of the paragraphs he appeals directly address both the timing of distributions and the Trustee's discretion over distributions. Furthermore, there are no separate provisions in the Fourth Order dealing with the initial distribution date apart from the "related relief" paragraphs.  Thus, it seems impossible to separate extending the initial distribution date from the "related relief." Finally, Mr. McCrary's appellate brief discusses how the "related relief" alters the distribution date payment procedure for Class 4 creditors. (ECF No. 988, Ex. A.) These factors combined lead me to conclude that the issues

20

surrounding the initial distribution date are part of the "related relief" Mr. McCrary appeals; as such, they are matters that I lack the authority to consider.

However, since Mr. McCrary's appeal presents only issues surrounding the "related relief," and since the divestiture rule deprives a lower court of jurisdiction only over those specific issues presented on appeal, I find that I retain jurisdiction to extend the claims objection deadline. The Trustee's Fifth Motion requests two distinct remedies: (1) a time extension to file objections to claims and (2) "related relief." Consequently, the Fifth Order, temporarily granting both remedies, sets forth distinct provisions that address those remedies separately. The provisions that grant the first type of relief extend the claims objection deadline temporarily until September 28, 2012, and permanently until December 20, 2012, subject to objection. The provisions that grant the "related relief" alter the effect that the claims objection deadline has on claims where objections, adversary proceedings, or other pleadings have been filed. They also change the time and conditions under which the creditors receive distributions.

The provisions that extend the time for objecting to claims and the "related relief" provisions accomplish different things,

21

and thus are separable. The related relief provisions do not alter the claims objection deadline itself; instead, they alter the effect that the deadline has on claims and creditors. Conversely, the provisions extending the claims objection deadline have no direct impact on the effect of the "related relief" provisions. If Mr. McCrary prevails in his appeal on the "related relief," the District Court can enforce its order reversing the effect of the "related relief" provisions in exactly the same manner with or without the time extension for objecting to claims. Therefore, I find the issue of whether to extend the claims objection deadline uniquely separable from and collateral to the issues dealing with "related relief" on appeal. Thus, under the divestiture rule, I retain jurisdiction to extend the deadline, yet am divested of jurisdiction over the "related relief" provisions.

Still, my determination that I no longer retain jurisdiction over "related relief" issues arising after Mr. McCrary's appeal does not negate the effects of the similar "related relief" provisions in my orders prior to his appeal. As noted above, the First, Second, and Third Orders extending the claims objection deadline contained "related relief" provisions substantially similar to those provisions in the Fourth Order.  Those orders

22

are final, and Mr. McCrary has neither objected to nor appealed from any of them. Therefore, the parties must abide by those orders. See Maness v. Meyers, 419 U.S. 449, 458 (1975)("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal . . . ."); see also Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 969 (11th Cir. 2012)("[A] bankruptcy court necessarily has power to enforce its own orders regarding its administration of the estate.")(citing Local Loan Co. v. Hunt, 292 U.S. 234, 241 (1934)). Furthermore, unless and until the District Court reverses the "related relief" provisions in the Fourth Order, that order too remains fully binding on the parties and they must comply with the "related relief" provisions contained therein.  See Maness, 419 U.S. at 459. ("The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.")(quoting United States v. United Mine Workers, 330 U.S. 258, 293 (1947)); see also Wieckiewicz v. Educ. Credit Mgmt. Corp., 443 F. App'x 449, 450 (11th Cir. 2011)("We have held that 'it is well established

23

that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order.'") (quoting In re Novak, 932 F.2d 1397, 1406 (11th Cir. 1991)).

## II.   Cause to Extend the Claims Objection Deadline to Mr. McCrary

Having determined that I retain jurisdiction to extend the claims objection deadline, I now turn to whether cause exists to extend the deadline specifically as to the claims of Mr. McCrary. In his Fifth Motion, the Trustee explains that from the time I last entered an extension until now, he has sorted through tremendous numbers of documents, conducted numerous interviews, and defended various litigation related to claims against the Debtor. However, since there are still over $61 million of claims to review from just Class 4 creditors alone, he asks for more time to thoroughly review, investigate, and object to outstanding claims. (ECF No. 990.) Objecting to the extension, Mr. McCrary argues that the Trustee has not shown cause sufficient to extend the deadline as to his claims specifically. He contends that

24

since the Trustee has already filed an objection to his claims, and since he and the Trustee are currently negotiating a settlement, the Court has no reason to extend the deadline as to him. He further argues that the parties have a private agreement that controls the objection deadline as between them; thus, a Court ordered extension would only serve to unnecessarily complicate both the settlement discussions and the agreement. I disagree.

Section 8.04 of the Plan clearly states that the claims objection deadline "may be extended by order of the Court." (ECF No. 217 at 41.) Furthermore, Rule 9006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") states that a court may extend any time for "cause shown." Fed. R. Bankr. P. 9006(b)(1).

