IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Brunswick Division

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By cking at 3:56 pm, Jul 30, 2014*

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASE |
| | ) | NUMBER <u>10-21034</u> |
| SEA ISLAND COMPANY, et al. | ) | |
| | ) | |
|     Debtor | ) | |
| | ) | |
| | ) | |
| SEA ISLAND ACQUISITION, LLC | ) | |
| | ) | |
|     Purchaser/Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT BARNETT, AS THE | ) | |
| LIQUIDATION TRUSTEE UNDER THE | ) | |
| SEA ISLAND COMPANY TRUST | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KINGS POINT PROPERTY OWNERS | ) | |
| ASSOCIATION, INC. | ) | |
| | ) | |
|     Respondents | ) | |
| | ) | |

**OPINION AND ORDER GRANTING KINGS POINT PROPERTY OWNERS ASSOCIATION, INC.'S MOTION TO INTERVENE UNDER 11 U.S.C. § 1109(b) AND FEDERAL RULE OF BANKRUPTCY PRODCEDURE 2018(a)**

    This matter came on for a hearing on the Liquidation Trustee's Objection Based on a Lack of Standing to the Kings Point Property Owners Association, Inc.'s ("Kings Point POA") Preliminary Response (Objection, ECF No. 1164) to Sea Island Acquisition, LLC's ("SIA") Motion to Clarify Provisions Related

AO 72A
(Rev. 8/82)

to Implementation of the Confirmed Plan ("Motion to Clarify"). (ECF No. 1102.)

For the reasons that follow, I find that King Point POA is a party in interest under 11 U.S.C. § 1109(b) and has standing to intervene in this contested matter to determine the ownership status of the Kings Point Common Areas.

## Background

SIA's Motion to Clarify identifies "certain real property interests held by Debtors at the commencement of the Chapter 11 case but not specifically scheduled in the [Asset Purchase Agreement] or transferred to SIA at the Closing." (Id.) The discovered real property interests fall into two categories.

The first is a series of various real estate interests (e.g. rights to first refusal, rights to restrict subdivision, mineral rights, and timber rights) which Debtor Sea Island Co. reserved in approximately thirty-four large acreage tracts in Camden County, Georgia, commonly known as Cabin Bluff Compartments ("Cabin Bluff Interests"). (ECF No. 1102 at 3.)

The second is an interest in Common Areas in the Kings Point Subdivision ("Common Areas"). The Common Areas should have been transferred to Kings Point POA in 2009. However, the 2009 deed from Sea Island Company to the Kings Point POA was ineffective. (ECF No. 1102 at 3-4.) Although the Sea Island Company was the

original owner and developer of the Kings Point subdivision, it had conveyed all its interest in Kings Point to Sea Island Parcels, LLC in August of 1999. One month later, Sea Island Parcels, LLC merged into Sea Island Coastal Properties, LLC. (Id.) Thus, the Sea Island entity that granted the Common Areas was not the Sea Island entity that actually owned the property. (ECF No. 1102 at 3-4.) The defect in the deed conveying the Common Areas went unnoticed until after the Asset Purchase Agreement contemplated under the Debtor's Amended Plan closed on December 15, 2010. (Id. at 4.)

The Motion to Clarify asks for an order: 1) declaring that the newly discovered real estate interests were not vested in the Liquidation Trustee and that the newly discovered real estate interests were sold to SIA under the Asset Purchase Agreement; 2) ordering the newly discovered real estate interests transferred to SIA; and 3) authorizing SIA to transfer the newly discovered real estate interests to third parties determined by SIA to be proper transferees of the interests. (ECF No. 1102.)

The Liquidation Trustee objected to SIA's Motion to Clarify and sought entry of an order directing the application of Rule 7016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to this contested matter. (ECF No. 1104.) A hearing was held on April 10, 2014, after which I granted the Liquidation

AO 72A

(Rev. 8/82)

Trustee's Motion and set a discovery deadline of August 8, 2014. (Order, ECF No. 1126.)

