UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al*., | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge John S. Dalis |
| | ) | |

**MOTION TO APPROVE COMPROMISE AND SETTLEMENT
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Liquidation Trust files this motion to approve a compromise and settlement with the Settlement Claimants (as that term is defined in the Settlement Agreement attached as Exhibit "A") pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). In support of this Motion, the Liquidation Trustee shows the Court the following:

**JURISDICTION**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The legal predicate for the requested relief is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.      The above-referenced debtors (the "Debtors") filed with the Court their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 10, 2010 (the "Petition Date").

4.      On September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order").

5.      The Trust Agreement of Sea Island Company Creditors Liquidation Trust (the "Trust") dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee.  *See* Bankr. Docket No. 449-1.

## THE SETTLEMENT

6.      There are forty-three Settlement Claimants asserting class 4 claims in the approximate aggregate amount of over $5.9 million on account of their purported "dues-free-for-life" memberships that they purportedly were granted by the Debtors in connection with purchasing certain high-end condominiums.

7.      The Liquidation Trustee and the Settlement Claimants have agreed to the following settlement: in exchange for a payment of $135,000.00, the Settlement Claimants have agreed to the disallowance of all claims that they hold or assert.  Attached as Exhibit "A" is a copy of the Settlement Agreement.[1]

## RELIEF REQUESTED

8.      The Liquidation Trustee requests that the Court enter an order approving the Settlement Agreement in substantially the same form as the proposed order attached as Exhibit "C".

---

[1]  The terms of the settlement are set forth in the Settlement Agreement.  The Liquidation Trustee also relies upon the representations made in a letter dated April 14, 2015 from the Settlement Claimants' counsel of record (the "Side Letter").  Attached as Exhibit "B" is a copy of the Side Letter.  The description contained in the Motion is merely a summary.  To the extent of any ambiguity, conflict, or the like, the terms set forth in the Settlement Agreement shall control.

6421419.1                                                   2

## BASES FOR RELIEF REQUESTED

### I.    The Standard for Approval

9.    Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes a bankruptcy court to approve a settlement agreement between interested parties. *See* Fed. R. Bankr. P. 9019. "Compromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate and delay the administration of the case to the detriment of all creditors." *In re Harbour E. Dev., Ltd.*, No. 10–20733–BKC–AJC, 2012 WL 1851015, at *5 (Bankr. S.D. Fla. May 21, 2012) (citations omitted); *see also Munford v. Munford, Inc.* (*In re Munford, Inc.*), 97 F.3d 449, 455 (11th Cir. 1996); 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Compromises are favored in bankruptcy.").

10.    "In acting on [a Rule 9019] motion, an evidentiary hearing is not necessarily required." *Coleman v. Abdulla* (*In re Sportsman's Link, Inc.*), No. 07-10454, 2011 WL 7268047, at *11 (Bankr. S.D. Ga. Dec. 20, 2011) (citations omitted). "Instead, the obligation of the court is to canvass [sic] the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Brown v. Harris*, No. 3:11–CV–25 (CDL), 2011 WL 3473312, at *2 n.5 (M.D. Ga. Aug. 9, 2011) (citation and internal quotation marks omitted); *see Martin v. Pahiakos*, 490 F.3d 1272, 1275 (11th Cir. 2007) (affirming approval of settlement because "it did not fall below the lowest point in the range of reasonableness").

11.    The decision to approve a settlement pursuant to Rule 9019 is within the sound discretion of the bankruptcy court. *See*, *e.g.*, *GMGRSST, Ltd. v. Menotte* (*In re Air Safety Int'l, L.C.*), 336 B.R. 843, 852 (S.D. Fla. 2005) ("A bankruptcy court's decision to approve a settlement is within its sound discretion, and will not be disturbed on appeal absent proven abuse of that discretion.").

12.     In *Wallis v. Justice Oaks II, Ltd.*, (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544 (11th Cir. 1990), the Eleventh Circuit articulated four factors that a court should evaluate in deciding whether to approve a proposed settlement: "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable view in the premises." *Justice Oaks*, 898 F.2d at 1549 (citations omitted).  But "[i]n examining the relevant factors, courts have deferred to the [t]rustee's business judgment when reasonable." *Sportsman's Link*, No. 07-10454, 2011 WL 7268047, at *11 (citation omitted).

13.     Here, the Liquidation Trustee believes that the settlement is in the best interests of the Trust and the Beneficiaries (as that term is defined in the trust agreement).

## II.     The Procedural Background

14.     The Liquidation Trustee filed an omnibus claims objection to fifty-three claims in the approximate aggregate amount of $13.99 million, *see* Bankr. Docket No. 784 at pp. 15–21 of 28, because (i) such proofs of claim did not attach supporting documents and (ii) the Claimants (as that term is defined in the Side Letter) did not provide the supporting documents upon request, *see id.* at ¶¶ 10 & 16.  Such objection sought the disallowance of such claims because the foregoing constituted a violation of Rule 3001(c) of the Federal Rules of Bankruptcy Procedure.  *See id.* at ¶¶ 11–19.

15.     The parties resolved such objection by consenting to a proposed order, which the Court entered (the "Consent Order").  *See* Bankr. Docket No. 899.

16.     The Consent Order disallowed the claims.  *See id.* at p. 1 ("ORDERED, ADJUDGED AND DECREED that the Disputed Claims are hereby disallowed.").  The Consent

Order then required the Claimants to file amended claims on or before a deadline subject to extension by the Liquidation Trustee.  *See id.* at p. 2 (setting deadline but allowing the Liquidation Trustee to extend it).

17.     And the Consent Order, among other things, required that the amended claims comply with the fifteen enumerated requirements of Exhibit "A" to the Consent Order (the "Amended Claim Requirements").  The Amended Claim Requirements include, among other things, the following requirements: (i) enumerating the specific documents upon which the claims were relying, *see id.* at ¶¶ 1 & 5; (ii)  stating any material variance between documents submitted by the various Claimants, *see id.* at ¶ 2; (iii) disclosing certain information under oath, *see id.* at ¶¶ 3 & 4; and (iv) explaining various legal theories and setting forth supporting facts, *see id.* at ¶¶ 6, 7, 8, 11, 12, &  13.

18.     Many of the claimants did not file amended proofs of claim because, upon information and belief, they realized that their membership deposit liability claim was satisfied when they opted into membership with the new Sea Island Club pursuant to section 11 of the Asset Purchase Agreement [Bankr Docket No. 293].  *See* Plan § 6.06; Bankr. Docket No. 1332 at ¶¶ 10–11 & 14–15 (explaining the bases for disallowance of membership deposit liability claims).

19.     But the Settlement Claimants filed amended claims in the approximate aggregate amount of over $5.9 million asserting that such claims were not based on membership deposit liability but instead were based on the Debtors' failure to honor their purported obligation to provide "dues-free-for-life" memberships in the Sea Island Club.  Specifically, the Settlement Claimants assert that they entered into a Purchase and Sale Agreement with Sea Island Company

(the "Agreement"), which purportedly contains, among other things, a grant of a "dues-free-for-life" membership in the Sea Island Club.

