**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al*., | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors, | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | Contested Matter |
| SEA ISLAND ACQUISITION, LLC, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Judge John S. Dalis |
| ROBERT H. BARNETT, Liquidation Trustee under the Sea Island Liquidation Trust, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KINGS POINT PROPERTY OWNERS ASSOCIATION, INC. | ) | |
| | ) | |
| Intervenor. | ) | |

**REPLY IN SUPPORT OF THE LIQUIDATION TRUSTEE'S MOTION REGARDING THE SUFFICIENCY OF KINGS POINT PROPERTY OWNERS ASSOCIATION, INC.'S RESPONSE TO THE LIQUIDATION TRUSTEE'S FIRST SET OF REQUEST FOR ADMISSIONS, TO EXTEND THE DISCOVERY AND SUMMARY JUDGMENT <u>DEADLINES, AND IN THE ALTERNATIVE FOR AN EXPEDITED HEARING</u>**

Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Liquidation Trust files this reply in support of the Liquidation Trustee's Motion Regarding the Sufficiency of Kings Point Property Owners Association, Inc.'s Response to the Liquidation Trustee's First Set of Request for Admissions, to Extend the Discovery and

Summary Judgment Deadlines, and in the Alternative for an Expedited Hearing (Bankr. Docket Entry No. 1368) (the "Motion") and shows the Court the following:

## INTRODUCTION

Even though the Liquidation Trustee made extensive good faith efforts to reduce the burden on Kings Point Property Owners Association, Inc. ("Kings Point POA") in responding to the requests to admit, Kings Point POA has not taken the most basic steps to respond to the requests to admit.

As to conducting third party diligence, Kings Point POA ignores Rule 36 entirely and instead relies upon the concept of "control" even though that word cannot be found anywhere in Rule 36. Not surprisingly, upon a closer look, none of the cases Kings Point POA cites actually support its argument. And many of them actually undercut its argument. As a practical matter, given that the parties made it clear on the record that they have worked together in the contested matter, it is not unreasonable for Kings Point POA to, among other things, reach out to Sea Island Acquisition LLC ("SIA LLC"), its predecessor in interest with respect to the common areas, in an attempt to get to the bottom of the matters in question. If it is not in a position to admit or deny some of the requests, it should state "in detail" what efforts it undertook to conduct its "reasonable inquiry." Such an approach is certainly more efficient than the parties taking depositions around the country.

As to application of law to fact, Kings Point POA fails to respond to any of the cases the Liquidation Trustee cites. And it only cites *one* case involving Rule 36. That case relies on a *non*-Rule 36 case to support its reasoning. On a more practical level, Kings Point POA's failure to admit or deny such requests is not only inconsistent with Rule 36 it will also make the resolution of the contested matter more time consuming for the Court and the parties.

For these reasons, the Liquidation Trustee requests that the Court enter an order granting the Motion.

I.    The Liquidation Trustee Made Extensive Good Faith Efforts to Reduce the Burden on Kings Point POA.

While Kings Point POA maintains that the Liquidation Trustee's legal position is based on a "selective and inaccurate reading of Rule 36," *see* Bankr. Docket Entry No. 1378 at 5 of 19, it does not question that he has in fact made extensive good faith efforts to reduce the burden on Kings Point POA to respond to the requests for admissions, *see* Bankr. Docket Entry No. 1378 (not questioning).  Indeed, the Liquidation Trustee took the following steps to reduce the amount of effort that Kings Point POA would need to respond to the requests to admit:

a.    Although it is undisputed that the Liquidation Trustee was not required to do so, *compare* Bankr. Docket Entry No. 1368 at n. 8 (citing *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 20 (2007) ("Rule 36 does *not* require that the source of the data in a request to admit be designated.") (emphasis added) (citation omitted) *with* Bankr. Docket Entry No. 1378 (not disputing), for most of the requests for admission, he provided a citation to the source of the data upon which the request for admission is based, *see*, *e.g.*, Bankr. Docket Entry No. 1368-1 at 2 of 61 (*citing* the Sales Procedures Motion and Goldman Fee Order in connection with request to admit that Goldman, Sachs & Co. "was the investment banker for the sale of substantially all of the assets of the Debtors.")

b.    Counsel for the Liquidation Trustee did *not* serve interrogatories with the requests for admission even though it is standard practice to do so.

     c.     In an attempt to resolve the differences between the parties, counsel for the Liquidation Trustee had various phone calls and a lengthy in person meeting with counsel for Kings Point POA.

     d.     On July 31, 2015, counsel for the Liquidation Trustee sent a letter to counsel for the Liquidation Trustee in attempt to resolve the dispute over the requests for admissions.

     1.     For every contested "third party diligence" request for admission, the letter sets forth the source of the information upon which the request is based. *Compare* Bankr. Docket Entry No. 1368 at 23-25 of 45 *with* Bankr. Docket Entry No. 1378 at 11-12 of 19 (acknowledging information provided in good faith letter). The letter further sets forth a great deal of the "third party diligence" legal authority that is in the Motion. *Compare* Bankr. Docket Entry No. 1368 at 21-25 of 45 (portion of letter setting forth "third party inquiry" authority) *with* Bankr. Docket Entry No. 1368 at 7-14 of 45 (portion of motion setting forth "third party inquiry" authority).

     2.     For every contested "application of law to facts" request for admission, the letter sets forth how the law applies to the facts. *See* Bankr. Docket Entry No. 1368 at 42-44 of 45. The letter further sets forth a great deal of the "application of law to facts" legal authority that is in the Motion. *Compare* Bankr. Docket Entry No. 1368 at 41-45 of 45 (portion of letter setting forth "application of law to facts" legal authority) *with* Bankr. Docket Entry No. 1368 at 14-17 of 45 (portion of motion setting forth "application of law to facts" legal authority).

3.      As part of such letter, counsel for the Liquidation Trustee further offered to "assist" counsel for Kings Point POA if they had "any questions about where to find" the relevant information. *See* Bankr. Docket Entry No. 1368 at 25 of 45.

e.      As Kings Point POA acknowledges, the Motion contains a "table" that the Liquidation Trustee "created which cross references each [request for admission] at issue with a 'Base (sic.) of Information.'" *Compare* Bankr. Docket Entry No. 1378 at 11-12 of 19 *with* Bankr. Docket Entry No. 1368 at 12-14 of 45.  And in the "Bases of Information" column, the Liquidation Trustee not only cites the source document but—in almost all instances—the specific page, paragraph, or section number to which Kings Point POA should refer. *See* Bankr. Docket Entry No. 1368 at 12-14 of 45.

