IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Brunswick Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By cking at 4:03 pm, Mar 04, 2016

| | |
|---|---|
| IN RE: | CHAPTER 11 CASE |
| SEA ISLAND COMPANY, et al. | NUMBER <u>10-21034</u> |
| Debtors | |
| SEA ISLAND ACQUISITION, LLC | |
| Movant | |
| v. | |
| ROBERT H. BARNETT, LIQUIDATION TRUSTEE UNDER THE SEA ISLAND LIQUIDATION TRUST, | |
| and | |
| KINGS POINT PROPERTY OWNERS ASSOCIATION INC. | |
| Respondents | |

**OPINION AND ORDER ON SEA ISLAND ACQUISITION'S MOTION TO CLARIFY**

This matter is before me on the Motion to Clarify Provisions Relating to Implementation of the Confirmed Plan ("Motion to Clarify") filed by Sea Island Acquisition, LLC f/k/a Sea Island Acquisition, LP ("SIA"). SIA appeared at the hearing and upon its request was excused. The Liquidation Trustee ("Trustee") and Kings Point Property Owners Association, Inc. ("Kings Point POA") each filed preliminary responses to the Motion to Clarify. (ECF

AO 72A
(Rev. 8/82)

Nos. 1104, 1161.) At the hearing, the Trustee and Kings Point POA submitted an extensive set of stipulations (ECF No. 1472), which they later supplemented (ECF No. 1477). The Trustee also submitted his stipulations with SIA (ECF No. 1475) and a brief for the hearing (ECF No. 1468).

The Motion to Clarify asks the Court to clarify, remedy, or correct any document or filing relating to two interests of the Debtors. The first is a series of various real estate interests (e.g. rights to first refusal, rights to restrict subdivision, mineral rights, and timber rights) which Debtor Sea Island Company ("SICO") reserved in approximately thirty-four large acreage tracts in Camden County, Georgia, commonly known as Cabin Bluff Compartments ("Cabin Bluff Interests"). (ECF No. 1102 at 3.) The second is an interest in common areas in the King's Point Subdivision, located in Glynn County, Georgia ("Common Areas"). (ECF No. 1102 at 3-4.)

As to the Cabin Bluff Interests, SIA has stipulated that it "neither contests nor opposes in any way the relief the [Trustee] seeks or positions he asserts" in this contested matter. (SIA Stip. 9 ECF No. 1475 at 3.) Kings Point POA has no interest in the resolution on the Cabin Bluff Interests.

AO 72A
(Rev. 8/82)

To resolve the interest in the Common Areas, the Trustee and Kings Point POA have asked that I determine two issues:[1]

> 1) Whether SIA, the Debtors, or the Trustee own the Common Areas; and
>
> 2) Is the owner of the Common Areas required to convey the Common Areas to a third party

In addition to these issues raised by the Motion to Clarify, the Trustee presented at hearing a challenge to Kings Point POA's standing.

I find that Kings Point POA has standing in this contested matter, that Debtor Sea Island Coastal Properties LLC ("SICP") owns the Common Areas, and that SICP is required to convey the Common Areas to SIA.

## BACKGROUND

Debtor SICP owned the Common Areas on December 17 and 18, 2009. (Stip. 17, ECF No. 1473 at 6.) According to a deed dated December 17, 2009, and recorded on December 18, 2009 ("2009 Deed"), Debtor SICO purported to convey the Common Areas to Kings Point POA. (Stip. 15, id. at 5.) The 2009 Deed's designation of

---

[1] Kings Point POA and the Trustee stipulated to three issues: "(a) whether [SIA], the Debtors . . . or the [Trustee] own the [Common Areas] . . .; (b) in the event that the Court determines that either the [Trustee] or the Debtors own the [Common Areas], whether the [Trustee] or the Debtors are required to transfer the [Common Areas] to SIA; and (c) in the event that the Court determines that the Debtors own the [Common Areas], whether the Debtors are required to transfer the [Common Areas] to the Trustee." (Stip. 2, ECF No. 1473 at 1-2.) Issue 2 above consolidated the parties' issues (b) and (c).