The dollar amount of Mr. McCrary's claims combined with his position as an insider[8] to the Debtor give me cause to extend the deadline as to Mr. McCrary. Currently, the Trustee has over $61 million of Class 4 claims left to examine; of those $61 million of claims, Mr. McCrary's claims account for more than $29 million. Since Mr. McCrary's claims account for almost half of the remaining Class 4 claims amount, in order to serve the best interests of all the creditors, the Trustee needs ample time to

---

[8] An "insider" includes a director, officer, or person in control of a corporation. 11 U.S.C. § 101(31)(B).

25

fully examine Mr. McCrary's claims and to object on any additional grounds that he deems applicable.

In addition to the challenge the Trustee faces due to the dollar amount of Mr. McCrary's claims, the Trustee faces the challenge of evaluating the claims of an insider to the Debtor. Mr. McCrary was employed with the Debtor in a pivotal capacity as vice president of finance and as president of the company. He was also a member of the Board of Directors and had direct involvement with the creation and oversight of the same SARs and UARs that he now asserts give rise to over $19 million of his claims. Since he was so intertwined with the business of the Debtor, and since his claims relate to aspects of the business over which he had direct involvement and control, the Trustee needs time to carefully sift through all the information relevant to Mr. McCrary's claims from an outside perspective.

Counsel for Mr. McCrary does not dispute that the parties still have outstanding claims that need resolution; instead, he states that the private agreement gives the Trustee ample opportunity to object to the claims of Mr. McCrary, and the stay pending global settlement negotiations protects the Trust from any time lapse that would otherwise prevent the Trustee's objections. Thus, he urges me to allow the terms of the private

26

AO 72A
(Rev. 8/82)

agreement and the stay order to control the claims objection deadline between the parties. First, as to the private agreement, I am neither privy to the terms therein nor am I bound by them. Furthermore, in a case where Mr. McCrary's claims and the claims against him ultimately affect the monies that other creditors receive, without knowing all of the provisions set forth in the private agreement and without knowing how those provisions will impact other Class 4 creditors, I cannot definitively determine that the private agreement offers enough protection to the Trustee and the remaining creditors. In addition, because of the stay order, the parties have not completed discovery, and the Trustee has not completed his Rule 2004 examination of Mr. McCrary. Since Mr. McCrary was an insider to the Debtor, I cannot now rule out any claims that the Trustee may have for equitable subordination.[9] If I were to exclude Mr. McCrary from the extension of the claims objection deadline, that exclusion could result in potential harm other Class 4 claimants, could lead to an unfair distribution of the Trust money, and could interfere with the just resolution of this case. This is a risk I cannot take. Therefore, I find that cause exists to extend the

---

[9] "[U]nder the principles of equitable subordination, [the court may] subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(b)(1).

27

claims objection deadline as to Mr. McCrary as well as to other claimants.

## ORDER

Accordingly, the Limited Objection of Dennie McCrary to the Fifth Motion to Extend the Claims Objection Deadline and the Initial Distribution Deadline and Grant Related Relief is **ORDERED OVERRULED** in part **ORDERED SUSTAINED** in part; and it is

**FURTHER ORDERED** that the following provisions in the Order entered on August 22, 2012 are no longer in effect:

> FURTHER ORDERED that, once an objection, adversary proceeding, or other pleading is filed as to any Claim, the Claims Objection Deadline shall no longer apply to such Claim, including, but not limited to, the following: (i) any amendment to the objection, adversary proceeding, or other pleading with respect to such Claim; or (ii) any further objection, adversary proceeding, other pleading, or amendment to any of the foregoing with respect to such claim; and it is

> FURTHER ORDERED that, all provisions of the Plan or the Trust Agreement notwithstanding, for Claims as to which the Liquidation Trustee has not filed an objection, adversary proceeding, or other pleading on or before the Claims Objection Deadline, the Initial Distribution Date (as defined in the Plan) shall be, and the Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan) occurring more than thirty (30) days after the Claims Objection Deadline; and it is

28

FURTHER ORDERED that, all provisions of the Plan or Trust Agreement notwithstanding, the Liquidation Trustee shall not be required to make a distribution on account of any Claim as to which the Liquidation Trustee has filed an objection, adversary proceeding, or other pleading unless and until the next Distribution Date occurring more than thirty (30) days after the entry of a Final Order (as defined in the Plan) allowing part or all of the Claim; and it is

FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust Agreement notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies make the Distribution . . . .;

and it is

**FURTHER ORDERED** that the Order entered on August 22, 2012 remains in full force and effect to the extent that it extends the claims objection deadline to December 20, 2012, as to all creditors.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Waycross, Georgia,
this 27th day of September, 2012.

29