On May 16, 2014, the Kings Point POA filed their Preliminary Response to the Motion to Clarify, (ECF Nos. 1159, 1161), Kings Point POA requested to be heard in the contested matter:

> Kings Point POA hereby requests that a status conference be scheduled for the purpose of clarifying discovery schedule issues given that (A) the King's Point Issues appear to be factually distinct from the Cabin Bluff Issues and any other general or specific disputes that might be addressed in the course of this contested matter, and that (B) Kings Point POA intends to commence an adversary proceeding seeking equitable reformation of the 2009 Deed.

> WHEREFORE, for the reasons stated hereinabove, King's Point requests that, in the event that the Common Areas are determined to have been property of Debtors' bankruptcy estates at the Petition Date, the Court enter an order:

>> (a) determining that the Common Areas are Purchased Assets under the Purchase Agreement;

>> (b) authorizing Debtors and Purchaser to take all actions necessary to document the conveyance of the Common Areas to Purchaser and directing Purchaser to then convey the Common Areas to King's Point;

>> (c) directing the Liquidation Trustee to execute a quit claim deed conveying to Purchaser any interests the Liquidation Trust may have in the Common Areas; and

>> (d) granting such other and further relief as is just and equitable.

(ECF No. 1161 at 14-15.) The preliminary response is taken as a motion to intervene.

The Liquidation Trustee objected on the grounds that the Kings Point POA was not a party in interest and lacked standing to be heard "when the only issue before the Court is whether the Liquidation Trustee or SIA-but not Kings Point POA-owns the Common Areas." (ECF No. 1164 at 3.) In response, the Kings Point POA filed evidence of SIA's intention to transfer the Common Areas to the POA if an order is entered requiring the transfer. (See Exs. A, B of ECF No. 1176.)

### Conclusions of Law

The Bankruptcy Code provides that:

> [a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). "Party in interest" is not defined in the Bankruptcy Code.

Courts define "party-in-interest" as an individual or an entity that has "a stake in the outcome of the bankruptcy case." In re Rodrigues, 370 B.R. 467, 475 (Bankr. D. Mass. 2007). Generally, a party-in-interest will fall within four relatively well-defined groups: debtors, creditors, equity security holders, and court fiduciaries. See In re Rodrigues, 370 B.R. at 475. Although this list is non-exhaustive, the concept of "party in interest" is not infinitely elastic. See Seraphin v. Morris Pub.

Grp. LLC. (In re Morris Pub. Grp. LLC), 2010 WL 599393, *2 (Bankr. S.D. Ga. Feb. 10, 2010) (citing In re Ionosphere Clubs, Inc., 101 B.R. 844, 849 (Bankr. S.D. N.Y. 1989)).

Whether an individual or entity is a party in interest is determined on a case by case basis. See In re D'Antignac, No. 05-10620-SDB, 2013 WL 1084214, *2 (Bankr. S.D. Ga. Feb. 19, 2013) (citing Peachtree Lane Assocs., Ltd. v. Granader (In re Peachtree Lane Assocs., Ltd.), 188 B.R. 815, 824 (N.D. Ill. 1995).

Generally, in order for an entity to be a party in interest under Section 1109(b), the entity must "have a pecuniary interest that is directly or adversely affected by the outcome of the proceeding, such that the entity requires representation." In re Morris Pub. Grp. LLC, 2010 WL 599393 at *4 (citing In re Stone Barn Manhattan LLC, 405 B.R. 68, 74 (Bankr. S.D. N.Y. 2009).

A party in interest under Section 1109(b) must also satisfy the requirements for standing in order to participate in a bankruptcy matter. See In re Tarrer, 273 B.R. 724, 731 (Bankr. N.D. Ga. 2001). "[L]imits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases." In re Morris Pub. Grp. LLC, 2010 WL 599393 at *4 (citing In re Deist Forest Prods., Inc., 850 F.2d 340, 341 (7th Cir. 1988)).

AO 72A
(Rev. 8/82)

Such requirements include that the party in interest must: "(1) have suffered an actual injury or show the imminence of such injury; (2) establish that the injury is fairly traceable to the conduct at issue; and (3) demonstrate that the requested relief is likely to redress the injury." In re Tarrer, 273 B.R. at 731 (citing Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 472 (1982); E.F. Hutton & Co. Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990)).