20.     Once the Settlement Claimants complied with the Amended Claim Requirements, it was much easier for the Liquidation Trustee to conduct due diligence on such claims.

## III.     **The Merits of the Dispute**

21.     The Liquidation Trustee sets forth below a summary of some of the parties' contentions.

### A.     Sea Island Company's "Sole and Absolute Discretion" Rights under the Membership Program

22.     The Liquidation Trustee contends that section II(F) of the Sea Island Club Membership Program (the "Membership Program") absolves the Debtors from any liability to the Settlement Claimants associated with the Agreement.  Specifically, section II(F) of the Membership Program grants Sea Island Company the "sole and absolute discretion . . . to sell or otherwise dispose of the Club Facilities in any manner whatsoever and to any person whomsoever, [or] to terminate any and all types of Membership."  *See* Membership Program § II(F).  The Agreement specifically incorporates the Membership Program into the Agreement.

23.     The Settlement Claimants concede as much, but contend that the foregoing does not preclude their right to recover damages because such incorporation provides "[e]xcept as set forth above with respect to deposits and dues."  And they contend that the right of the Debtors to rescind only in the event that the claimants default on their obligations is the language that is "set forth above with respect to deposits and dues."  The Liquidation Trustee contends that nothing in the "Incentives" provision of the Agreement changes the Debtors' "sole and absolute discretion" to sell or otherwise dispose of the Sea Island Club "Facilities" or to terminate any and all of the memberships.

24.     The Settlement Claimants further argue that such "sole and absolute discretion" could have been used to justify shutting down the Sea Island Club the day after the Debtors sold a condominium purportedly promising the purchaser a "dues-free-for-life" membership.  But the Liquidation Trustee contends that the hypothetical is not similar to what actually happened.  The Settlement Claimants entered into their Agreements more than five years before Sea Island Company and its affiliates filed their voluntary petition for relief on August 10, 2010.  And even if such a scenario were similar to what actually happened, the Liquidation Trustee contends that the implied position asserted by the Settlement Claimants is mistaken: the Membership Program expressly disclaims any obligation on the part of Sea Island Company to exercise such discretion in good faith.  *Compare* Membership Program § II(F) *with Knight Indus., Inc. v. Turner Mktg, Inc.*, 157 Ga. App. 177, 177–78, 276 S.E.2d 860 (1981) (the issue of good faith is irrelevant where the contract grants to one party "complete and absolute discretion").

25.     The Liquidation Trustee contends that the Settlement Claimants' argument—if accepted—would require the Court (i) to ignore its obligation to harmonize contract provisions[2] and (ii) to make sure the interpretation does not "render any of its provisions meaningless."[3] Indeed, the Liquidation Trustee contends that the Agreement's provisions about "dues and deposits" can be harmonized with the "sole and absolute discretion" rights the Membership Program vests in Sea Island Company without making any of the provisions meaningless: as long as Sea Island Company did not sell or otherwise dispose of the Sea Island Club "Facilities"

---

[2]  *See Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 F. App'x 201, 210–11 (11th Cir. 2005) (harmonizing contractual provisions governed by Georgia law); *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674, 34 S.E.2d 839 (1945) ("[I]f possible, all of [a contract's] provisions should be so interpreted as to harmonize with each other.").

[3]  *See Immel v. Immel*, 298 Ga. App. 424, 426–27, 680 S.E.2d 505 (2009) ("And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as to not render any of its provisions meaningless.") (citations omitted).

and did not terminate all of the memberships, the Settlement Claimants would have been entitled to "dues-free-for-life" memberships. *Compare* Membership Program § II(F) *with* Motion n.2 & 3 (citing cases).

        B.      <u>The Right to Amend the Membership Program</u>

    26.    The Liquidation Trustee also contends that the Settlement Claimants do not have viable claims because it is a matter of black letter law that a party cannot sue on a contract that the other party is free to amend. *See McClelland v. Westview Cemetery, Inc.*, 148 Ga. App. 447, 448–51, 251 S.E.2d 351 (1978) (affirming grant of summary judgment in favor of cemetery for changing landscaping around burial lot because cemetery reserved the "right to alter, amend, and modify such plans"). And, as set forth below, the Membership Program provides in at least four places that the terms and conditions of the Membership Program are subject to change by Sea Island Company:

**<u>Provisions Allowing for Amendment of the Membership Program</u>**

| <u>Provision of Program</u> | <u>Relevant Language</u> |
|---|---|
| Membership Program at p. 4 | "All Membership privileges will be subject to this Membership Program, the Rules and Regulations and the Application for Membership, *as each may be amended by The Club from time to time*." (emphasis added). |
| Membership Program at p. 5 | "All privileges and rights of Membership and use of the Club Facilities shall be limited as set forth in the Membership Program, The Club Rules and Regulations and the Application for Membership, *as amended from time to time*." (emphasis added). |
| Membership Program at p. 13 | "*Such Rules and Regulations may be amended from time to time by The Club*." (emphasis added). |
| Membership Program at p. 13 | "Members agree by execution of the Membership Application to be bound by the Membership Program and Rules and |

|  | Regulations of The Club and by the Application for Membership, *as they may be amended from time to time*.") (emphasis added). |
| --- | --- |

### C.   The Doctrine of Contract Merger

27.    The Liquidation Trustee contends that the claims are unavailing based on the doctrine of contract merger.   When membership applications were executed, the signatories agreed to be bound by the Membership Program as amended from time to time.   *See* Membership Program at p. 13 ("Members agree by execution of the Membership Application to be bound by the Membership Program and Rules and Regulations of The Club and by the Application for Membership as they may be amended from time to time.").   Given that the Claimants executed such applications *subsequent* to executing the Agreement, the Liquidation Trustee contends that the terms of the Agreement are superseded by the membership applications, thereby negating the terms of the Agreement including, without limitation, the alleged "incentives."   *See Perkins v. Am. Int'l Specialty Lines Ins. Co.* (*In re Int'l Mgmt. Assocs., LLC*), No. 10-06090, 2012 WL 2105908, at *16 (Bankr. N.D. Ga. April 3, 2012) ("[U]nder the contract principle of merger, a later contract supersedes an earlier one covering the same subject matter.") (dispute involving an investment management insurance policy).