II.     <u>Kings Point POA Has Not Stated "in Detail" the Efforts It Took to Conduct Its "Reasonable Inquiry" under Rule 36(a)(4).</u>

While Kings Point POA contends that the Liquidation Trustee's "position relies on a selective and inaccurate reading of Rule 36," *see* Bankr. Docket Entry No. 1378 at 5 of 19, Kings Point POA neither cites any case law to support its position nor attempts to distinguish the cases the Liquidation Trustee cites on pages 7 and 8 in support of his position that Kings Point POA is required to state "in detail" the efforts it took to conduct its "reasonable inquiry" under Rule 36(a)(4), *compare* Bankr. Docket Entry No. 1368 at 7-8 of 45 *with* Bankr. Docket Entry No. 1378 at 5 of 19.  Kings Point POA's statement that it has "investigated amongst its officers, agents, and persons and parties over which it has control" is conclusory and insufficient because it does not "state specifically what efforts have been made." *See Al-Jundi v. Rockefeller*, 91 F.R.D. 590, 594 (W.D.N.Y. 1981) (emphasis added).  And it does not state "why reasonable efforts would be unavailing to obtain the requisite information." *See id.*  Indeed, Kings Point

POA's speculation that, "[e]ven after conducting third party due diligence," it "would still not be in a position to admit or deny the underlying truth of the matters asserted in each request" highlights that Kings Point POA fails to state "*why* reasonable efforts would be unavailing." *Al-Jundi*, 91 F.R.D. at 594 (emphasis added). So at the very least, Kings Point POA should set forth "in detail" what it has done to conduct its "reasonable inquiry" under Rule 36(a)(4).

III.    Kings Point POA Has Not Taken Even the Most Basic Steps to Respond to the Requests for Admission.

While Kings Point POA may believe in good faith that its responses are legally sufficient, it does not appear that it has taken even the most basic steps to respond to the requests for admission even if one puts aside Kings Point POA's obligation to inquire of SIA LLC. For one thing, Kings Point POA never took the Liquidation Trustee up on his offer to assist it in locating information. *See* Bankr. Docket Entry No. 1378 at 11-12 of 19. On top of that, here are three representative examples of basic diligence that Kings Point POA has apparently not undertaken:

        a.    *Review paragraph 14 of the Bansmer Declaration and page 34 of the Goldman Fee Order.* RFA No. 19 requests Kings Point POA to "[a]dmit that Sachs & Co. ("Goldman Sachs") was the investment banker for the sale of substantially all of the assets of Debtors" and cites both the Bansmer Declaration[1] and the Goldman Fee Order. *See* Bankr. Docket Entry No. 1368-1 at 2 of 61. And as set forth in the Motion, *see* Bankr. Docket Entry No. 1368-1 at 2 of 61, paragraph 14 of the Bansmer Declaration states the following: "The Debtors retained Goldman Sacahs & Co. ("Goldman Sachs") as their investment banker to market their assets," Bansmer Decl. at ¶ 14. As further set forth in the Motion, *see* Bankr. Docket Entry No. 1368-1 at 2 of 61, in the Goldman Fee

---

[1] Capitalized but undefined terms shall have the meaning ascribed to them in the Plan (as defined herein).

Order, the Court approved the fees of Goldman Sachs in an amount over $6 million, *see* Goldman Fee Order at 34. It is hard to understand why Kings Point POA has not unconditionally admitted the request given that it is represented by sophisticated bankruptcy counsel who understands the sales process associated with large bankruptcy estates and the retention and compensation of professionals. *See W. Alton Jones Found. V. Chevron U.S.A., Inc.* (*In re Gulf Oil/Cities Serv. Tender Offer Litig.*), No. 82 Civ. 5253, 1990 WL 657537, at *5 (S.D.N.Y. May 2, 1990) ("If the information is readily obtainable from a non-party and is not in genuine dispute, then the policies underlying Rule 36 *dictate* that a litigant be compelled to inquire of the non-party and provide a response.") (emphasis added). Of course, it is possible that Kings Point POA may have some unarticulated reason that it cannot completely admit the request. But even then, it is obligated to do more than state that it "lacks sufficient information or knowledge to admit or deny this request." For instance, given that the Court approved the fees of Goldman Sachs after a protracted contested matter, there should be at least part of the request Kings Point POA should in good faith admit. *See* Fed. R. Civ. P. 36 ("[W]hen good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest."); *Xcel Energy, Inc. v. United States*, 237 F.R.D. 416, 422 (D. Minn. 2006) ("Legal jousting, and advocacy, play such a predominate role in crafting Interrogatories, and their Answers, that it should not be allowed to infect the laudable purposes of Rule 36 in emanating issues for which proof is not required, and in narrowing the issues where proof is required.").

      b.    *Review Paragraph 18 of the Hofmann Declaration and the SIC Counsel Notice of Appearance.* RFA No. 34 requests Kings Point POA to "[a]dmit that, at all

relevant times, SIA LLC was represented by Debevoise & Plimpton, LLP ("Debevoise")."  *See* Bankr. Docket Entry No. 1368-1 at 21 of 61.  In the Liquidation Trustee's good faith letter, he cites both paragraph 18 of the Hofmann Declaration and the SIC Counsel Notice of Appearance in the "Bases for Information" column for this request to admit.  *See* Bankr. Docket Entry No. 1368-1 at 12 of 61.  Hofmann states under penalty of perjury in paragraph 18 of his declaration that SIA LLC "retained Debevoise & Plimpton, LLP ("Debevoise") as counsel to advise it in connection with the sale process and to coordinate the review of over 1,250 documents in the electronic data room."  *See* Hofmann Decl. at ¶ 18.  And on the second day of these cases, a notice of appearance was filed with Debevoise listed as counsel for SIA LLC.  *See* Bankr. Docket Entry No. 43; *see also* Fed. R. Bankr. P. 9010(b).  In addition, on September 8, 2015, Debevoise and Hunter Maclean Exley & Dunn LLP, co-counsel for SIA LLC, filed a memorandum in support of its requested $6 million break up fee.  *See* Bankr. Docket Entry No. 154.  Based on the review of the foregoing alone, Kings Point POA should admit the request.  *See W. Alton Jones Found.* at *5 ("If the information is readily obtainable from a non-party and is not in genuine dispute, then the policies underlying Rule 36 dictate that a litigant be compelled to inquire of the non-party and provide a response.").  But at the very least, it does not appear that it has any good faith reason not to know—or for that matter admit—that Debevoise was bankruptcy counsel of record for SIA LLC from the second day of these cases through the sale of substantially all of the Debtors' assets.[2]  *See* Fed. R. Civ. P. 36 ("[W]hen good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and