3

SICO as the grantor, instead of SICP, rendered the deed ineffective and did not convey the Common Areas to Kings Point POA. (Stip. 18, id. at 6.)

Debtors SICO, SICP, Sea Island Services, Inc., First Sea Island, LLC, Sea Island Apparel, LLC, SICAL, LLC, and Sea Island Resort Residences, LLC filed separate chapter 11 cases on August 8, 2010. (ECF No. 1.)[2] By order entered September 7, 2010, the cases were substantively consolidated under Case No. 10-21034. (ECF No. 136.) On September 24, 2010, a chapter 11 Plan ("Plan") was filed. (ECF No. 217.) In accordance with the Plan, the Debtors entered into the Asset Purchase Agreement ("APA")[3] with SIA on October 19, 2010. (ECF No. 293.)

In 2014, SIA filed the Motion to Clarify having discovered that the Cabin Bluff Interests were not specifically addressed in the Plan, the order confirming the Plan ("Confirmation Order"), or the APA, and that the 2009 Deed was ineffective. (ECF No. 1102.) SIA stipulated that it does not contest or oppose the relief sought by the Trustee in this contested matter as to the Cabin Bluff Interests and no longer seeks relief with respect to the Common Areas (SIA Stips. 8 & 9 ECF No. 1475 at 2-3). SIA has

---

[2] The following is a list of the individual cases and their case numbers: In re Sea Island Company Case No. 10-21034, In re Sea Island Coastal Properties LLC Case No. 10-21035, In re Sea Island Services Inc. Case No. 10-21036, In re Sea Island Resort Residences, LLC Case No. 10-21037, In re Sea Island Apparel, LLC Case No. 10-21038, In re First Sea Island, LLC Case No. 10-21039, and In re SICAL, LLC Case No. 10-21040.
[3] "The 'Asset Purchase Agreement' as that term is used in the [Plan] means the October 19, 2010 Asset Purchase Agreement by and between the Debtors and SIA. [Bankr. Docket No. 293]." (Stip. 94, ECF No. 1473 at 30.)

4

delivered a quitclaim deed ("Quitclaim Deed") conveying the Common Areas to Kings Point POA (ECF No. 1176-2).

## FINDINGS OF FACT

Article VII of the Plan, titled "Means for Implementation of the Plan," states that the "Plan contemplates the Sale of substantially all of the Debtors' assets" to SIA and recognizes that the Debtors had entered into the APA. (ECF No. 217 at 38.) According to the Plan, "[o]n the Closing Date,[4] pursuant to the [APA], the Debtors shall transfer the Purchased Assets[5] to [SIA] for the aggregate consideration of the Purchase Price . . . ." (Id.)

On October 19, 2010, the Debtors executed the APA. (ECF No. 293.) At that time, Debtor SICP owned the Common Areas. (Stip. 44, ECF No. 1473 at 11.) The APA provides specific language regarding the transfer of the Purchased Assets to SIA:

> [A]t the Closing,[6] [the Debtors] shall sell, transfer, convey, assign and deliver . . . to

---

[4] The Plan defines the term "Closing Date" as "the date of the Closing." (ECF No. 217 at 8.) The Plan states that the term "Closing" "shall have the meaning set forth in section 2.9 of the [APA]." (Id.)

[5] The Plan defines "Purchased Assets" as "those assets of the Debtors that [SIA] is acquiring pursuant to the [APA]." (ECF No. 217 at 16.)

[6] The APA defines "Closing" as the following event: "The closing . . . of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities shall take place at the offices of King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia, no later than five (5) days after satisfaction of the conditions set forth in Section 12 (other than those requiring a delivery, or the taking of other action, at the Closing), or at such time or place as [SIA] and [Debtors] may agree." (ECF No. 293 at 23.)