Compliance with these factors essentially establishes that a party requesting to participate in the proceeding has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." In re Tarrer, 273 B.R. at 731 (citing Duke Power Co. v. Carolina Environmental Study Grp., 438 U.S. 59, 72 (1978)).

### Kings Point POA is a Party in Interest with Standing

Kings Point POA has a direct pecuniary interest in the outcome of the contested matter. See In re Morris Pub. Grp. LLC, 2010 WL 599393 at *4 (citing In re E.S. Bankest, L.C., 321 B.R. 590, 595 (Bankr. S.D. Fl. 2005)). There is no dispute that the property interest at issue are the "Common Areas" over which the Kings Point POA was created to administer. (See ECF No. 1164 at

AO 72A
(Rev. 8/82)

3; Kings Point Subdivision Covenants and Restrictions, Ex. C of ECF No. 1176.) The present matter involves a determination of whether SIA or the Liquidation Trustee owns the King's Point Common Areas. If SIA is determined to be the owner of the Common Areas, then, by virtue of a Quitclaim Deed executed June 12, 2014, Kings Point POA will become the owner of the Common Areas. (See Ex. B of ECF No. 1176.) If the Liquidation Trust is determined to be the owner of the Common Areas, and if the Trustee successfully maintains that the property interest vested free and clear of the Covenants and Restrictions which created the Kings Point POA, then the POA may cease to exist. (See ECF No. 1176 at 6.) In light of its existential interest in the contested matter, the Kings Point POA in the only party in a position to adequately represent its interests in this contested matter.

Even in the absence of injury to the Property Owners Association itself, the Kings Point POA has organizational standing to intervene on behalf of its members. An association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Am.'s Health Ins. Plans v. Hudgens, 742

AO 72A

(Rev. 8/82)

F.3d 1319, 1327 (11th Cir. 2014) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

The Kings Point POA satisfies these requirements. *See id.* First, the individual members of the Kings Point POA—that is, the actual property owners—each have a property interest at stake in this contested matter. Article VIII, Paragraph 2, of the Covenants and Restrictions provides as follows:

> Every Member shall have a right and easement of enjoyment in and to the Common Areas, and such easement shall be appurtenant to and shall pass with the title to every lot. . . . Such right and easement of enjoyment shall be referred to as the 'Common Areas Easement.'

(Covenants and Restrictions, Ex. C of ECF No. 1176, at 39.)

Second, the interest the Kings Point POA seeks to protect is germane to its purpose:

> The Association is and shall be responsible for the ownership, management and operation of the Common Areas, the enforcement of covenants and restrictions as set forth in this Declaration, and the performance of such other duties and services as the Board of Directors of the Association shall deem to be in the best interest of the members of the Association.

(Covenants and Restrictions, Ex. C to ECF No. 1176, at 33.)

Third, the relief requested-settling title in Kings Point POA-does not requires the participation of the Property Owners Association's individual members. In fact, addressing questions like those at issue here without the direct involvement of

9

individual members is exactly the function the Kings Point POA was intended to perform.

Finally, Georgia law grants standing to the King's Point POA. The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law. See AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007); see also Miree v. DeKalb County, 433 U.S. 25, 29-33 (1977); Osman v. Hialeah Hous. Auth., 785 F.2d 1550, 1550 (11th Cir. 1986) (observing that whether a plaintiff has a constitutionally protected property interest in an employment contract is a question of state law). Here, Georgia Code § 44-3-231, which governs the powers and duties of property owners associations, provides:

> The association shall have the capacity, power, and standing to institute, intervene, prosecute, represent, or defend in its own name litigation or administrative or other proceedings of any kind concerning claims or other matters relating to any portion of the lots or common area which the association has the responsibility to administer, repair, or maintain.

O.G.C.A. § 44-3-231(h).

## ORDER

Accordingly, I find the Kings Point POA is a party in interest under 11 U.S.C. § 1109(b) with standing to be heard in this contested matter. Its motion to intervene under Bankruptcy Rule 2018(a) is **ORDERED GRANTED**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 30th day of July, 2014.