### D.   The Declaration as a "Contemporaneous Writing"

28.    The Liquidation Trustee contends that the Declaration of Covenants, Conditions, Restrictions, and Easements for the Sea Island Resort Tracts (the "Declaration") confirms that Sea Island Company had the discretion to shut down the Sea Island Club.  *See Knight Indus.*, 157 Ga. App. at 177−78.  Specifically, the Declaration states that Sea Island Company had the "sole and absolute discretion without notice, to amend or waive the terms and conditions of their respective Private Amenities and to terminate use rights altogether."  *See* Declaration at Article

VII.  And the Liquidation Trustee contends that the "Private Amenities" means the Sea Island Club property:

> Any property and facilities located within, adjacent to, or near the Property owned by anyone other than the Association which owned and operated for commercial, recreational and related purposes are "Private Amenities."

Declaration at Article VII.  As such, the Liquidation Trustee contends that the Declaration is consistent with the Agreement corroborating the Liquidation Trustee's position.  *See* Motion at ¶¶ 23−26.

29.     In addition, the Liquidation Trustee contends that the Agreement and the Declaration are "contemporaneous writings" within the meaning of O.C.G.A. § 24-3-3(a) and that, as such, the Declaration is admissible to explain the Agreement—especially given that they both use the phrase "sole and absolute discretion" and both refer to the same subject matter.  *See* O.C.G.A. § 24-3-3(a).  With "contemporaneous writings," integration clauses are irrelevant.  *See Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459, 314 S.E.2d 874 (1984) (rejecting argument that integration clause and failure to cross reference precludes the admission of a "contemporaneous writing").  Indeed, unlike parol evidence, the Liquidation Trustee contends that the Declaration would be admissible to explain the Agreement without even the necessity of showing an ambiguity in the Agreement.  *See Duke v. KHD Duetz of Am. Corp.*, 221 Ga. App. 452, 471 S.E.2d 537 (1996).  And as the Georgia Supreme Court has recognized, "contemporaneous writings" provide the best evidence of intent of the parties.  *See Baker*, 252 Ga. at 459, 314 S.E.2d at 876; *see also Duke*, 221 Ga. App. 452.

30.     The Settlement Claimants contend, however, that the Declaration does not prejudice their claims because (i) it only affects their *in rem* rights and not their rights under the

Agreement and (ii) the Declaration is not a "contemporaneous writing" within the meaning of O.C.G.A. § 24-3-3(a).

        E.      <u>Attorneys' Fees Shifting</u>

31.    The Liquidation Trustee contends that he is contractually entitled to recover attorneys' fees if he prevails in disallowing the claims of the Settlement Claimants pursuant to section 5.03 of the Agreement as the "prevailing party":

> SECTION 5.03.   <u>Prevailing Party's Attorneys' Fees.</u> In connection with any litigation initiated by a party hereto against the other party hereto and arising out of this Agreement or any instrument or document executed pursuant hereto, the party adjudicated to be the substantially prevailing party shall be entitled to recover reasonable attorneys' fees and disbursements from the other party.

Agreement § 5.03.  But the Liquidation Trustee contends that the Settlement Claimants are not entitled to recover attorneys' fees from the Liquidation Trustee if they prevail because section 12.16 of the Plan expressly prohibits them from doing so.  *See* Plan § 12.16 ("No attorneys' fees will be paid by the Debtors with respect to any Claim or Interest except as expressly specified herein or by order of the Bankruptcy Court.").  So the Liquidation Trustee contends the risks of litigation would fall much more squarely on the Settlement Claimants than on the Liquidation Trustee.

## IV.    **The Rationale for Settlement**

32.    Although the Liquidation Trustee believes that he has good chance of disallowing the claims of the Settlement Claimants, the cost and expense associated with prosecuting a claim objection to disallow such claims confirm that the proposed settlement is in the best interests of the Trust and its Beneficiaries.  *See Justice Oaks*, 898 F.2d at 1549 (requiring consideration of, among other things, the "complexity of the litigation involved, and the expense . . . necessarily

attending it"); *Harbour E. Dev., Ltd.*, No. 10–20733–BKC–AJC, 2012 WL 1851015, at *5 ("Compromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate . . . to the detriment of all creditors.").

33.     And while the Liquidation Trustee contends that he would be entitled to recover his attorneys' fees if he prevailed, there is no guarantee that he would prevail.  Even if the Liquidation Trustee were to prevail, the Liquidation Trustee understands that the Settlement Claimants would almost certainly oppose his request for attorneys' fees, and there would be no assurance that all attorneys' fees and expenses would be collected without significant difficulties given that he might have to pursue numerous parties for their *pro rata* share. *See Justice Oaks*, 898 F.2d at 1549 (requiring consideration of, among other things, the "difficulties, if any, to be encountered in the matter of collection").

34.     In addition, as evidenced by the issues set forth above, the Liquidation Trustee believes that litigation associated with disallowing the claims of the Settlement Claimants would be complicated, *see* Motion at ¶¶ 22−31, and take a great deal of time delaying a distribution to class 4 claimants,[4] *see Justice Oaks*, 898 F.2d at 1549 (requiring consideration of, among other things, the "complexity of the litigation involved, and the . . . *delay* necessarily attending it") (emphasis added) (citations omitted); *Harbour E. Dev., Ltd.*, No. 10–20733–BKC–AJC, 2012 WL 1851015, at *5 ("Compromises are favored in bankruptcy, especially where protracted litigation can . . . *delay* the administration of the case to the detriment of all creditors.") (emphasis added); *see also* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, *speedy*, and inexpensive determination of every case and proceeding.") (emphasis added).

---

[4]   The potential for protracted litigation is more significant here than it might otherwise be given that the Settlement Claimants presumably have significant financial wherewithal as evidenced by the fact that they bought high-end condominiums for only vacation use.

35.     In terms of structuring the settlement, the Liquidation Trustee believes that being able to offer a cash payment to resolve these disputed claims greatly enhanced his ability to reach, and is critical to consummate, the settlement.

36.     Under the circumstances, the Liquidation Trustee submits that the Settlement Agreement should be approved by entry of an order subject to objection on negative notice.

37.     Given the deferential standard for approving settlement agreements, *see Sportsman's Link*, No. 07-10454, 2011 WL 7268047, at *19, and the avoidance of expense associated with potentially avoiding a hearing, *see* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."), the Liquidation Trustee submits that approval on the basis of negative notice is appropriate, *see* 11 U.S.C. § 102(1)(B)(i); *Roberts v. Pierce* (*In re Pierce*), 435 F.3d 891, 892 (8th Cir. 2006) (discussing 11 U.S.C. § 102(1)(B)(i) and concluding: "[n]egative notices are therefore authorized by the Code.") (citation omitted); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) ("A requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing.") (emphasis in the original).


[remainder of the page intentionally left blank]

WHEREFORE, Robert H. Barnett as the Liquidation Trustee respectfully requests that the Court enter an order substantially in the form attached as Exhibit "C": (i) granting the relief requested and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: April 14, 2015.