---

[2] Indeed, given that the notice of appearance has not been withdrawn, Debevoise is still counsel of record for SIA LLC.

qualify or deny the rest."); *Xcel Energy, Inc.* at 422 ("Legal jousting, and advocacy, play such a predominate role in crafting Interrogatories, and their Answers, that it should not be allowed to infect the laudable purposes of Rule 36 in emanating issues for which proof is not required, and in narrowing the issues where proof is required.")

      c.    *Review Footnote One of the Goldman Fee Order and Confer with its Counsel.*  RFA No. 67  requests Kings Point POA to "admit that the total aggregate consideration under the Asset Purchase Agreement was $343,259,519.00, consisting of the following: the cash purchase price of $210,723,720.00, cash at closing of $5,100,1546.31, and assumed membership deposits of $127,435,643.00" and cites footnote one of the Goldman Fee Order.  *See* Bankr. Docket Entry No. 1368-1 at 44 of 61.  In that footnote, the Court made a fact finding that is an almost verbatim statement of the total aggregate consideration set forth in the request.  *See* Goldman Fee Order at n.1. And at the hearing on Kings Point POA's standing, counsel of record for Kings Point POA stated that SIA LLC "ought to get the benefit of the bargain" given that it "spent hundreds of millions of dollars, a couple of hundred million dollars in purchase price and at least a couple hundred more in assumption of liabilities."  *See* Tr. Kings Point POA Standing Hr'g 23:22-24:3; *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (statement of counsel during trial may either be a judicial or evidentiary admission depending on the circumstances).  Based on the review of the foregoing alone, Kings Point POA should admit the request.  *See W. Alton Jones Found.* at *5 ("If the information is readily obtainable from a non-party and is not in genuine dispute, then the policies underlying Rule 36 dictate that a litigant be compelled to inquire of the non-party and provide a response.").  In the alternative, at the very least, it should be willing to

admit what its counsel told the Court.[3]   *See* Fed. R. Civ. P. 36 ("[W]hen good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest."); *Xcel Energy* at 422 ("Legal jousting, and advocacy, play such a predominate role in crafting Interrogatories, and their Answers, that it should not be allowed to infect the laudable purposes of Rule 36 in emanating issues for which proof is not required, and in narrowing the issues where proof is required.").

IV.   Kings Point POA Is Obligated to Conduct Third Party Diligence.

It is undisputed that there is nothing in the plain language of Rule 36 absolving parties of having to conduct "reasonable inquiry" through third party diligence.   *Compare* Bankr. Docket Entry No. 1368 at 9 of 45 (*citing Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-41 (1991) (interpreting the Federal Rules of Civil Procedure like a statute and stating, "we give the Federal Rules of Civil Procedure their plain meaning.") *with* Bankr. Docket Entry No. 1378 at 6-13 of 19.   Indeed, it is telling that Kings Point POA ignores the language of Rule 36 entirely and instead argues that the relevant standard is "control."   *See* Bankr. Docket Entry No. 1378 at 6-8 of 19.   But Kings Point POA's argument fails because it is not based on the plain language of Rule 36.   *See Bus. Guides* at 540-41 (Interpreting the Federal Rules of Civil Procedure like a statute and stating, "we give the Federal Rules of Civil Procedure their plain meaning.").

---

[3] It is not the intention of the Liquidation Trustee to play gotcha.  Every lawyer now and then makes a misstatement that they later regret.  But given the extent to which Kings Point POA relies upon the asset purchase agreement and the circumstances of these cases generally, it does not appear that this was one of those instances.  *See* Bankr. Docket Entry No. 1161 at n.4 (discussing in detail the "main theme permeating the Debtors' reorganization efforts") & ¶ 25 (relying on the definition of "Purchased Assets" from section 2.1 of the asset purchase agreement to argue that the "Common Areas" should be transferred to SIA LLC).

And Kings Point POA is wrong when it argues on page 6 of its opposition that the case law the Liquidation Trustee cites "directly contradicts" the Liquidation Trustee's position that "nothing in Rule 36 absolves a party from making 'reasonable inquiry' through third parties." To support its argument, Kings Point POA cites *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250 (C.D. Cal. 2006) and includes the following quotation: "Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents **within the responding party's relative control** and to state fully those efforts." *See* Bankr. Docket Entry No. 1378 at 6 of 19 (emphasis supplied by Kings Point POA).

But Kings Point POA neglects to note that only two sentences later in the same block quotation from *Henry v. Champlain Enter. Inc.*, 212 F.R.D. 75 (N.D.N.Y. 2003) it states the following:

> The inquiry may *require* venturing beyond the parties to the litigation and include, under certain circumstances, non-parties . . .. The operative words then are "reasonable" and "due diligence."

237 F.R.D. at 254 (emphasis added). And Kings Point POA neglects to note the very sentence after the quotation above is a lengthy quotation from *Uniden Am. Corp. v Ericsson*, 181 F.R.D. 302 (M.D.N.C. 1998) found on page 10 of the Liquidation Trustee's brief and which Kings Point POA spends almost the entire first section of its brief arguing that the standard from such quotation does not apply. *See*, *e.g.*, Bankr. Docket Entry No. 1378 at 6-9 of 19. Indeed, the court in *A. Farber* not only quotes *Uniden*, but goes one step further by adding the following introductory phrase "[a]t a minimum." 237 F.R.D. at 254. Accordingly, the court in *A. Farber* made it clear that the obligation to conduct third party inquiry—when the criteria from *Uniden* are satisfied—is a *minimum* obligation placed upon a party responding to a request to admit.

Similarly, the cases upon which Kings Point POA relies on pages 7 and 8 of its opposition to support its "control" arguments are unavailing.   For the convenience of the Court, such decisions are addressed in the same order as they are cited on pages 7 and 8 of Kings Point POA's opposition.

### *U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675 (E.D. Ca. 2006)

Kings Point POA includes quotes *U.S. ex rel. Englund* as follows:

> Reasonable inquiry is limited to persons and documents within the responding party's control (e.g., its employees, partners, corporate affiliates, etc.)   It does not require the responding party to interview or subpoena records from independent third parties in order to admit or deny a Request for admission.