5

> [SIA] . . . all right, title and interest of [the Debtors] in and to the following assets, properties and rights (the "<u>Purchased Assets</u>"), free and clear of all Liens (other than Permitted Liens and Assumed Liabilities):
>
> (a) the Acquired Owned Real Property
>
> . . . .

(ECF No. 293 at 15.)

The APA defines the term "Acquired Owned Real Property" as "collectively (a) all of the Owned Real Property, **including, but not limited to**, the Owned Real Property set forth on <u>Schedule 2.1(a)</u>, but excluding the Excluded Owned Real Property . . . ." (<u>Id</u>. at 6.)(emphasis added).

"Owned Real Property" is defined as "**all** land . . . owned by any [Debtor]." (<u>Id</u>. at 11.)(emphasis added). Schedule 2.1(a), titled "Acquired Owned Real Property," identifies various parcels of real property, but does not list the Common Areas. (<u>See id</u>. at 71-73.)

"Excluded Owned Real Property" is defined in the APA as the "the portion of the Owned Real Property set forth on <u>Schedule 2.2(c)</u> . . . ." (<u>Id</u>. at 17.) Schedule 2.2(c), titled "Excluded Owned Real Property," contains only the word "**None**." (<u>See id</u>. at 89.)(emphasis added.)

The Confirmation Order was entered on November 8, 2010. (ECF No. 372.) As to any inconsistencies between the Plan and other

6

documents, the Confirmation Order provides that the Plan governs except if it is inconsistent with the APA:

> In the event of any inconsistencies between the Plan, on the one hand, and the Disclosure Statement, any exhibit to the Plan or Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan (in all cases, other than the [APA]), on the other hand, the Plan shall govern.

(Id. 372 at 41.)

On March 18, 2014, SIA filed the Motion to Clarify. (ECF No. 1102.) In the motion, SIA states that it has identified "certain real property interests held by [the] Debtors [at] the commencement of the Chapter 11 cases but not specifically scheduled in the APA or transferred to SIA at the Closing." (Id. at 2.) Included within the identified interests are the Cabin Bluff Interests and the interest in the Common Areas. (Id. at 3-4.)

## CONCLUSIONS OF LAW

While the posture of the Trustee's preliminary response to the Motion to Clarify opposes the SIA's request for relief, its own request for relief asks for the application of Rule 7016 and does not contain a specific request pertaining to the Cabin Bluff Interests or the Common Areas. (See ECF No. 1104.) As of the date of the hearing the Trustee has not specifically requested relief

7

as it pertains to the Cabin Bluff Interests. However, as to the Cabin Bluff Interests, SIA subsequently stipulated that it "neither contests nor opposes in any way the relief the [Trustee] seeks or positions he asserts." (SIA Stip ¶ ECF No. 1475 at 3.)

In regards to the Common Areas, the parties, in their pleadings, have interpreted the terms of various documents and the interplay among those terms amassing a Gordian knot[7] of interpretation, assertion, and counter-assertion. Rather attempt to unwind this legal tangle, I find an appropriate and consistent interpretation is reached by an Alexandrian strike of the plain meaning of two words **"ALL"** means all and **"NONE"** means none.

### I. Kings Point POA Has Standing.

At hearing and in his brief, the Trustee challenged Kings Point POA's standing in this contested matter. The Trustee argues that Kings Point POA, as neither a party to nor a third-party beneficiary of the APA, can no longer rely on "piggy back" standing because SIA has stipulated that it no longer seeks relief with respect to the Common Areas. (ECF No. 1468 at 4.)

I have previously held "that Kings Point POA is a party in interest under 11 U.S.C. § 1109(b) with standing to be heard in this contested matter." (ECF No. 1217 at 11.) The grounds on

---

[7] "Gordian knot" is a proverbial term referencing the "knot tied by Gordius, king of Phrygia, held to be capable of being untied only by the future ruler of Asia, and cut by Alexander the Great with his sword." *Gordian knot*, Merriam-Webster's Collegiate Dictionary, (11th ed. 2003).