_/s/ Robert M.D. Mercer_
Robert M.D. Mercer
Georgia Bar No. 502317
BRYAN CAVE LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3488
(404) 572-6600 Telephone

*Counsel for Robert H. Barnett as the Liquidation Trustee Under the Sea Island Company Liquidation Trust*

**EXHIBIT "A"**

# SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "Agreement") is made as of this 13th day of April, 2015 (the "Settlement Date"), by and between Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Liquidation Trust (the "Liquidating Trust") in the Sea Island Company, *et al.* bankruptcy cases, Case No. 10-21034-JSD, Jointly Administered (the "Bankruptcy Cases") pending in the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Court") and the undersigned claimants (collectively, the "Settlement Claimants") (the Liquidation Trustee and the Settlement Claimants are collectively referred to as the "Parties" or individually as a "Party").

## WITNESSETH

**WHEREAS**, on August 10, 2010, Sea Island Company, *et al.* (the "Debtors") initiated the Bankruptcy Cases by filing their voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and the Bankruptcy Cases are currently pending in the Bankruptcy Court;

**WHEREAS**, on September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order");

**WHEREAS**, the Trust Agreement of Sea Island Company Creditors Liquidation Trust dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee. *See* Bankr. Docket No. 449-1;

**WHEREAS**, the Debtors filed a Notice of Effective Date indicating that the Plan became effective on December 16, 2010. *See* Bankr. Docket No. 444;

6413470.4

1

**WHEREAS**, the Claimants (as defined in Bankr. Docket No. 784) filed Disputed Claims (as defined in Bankr. Docket No. 784);

**WHEREAS**, the Liquidation Trustee filed the Liquidation Trustee's Sixth Omnibus Objection to Claims Pursuant to Bankruptcy Rules 3001 and 3007 (the "Claim Objection"). *See* Bankr. Docket No. 784;

**WHEREAS**, to resolve the Claim Objection, the Claimants and the Liquidation Trustee entered into the Consent Order Sustaining the Liquidation Trustee's Sixth Omnibus Objection Pursuant to Bankruptcy Rules 3001 and 3007 (the "Claim Objection Order"). *See* Bankr. Docket No. 899;

**WHEREAS**, the Claim Objection Order, among other things, disallowed all of the Disputed Claims and set a deadline for the Claimants to file amended proofs of claim on or before the Amendment Deadline (as that term is defined in the Claim Objection Order) in compliance with the terms of the Claim Objection Order. *See id.*;

**WHEREAS**, some of the Claimants filed amended proofs of claim on or before the Amendment Deadline, and such Claimants make up the Settlement Claimants;

**WHEREAS**, the Settlement Claimants represent that they all timely and properly voted their Claims[1] in favor of the Plan and that such Claims should be treated as Class 4 Claims under the Plan;

**WHEREAS**, the Liquidation Trustee asserts that the Claims of the Settlement Claimants should be disallowed;

**WHEREAS,** the Parties wish to resolve their disputes in their entirety by this Agreement; and

---

[1] All Capitalized but undefined terms shall have the meaning ascribed to them in the Plan.

6413470.4

**WHEREAS,** the Parties (i) have engaged in extensive negotiations and concluded that the execution and delivery by the respective Party of this Agreement will avoid protracted and expensive litigation and (ii) acknowledge that the Parties will receive a substantial and valuable benefit if the settlement contained herein is consummated.

**NOW THEREFORE**, in consideration of the promises, releases, agreements, and covenants set forth in this Agreement, the Parties hereby stipulate and agree as follows:

1. **Settlement**.   In full and final satisfaction of all of the Settlement Claims (as defined below), subject to the provisions of this Agreement (including, but not limited to, the condition precedent in paragraph 7) and the entry of the Approval Order (as defined below), on or before the Payment Deadline (as defined below), the Liquidation Trustee shall make the settlement payment by initiating a wire transfer in the amount of $135,000 (the "Settlement Payment") to Brennan Wasden & Painter LLP.  The wiring instructions are set forth on Exhibit "A."

2. **Release by the Claimants**.   Upon receipt of the Settlement Payment, the Settlement Claimants fully, completely, unconditionally, absolutely, and irrevocably waive, release, acquit, and discharge all manners of action, causes of action, suits, debts, liabilities, obligations, agreements, demands, accounts, promises, warranties, damages, and consequential damages, costs, expenses, Claims, or demands whatsoever, of any kind or nature whether known or unknown, liquidated or unliquidated, asserted or unasserted, disputed or undisputed, contingent, inchoate or matured, in law or in equity that any one or more of the Settlement Claimants holds or may hold (collectively, the "Settlement Claims") relating in any way to the Bankruptcy Cases or the Debtors against (i) the Liquidation Trustee, (ii) the Liquidating Trust,

3

(iii) the Debtors, and (iv) attorneys, financial advisors, and other professionals representing or acting on behalf of the Liquidation Trustee.

3. **No Admission of Liability**. The Parties understand that this Agreement is a compromise of disputed claims and that no statement contained herein shall be construed as an admission of any liability.

4. **Fees and Costs**. The Parties shall each bear their respective attorneys' fees, expenses, and costs relating to or associated with (i) this Agreement or (ii) the Bankruptcy Cases.

5. **Miscellaneous**. The Parties agree to execute, exchange, deliver, and/or file any further documents necessary to effectuate the terms of this Agreement. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together, shall constitute one agreement that shall be binding on the Parties. Signature or signature pages provided by facsimile or electronic mail shall have the same force and effect as originals. Each Party warrants and represents to the other Party that it has read this Agreement and that the terms and conditions of this Agreement have been read and explained to it by its counsel, and that this Agreement has been entered into willingly and voluntarily in order to settle and compromise disputed claims. Each Party warrants and represents to the other Party that it is sophisticated. As a consequence, the Parties do not intend that the presumptions relating to the interpretation of contracts against the drafter should be applied to this Agreement and, therefore, waive the effects of such presumption. Each Party warrants and represents to the other Party that it has independently conducted its own diligence in connection with entering into the Agreement and is not relying upon any warranty, promise, or representation by the other Party. Each Party warrants and represents to the other Party that it is authorized to execute this Agreement and has

4

full power and authority to enter into this Agreement and that this Agreement is duly executed and delivered and constitutes a valid, binding agreement in accordance with its terms. The Parties hereby consent and agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The Parties also consent and agree that the Bankruptcy Court shall have exclusive jurisdiction with regard to the enforcement and interpretation of this Agreement. The Settlement Claimants represent and warrant (i) that each of them is the owner and holder of the relevant Settlement Claims, (ii) that the Settlement Claims are unencumbered, and (iii) that none of them has transferred, assigned, or encumbered any Claim in any way whatsoever. The Settlement Claimants acknowledge that the Liquidation Trustee is justifiably relying to his detriment on all of their representations and warranties. Captions of the paragraphs of this Agreement are for convenience and reference only, and the words contained therein shall in no way be employed to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement. Where appropriate, to obtain the broadest possible meaning, the singular form of a word should be interpreted in the plural and vice versa, and the gender neutral form of the word shall be interpreted to also include the masculine form.