Bankr. Docket Entry No. 1378 at 7 of 19.   The court in *U.S. ex rel. Englund* cites page 43 of *T. Rowe Price Small Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38 (S.D.N.Y. 1997) in support of those two sentences.   But as discussed below, *T. Rowe Price* undercuts—and does not advance—Kings Point POA's argument.   And Kings Point POA also quotes *U.S. ex rel. Englund* as follows: "Because request for admissions can have dire consequences, the responding party's duty to obtain information is no broader than that owed in responding to interrogatories; i.e., *generally* limited to obtaining information from persons and entities over which it has actual control."   Bankr. Docket Entry No. 1378 at 7-8 of 19 (emphasis added).   But such quotation does not advance Kings Point POA's argument for three reasons.   *First*, the use of the word "generally" makes it clear that the Eastern District of California was not making a one-size-fits-all pronouncement.   *Second*, the statement was dicta; the issue of third party diligence was not relevant to the discussion of the "requests at issue."   *See* 235 F.R.D. 675, 685-91. *Third*, the court cites no authority for its statement.

**_T. Rowe Price Small Cap Fund, Inc. v. Oppenheimer & Co., Inc._, 174 F.R.D. 38 (S.D.N.Y. 1997)**

Kings Point POA quotes _T. Rowe Price_ as follows:

> _Generally_, "reasonable inquiry," for purposes of responding to requests for admission, is limited to review and inquiry of those persons and documents that are within responding party's control.

Bankr. Docket Entry No. 1378 at 7 of 19 (emphasis added). But it is clear even from the quoted language that the statement only "generally" applies. And Kings Point POA overlooks the fact that the court in _T. Rowe Price_ acknowledges that "under certain circumstances, parties may be _required_ to inquire of third parties in order to properly respond to requests to admit." _See_ 174 F.R.D. 38, 43 (emphasis added). The court gives two examples where third party inquiry is required by citing two decisions in support of its "_see, e.g.,_" citation. _First_, it cites _In re Gulf Oil/Cities Serv. Tender Oil Litig._, Nos. 82 Civ. 5253, 87 Civ. 8982 (MBM), 1990 WL 657537 (S.D.N.Y. May 2, 1990)[4] and summarizes _Gulf Oil_ in a parenthetical quotation as follows: a party "_must_ consult non-parties' counsel to confirm data derived from figures in documents produced by non-party, where [the party] and non-party have parallel interests and have been closely cooperating in conducting discovery in two relates cases." _See_ 1990 WL 657537 at 43 (emphasis added). _Second_, it cites and summarizes _Al-Jundi_ in a parenthetical quotation as follows: "[W]here, without extraordinary expense or effort, defendant may be able to respond based upon information secured from co-defendants and their counsel, such efforts _must_ be made." _Id._ (emphasis added). And the facts in _T. Rowe Price_ are completely different than they are here given that the responding party in that case would have had to subpoena the Federal Deposit Insurance Corporation in another city (Chicago), potentially litigate a challenge to the

---

[4] The Liquidation Trustee cites _Gulf Oil_ on, among other places, page 11 of the Motion. _See_ Bankr. Docket Entry No. 1368 at 11 of 45.

subpoena, travel to Chicago to review "large volumes of documents," and pay for the expense of the production. *See id.* at 44.

### *Bouchard v. United States*, 241 F.R.D. 72 (D. Me. 2007)

Kings Point POA quotes *Bouchard* as follows:

> The obligation to undertake a reasonable inquiry requires the respondent to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control.

Bankr. Docket Entry No. 1378 at 7 of 19 (emphasis added). *Bouchard* does not, however, advance Kings Point POA's "control" argument. As an initial matter, the issue of whether a party has to make a third party inquiry when it does not have control of either the documents or the people in question—which is the issue Kings Point POA contends is before the Court—does not apply in *Bouchard* because the documents in question were in the party's control. *See* 241 F.R.D. 72, 76. So any statements from *Bouchard* are dicta. But the dicta in *Bouchard* refutes— and does not support— Kings Point POA's position. The court in *Bouchard* makes the following clear: (i) "a respondent is *required* 'to ascertain the truth if the ability to do so is reasonably within his power,'" and (ii) "if the accuracy of the documents subject to a Rule 36 request can be determined 'from reliable sources without imposing undue hardship,' the respondent is *obligated* to respond." *See* 241 F.R.D. 72 at 76 (emphasis added).

### *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1 (2007)

Kings Point POA quotes *Tequila Centinela* out of context. In that case, the court was considering a different issue. The responding party stated in its supplement responses that it was "without sufficient knowledge to admit or deny," but failed to comply with Rule 36(a) of the Federal Rules of Civil Procedure because it did not state, among other things, that it had conducted a "reasonable inquiry." *See* 242 F.R.D. 1at 14. Given that the responding party failed

to comply with Rule 36(a) of the Federal Rules of Civil Procedure, the court directed it to serve amended responses.

### *Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984)

Citing *Searock*, Kings Point POA argues that "'control' . . . is a term of art and has been clearly and consistently defined by federal courts as the legal right to obtain the *documents* requested upon demand."  Bankr. Docket Entry No. 1378 at 7 of 19 (emphasis added).  But as such quotation suggests and the preceding sentence—*"Under Fed. R. Civ. P. 34*, control is the test with regard to the *production of documents,"* 736 F.2d 650, 653 (emphasis added)—makes it crystal clear Kings Point POA is conflating "control" as it applies to document production under Rule 34 of Federal Rules of Civil Procedure—which explicitly refers to "control"[5]—with responding to requests for admission under Rule 36 of the Federal Rules of Civil Procedure—which does not refer to "control."[6]

### V.      The *Uniden* Criteria Have Been Satisfied.

Contrary to Kings Point POA's allegation on page 9 of its opposition, the Liquidation Trustee has done much "more than make unsupported, conclusory allegations that the criteria set forth in *Uniden*" are satisfied as to the relationship between Kings Point POA and SIA LLC.  As an initial matter, however, it is important to note that the burden of persuasion falls on Kings Point POA to prove that the *Uniden* criteria are not satisfied rather than falling on the Liquidation Trustee to prove that they are satisfied. *See Solis v. La Familia Corp.*, No. 10-2400-EFM-GLF, 2012 WL 1906508, at *2 (D. Kan. 2012).   Here, however, such criteria are easily satisfied.  In *Uniden*, the court only required that there be "*some* identify of interest manifested"