8

which my previous order relied remain valid. SIA's stipulation that it no longer seeks relief with respect to the Common Areas merely formalizes the position SIA assumed when it delivered the Quitclaim Deed to Kings Point POA. Kings Point POA continues to have standing in this contested matter.

## II. The Common Areas Are Owned by Debtor SICP.

The Trustee argues that because the Common Areas were not conveyed to SIA at the closing of the APA, the interest in the Common Areas automatically vested in the Liquidating Trust under section 5.04 of the Plan. According to section 5.04, "all Property comprising the Estates of the Debtors . . . not conveyed to [SIA] under the [APA] shall automatically vest in the Liquidating Trust . . . ." (ECF No. 217 at 30.)

The language "under the [APA]" establishes that the APA identifies what property was to be conveyed. Therefore, in order to determine what property was not conveyed under the APA, I look to the plain an unambiguous terms of the APA.

Under the APA "Owned Real Property" includes "all land . . . owned by any [Debtor]." (ECF No. 293 at 11.) The Common Areas were owned by the Debtors at the time the APA was executed. (Stip. 44 ECF No. 1473 at 11.) Thus, the Common Areas are contained within the term "Owned Real Property" under the APA. The only Owned Real Property excluded from conveyance under the

9

APA to SIA is listed in Schedule 2.2(c) of the APA, titled "Excluded Owned Real Property." Schedule 2.2(c) which simply states "None."

If no Owned Real Property was excluded from conveyance under the APA, it follows that no Owned Real Property automatically vested in the Liquidating Trust. The fact that the Common Areas were not specifically described in the APA nor conveyed when the APA closed and have not been conveyed as of the date of the hearing does not alter this fact. The APA described the Acquired Owned Real Property as **all** of the Owned Real Property and excluded **none**.

It is not in dispute that Debtor SICP owned the Common Areas as late as December 15, 2010. (Stip. 142 ECF No. 1473-1 at 19). Since then, Debtor SICP has not conveyed the Common Areas by deed or by any other instrument to any third party. Accordingly, I find that the Common Areas are still owned by Debtor SICP.

### III. The Debtors Are Required to Convey the Common Areas to SIA.

I must now decide whether the Debtors are required to convey the Common Areas to a third party. This is an issue only because Debtors' interest in the Common Areas was not discovered until 2014. Therefore, in order to determine if a requirement was placed upon the Debtors to transfer the Common Areas by any

10

document, I must first determine if the Common Areas are contained within a term provided by an order or filing. If yes, I must then identify which, if any, document controls a conveyance of the Common Areas. Only then may I determine if the Debtors were required to convey the Common Areas to a third party.

### A. The Common Areas are Contained Within the Purchased Assets Under the APA.

The Common Areas are contained within the group of real properties identified as "Acquired Owned Real Property" as that term is defined by the APA. (Stip. 55, ECF No. 1473 at 14.) "Acquired Owned Real Property" is contained with the group of assets identified as "Purchased Assets" as that term is defined under the APA. (Stip. 50, id.) Thus, it follows that the Common Areas are contained within the Purchased Assets as that term is defined under the APA.

### B. The APA Controls the Conveyance of the Purchased Assets.

Article VII of the Plan, titled "Means for Implementation of the Plan," specifically provides: "On the Closing Date, *pursuant to the* [APA], the Debtors shall transfer the Purchased Assets to [SIA] for the aggregate consideration of the Purchase Price. . . ." (ECF No. 217 at 38.)(emphasis added).

The Plan clearly establishes that the transfer of the Purchased Assets would occur in accordance with the APA. Section 42 of the Confirmation Order provides that if the Plan's terms contradict the terms of the APA, the APA controls. (ECF No. 371 at 41.) Therefore, if the terms of the Plan contradict the terms of APA regarding the transfer of the Purchased Assets, the terms of the APA control. The APA controls the conveyance of the Purchased Assets.