6. **Modification**. This Agreement may not be revised, superseded, or otherwise modified, except in a written document that (i) explicitly refers to this Agreement, (ii) states explicitly therein that the writing is intended to modify this Agreement, and (iii) is signed by the Party to be charged.

7. **Bankruptcy Court Approval.** The Agreement is subject to the entry of an order by the Bankruptcy Court approving the Agreement (the "Approval Order"). The Approval Order shall, among other things, do the following: (i) authorize the Settlement Payment; (ii) shall

6413470.4

disallow all Claims currently or previously asserted or held by (a) the Settlement Claimants or (b) the Claimants[2]; and (iii) shall disallow all Claims identified in one or more of the following: (a) paragraph 10 of the Claim Objection; (b) Exhibit "B" to the Claim Objection (*see* Bankr. Docket No. 784 at pp. 14 of 28 through 21 of 28); and (c) Exhibit "C" to the Sixth Omnibus Objection (*see* Bankr. Docket No. 784 at pp. 23 of 28 through 25 of 28). The Settlement Claimants covenant and agree to support, and shall not in any way oppose, the Liquidation Trustee requesting the entry of the Approval Order. They also represent and warrant that, to their knowledge, the Settlement Claimants are the only Claimants who filed amended proofs of claim after the entry of the Claim Objection Order. The Liquidation Trustee shall have 20 days from the Settlement Date to request the entry of the Approval Order. The "Payment Deadline" shall mean ten business days after the Approval Order becomes a Final Order. A condition precedent to the Liquidation Trustee's obligation to make the Settlement Payment shall be the Settlement Claimants and Brennan Wasden & Painter LLP providing to the Liquidation Trustee such information as he may reasonably request to allow him to make the necessary reporting to taxing agencies. Thereafter, the Liquidation Trustee shall have three business days to make the Settlement Payment as set forth in paragraph 1 above.

8.   **Entire Agreement**. This Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties. No understanding or oral representation not

---

[2] For the avoidance of doubt, the Claimants shall include the claimants identified in one or more of the following: (a) paragraph 10 of the Claim Objection; (b) Exhibit "B" to the Claim Objection (*see* Bankr. Docket No. 784 at pp. 14 of 28 through 21 of 28); and (c) Exhibit "C" to the Sixth Omnibus Objection (*see* Bankr. Docket No. 784 at pp. 23 of 28 through 25 of 28). To the extent that Claims are identified in one or more of (a) through (c) immediately preceding and the associated claimants are misidentified, the actual claimants for such Claims shall also be considered Claimants.

6413470.4

incorporated in this Agreement shall survive this Agreement and no promises or representations not expressly stated in this Agreement are included by implication.  Unless explicitly set forth in this Agreement, neither Party is relying upon any promise or representation from the other Party to enter into this Agreement.

**IN WITNESS WHEREOF**, the Parties have signed, sealed, and delivered this Agreement as of the  Settlement Date.

[remainder of the page intentionally left blank;
signatures start on the following page]

6413470.4

**The Liquidation Trustee under the Sea Island Company Liquidation Trust**

By: _____

Robert H. Barnett,

Its:    not individually, but as the Liquidation Trustee


By: _____ [L.S]

Don A. Barnette


By: _____ [L.S]

Andrew Been


By: _____ [L.S]

Leah Been


By: _____ [L.S]

Dr. William Hagerty


By: _____ [L.S]

John Hallman, III


By: _____ [L.S]

C. Thomas Hopkins


By: _____ [L.S]

Sara Hopkins


By: _____ [L.S]

Wayne Lewis Hunter


By: _____ [L.S]

Debbie Hunter

**The Liquidation Trustee under the Sea Island
Company Liquidation Trust**

By: _____
Robert H. Barnett,
Its:    not individually, but as the Liquidation
Trustee

By: _Don A. Barnette_ [L.S.]
Don A. Barnette

By: _____ [L.S.]
Andrew Been

By: _____ [L.S.]
Leah Been

By: _____ [L.S.]
Dr. William Hagerty

By: _____ [L.S.]
John Hallman, III

By: _____ [L.S.]
C. Thomas Hopkins

By: _____ [L.S.]
Sara Hopkins

By: _____ [L.S.]
Wayne Lewis Hunter

By: _____ [L.S.]
Debbie Hunter

**The Liquidation Trustee under the Sea Island**
**Company Liquidation Trust**

By: _____

Robert H. Barnett,

Its: not individually, but as the Liquidation
Trustee


By: _____ [L.S.]

Don A. Barnette


By: _____ [L.S.]

Andrew Been
By William E. Dillard,
Counsel for Andrew Been


By: _____ [L.S.]

Leah Been
By William E. Dillard,
Counsel for Leah Been


By: _____ [L.S.]

Dr. William Hagerty


By: _____ [L.S.]

John Hallman, III


By: _____ [L.S.]

C. Thomas Hopkins


By: _____ [L.S.]

Sara Hopkins


By: _____ [L.S.]

Wayne Lewis Hunter

The Liquidation Trustee under the Sea Island
Company Liquidation Trust

By: _____

Robert H. Barnett,
Its:   not individually, but as the Liquidation
Trustee

By: _____ [L.S.]

Don A. Barnette

By: _____ [L.S.]

Andrew Been

By: _____ [L.S.]

Leah Been

By: _____ [L.S.]

Dr. William Hagerty

By: _____ [L.S.]

John Hallman, III

By: _____ [L.S.]

C. Thomas Hopkins

By: _____ [L.S.]

Sara Hopkins

By: _____ [L.S.]

Wayne Lewis Hunter

By: _____ [L.S.]

Debbie Hunter

**The Liquidation Trustee under the Sea Island
Company Liquidation Trust**

By: _____
     Robert H. Barnett,
Its:   not individually, but as the Liquidation
      Trustee


By: _____ [L.S.]
     Don A. Barnette


By: _____ [L.S.]
     Andrew Been


By: _____ [L.S.]
     Leah Been


By: _____ [L.S.]
     Dr. William Hagerty


By: _____ [L.S.]
     John Hallman, III


By: _____ [L.S.]
     C. Thomas Hopkins


By: _____ [L.S.]
     Sara Hopkins


By: _____ [L.S.]
     Wayne Lewis Hunter


By: _____ [L.S.]
     Debbie Hunter

The Liquidation Trustee under the Sea Island
Company Liquidation Trust

By:    _____

      Robert H. Barnett,

Its:   not individually, but as the Liquidation
      Trustee


By:    _____ [L.S.]

      Don A. Barnette


By:    _____ [L.S.]

      Andrew Been


By:    _____ [L.S.]

      Leah Been


By:    _____ [L.S.]

      Dr. William Hagerty


By:    _____ [L.S.]

      John Hallman, III


By:    _____ [L.S.]

      C. Thomas Hopkins


By:    _____ [L.S.]