---

[5] *See* Fed. R. Civ. P. 34 (a)(1) (party must produce documents in the party's "possession, custody, or control").
[6] *See* Fed. R. Civ. P. 36.

and "no manifest or potential conflict" between the parties.   *See* 181 F.R.D. 302, 304-05 (emphasis added).   Such "identity of interest" can be demonstrated by, among other things, showing any one of the following: (i) "both being parties to the litigation;" (ii) "a present or prior relationship of mutual concerns;" or (iii) "active cooperation in the litigation."   *See id*.   Here, Kings Point POA has *not* even alleged that there is *any* conflict much less offered any *evidence* of one.   And there is clearly an "identity of interest."   Even though only one of the three criteria must be satisfied, here all three are satisfied.   *First*, it is beyond dispute that both Kings Point POA and SIA LLC are parties to the contested matter.   Given that there is no conflict, the fact that both Kings Point POA and SIA LLC are parties is alone sufficient to satisfy the disjunctive *Uniden* criteria.   *Second*, there is also clearly a "relationship of mutual concerns" given that SIA LLC transferred the common areas to Kings Point POA on a conditional basis.   *See* Bankr. Docket Entry No. 1176-1 at 1-2 of 2 (cover letter stating that the quitclaim deed would be held in escrow pending a favorable ruling by the Court) & Bankr. Docket Entry No. 1176-2 at 1-4 of 4 (quitclaim deed from SIA LLC to Kings Point POA).   *Third*, it is remarkable that Kings Point POA does not concede that there has been "active cooperation in the litigation" when its counsel acknowledged at the hearing on its standing that there has been "lots of behind the scenes discussions" in terms of coordinating legal briefing and arguments between the parties.   *See* Tr. Kings Point POA Standing Hr'g 18:11-19:11; *see also id*. at 41:89 & 13-17 (statement by counsel for SIA LLC: "That was in large part why we brought the motion.  We weren't interested in holding title to those common elements . . .. The expense has grown significant for everybody involved but we're here and we would like for this property owners' association to be on board in this matter.  We have worked together up to this point and we would probably

continue to do that."). Here, given the foregoing, the *Uniden* criteria have been satisfied as a matter of law.

VI.     Kings Point POA's Argument About the Application of Law to Facts Fails.

Kings Point POA fails to respond to any of the cases the Liquidation Trustee cites in support of his argument that his requests for admission properly seek the application of law to fact.  *Compare* Bankr. Docket Entry No. 1368 at 14-17 of 45 *with* Bankr. Docket Entry No. 1378 at 13-15 of 19.  And it neither disputes that the 1970 Advisory Committee Note to Rule 36 makes it clear that requests for admission are proper as long as they do not seek "admissions of law unrelated to the facts of the case," *see* Bankr. Docket Entry No. 1368 at 15 of 45, nor  that, in the Eleventh Circuit, advisory committee notes are "accorded great weight in interpreting federal rules" and is "highly persuasive,"  *see* Bankr. Docket Entry No. 1368 at 15 of 45.  While Kings Point POA contends that "contractual interpretation  . . . is undeniably a matter of law for the Court," *see* Bankr. Docket Entry No. 1378 at 13 of 19, it fails to cite *any* authority holding that contract interpretation is inappropriate for requests for admissions, *see* Bankr. Docket Entry No. 1378 at 13-14 of 19.  In fact, the *only* decision that Kings Point POA cites in the paragraph starting with the word "first" on pages 13 through 14 involving Rule 36 is *Tulip Computers International B.V. v. Dell Computer Corp.*, 210 F.R.D. 100 (D. Del. 2002).  And *Tulip Computers* involves patents and *not* contracts.  *See* 210 F.R.D. 100, 108.  But more problematically, that case relies on patent cases that do *not* involve Rule 36 to reach its result. *See id.*  As to the following paragraph on page 14 starting with the word 'indeed," it is unclear what relevance parole evidence has to Rule 36(a) of the Federal Rules of Civil Procedure, and none of the cases cited in that paragraph involve requests to admit.  As such, the Liquidation Trustee's requests to admit involve a proper application of law to fact.

VII.     The Liquidation Trustee's Challenge to Kings Point POA's Objection to the Application of Law to Fact Requests to Admit Is Not Moot.

Kings Point POA states in its opposition that it has "denied" the Liquidation Trustee's requests to admit, which Kings Point POA contends seek a "pure issue of law," and therefore, the Liquidation Trustee's challenge to such objections is moot. *See* Bankr. Docket Entry No. 1378 at p. 15. But when the Liquidation Trustee sought clarification and asked whether Kings Point POA "will revise its responses" to "reflect that it denies [them]—without objection," *see* Exhibit "A," Kings Point POA stated that it would not, but maintained that the matter was still moot, *see* Exhibit "B." Thereafter, the Liquidation Trustee stated that it *did* make a practical difference for a number of reasons including the fact that Kings Point POA refused to respond to an interrogatory asking the basis for Kings Point POA's response to RFA No. 16 because Kings Point POA had *objected* to the request to admit as a matter of law. *See* Exhibit "C." Kings Point POA never responded to the Liquidation Trustee. Given Kings Point POA unwillingness to deny such requests and its unwillingness to respond to an interrogatory requesting the basis for its response to RFA No. 16, it is clear that the relief the Liquidation Trustee seeks is not moot.

VIII.    Requests to Admit May Seek Admissions about "Central Facts in Dispute."

Kings Point POA is wrong when it argues on pages 15 and 16 that the Liquidation Trustee's requests are impermissible because they "seek admissions as to central facts in dispute." *See* Bankr. Docket Entry No. 1368 at 15-16 of 45. Before the 1970 amendments to Rule 36, there was a split of authority as to whether a request could seek "admissions relating to factual matters central to the dispute." *See Am. Nat'l Prop. and Cas. Co. v. Moore*, Civ. Act. No. 2:14-10320, 2015 WL 1565851, at *4 (S.D. W. Va. 2015). "The law changed, however, with the 1970 amendment to Rule 36(a)." *Id.* After the addition of Rule 36(a)(5)—which makes it clear that a party cannot "object solely on the ground that the requests presents a genuine issue for

trial," "it is *irrelevant* that a particular Request seeks admission of '*ultimate facts*'" because "Rule 36 does not except such facts from its requirements." *See Guinan v. A.I. duPont Hosp. for Children*, Civ. Action No. 08-228, 2008 WL 938874, at *2 (E.D. Pa. 2008) (emphasis added); *see also Moore*, at *4 (discussing in detail the change in the law and concluding that "it is no longer a defense that a deemed admission cannot extend to *central factual issues* in a case") (emphasis added).