### C. Under the Clear and Unambiguous Language of the APA, the Debtors Are Required to Convey the Purchased Assets to SIA.

Because the Common Areas are contained within the Purchased Assets and the conveyance of the Purchased Assets is controlled by the APA, I must now determine under the APA whether the Debtors were required to convey the Common Areas to a third party.

The APA is a contract. To determine the effect of the APA, Georgia principles of contract construction apply. Under Georgia law, when a court construes a contract, the process involves three steps:

> (1) Is the language clear and unambiguous? If it is, the court simply enforces the contract according to its terms. If it is ambiguous, (2) the court must apply the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, (3) the issue of what the ambiguous

> language means and what the parties intended must be resolved by a jury.

Harris v. Distinctive Builders, Inc., 549 S.E.2d 496, 498-99 (Ga. Ct. App. 2001)(citation omitted). The cardinal rule of construction, as Kings Point POA correctly argued at hearing, "is to ascertain the intention of the parties." Ga. Code Ann. § 13-2-3.

I need go no further than the first step in construing the APA. The language of the APA is clear and unambiguous. In the context of a contract, "[a]mbiguity exists where the words used in the contract leave the intent of the parties in question, i.e., that intent is uncertain, unclear, or open to 'various interpretations.'" Capitol Color Printing, Inc. v. Ahern, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008)(quoting Investment Properties Co. v. Watson, 628 S.E.2d 155 (Ga. Ct. App. 2006)).

The language of the APA pertinent to the conveyance of the Purchased Assets states that "at the Closing, [Debtors] shall sell, transfer, convey, assign and deliver . . . to [SIA] . . . all right, title and interest of [Debtors] in and to . . . [the Purchased Assets], free and clear of all Liens . . . ." (ECF No. 293 at 15.)

The term "shall" establishes the Debtors' duty to convey the Purchased Assets to SIA. "[A]t the Closing" provides the time at which the Debtors were to perform their established duty. Thus,

13

the Debtors were required to convey the Purchased Assets to SIA at the Closing.

I have already determined that the Common Areas were included within the term "Purchased Assets." The term "Purchased Assets" specifically includes the "Acquired Owned Real Property." (Id.) "Acquired Owned Real Property" is "collectively (a) **all** of the Owned Real Property, **including but not limited to**, the Owned Real Property set forth on Schedule 2.1(a), but excluding the Excluded Owned Real Property . . . ." (Id. at 6.) The Owned Real Property is "**all** land . . . owned by any [Debtor]." (Id. at 11.) The "Excluded Owned Real Property" is "the portion of the Owned Real Property set forth on Schedule 2.2(c) . . . ." (Id. at 17) and Schedule 2.2(c) states, in its entirety, "**None**." (Id. at 89.)

Under the plain language of the APA, there is no ambiguity and no question as to the intent of the parties. The APA clearly requires that the Debtors convey **all** of the Owned Real Property, including the Common Areas, to SIA and **none** of the Owned Real Property was to be excluded from the required conveyance. Therefore, according to the clear and unambiguous language of the APA, the Debtor is required to convey the Common Areas to SIA.

AO 72A
(Rev. 8/82)

## ORDER

Based upon the stipulation between Sea Island Acquisition, LLC and the Liquidation Trustee pertaining to the Cabin Bluff Interests and the fact that Kings Point Property Owners Association, Inc. has no interest in the Cabin Bluff Interests, there no longer exists a controversy to be resolved. Therefore as to the Cabin Bluff Interests the Motion to Clarify is **ORDERED DISMISSED**; and

**FURTHER ORDERED** that Debtor Sea Island Coastal Properties LLC shall convey the Common Areas to SIA as required by the Asset Purchase Agreement; and

**FURTHER ORDERED** that upon the conveyance of the Common Areas to Sea Island Acquisition, LLC, Kings Point Property Owners Association, Inc. may record the Quitclaim Deed from Sea Island Acquisition, LLC to Kings Point Property Owners Association, Inc.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
This ___ day of March, 2016.