      Sara Hopkins


By:    _____ [L.S.]

      Wayne Lewis Hunter


By:    _____ [L.S.]

      Debbie Hunter

**The Liquidation Trustee under the Sea Island Company Liquidation Trust**

By: _____
Robert H. Barnett,
Its:   not individually, but as the Liquidation
Trustee

By: _____ [L.S.]
Don A. Barnette

By: _____ [L.S.]
Andrew Been

By: _____ [L.S.]
Leah Been

By: _____ [L.S.]
Dr. William Hagerty

By: _____ [L.S.]
John Hallman, III

By: _____ [L.S.]
C. Thomas Hopkins

By: _____ [L.S.]
Sara Hopkins

By: _____ [L.S.]
Wayne Lewis Hunter

By: _____ [L.S.]
Debbie Hunter

By: _____ [L.S.]
Marsh B. King

By: _____ [L.S.]
Mary Gossett King

By: _____ [L.S.]
Thomas W. Lawhorne

By: _____ [L.S.]
Susan Lawhorne

By: _____ [L.S.]
Thomas W. Lawhorne, Jr.

By: _____ [L.S.]
Robert William Lawson, Jr.

By: _____ [L.S.]
Emily D. Lawson

By: _____ [L.S.]
Philip A. Lloyd

By: _____ [L.S.]
Margaret Lloyd

By: _____ [L.S.]
Salim Moutas Osta

By: _____ [L.S.]
David MacFarlane

By: _____ [L.S.]
Annesley MacFarlane

By: _____ [L.S.]
    Marsh B. King


By: _____ [L.S.]
    Mary Gossett King


By: *J. W. Lawhorne* also Known as J. W. Lawhorne, Jr. [L.S.]
    Thomas W. Lawhorne


By: *Susan C. Lawhorne* [L.S.]
    Susan Lawhorne


By: *J. W. Lawhorne, Jr.* [L.S.]
    Thomas W. Lawhorne, Jr.


By: _____ [L.S.]
    Robert William Lawson, Jr.


By: _____ [L.S.]
    Emily D. Lawson


By: _____ [L.S.]
    Philip A. Lloyd


By: _____ [L.S.]
    Margaret Lloyd


By: _____ [L.S.]
    Salim Moutas Osta


By: _____ [L.S.]
    David MacFarlane


By: _____ [L.S.]
    Annesley MacFarlane

By: _____ [L.S.]
Marsh B. King

By: _____ [L.S.]
Mary Gossett King

By: _____ [L.S.]
Thomas W. Lawhorne

By: _____ [L.S.]
Susan Lawhorne

By: _____ [L.S.]
Thomas W. Lawhorne, Jr.

By: _____ [L.S.]
Robert William Lawson, Jr.

By: _____ [L.S.]
Emily D. Lawson

By: _____ [L.S.]
Philip A. Lloyd

By: _____ [L.S.]
Margaret Lloyd

By: _____ [L.S.]
Salim Moutas Osta

By: _____ [L.S.]
David MacFarlane

By: _____ [L.S.]
Annesley MacFarlane

By: _____ [L.S.]
　　　Marsh B. King

By: _____ [L.S.]
　　　Mary Gossett King

By: _____ [L.S.]
　　　Thomas W. Lawhorne

By: _____ [L.S.]
　　　Susan Lawhorne

By: _____ [L.S.]
　　　Thomas W. Lawhorne, Jr.

By: _____ [L.S.]
　　　Robert William Lawson, Jr.

By: _____ [L.S.]
　　　Emily D. Lawson

By: _____ [L.S.]
　　　Philip A. Lloyd

By: _____ [L.S.]
　　　Margaret Lloyd

By: _____ [L.S.]
　　　Salim Moutas Osta

By: _____ [L.S.]
　　　David MacFarlane

By: _____ [L.S.]
　　　Annesley MacFarlane

By: _____ [L.S.]
Marsh B. King

By: _____ [L.S.]
Mary Gossett King

By: _____ [L.S.]
Thomas W. Lawhorne

By: _____ [L.S.]
Susan Lawhorne

By: _____ [L.S.]
Thomas W. Lawhorne, Jr.

By: _____ [L.S.]
Robert William Lawson, Jr.

By: _____ [L.S.]
Emily D. Lawson

By: _____ [L.S.]
Philip A. Lloyd

By: _____ [L.S.]
Margaret Lloyd

By: _____ [L.S.]
Salim Moutas Osta

By: _____ [L.S.]
David MacFarlane

By: _____ [L.S.]
Annesley MacFarlane

By: _____ [L.S.]
     Marsh B. King

By: _____ [L.S.]
     Mary Gossott King

By: _____ [L.S.]
     Thomas W. Lawhorne

By: _____ [L.S.]
     Susan Lawhorne

By: _____ [L.S.]
     Thomas W. Lawhorne, Jr.

By: _____ [L.S.]
     Robert William Lawson, Jr.

By: _____ [L.S.]
     Emily D. Lawson

By: _____ [L.S.]
     Philip A. Lloyd

By: _____ [L.S.]
     Margaret Lloyd

By: _____ [L.S.]
     Salim Moutas Osta

By: _____ [L.S.]
     David MacFarlane

By: _____ [L.S.]
     Annesley MacFarlane

By: _Robert Mitchell_ [L.S.]
Robert Mitchell

By: _____ [L.S.]
Gordon Mortin

By: _____ [L.S.]
Malinda Mortin

By: _____ [L.S.]
Ismael Salim Osta

By: _____ [L.S.]
Albert Parker

By: _____ [L.S.]
Robin Parker

By: _____ [L.S.]
Howard Ragland

By: _____ [L.S.]
Joelle Ragland

By: _____ [L.S.]
John Saxon

By: _____ [L.S.]
Russell N. Sewell

By: _____ [L.S.]
Linda Sewell

By: _____ [L.S.]
Robert Mitchell

By: _____ [L.S.]
Gordon Mortin

By: _____ [L.S.]
Malinda Mortin

By: _____ [L.S.]
Ismael Salim Osta

By: _____ [L.S.]
Albert Parker

By: _____ [L.S.]
Robin Parker

By: _____ [L.S.]
Howard Ragland

By: _____ [L.S.]
Joelle Ragland

By: _____ [L.S.]
John Saxon

By: _____ [L.S.]
Russell N. Sewell

By: _____ [L.S.]
Linda Sewell

By: _____ [L.S.]

Robert Mitchell

By: _____ [L.S.]

Gordon Mortin

By: _____ [L.S.]

Malinda Mortin

By: _____ [L.S.]

Ismael Salim Osta

By: _____ [L.S.]

Albert Parker

By: _____ [L.S.]

Robin Parker

By: _____ [L.S.]

Howard Ragland

By: _____ [L.S.]

Joelle Ragland

By: _____ [L.S.]

John Saxon

By: _____ [L.S.]

Russell N. Sewell

By: _____ [L.S.]