Indeed, numerous courts recognize that "ultimate facts" and "dispositive" issues fall squarely within the scope of Rule 36. *See, e.g., Carney v. Internal Revenue Serv.* (*In re Carney*), 258 F.3d 415, 419 (5th Cir. 2001) ("Rule 36 allows litigants to request admissions as to a broad range of matters, including *ultimate facts*, as well as applications of law to fact.") (emphasis added); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 10 (D.D.C. 2011) (same); *Hitachi Medical Systems America, Inc. v. Lubbock Open MRI*, No. 5:09CV847, 2010 WL 4643643, at *2 (N.D. Ohio 2010) ("Rule 36 allows parties, as part of discovery, to request admission of issues that are *dispositive* of the case."); *Edwards v. Sinetos* (*In re: Inteco Int'l Trade Corp.*), Adv. No. 12-2137, 2014 WL 2754936, at *5 (Bankr. D.N.J. June 14, 2014) ("A litigant may request admissions on a "broad range of matters, including *ultimate facts* as well as application of law to facts.") (emphasis added) (*quoting Carney*); *In re Sweeten*, 56 B.R. at 678 (Bankr. E.D. Pa. 1986) ("Nor does it matter if the plaintiff seeks admissions on so-called '*ultimate facts*.' . . . Indeed, the rule expressly states that a party may not refuse to respond to a request merely on the ground that the 'matter for which an admission has been requested presents a genuine issue for trial.'") (emphasis added) (citation omitted).

Given that the 1970 amendments to Rule 36 of the Federal Rules of Civil Procedure changed the law in this regard, it is no coincidence that all of the cases Kings Point POA cites

that are on point predate such amendment to Rule 36. *Whitaker v. Belt Concepts of Am., Inc.* (*In re Olympia Holding Corp.*), 189 B.R. 846 (Bankr. M.D. 1995), the only post-1970 decision that is on point, is unpersuasive. *First*, it ignores the 1970 amendments to Rule 36 of the Federal Rules of Civil Procedure and the effect of Rule 36(a)(5) in particular. *Second*, while it acknowledges that other courts have ruled otherwise, it makes no attempt to distinguish those cases. *Third*, it relies on a case from the former Fifth Circuit, *Pickens v. Equitable Life Assurance Soc'y.*, 413 F.2d 1390 (5th Cir. 1969), but given that it was decided before the 1970 amendments to Rule 36, it is not persuasive. In fact, the Fifth Circuit in *Carney* did not even bother to distinguish *Pickens*. *See* 258 F.3d at 419. And the Southern District of West Virginia in *Am. Nat'l Prop.* cites *Pickens* as a decision reflecting pre-1970 case law. *See* 2015 WL 1565851 at *4.

*Le v. Krepps* (*In re Krepps*), 476 B.R. 646 (Bankr. S.D. Ga. 2012), obviously does not predate the 1970 amendments, but it does not advance Kings Point POA's argument. Kings Point POA contends on page 16 that that the Bankruptcy Court for the Southern District of Georgia cites *Olympia Holding* with approval. Actually, the court quotes *Dobrowski v. Kay Dee Congtractors, Inc.*, 2008 WL 2157061 (E.D. Mich. 2008) with approval and noted that the court in *Dobrowski* cited *Olympia Holding*. But the fundamental problem is that the court in *Krepps* quotes *Dobrowski* for the proposition that "requests for admissions should not be directed toward conclusions of law." 476 B.R. at 649 (*quoting Dobrowski*, 2008 WL at *1) (*citing Olympia Holding Corp.*). So *Krepps* does not support Kings Point POA's argument. In fact, *Krepps* refutes it. In that case, the debtor failed to respond to the trustee's requests to admit. *See* 476 B.R. at 648. On that basis alone, the Bankruptcy Court for the Southern District of Georgia granted summary judgment to trustee. *See* 476 B.R. at 646. Therefore, by definition, the court

in *Krepps* rejected the argument that requests to admit may not "seek admissions as to central facts in dispute." *See id.*

IX.     Kings Point POA Ignores the Liquidation Trustee's Challenge to Its Responses Set Forth in Appendix C.

The Liquidation Trustee challenges Kings Point POA's response to RFA Nos, 7, 73, and 105 on the basis that they fail to "fairly meet the substance of the request." *See* Bankr. Docket Entry No. 1368-3 at pp. 2-6 (*citing House v. Giant of Md. LLC*, 232 F.R.D. 257, 260 (E.D. Va. 2005) ("If the responding party finds that wording of a request for admission imprecise, he should set forth a qualified answer that *fairly meets the substance of the request*.") (emphasis added).  For the Court's convenience, the Liquidation Trustee first summarizes the challenges to the three responses—which are set forth more fully in Appendix C—and then addresses Kings Point POA's response to the Liquidation Trustee's challenge.

RFA No. 7 is related to the Liquidation Trustee's merger doctrine argument.  Even though the language from sections 2.10(b) and (c) of the Asset Purchase Agreement—requiring the "delivery and acceptance of a real property deed"—mirrors the language from the standard for the doctrine of merger, *see Rampura, LLC v. Main and 75 Ctr., LLC*, No. CIVA1:06CV515CAP, 2008 WL 3861203, at \*7 (N.D. Ga. Feb. 13, 2008) ("Georgia law on survival of terms and conditions is that those found in the sales contract do not survive the closing *unless specifically reserved or unless they are not performed by delivery and acceptance of the deed*.")  (emphasis added), Kings Point POA avoids responding to the request by denying the request "as stated" and responding in a way that dodges the issue, *see* Bankr. Docket Entry No. 1368-3 at p 2.

RFA No. 73 is related to the Liquidation Trustee's argument that Kings Point POA does not have standing under the Asset Purchase Agreement.  Kings Point POA admits that the

"Debtors and the Liquidation Trustee were the only signatories to the Liquidation Trust Agreement."  Of course, it is obvious that they are *signatories* to the agreement.  But Kings Point POA's response impermissibly avoids the substance of the request, which is whether the Debtors and the Liquidation Trustee are the only *parties* to the Liquidation Trust Agreement.  This issue is relevant because Kings Point POA argues that the Liquidation Trustee must transfer the Kings Point Common Elements to SIA LLC because of a recital in the Liquidation Trust Agreement even though neither SIA LLC nor Kings Point POA has standing under the agreement.