Linda Sewell

By: _____ [L.S.]
    Robert Mitchell

By: _____ [L.S.]
    Gordon Mortin

By: _____ [L.S.]
    Malinda Mortin

By: _____ [L.S.]
    Ismael Salim Osta

By: *Robin R. Parker* [L.S.]   *Executor of Estate of Albert N. Parker*
    Albert Parker

By: *Robin R. Parker* [L.S.]
    Robin Parker

By: _____ [L.S.]
    Howard Ragland

By: _____ [L.S.]
    Joelle Ragland

By: _____ [L.S.]
    John Saxon

By: _____ [L.S.]
    Russell N. Sewell

By: _____ [L.S.]
    Linda Sewell

By: _____ [L.S.]
    Robert Mitchell

By: _____ [L.S.]
    Gordon Mortin

By: _____ [L.S.]
    Malinda Mortin

By: _____ [L.S.]
    Ismael Salim Osta

By: _____ [L.S.]
    Albert Parker

By: _____ [L.S.]
    Robin Parker

By: _____ [L.S.]
    Howard Ragland

By: _____ [L.S.]
    Joelle Ragland

By: _____ [L.S.]
    John Saxon

By: _____ [L.S.]
    Russell N. Sewell

By: _____ [L.S.]
    Linda Sewell

By: _____ [L.S.]
    Robert Mitchell

By: _____ [L.S.]
    Gordon Mortin

By: _____ [L.S.]
    Malinda Mortin

By: _____ [L.S.]
    Ismael Salim Osta

By: _____ [L.S.]
    Albert Parker

By: _____ [L.S.]
    Robin Parker

By: _____ [L.S.]
    Howard Ragland

By: _____ [L.S.]
    Joelle Ragland

By: _____ [L.S.]
    John Saxon

By: _____ [L.S.]
    Russell N. Sewell

By: _____ [L.S.]
    Linda Sewell

By: _____ [L.S.]
      Robert Mitchell

By: _____ [L.S.]
      Gordon Mortin

By: _____ [L.S.]
      Malinda Mortin

By: _____ [L.S.]
      Ismael Salim Osta

By: _____ [L.S.]
      Albert Parker

By: _____ [L.S.]
      Robin Parker

By: _____ [L.S.]
      Howard Ragland

By: _____ [L.S.]
      Joelle Ragland

By: _____ [L.S.]
      John Saxon

By: _Russell N. Sewell_ [L.S.]
      Russell N. Sewell

By: _Linda R. Sewell_ [L.S.]
      Linda Sewell

By: _____ [L.S.]
    Robert Stolz

By: _____ [L.S.]
    Anne Stolz

By: _____ [L.S.]
    Lance Toland

By: _____ [L.S.]
    Jan Toland

By: _____ [L.S.]
    Ronald Turner

By: _____ [L.S.]
    Peggy Turner

By: _____ [L.S.]
    John Westmoreland

By: _____ [L.S.]
    Kimberly Westmoreland

By: _____ [L.S.]
    Sue Mitchell

By: _____ [L.S.]
    Linda Sewell


By: _____ [L.S.]
    Robert Stolz


By: _____ [L.S.]
    Anne Stolz


By: _____ [L.S.]
    Lance Toland
    By William E. Dillard,
    Counsel for Lance Toland


By: _____ [L.S.]
    Jan Toland
    By William E. Dillard,
    Counsel for Jan Toland


By: _____ [L.S.]
    Ronald Turner


By: _____ [L.S.]
    Peggy Turner


By: _____ [L.S.]
    John Westmoreland


By: _____ [L.S.]
    Kimberly Westmoreland


By: _____ [L.S.]
    Sue Mitchell
    By William E. Dillard,
    Counsel for Sue Mitchell

By: _____ [L.S.]
    Robert Stolz

By: _____ [L.S.]
    Anne Stolz

By: _____ [L.S.]
    Lance Toland

By: _____ [L.S.]
    Jan Toland

By: _____ [L.S.]
    Ronald Turner

By: _____ [L.S.]
    Peggy Turner

By: _____ [L.S.]
    John Westmoreland

By: _____ [L.S.]
    Kimberly Westmoreland

By: _____ [L.S.]
    Sue Mitchell

By: _____ [L.S.]
    Robert Stolz

By: _____ [L.S.]
    Anne Stolz

By: _____ [L.S.]
    Lance Toland

By: _____ [L.S.]
    Jan Toland

By: _____ [L.S.]
    Ronald Turner

By: _____ [L.S.]
    Peggy Turner

By: _____ [L.S.]
    John Westmoreland

By: _____ [L.S.]
    Sue Mitchell

MCDOWELL PROPERTIES, LLC

By: _____

    Philip A. Lloyd - Manager


JIO INVESTMENTS, LLC

By: _____

    Salim Moutas Osta - Manager


BEEN AND SEWELL, LLC

By: _____

    Managing Member


_____

    Printed Name

MCDOWELL PROPERTIES, LLC

By:   _____
      Philip A. Lloyd – Manager


JIO INVESTMENTS, LLC

By:   _____
      Salim Moutas Osta – Manager


BEEN AND SEWELL, LLC


By:   _____
      Managing Member


      _____
      Printed Name

MCDOWELL PROPERTIES, LLC

By: _____
     Philip A. Lloyd - Manager


JIO INVESTMENTS, LLC

By: _____
     Salim Moutas Osta - Manager


BEEN AND SEWELL, LLC

By: _____
     Managing Member

_____
Printed Name

# EXHIBIT "B"

6421419.1

## BRENNAN, WASDEN & PAINTER, LLC

ATTORNEYS AT LAW

JOSEPH P. BRENNAN
WILEY A. WASDEN III
JAMES V. PAINTER, (GA, SC & NY)
MARVIN W. McGAHEE, (GA & SC)
F. MICHAEL TAYLOR, (GA & SC)
W. RICHARD DEKLE
TRACIE G. SMITH
J. CURT THOMAS, (GA & SC)
WILLIAM E. DILLARD III
R. NICOLE SMITH
TRAVIS D. WINDSOR
T. DANIEL TUCKER
ROBERT S.D. PACE
AMANDA DIORIO LYNDE, (GA & IL)
SALLY HASKELL PERKINS
SANDRA V. FOSTER
KATHRYN A. WESTBERRY

411 EAST LIBERTY STREET
SAVANNAH, GEORGIA 31401
TELEPHONE (912) 232-6700
FAX (912) 232-0799

REPLY TO:
P.O. BOX 8047
SAVANNAH, GEORGIA 31412

E-MAIL:
attorneys@brennanwasden.com

April 14, 2015

*__Via Electronic Mail and U.S. Mail__*

Mr. Robert H. Barnett
c/o Robert M.D. Mercer, Esq.
Bryan Cave LLP
1201 West Peachtree Street, NW
14th Floor
Atlanta, Georgia  30309-3488