RFA No. 105 is related to the dispute between the parties as to whether paragraph twelve of the Confirmation Order or section 5.04 of the Confirmed Plan governs what vests into the Liquidation Trust.  Kings Point POA maintains that paragraph twelve of the Confirmation Order—and not section 5.04 of the Confirmed Plan—governs what vests into the Liquidation Trust.  *See* Tr. Kings Point POA Standing Hr'g 21:18-22:19.  The Liquidation Trustee maintains that such argument is unavailing given, among other things, that the Confirmation Order expressly provides the following: the "property of the Debtors as set forth in the Plan, shall be transferred to the Liquidation Trust *in accordance with the provisions of the Plan*." *See* Confirmation Order at ¶ 14(iii) (emphasis added).  By dodging the severability issue (Kings Point POA neither admits nor denies that the terms of the Plan "are an integral part of the Order"), Kings Point POA apparently is attempting to leave its options open to try to  get around paragraph 14(iii) of the Confirmation Order.  But paragraph one of the Confirmation Order is clear that the terms of the Plan "are an *integral* part of this Order."  *See* Confirmation Order at ¶ 1 (emphasis added).  And the terms of paragraph one of the Confirmation Order are *res judicata.  See In re Greater Am. Land Res., Inc.*, 452 B.R. 532, 538 (Bankr. D.N.J. 2011) ("The

plan confirmation order is *res judicata* as to all issues decided or which could have been decided before confirmation occurs.").

In response to such challenges, Kings Point POA only states the following: "[T]he Trustee requests that Kings Point POA be forced to withdraw its objections to these requests and respond.  Kings Point POA, however, did not object to these requests.  Instead, Kings Point POA denied these requests 'as stated' and then continued to admit a portion of the request.  Such a response is clearly allowed by Rule 36."  *See* Bankr. Docket Entry No. 1368 at p. 17.  The foregoing obviously does not respond in any meaningful way to the Liquidation Trustee's challenges.  Accordingly, Kings Point POA should amend its responses to "fairly meet the substance of the requests."  *House*, 232 F.R.D. at 260.

[remainder of page intentionally left blank]

## <u>CONCLUSION</u>

For the foregoing reasons, the Liquidation Trustee requests that the Court grant the Motion.

Dated:  September 28, 2015

*/s/ Robert M.D. Mercer*
Robert M.D. Mercer
Georgia Bar No. 502317
SCHULTEN WARD & TURNER LLP
260 Peachtree Street
Suite 2700
Atlanta, Georgia  30303
(404) 688-6800  Telephone
(404) 688-6840  Facsimile

*Counsel for Robert H. Barnett as the*
*Liquidation Trustee under the Sea Island*
*Company Liquidation Trust*

# EXHIBIT "A"

**Good, Sarah**

| | |
|---|---|
| **From:** | Mercer, Robert |
| **Sent:** | Tuesday, September 08, 2015 6:30 PM |
| **To:** | jtate@robertstate.com |
| **Cc:** | Robert H. Barnett; 'Walker, Thomas R.'; Good, Sarah |
| **Subject:** | sic |

Jason, based on my review of your September 4 letter, I understood you to offer to amend the responses of Kings Point Property Owners Association, Inc. ("Kings Point POA") to the Liquidation Trustee's first requests for admissions to conform to your September 4 letter and Kings Point POA's opposition. *See* Bankr. Docket No. 1378 at p. 16. To make sure we are on the same page, I wanted to ask you about 2 items.

     1.    Is Kings Point POA stating that it will revise its responses to the Liquidation Trustee's first set of requests to admit to reflect that it denies—without objection—the following requests to admit: RFA's 2-3, 6, 10, 16, 70, 72, 74, 74, 84-86, 106, 111, 113, 116-17, 119-120, 124, and 126, and 127 (collectively, the "Application of Law to Fact RFAs")?

     2.    Does Kings Point POA contend that its letter amends the responses to the Liquidation Trustee's first set of requests beyond the Application of Law to Fact RFAs? If so, would you formally amend such responses?

Thank you for your attention to these matter.   rm

B R Y A N  C A V E     **Robert Mercer**
*Partner*
robert.mercer@bryancave.com   T: +1 404 572 6976   M: +1 678 628 7439

# EXHIBIT "B"

{4592/011/01360817.DOCXv2}

**Good, Sarah**

| | |
|---|---|
| **From:** | Jason Tate <jtate@robertstate.com> |
| **Sent:** | Wednesday, September 09, 2015 6:04 PM |
| **To:** | Mercer, Robert |
| **Cc:** | Robert H. Barnett; 'Walker, Thomas R.'; Good, Sarah |
| **Subject:** | RE: sic |

Robert:

In response to your email:

1.  No.  KPPOA is stating that it believes that its objections are proper, but that it is irrelevant because KPPOA has denied the requests regardless and stated that it would have denied the requests notwithstanding the objections.  In other words, there is no relief that the LT can be afforded because striking the objections would only result in KPPOA denying the requests, which it has already done.

2.  Yes, but not formally.  Please see the last paragraph of the letter: "Please let us know if KPPOA needs to file a formal supplementation with respect to the responses that it has amended."  As stated, KPPOA is happy to formally amend its responses if the LT would like it to.

**JASON M. TATE**

# ROBERTS | TATE LLC

**P.O. BOX 21828**
**114 ISLAND PROFESSIONAL PARK**
**ST. SIMONS ISLAND, GEORGIA 31522**
**PHONE: (912) 638-5200**
**FAX: (912) 638-5300**
**JTATE@ROBERTSTATE.COM**
**WWW.ROBERTSTATE.COM**

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

CONFIDENTIALITY NOTICE: This electronic mail transmission may have been sent by or on behalf of a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication.
NOTICE: No duties are assumed, intended, or created by this communication. If you have not executed a fee contract or an engagement letter, this firm does not represent you as your attorney. You are encouraged to retain counsel of your choice if you desire to do so.