Re:     Sea Island Company, Sea Island Coastal Properties, LLC,
         Sea Island Services, Inc., Sea Island Resort Residences, LLC,
         Sea Island Apparel, LLC, First Sea Island, LLC, and SICAL, LLC,
         Chapter 11 Bankruptcies; United States Bankruptcy Court for the
         Southern District of Georgia; Jointly Administered as Case
         No. 10-21034-JSD

Dear Mr. Barnett:

        In the above-referenced cases, I represented as of May 31, 2012 all of the Claimants (as that term is defined in Doc. No. 784) as evidenced by my signature on the Consent Order Sustaining the Liquidation Trustee's Sixth Omnibus Objection Pursuant to Bankruptcy Rules 3001 and 3007 (the "Consent Order").  For the avoidance of doubt, the term "Claimants" in the Consent Order refers to the following: (i) the claimants that filed claims identified in paragraph 10 of the sixth omnibus claims objection (Doc. No. 784) (the "Sixth Omnibus Objection"); (ii) the claimants identified in Exhibit "B" to the Sixth Omnibus Objection (*see* Doc. No. 784 at pp. 14 of 28 through 21 of 28);  and  (iii) the claimants identified in Exhibit "C" to the Sixth Omnibus Objection (*see* Doc. No. 784 at pp. 23 of 28 through 25 of 28).

        I am currently representing the parties, which are entering into that certain settlement agreement (the "Settlement Agreement") dated as of April 13, 2015 with Robert H. Barnett as the liquidation trustee (the "Liquidation Trustee").

        After conducting the diligence reflected below, I represent to the Liquidation Trustee that all of the claims of the Claimants will be released pursuant to the Settlement Agreement or were

disallowed by the Consent Order. Without limiting the generality of the foregoing, I further represent to the Liquidation Trustee (i) that Kimberly Westmoreland neither asserts nor holds any claims in the above-referenced bankruptcy cases or against the liquidation trust, (ii) that all of her claims in the above-referenced bankruptcy cases were disallowed by entry of the Consent Order, and (iii) that neither she nor someone on her behalf filed or asserted any claims in the above-referenced bankruptcy cases after the entry of the Consent Order.

My diligence to make the foregoing representations is limited to reviewing the following: (i) the names of the Claimants; (ii) the Consent Order; (iii) the claims reflected on the claims register of Epiq Bankruptcy Solutions, LLC ("Epiq") for above-referenced debtors (the "Debtors") as reflected on Epiq's website;  (iv) the claims reflected on the claims register of the Clerk of Court for the United States Bankruptcy Court for the Southern District of Georgia (the "Clerk") for the above-referenced Debtors as reflected on its website; and (v) the Settlement Agreement.  I have relied on the accuracy of the information in the claims register for Epiq and the Clerk.

I understand that the Liquidation Trustee is relying on the representations contained in this letter; however, such representations shall not affect the finality of the Settlement Agreement.

Thank you for your attention to these matters.

Very truly yours,

William Dillard

For Brennan, Wasden & Painter LLP

cc:   Robert Mercer, Esq.
      Sarah Good, Esq.

# EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, et al., | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge John S. Dalis |
| | ) | |

**ORDER GRANTING, SUBJECT TO OBJECTION ON THE TERMS SET FORTH BELOW, THE MOTION TO APPROVE THE COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

This matter came before the Court upon the Motion of Robert H. Barnett, Liquidation Trustee, for an Order Approving the Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion").[1]  Finding that cause exists to grant the relief requested, it is hereby:

ORDERED, ADJUDGED AND DECREED that the Motion is GRANTED as set forth below; and it is

FURTHER ORDERED that the Settlement Agreement,[2] a copy of which was attached as Exhibit "A" to the Motion, is approved and authorized in all respects, subject to a party in interest filing a written objection with the Court on or before twenty-one (21) days after the entry of this Order; and it is

FURTHER ORDERED that, if a timely objection is filed with the Court, the Court shall hold a hearing at __:__ _.m. on _____ __, 2015 at U.S. Courthouse _____, (the "Hearing"), and the Court shall consider at the Hearing

---

[1] Capitalized but undefined terms used herein have the meaning ascribed to them in the Motion.

[2] To the extent of conflict, ambiguity, or otherwise, the terms of this Order shall prevail over the terms of the Settlement Agreement.

6421419.1

whether to approve the Settlement Agreement and grant the other relief set forth in this Order; and it is

FURTHER ORDERED that the Settlement Agreement is adopted and incorporated in its entirety herein by reference; and it is

FURTHER ORDERED that the Liquidation Trustee is authorized and directed to take all actions contemplated by the Settlement Agreement; and it is

FURTHER ORDERED that the Liquidation Trustee is authorized to pay the Settlement Claimants $135,000.00 pursuant to the terms of the Settlement Agreement; and it is

FURTHER ORDERED that such payment shall be treated and accounted for by the Liquidation Trustee in terms of an allocation between class 4 and class 5 as he deems appropriate; provided, however, the following shall apply: (i) such allocation shall be subject to adjustment by the Court upon entry of an order after notice and a hearing and (ii) to the extent that the Liquidation Trustee allocates the payment to class 5, it shall be treated and accounted for by the Liquidation Trustee as a class 5 distribution under the Plan on account of the Claimants' claim; and it is

FURTHER ORDERED that the Settlement Claims (as defined in the Settlement Agreement) are hereby disallowed in their entirety, and none of the Settlement Claimants or the Claimants shall have any claims against the Trust or the Liquidation Trustee; and it is

FURTHER ORDERED that notwithstanding any Federal Rule of Bankruptcy Procedure to the contrary, the Order shall be immediately enforceable upon its entry; and it is

FURTHER ORDERED that the Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of the Settlement Agreement and this Order; and it is

6421419.1

FURTHER ORDERED that within three (3) business days of entry of this Order the Liquidation Trustee shall serve the Order and the Motion on the same parties and in the same manner as in the certificate of service appearing at Bankr. Docket No. 1308; provided however, that no service shall be required for any party whose claims have been disallowed.  However, for the avoidance of doubt, pursuant to ECF Local Rule 9, the Electronic Case File notice automatically sent to attorneys who have filed a pleading in these cases, including, but not limited to, counsel for the Settlement Claimants and the Claimants, shall constitute service on such attorneys and their clients.  No other or further notice shall be required.

SO ORDERED this ____ day of _____, 2015.
Brunswick, Georgia


_____

JOHN S. DALIS
UNITED STATES BANKRUPTCY JUDGE


Prepared and presented by:


_____*/s/ Robert M.D. Mercer*_____
Robert M.D. Mercer
Georgia Bar No. 502317
BRYAN CAVE LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3488
(404) 572-6600 Telephone

*Counsel for Robert H. Barnett as the Liquidation Trustee*
*Under the Sea Island Company Liquidation Trust*

6421419.1