**From:** Mercer, Robert [mailto:Robert.Mercer@BryanCave.com]
**Sent:** Tuesday, September 8, 2015 6:30 PM
**To:** Jason Tate <jtate@robertstate.com>
**Cc:** Robert H. Barnett <rbarnett@conwaymackenzie.com>; 'Walker, Thomas R.' <Trwalker@mcguirewoods.com>; Good,

Sarah <sarah.good@bryancave.com>

**Subject:** sic

Jason, based on my review of your September 4 letter, I understood you to offer to amend the responses of Kings Point Property Owners Association, Inc. ("Kings Point POA") to the Liquidation Trustee's first requests for admissions to conform to your September 4 letter and Kings Point POA's opposition.  *See* Bankr. Docket No. 1378 at p. 16.  To make sure we are on the same page, I wanted to ask you about 2 items.


      1.     Is Kings Point POA stating that it will revise its responses to the Liquidation Trustee's first set of requests to admit to reflect that it denies—without objection—the following requests to admit: RFA's 2-3, 6, 10, 16, 70, 72, 74, 74, 84-86, 106, 111, 113, 116-17, 119-120, 124, and 126, and 127 (collectively, the "Application of Law to Fact RFAs")?

      2.     Does Kings Point POA contend that its letter amends the responses to the Liquidation Trustee's first set of requests beyond the Application of Law to Fact RFAs?  If so, would you formally amend such responses?

Thank you for your attention to these matter.   rm



**Robert Mercer**
*Partner*
robert.mercer@bryancave.com   T: +1 404 572 6976   M: +1 678 628 7439

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments. bcllp2015

# EXHIBIT "C"

**Good, Sarah**

| | |
|---|---|
| **From:** | Mercer, Robert |
| **Sent:** | Wednesday, September 09, 2015 7:26 PM |
| **To:** | jtate@robertstate.com |
| **Cc:** | Robert H. Barnett; 'Walker, Thomas R.'; Good, Sarah |
| **Subject:** | RE: sic |

Jason, thanks for your email.  I will respond to your numbered points below.

1.      Based on your response, the LT's motion as to those requests to admit is not moot for at least 2 practical reasons.

*First*, if the LT proves the matters that Kings Point POA has denied, he is entitled to fee shifting.  If Kings Point POA is still asserting objections, it will take the position that fee shifting does not apply.

*Second*, assuming the parties cannot come to an agreement on stipulations (for purposes of discussion, I will assume they won't), the LT intends to depose Kings Point POA's 30(b)(6) rep as to the basis for, among other things, its denials of the various requests to admit.  He may also serve supplemental interrogatories requesting the basis for the denials.  To see why this is a concern for the LT, please compare Kings Point POA's interrogatory responses 12 (where Kings Point POA explains the basis for the denial of RFA 78) and interrogatory response 16 (where Kings Point POA refuses to explain for its response to RFA 16 by stating that it objected to RFA 16 as a "matter of law" and that basis for its response would invade privilege).  Indeed, as addressed in the LT's motion, this is the very reason that courts do not allow parties to raise "conditional objections."

2.      Yes, the LT would like Kings Point POA to formally amend its responses to the RFA's.  I think this will be helpful because that way everyone will know what positions Kings Point POA is taking.  When do you think that you can get us the formal amendment?  I am asking because we have a limited amount of time to prepare a reply and would like some time to look at any amendments to the responses before filing the reply.

Thank you for your attention to these matters.   rm



**Robert Mercer**
*Partner*
robert.mercer@bryancave.com   T: +1 404 572 6976   M: +1 678 628 7439

---

**From:** Jason Tate [mailto:jtate@robertstate.com]
**Sent:** Wednesday, September 09, 2015 6:04 PM
**To:** Mercer, Robert
**Cc:** Robert H. Barnett; 'Walker, Thomas R.'; Good, Sarah
**Subject:** RE: sic

Robert:

In response to your email:

1.  No.  KPPOA is stating that it believes that its objections are proper, but that it is irrelevant because KPPOA has denied the requests regardless and stated that it would have denied the requests notwithstanding the objections.  In other words, there is no relief that the LT can be afforded because striking the objections would only result in KPPOA denying the requests, which it has already done.

2.  Yes, but not formally.  Please see the last paragraph of the letter: "Please let us know if KPPOA needs to file a formal supplementation with respect to the responses that it has amended."  As stated, KPPOA is happy to formally amend its responses if the LT would like it to.

**Jason M. Tate**

# Roberts | Tate llc

P.O. Box 21828
114 Island Professional Park
St. Simons Island, Georgia 31522
Phone: (912) 638-5200
Fax: (912) 638-5300
Jtate@robertstate.com
www.RobertsTate.com

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

CONFIDENTIALITY NOTICE: This electronic mail transmission may have been sent by or on behalf of a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication.

NOTICE: No duties are assumed, intended, or created by this communication. If you have not executed a fee contract or an engagement letter, this firm does not represent you as your attorney. You are encouraged to retain counsel of your choice if you desire to do so.

---

**From:** Mercer, Robert [mailto:Robert.Mercer@BryanCave.com]
**Sent:** Tuesday, September 8, 2015 6:30 PM
**To:** Jason Tate <jtate@robertstate.com>
**Cc:** Robert H. Barnett <rbarnett@conwaymackenzie.com>; 'Walker, Thomas R.' <Trwalker@mcguirewoods.com>; Good, Sarah <sarah.good@bryancave.com>
**Subject:** sic

Jason, based on my review of your September 4 letter, I understood you to offer to amend the responses of Kings Point Property Owners Association, Inc. ("Kings Point POA") to the Liquidation Trustee's first requests for admissions to conform to your September 4 letter and Kings Point POA's opposition.  *See* Bankr. Docket No. 1378 at p. 16.  To make sure we are on the same page, I wanted to ask you about 2 items.

1.      Is Kings Point POA stating that it will revise its responses to the Liquidation Trustee's first set of requests to admit to reflect that it denies—without objection—the following requests to admit: RFA's 2-3, 6, 10, 16, 70, 72, 74, 74, 84-86, 106, 111, 113, 116-17, 119-120, 124, and 126, and 127 (collectively, the "Application of Law to Fact RFAs")?

2.      Does Kings Point POA contend that its letter amends the responses to the Liquidation Trustee's first set of requests beyond the Application of Law to Fact RFAs?  If so, would you formally amend such responses?

Thank you for your attention to these matter.   rm



**Robert Mercer**
*Partner*
robert.mercer@bryancave.com   T: +1 404 572 6976   M: +1 678 628 7439

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments. bcllp2015