UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

In re:                                    )
                                          )        Chapter 11
SEA ISLAND COMPANY, *et al.*,             )
                                          )        Case No. 10-21034 - JSD
                                          )        Jointly Administered
            Debtors.                      )
                                          )        Judge John S. Dalis
                                          )
_____   )

**MOTION FOR EXPEDITED APPROVAL OF SALE
OF THE LIQUIDATION TRUST'S INTEREST IN
CERTAIN RESERVED RIGHTS TO MVMS, LLC**

Robert H. Barnett, as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidation Trust"), files the Motion for Expedited Approval of Sale of the Liquidation Trust's Interest in Certain Reserved Rights to MVMS, LLC (the "Motion"). In support of the Motion, the Liquidation Trustee shows the Court the following:

**JURISDICTION**

1.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.    The legal predicate for the requested relief is section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

**BACKGROUND**

The Filing of the Bankruptcy Cases
and Appointment of the Liquidation Trustee

3.    The above-referenced debtors (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 10, 2010.

{01502138.DOCXv1}

4.      On September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order").

5.      The Trust Agreement of Sea Island Company Creditors Liquidation Trust (the "Trust Agreement") dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee.  *See* Bankr. Docket No. 449-1.

<u>The Role of the Liquidation Trustee</u>

6.      One of the purposes of the Liquidation Trust is to marshal, liquidate, and sell the Trust Assets (as defined in the Trust Agreement).  *See* Trust Agreement § 2.3(a).

7.      The Liquidation Trustee is expressly empowered "to manage, liquidate, sell, assign, transfer, or deal in any other manner with the Trust Assets or any part thereof or any interest therein, and to sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its discretion."  *See id.* § 4.4(vi).

8.      Unless otherwise specified in the Plan or the Trust Agreement, the Liquidation Trustee "need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred" pursuant to the Trust Agreement.  *See id.* § 4.3(a).

9.      In his discretion and judgment, the Liquidation Trustee may, however, seek explicit approval of the Bankruptcy Court of proposed action to be taken by the Liquidation Trustee with regard to the Trust Assets. *See id.* § 4.3(b). Indeed, the Trust Agreement specifically grants the Liquidation Trustee "the power and authority to seek Bankruptcy Court approval to *sell any Trust Asset . . ..*"  *See id.* § 4.3(d) (emphasis added).

2

10.     The Trust Agreement is explicit that the Liquidation Trustee has *no* implied obligations.  *See* Trust Agreement at § 5.6.

11.     Based on the foregoing, the Court previously entered an order stating that the "Plan and Trust Agreement do *not* require the Liquidation Trustee to obtain the Court's approval" of a sale.  *See In re Sea Island Co., et. al.,* Case No. 10-21034, Bankr. Docket No. 1594, at *1 (Bankr. S.D. Ga. July 27, 2016)[1] (emphasis added).

<u>The Background as to the Proposed Sale</u>

12.     Grassy Pond Management, LLC ("GPM") and Kit Swamp, LLC ("KS") are the owners of certain real property that is subject to the Liquidation Trust's Grassy Pond/Kit Swamp Rights (as defined below).

13.     The Liquidation Trust is selling such rights to MVMS, LLC, a Florida limited liability company (the "Buyer"), pursuant to the Sale Agreement (as defined below).

14.     GPM and KS previously attempted to sell their real property without properly addressing the Liquidation Trust's right of first refusal arising under the two agreements recorded in Deed Book 880, Page 200 and Deed Book 942, Page 187, both in the Office of the Clerk of the Superior Court of Camden County, Georgia (collectively, the "ROFR Agreements").

15.     Specifically, in a letter dated May 24, 2016, to the Liquidation Trustee and his counsel, counsel for GPM and KS enclosed a purported Third Party Contract (as such term is defined in the ROFR Agreements) with Christopher Ball and contended that the letter itself— which purportedly "offered to sell the SIC Trust the Property referenced in the Buy and Sale Agreement, on terms substantially identical to those contained in the Buy and Sale

---

[1]  Such order was entered on negative notice, and no parties filed an objection to it.

{01502138.DOCXv1}

Agreement"—constituted a Refusal Offer (as such term is defined in the ROFR Agreements). *See* Correspondence from counsel for GPM and KS to counsel for the Liquidation Trustee and Liquidation Trustee (May 24, 2016).[2]   A copy of the May 24, 2016 correspondence without enclosures is attached as Exhibit "A."

16.     Counsel for GPM and KS asserted that, if the Liquidation Trustee did not accept the purported Refusal Offer within thirty (30) days from the receipt of the letter, GPM and KS could sell their real property pursuant to the purported Third Party Contract without regard to the Liquidation Trust's right of first refusal.

17.     By letter dated June 24, 2016 and various other correspondence, counsel for the Liquidation Trustee asserted the Liquidation Trust's right of first refusal and contested the contentions set forth in the May 24, 2016 letter.[3]

18.     Counsel for the Liquidation Trustee was advised that GPM and KS did not consummate the sale contemplated by the purported Third Party Contract because of the Liquidation Trust's right of first refusal.

19.     Subsequently, the Buyer negotiated and entered into (a) an agreement to purchase the Property (as defined in the Sale Agreement) from GPM and KS and (b) an agreement described below with the Liquidation Trustee.

20.     As a result of the foregoing, if the Court grants the Motion and the sale of the Property is consummated, the Liquidation Trust will receive $250,000.00 that it would not have otherwise received.

---

[2] *See also* Bankr. Docket No. 1396 (objecting to a motion to sell property free and clear of of right of first refusal).
[3] *See* Correspondence from counsel for the Liquidation Trustee to counsel for GPM and KS (June 24, 2016).  A copy of the June 24, 2016 letter is attached as Exhibit "B."

{01502138.DOCXv1}

## THE PROPOSED SALE

21.     Pursuant to the letter agreement attached as Exhibit "C" (the "Sale Agreement"),[4] the Buyer[5] has agreed to buy and the Liquidation Trustee has agreed to quitclaim the Liquidation Trust's Grassy Pond/Kit Swamp Rights (as defined in the Sale Agreement) with no representations or warranties whatsoever on an "as is," "where is," and "with all faults" basis for the payment of $250,000.00 (the "Payment") to the Liquidation Trustee (collectively, the "Sale").  *See* Sale Agreement ¶ a.

22.     On September 20, 2016, the Sale Agreement was executed by the Buyer, and—consistent with paragraph b of the Sale Agreement—the Buyer wired $250,000.00 (the "Escrowed Funds" or "Payment Amount") of readily available funds to an account of the Liquidation Trustee.  *See* Sale Agreement ¶ b.

23.     If the Approval Order (as defined in the Sale Agreement) becomes enforceable[6] on or before October 10, 2016, the Liquidation Trustee shall be immediately entitled to retain $25,000.00 of the Escrowed Funds on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by any other person.  *See* Sale Agreement ¶¶ c and f.

24.     Upon any closing (the "Closing") related to the purchase of the Property (as defined in the Sale Agreement) by the Buyer or its assignee, the Liquidation Trustee shall be immediately entitled to retain the remaining $225,000.00 of the Escrowed Funds on an

---

[4] The description of the Sale Agreement contained in this Motion is a partial summary.  In all events, the terms set forth in the Sale Agreement shall control.

[5] The Buyer is also attempting to buy the underlying real Property.

[6] Such order shall be become "enforceable" for purposes of the Sale Agreement when it has been entered on the docket, and it is not stayed pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.  *See* Sale Agreement n.1.

irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by the Liquidation Trustee or any other person. *See* Sale Agreement ¶ c.

## **RELIEF REQUESTED**

25.     The Liquidation Trustee requests that the Court enter an order approving the Sale and the Sale Agreement in substantially the same form as the proposed order attached as Exhibit "D."

## **BASES FOR RELIEF REQUESTED**

26.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, a trustee may sell property of the estate outside of the ordinary course of business. *See* 11 U.S.C. § 363(b)(1).   In this district, the issue is whether the "[t]rustee exercised sound business judgment, as determined by his articulation of a good-faith basis for recommending the sale for the price offered and by his employment of adequate procedures in procuring the offer . . .." *See In re Stuart*, No. 02-43724, 2003 WL 26099304, at *2 (Bankr. S.D. Ga. May 2, 2003); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (requiring a finding of a good business reason to approve a 363 sale); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (N.D. Ga. 1985).

27.     This inquiry essentially amounts to a "business judgment test," *see In re Tom's Foods, Inc.*, No. 05-40683 RFH, 2005 WL 3022022, at *2 (Bankr. M.D. Ga. Sept. 23, 2005), with a trustee's "judgment on the sale and the procedure for the sale" being "entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met," *see Stuart*, 2003 WL 26099304, at *3.

{01502138.DOCXv1}

28.     In an exercise of his business judgment, the Liquidation Trustee believes that the Sale is in the best interests of the Liquidation Trust and the Beneficiaries (as that term is defined in the Trust Agreement).  While the Liquidation Trustee contends that the Liquidation Trust's Grassy Pond/Kit Swamp Rights could be very valuable, given the nature of such rights, there is a thin market for them.

29.     As set forth above, a condition precedent to the Sale Agreement is that the Approval Order becomes enforceable on or before October 10, 2016.  *See* Sale Agreement ¶ f; *see also* Sale Agreement ¶ k (time is of the essence provision).  So the Liquidation Trustee requests that the Court enter the Approval Order on negative notice with objections due by 2:00 p.m. on October 5, 2016 and—if a timely written objection is filed—hold a hearing on such objection at 1:00 p.m. on October 6, 2016.  *See In re Sea Island Co., et. al.,* Case No. 10-21034, Bankr. Docket No. 1594, at *1-2 (Bankr. S.D. Ga. July 27, 2016) (shortening the negative notice objection period to fourteen (14) days).

30.     Under the circumstances, the Liquidation Trustee submits that the Approval Order should be entered on negative notice.  Given the potential for avoiding the cost and expense of a hearing[7] and the deferential standard for approving sales,[8] especially here where—as the Court has previously recognized—court approval is not required,[9]  the Liquidation Trustee submits that approval on such basis is appropriate.[10]

---

[7]  *See* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and *inexpensive* determination of every case and proceeding.") (emphasis added).

[8]  *See Stuart* 2003 WL 26099304, at *3.

[9]  *See* Motion ¶ 11.

[10]  *See* 11 U.S.C. § 102(1)(B)(i); *Roberts v. Pierce* (*In re Pierce*), 435 F.3d 891, 892 (8th Cir. 2006) (discussing 11 U.S.C. § 102(1)(B)(i) and concluding: "[n]egative notices are therefore authorized by the Code.") (citation omitted); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617-8 (7th Cir. 2002) ("A requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing.") (emphasis in the original).

31.     As noted above, the Court has previously found that Court approval is not required for a sale.  *See* Motion ¶ 11.  But even if court approval were required, the Liquidation Trustee submits that "cause" exists pursuant to Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure for the Court to enter the proposed order with a shortened negative notice objection period.  According to the leading bankruptcy treatise, when "considering . . . motions [to shorten time], courts should balance possible prejudice to other parties against the reasons advanced for reducing time."  *See* 10 COLLIER ON BANKRUPTCY ¶ 9006.09[1] (16th ed. 2016). Of course, there is no prejudice with shortening the notice to Beneficiaries when they are not entitled to the notice in the first place.  At the same time, if notice is not shortened, the sale may not be consummated.  *See* Motion ¶ 29.  So the Liquidation Trustee requests that the Court shorten the objection period.

[remainder of page intentionally left blank]

8

WHEREFORE, Robert H. Barnett as the Liquidation Trustee respectfully requests that the Court enter an order substantially in the form attached as Exhibit "D" and grant such other and further relief as the Court may deem just and proper.

Dated: September 23, 2016.

_____*/s/ Robert M.D. Mercer*_____
Robert M.D. Mercer
Georgia Bar No. 502317
Eric J. Silva *(admitted pro hac vice)*
Georgia Bar No. 442808
SCHULTEN WARD TURNER & WEISS LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia  30303
(404) 688-6800 Telephone
(404) 688-6840 Facsimile

*Counsel for Robert H. Barnett as the Liquidation Trustee under the Sea Island Company Creditors Liquidation Trust*

9

{01502138.DOCXv1}

**EXHIBIT "A"**

GILBERT, HARRELL, SUMERFORD & MARTIN

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS AT LAW
BANK OF AMERICA PLAZA
777 GLOUCESTER STREET, SUITE 200
POST OFFICE BOX 190
BRUNSWICK, GEORGIA 31521-0190
TELEPHONE (912) 265-6700
FAX (912) 264-0244
www.gilbertharrelllaw.com

ATLANTA OFFICE
50 HURT PLAZA, SUITE 1450A
ATLANTA, GEORGIA 30303-2915
TELEPHONE (770) 377-4092
FAX (912) 264-0244

REPLY TO: BRUNSWICK OFFICE

May 24, 2016

**Via Certified Mail, Return Receipt Requested**
Robert Mercer
Schulten Ward & Turner, LLP
260 Peachtree Street NW, Suite 2700
Atlanta, Georgia 30303

Robert H. Barnett
Conway Mackenzie, Inc.
1075 Peachtree Street, Suite 3675
Atlanta, Georgia 30309

Subject:     **Right of First Refusals affecting property owned by Grassy Pond Land Management, LLC and Kit Swamp, LLC, in Camden County, Georgia**

Dear Sirs:

Enclosed with this letter please find a copy of the Buy and Sale Agreement by and between Grassy Pond Land Management, LLC and Kit Swamp, LLC, (collectively "Seller") and Christopher Ball ("Buyer"), dated May 12, 2016 (the "Buy and Sale Agreement").

As you know, title to the Property referenced in the Buy and Sale Agreement is encumbered by two rights of first refusal (hereinafter the "2002 Agreements"), which are recorded in Deed Book 942, Page 187 and Deed Book 880, Page 200, both in the Office of the Clerk of Superior Court in Camden County, Georgia.

Based upon our review of the title records of Camden County, Georgia, the rights of Sea Island Company described in the 2002 Agreements have not been assigned to any other party, and are now held by Robert H. Barnett, as trustee of the Sea Island Company Creditors Liquidation Trust ("SIC Trust"). The enclosed Buy and Sale Agreement is a "Third Party Contract" as set forth in the 2002 Agreements.

Accordingly, this letter serves as the written notice required by the 2002 Agreements as an offer (hereinafter "Refusal Offer") by Grassy Pond Land Management, LLC and Kit Swamp, LLC, to sell to the SIC Trust the Property referenced in the Buy and Sale Agreement, on terms substantially identical to those contained in the Buy and Sale Agreement.

Pursuant to the terms of the 2002 Agreements, this Refusal Offer will remain open for thirty (30) days from the date you receive this letter.

Sincerely yours,

Mark D. Johnson

cc:    Melanie Cranford
       Richard W. Hawthorne, Esq.

**EXHIBIT "B"**

# SCHULTEN WARD TURNER & WEISS

WM. SCOTT SCHULTEN
KEVIN L. WARD
DAVID L. TURNER
ERIC L. WEISS
JON R. ERICKSON
WILLIAM M. JOSEPH
MARTHA A. MILLER
J. ZACHARY ZIMMERMAN
ANDREA L. PAWLAK
ROBERT D. MERCER
DEAN R. FUCHS

MARIA F. STEDRY
JASON C. HARDY
ERIC J. SILVA
STEPHEN W. BROWN
TYER K. KEENAN
MAHEEN AKHTER
AIMEE D. LaTOURETTE

STEVEN H. SADOW, SPECIAL COUNSEL

**ATTORNEYS AT LAW**

A LIMITED LIABILITY PARTNERSHIP

Writer's direct dial (404) 688-6804
Fax No. (404) 688-6840
r.mercer@swtwlaw.com

June 24, 2016

*Via Electronic Mail and U.S. Mail*

Mark D. Johnson, Esq.
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street, Suite 200
Brunswick, Georgia 31520

RE:   *In re Sea Island Company, et al.*, Chapter 11 Bankruptcy;
      United States Bankruptcy Court; Southern District of Georgia;
      Case No. 10-21034-JSD

Dear Mark:

This letter is in response to your letter dated May 24, 2016.

Your letter states that the "enclosed Buy and Sale Agreement is a 'Third Party Contract' as set forth in the 2002 Agreements" and that your "letter serves as the written notice required by the 2002 Agreements" as a "Refusal Offer" (as that term is defined in the 2002 Agreements[1]).

But such statements are wrong for any number of reasons.

Without in any way limiting such reasons, the Liquidation Trustee points out the following:

*First*, the 2002 Agreements both require that the Third Party Contract contain a "ten percent (10%) *non-refundable* binder." (Emphasis added).   But the binder under the Buy and Sell Agreement is *refundable*. *See, e.g.,* Buy and Sell Agreement ¶ 7 (providing for a refund of the "Non-Refundable Binder" if the seller "otherwise default[s] under its obligations under" the Buy and Sell Agreement); ¶ 4 (entitling the buyer to a refund if it terminates the Buy and Sell Agreement "in accordance with *any* right to terminate granted by" the Buy and Sell Agreement) (emphasis added) & Earnest Money Escrow Agreement p. 2 (buyer entitled to a refund of the "Non-Refundable Binder"  based on its "sole order" if it terminates based on "*any* right to terminate expressly provide in" the Buy and Sell Agreement) (emphasis added).

---

[1]   Such term shall have the meaning ascribed to it in your letter.

{01474060.DOCXv2}

*Second*, the agreement among Sea Island Company on the one hand and Katherine Kuntz Revels, Gordon Ray Revels, II, and Melanie Jones Crawford on the other hand recorded in Deed Book 880, Page 200 in the Office of the Clerk of the Superior Court, Camden County, Georgia (the "Revels/Crawford Agreement") requires, among other things, that the Third Party Contract offer to "purchase all of the Property (*subject to* the right of first refusal contingency contained herein) . . .." *See* Revels/Crawford ¶ 1(a) (emphasis added).

And the agreement between Sea Island Company and Postell Creek Partners, LLC recorded in Deed Book 942, Page 187 in the Office of the Clerk of the Superior Court, Camden County, Georgia (the "Postell Agreement") requires, among other things, that the Third Party Contract offer to "purchase all of the Property, *subject to* the right of first refusal contingency contained herein . . . ." *See* Postell Agreement ¶ 1(a) (emphasis added).

So both of the 2002 Agreements require that the "Property" be "subject to" the ROFRs. But that is not what the Buy and Sell Agreement proposes. Indeed, nothing in the proposed General Warranty Deed, which is attached as Exhibit "C" to the Buy and Sell Agreement, mentions either of the 2002 Agreements. And nothing in the Buy and Sell Agreement requires that the "Property" be "subject to the ROFR." *See, e.g.*, Buy and Sell Agreement ¶ 27 (providing that the parties will attempt to "'insure over' the ROFRs").

*Third*, even if the Buy and Sell Agreement were a "Third Party Contract" under the 2002 Agreements—which it is not, your letter dated May 24, 2016 does not constitute a Refusal Offer (as that term is defined in the 2002 Agreements). A Refusal Offer must, among other things, be an "offer." And your letter does not constitute an offer for at least two independent reasons. As an initial matter, the Buy and Sell Agreement does not contain a description of the real property in question, so it does not satisfy the statute of frauds. *Compare* Buy and Sell Agreement Ex. "A" (missing legal description) *with Salim v. Solaiman*, 691 S.E.2d 389, 302 Ga. App. 607, 608-09 (2010) (real estate contract fails statute of frauds because it does not contain a sufficient property description).

And even if there were a description of the real property, your letter would still not constitute an offer. Your letter purports to be an "offer" to sell the "Property"—which is unidentified—to the Liquidation Trustee on "terms *substantially identical* to those contained in the Buy and Sell Agreement." (Emphasis added). But it does not state what terms your clients actually offer. *See* Ga. Real Estate Sale Contracts § 4.2 (6th ed. 2015) ("The offer must be complete and definite in all material respects, since it becomes a contract on acceptance.");

Mark D. Johnson, Esq.
June 24, 2016
Page 3

O.C.G.A. § 13-3-2 (parties must have "assented to all of the terms"). Indeed, given that your clients propose terms that are merely "substantially identical," all of the terms are not "identical." That makes it impossible for the purported "offer" to be accepted and, therefore, precludes your letter from being an offer.[2] *See Morrison v. Trust Co. Bank*, 493 S.E.2d 566, 229 Ga. App. 145, 147 (1997) (acceptance must be "without variance of any sort").

Thank you for your attention to these matters.

Very truly yours,

Robert M.D. Mercer

RMDM/dh

cc:     Mr. Robert H. Barnett
        Eric J. Silva, Esq.

---

[2]   Along those lines, the Buy and Sell Agreement also does not include a copy of the "Original Agreement" as that term is used in paragraph 29. Given that the Original Agreement, as amended by the Buy and Sell Agreement, "remains in full force and effect," the terms set forth in the Original Agreement are also missing. *See* Buy and Sell Agreement ¶ 29.

{01474060.DOCXv2}

**EXHIBIT "C"**

ROBERT H. BARNETT

The Liquidation Trustee under the

Sea Island Company Creditors Liquidation Trust

1075 Peachtree Street, N.E., Suite 3675

Atlanta, Georgia  30309

September 20, 2016

R. Michael Souther, Esq.

R. Michael Souther, P.C.

P. O. Box 978

Brunswick, Georgia  31521

Re:     *In re Sea Island Company, et al.*, Chapter 11 Bankruptcy; United States     Bankruptcy
        Court for the Southern District of Georgia (the "Bankruptcy Court");
        Case No. 10-21034-JSD

Dear Mike:

I have set forth below the terms for the agreement between Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidating Trust") in the above referenced jointly administered bankruptcy cases pending in the Bankruptcy Court on the one hand and MVMS, LLC ("MVMS"), a Florida limited liability company, on the other hand.  The Liquidation Trustee and MVMS shall be collectively referred to as the "Parties" and individually as a "Party."  The terms set forth in this letter shall be referred to as the "Agreement."

a.     Subject to the Approval Order (as defined below) becoming enforceable,[1] MVMS agrees to pay the Liquidation Trustee $250,000.00, and the Liquidation Trustee agrees to sell and transfer to MVMS, or its assignee, the Liquidation Trust's Grassy Pond/Kit Swamp Rights (as defined below) and to transfer to MVMS, or its assignee, any interests of the Liquidation Trust in certain real property located in Camden County, Georgia and described below (the "Property") in exchange for the Liquidation Trustee retaining such payment.  The foregoing shall occur as set forth below.

b.     Upon the execution of the Agreement, MVMS shall cause $250,000.00 (the "Escrowed Funds") of readily available funds to be transferred into the account of the Liquidation Trustee set forth on Exhibit "A." The Liquidation Trustee shall hold such funds in escrow in accordance with the Agreement. To the extent not addressed in the Agreement, the funds shall be subject to direction by an order entered by the Bankruptcy Court.  The Liquidation

---

[1] Such order shall be become "enforceable" when it has been entered on the docket, and it is not stayed pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

{01501161.DOCXv1}

Trustee shall have no liability for complying with the terms of the Agreement or an order entered by the Bankruptcy Court.

c.      The "Approval Order" shall mean an order entered by the Bankruptcy Court, which, among other things, approves the Liquidation Trustee's execution and delivery of the Quitclaim Deed (as defined below) and contains a clarification regarding the identification of certain parcels of real property consistent with the representations and warranties of MVMS in paragraph (h) below.  Upon the Approval Order becoming enforceable, the Liquidation Trustee shall be immediately entitled to retain $25,000.00 of the Escrowed Funds on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by any other person.  Upon any closing (the "Closing") related to the purchase of the Property (as defined below) by MVMS, or its assignee, the Liquidation Trustee shall be immediately entitled to retain the remaining $225,000.00 of the Escrowed Funds on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by the Liquidation Trustee or any other person.  MVMS shall notify the Liquidation Trustee within one day of any Closing.  If the Closing does not occur at any time after the entry of the Approval Order and the failure of the Closing to occur is caused by the failure of MVMS to exercise best efforts to close, then the Liquidation Trustee shall be entitled to retain the entire $250,000.00 of the Escrowed Funds. If the Closing fails for any other reason, MVMS shall be entitled to the return of $225,000.00 of the Escrowed Funds.  In the event that a dispute arises with respect to whether MVMS is entitled to the return of the $225,000.00, the Parties agree that MVMS shall have the burden of proof.

d.      Subject to the limitations set forth in this paragraph, the "Liquidation Trust's Grassy Pond/Kit Swamp Rights" shall mean any and all rights or interests of the Liquidation Trustee under the two agreements recorded in Deed Book 880, Page 200 (such agreement shall be referred to as the "First ROFR Agreement") and Deed Book 942, Page 187 (such agreement shall be referred to as the "Second ROFR Agreement"), both in the Office of the Clerk of the Superior Court of Camden County, Georgia (collectively, the "ROFR Agreements") and which relate to or affect the Property.  The Liquidation Trustee makes no representations, warranties, or the like in connection with the Liquidation Trust's Grassy Pond/Kit Swamp Rights.  The sale of the Liquidation Trust's Grassy Pond/Kit Swamp Rights shall be on an "as is," "where is," and "with all faults" basis.

e.      The "Property" shall mean those certain tracts of land located in Camden County, Georgia and identified and described on Exhibit "B" consisting of six (6) pages and attached hereto.  MVMS represents and warrants to the Liquidation Trustee that it has a binding contract to purchase the Property.

f.      As a condition to the Liquidation Trustee being entitled to retain $25,000.00 of the Escrowed Funds as set forth in paragraph "c" above, the Liquidation Trustee must obtain an enforceable Approval Order on or before October 10, 2016.

g.      In addition to the other stipulations set forth in paragraph "c" above, as a condition precedent to the Liquidation Trustee being entitled to the remaining $225,000.00 of the Escrowed Funds, the Liquidation Trustee shall execute the quitclaim deed attached as Exhibit

{01501161.DOCXv1}

"C" (the "Quitclaim Deed") and deliver it to MVMS or its representative in a timely manner so as not to delay the closing on the Property and in any event before October 20, 2016.  For the avoidance of doubt and all other provisions of the Agreement notwithstanding, the execution and delivery of the Quitclaim Deed shall satisfy the Liquidation Trustee's obligations under paragraph (a) above, and the Liquidation Trustee shall have no other obligation to sell, transfer, assign, or the like any other real or personal property whatsoever.

h.      MVMS represents and warrants the following to the Liquidation Trustee: (a) the tract of land set forth on pages A1 through A4 of the exhibit of the Quitclaim Deed are the same as the tracts of land set forth on Exhibit "A" and Exhibit "B" of the First ROFR Agreement and (b) the tract of land set forth on pages A5 through A6 of the exhibit of the Quitclaim Deed is a portion of the tracts of land set forth in the exhibits to the Second ROFR Agreement.

i.      MVMS also represents and warrants the following to the Liquidation Trustee: the tracts of land set forth on Exhibit "B" to this Agreement and the tracts of land set forth on the Exhibit A of the Quitclaim Deed are identical.

j.      Unless explicitly set forth in the Agreement, the covenants, agreements, undertakings, representations, and warranties made herein shall survive the closing of the Agreement and the execution and delivery of the document contemplated herein.

k.      Time is of the essence of this Agreement.

l.      Both Parties agree to do all things reasonably necessary to timely and in good faith to fulfill the terms of the Agreement.

m.      Without reliance on any promise or representation by the Liquidation Trustee, MVMS agrees to these terms based upon its own informed determination of title and any and all encumbrances affecting title that may currently exist.

n.      The Parties shall each bear their respective attorneys' fees, expenses, and costs relating to or associated with the Agreement.

o.      The Agreement may not be revised, superseded, or otherwise modified, except in a written document that (i) explicitly refers to the Agreement, (ii) states explicitly therein that the writing is intended to modify the Agreement, and (iii) is signed by the Parties.

p.      The Parties hereby consent and agree that the Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The Parties also consent and agree that the Bankruptcy Court shall have exclusive venue and jurisdiction with regard to the enforcement and interpretation of the Agreement.

q.      Each Party warrants and represents to the other Party that it is authorized to execute the Agreement and has full power and authority to enter into the Agreement and that the Agreement is duly executed and delivered and constitutes a valid, binding agreement in accordance with its terms.

{01501161.DOCXv1}

r. Each Party warrants and represents to the other Party that it is sophisticated and that its counsel has helped draft the Agreement. As a consequence, the Parties do not intend that the presumptions relating to the interpretation of contracts against the drafter should be applied to the Agreement and, therefore, waive the effects of such presumption. Each Party warrants and represents to the other Party that it has independently conducted its own diligence in connection with entering into the Agreement and is not relying upon any warranty, promise, or representation by the other Party unless explicitly set forth in the Agreement.

s. The Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties. No understanding or oral representation not incorporated in the Agreement shall survive the Agreement, and no promises or representations not expressly stated in the Agreement are included by implication. Unless explicitly set forth in the Agreement, neither Party is relying upon any promise or representation from the other Party to enter into the Agreement.

[remainder of the page intentionally left blank]

If MVMS agrees to the foregoing terms, please have MVMS execute the Agreement below.

Thank you for your attention to these matters.

Very truly yours,

Robert H. Barnett

Not individually, but
as the Liquidation Trustee

I have read and understand the terms and conditions set forth in this letter and agree to them.

By: _____
    _____

Date: _____

If MVMS agrees to the foregoing terms, please have MVMS execute the Agreement below.

Thank you for your attention to these matters.

Very truly yours,

Robert H. Barnett

Not individually, but
as the Liquidation Trustee

I have read and understand the terms and conditions set forth in this letter and agree to them.

MVMS, LLC

By: ___C Michael Will___ member manager
___C. Michael Williams___ member manager MVMS LLC

Date: ___9-20-2016___

# EXHIBIT "A"

Exhibit "A" intentionally omitted

# EXHIBIT "B"

## EXHIBIT "B"
### [Consisting of 6 Pages]

1253 454

All that certain lot, tract or parcel of land situate, lying and being in the 31st G.M. District, in Camden County, Georgia, and being the easterly portion of a tract of land conveyed by Sea Island Company to Melanie Jones Cranford, Katharine Kuntz Revels and Gordon Ray Revels, II by deed dated May 15, 2002, recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Deed Book 880, Page 185, which tract of land herein conveyed is described according to a plat of survey entitled "SUBDIVISION PLAT OF: PARCELS 30 & 31, AND PORTIONS OF PARCELS 16, 28, 29, 32 & 66, SEA ISLAND PRESERVE, CABIN BLUFF," by Robert N. Shupe, Georgia Registered Surveyor No. 2224, dated June 30, 2003, a copy of which is recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Plat Drawer No. 15, Map No. 68, as all of TRACT 2, containing 838.763 acres, according to said plat, which Tract 2 is described according to said plat as follows:  To locate the point of beginning, commence at the point of intersection of the southeasterly right of way line of Harrietts Bluff Road with the northeasterly right of way line of Saddler Cove Drive, both public rights-of-way, and from said point running thence north 10 degrees 14 minutes 30 seconds east across Harrietts Bluff Road for a distance of 168.56 feet to a point located on the southeasterly right of way line of Harrietts Bluff Road; thence running along the south boundary line of Compartment or Parcel Number 32 north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet to the point and place of beginning of Tract 2, as herein described, being the southeastern most corner of Tract 2 which contains 838.763 acres, according to said plat (said bearing and distance of north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet is actually shown on the plat of survey for Katharine Jones O'Connor of parcel 34 and a portion of parcels 32 and 33 by said Robert N. Shupe dated June 30, 2003, which is recorded in said Clerk's office at Plat Drawer No. 15, Map No. 66).

From said beginning point running thence along the southerly boundaries of Compartments 32, 31 and 30 along the following courses and distances: along line L10 north 88 degrees 23 minutes 24 seconds west for a distance of 357.09 feet to an iron pin; thence along line L11 north 88 degrees 15 minutes 28 seconds west for a distance of 664.36 feet to an iron pin; thence north 88 degrees 16 minutes 39 seconds west for a distance of 3026.67 feet to an iron pin; thence north 88 degrees 39 minutes 25 seconds west for a distance of 1950.78 feet to a found concrete monument; thence along line L12 south 67 degrees 06 minutes 22 seconds west for a distance of 34.73 feet to an iron pin; thence along line L13 south 88 degrees 55 minutes 28 west for a distance of 274.26 feet to an iron pin; thence along line L14 south 88 degrees 45 minutes 15 seconds west for a distance of 151.04 feet to a found concrete monument; thence south 59 degrees 33 minutes 15 seconds west for a distance of 1142.22 feet to an iron pin; thence north 00 degrees 00 minutes 00 seconds west for a distance of 6658.80 feet along the boundary line between Tract 2, as herein described, and Tract 1, as shown on said plat, to an iron pin; thence running along line L2 south 61 degrees 29 minutes 16 seconds east for a distance of 384.34 feet to an iron pin; thence south 61 degrees 40 minutes 54 seconds east for a distance of 892.27 feet to an iron pin; thence south 73 degrees 39 minutes 57 seconds east for a distance of 789.03 feet to an iron pin; thence along lines L3 through L7, consecutive and inclusive, along the courses and distances set out on Exhibit "A", attached, to the northeast end of line L7, which is on the centerline of Cubbard Road; thence running along said centerline of Cubbard Road along the

B-1 [Kit Swamp, LLC]

1253 ʲ455

following courses, distances and curves: South 39 degrees 59 minutes 01 seconds east for a distance of 1059.46 feet to an iron pin; thence along the arc of curve C1, concave to the southwest and having curve data as set out on Exhibit "A", attached, for a distance of 311.03 feet to an iron pin; thence along line L8 south 29 degrees 51 minutes 29 seconds east for a distance of 466.72 feet to an iron pin; thence along the arc of curve C2, concave to the southwest and having curve data as set out on Exhibit "A", attached, for a distance of 121.24 feet to an iron pin; thence along line L9 south 12 degrees 29 minutes 32 seconds east for a distance of 430.98 feet to an iron pin; thence along the arc of curve C3, concave to the northeast and having curve data as set out in Exhibit "A", attached, for a distance of 161.72 feet to an iron pin; thence south 24 degrees 50 minutes 47 seconds east for a distance of 1384.48 feet to an iron pin; thence south 24 degrees 49 minutes 12 seconds east for a distance of 1642.71 feet to an iron pin; and thence south 11 degrees 53 minutes 44 seconds east for a distance of 1348.94 feet to the iron pin which marks the point and place of beginning of Tract 2, as herein conveyed.

The said Tract 2 contains portions of parcels or compartments number 29, 30, 31 and 32, according to the compartment map entitled "Cabin Bluff Tract Compartment Map-Camden County, Georgia", prepared by Sizemore & Sizemore, Inc., Job Number 5368, dated April 1995, a copy of which map is attached to and made a part of that certain deed from Forestree a Limited Partnership to A. W. Jones, III, dated November 28, 2000, recorded in the office of the Clerk of Superior Court of Camden County at Deed Book 788, Page 542.

Also conveyed hereby is a non-exclusive easement for purposes of vehicular and pedestrian for ingress and egress over the 60-foot private access easement shown on said plat as "Proctor Drive"; the intent hereof is to confirm that Proctor Drive is considered a "Private Road...adjoining the property" as referred to in the agreement between certain parties and Melanie Jones Cranford dated May 15, 2002, to which reference is made, below.

Reference is hereby made to said plats and to the record of each for further purposes of description and identification and for all other purposes.

B-2

1189 '454

All that certain lot, tract or parcel of land situate, lying and being in the 31ˢᵗ G.M. District, in Camden County, Georgia, and being the easterly portion of a tract of land conveyed by Sea Island Company to Melanie Jones Cranford, Katharine Kuntz Revels and Gordon Ray Revels, II, by deed dated May 15, 2002, recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Deed Book 880, Page 185, which tract of land herein conveyed is described according to a plat of survey entitled "SUBDIVISION PLAT OF: PARCELS 30 & 31, AND PORTIONS OF PARCELS 16, 28, 29, 32 & 66, SEA ISLAND PRESERVE, CABIN BLUFF", by Robert N. Shupe, Georgia Registered Surveyor No. 2224, dated June 30, 2003, a copy of which is recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Plat Drawer No. 15, Map No. 68, as all of TRACT 1, containing 838.763 acres, according to said plat, which Tract 1 is described according to said plat as follows:  To locate the beginning point commence at the point of intersection of the southeasterly right of way line of Harrietts Bluff Road with the northeasterly right of way line of Saddler Cove Drive, both public rights-of-way, and from said point running thence north 10 degrees 14 minutes 30 seconds east across Harrietts Bluff Road for a distance of 168.56 feet to a point located on the southeasterly right of way line of Harrietts Bluff Road; thence running along the south boundary line of Compartment or Parcel Number 32 north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet to a point; thence running along line L10 north 88 degrees 23 minutes 24 seconds west for a distance of 357.09 feet to an iron pin; thence along line L11 north 88 degrees 15 minutes 28 seconds west for a distance of 664.36 feet to an iron pin; thence north 88 degrees 16 minutes 39 seconds west for a distance of 3026.67 feet to an iron pin; thence north 88 degrees 39 minutes 25 seconds west for a distance of 1950.78 feet to a found concrete monument; thence along line L12 south 67 degrees 06 minutes 22 seconds west for a distance of 34.73 feet to an iron pin; thence along line L13 south 88 degrees 55 minutes 28 seconds west for a distance of 274.26 feet to an iron pin; thence along line L14 south 88 degrees 45 minutes 15 seconds west for a distance of 151.04 feet to a found concrete monument; thence south 59 degrees 33 minutes 15 seconds west for a distance of 1142.22 feet to an iron pin which marks the point and place of beginning of TRACT 1, as herein conveyed (said bearing and distance of north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet is actually shown on the plat of survey for Katharine Jones O'Connor of Parcel 34 and a portion of Parcels 32 and 33 by said Robert N. Shupe dated June 30, 2003, which is recorded in said Clerk's office at Plat Drawer No. 15, Map No. 66).

From said beginning point running thence along lines L15 through L22, consecutive and inclusive, along the bearings and distances set out on Exhibit "A", attached, in a general westerly direction to the concrete monument which is located at the westend of line L22; thence north 61 degrees 10 minutes 30 seconds west for a distance of 2388.60 feet to an iron pin; thence running along the boundary between Tract 1, as herein described, and property now or formerly of SunTrust Bank, Southeast Georgia, N.A., as Trustee for Carl W. Dohn, Jr. IRA Account No. 16065303, along the following courses and distances: north 08 degrees 31 minutes 46 seconds for a distance of 1453.29 feet to an iron pin; thence north 03 degrees 04 minutes 47 seconds west for a distance of 1872.54 feet to an iron pin; thence north 18 degrees 57 minutes 24 seconds west for a distance of 1048.93 feet to an iron pin; and thence running north 02 degrees 43 minutes 39 seconds east for a distance of 1862.58 feet to an iron pin; thence running along the northerly boundary of Tract 1 along the

3

B-3 [GRASSY POND Land Management, LLC - 838.763 ACRES]

1189 ʼ455

following courses and distances: south 79 degrees 23 minutes 20 seconds east for a distance of 1046.33 feet to an iron pin; thence south 79 degrees 25 minutes 16 seconds east for a distance of 4008.40 feet to an iron pin; thence along line L1 south 61 degrees 29 minutes 16 seconds east for a distance of 522.08 feet to an iron pin; and thence running along the boundary line between Tract 1, as herein described, and Tract 2, as shown on said plat, south 00 degrees 00 minutes 00 seconds east for a distance of 6658.80 feet to the iron pin which marks the point and place of beginning of Tract 1, as herein described.

Said Tract 1 contains portions of parcels or compartments number 16, 28, 29, 30, 31 and 66, according to the compartment map entitled "Cabin Bluff Tract Compartment Map-Camden County, Georgia", prepared by Sizemore & Sizemore, Inc., Job Number 5638, dated April, 1995, a copy of which map is attached to and made a part of that certain deed from Forestree a Limited Partnership to A.W. Jones, III, dated November 28, 2000, recorded in the office of the Clerk of Superior Court of Camden County at Deed Book 788, Page 542.

Also conveyed hereto is a non-exclusive easement for purposes of vehicular and pedestrian ingress and egress over that certain private access easement shown on said plat as Proctor Drive, running from Harrietts Bluff Road to the beginning point of Tract 1, as hereinabove described, which road is construed to be a "Private Road...adjoining the property" as defined in Item 4 of the agreement between the parties hereto, Katharine Kuntz Revels and Gordon Ray Revels, II dated May 15, 2002, recorded in said Clerk's office at Deed Book 880, Page 201.

Reference is hereby made to said plat and to the record thereof for further purposes of description and identification and for all other purposes.

THE INTENT AND PURPOSE HEREOF is to amplify and correct the description of the property conveyed in that certain deed from the First Party hereto, to the Second Parties hereto, Katharine Kuntz Revels and Gordon Ray Revels, II dated May 15, 2002, recorded in said Clerk's office at Deed Book 880, Page 185.

ALSO CONVEYED HEREBY is a sixty (60) foot private access easement shown as Proctor Drive on said Robert N. Shupe plat, it being the intent hereof to confirm that Proctor Drive, while not actually running down the south property line of Compartments Number 31 and 32, is considered to be a "Private Road...adjoining the property" as referred to in Item 4 of the agreement between the parties hereto and Melanie Jones Cranford dated May 15, 2002, to which reference has hereinabove been made.

RECORDED   OCT  5 2005   _Charlene Cointer_
DEPUTY CLERK SUPERIOR COURT   CAMDEN COUNTY, GEORGIA

4

B—4

1214 090

All that certain lot, tract or parcel of land situate, lying and being in the 31ST G.M. District, in Camden County, Georgia, and being a part of the southwesternmost portion of the old Cabin Bluff Tract, together with the part of the tract known locally as the Seals Tract which lies to the east of Interstate Highway No. 95, which tract is described and identified according to a plat of survey by Robert W. Shupe, Georgia Registered Surveyor No. 2224, dated October 24, 2005, entitled "SURVEY OF: PARCEL 15, A PORTION OF PARCEL 66, & A PORTION OF THE SEALS TRACT, SEA ISLAND PRESERVE, CABIN BLUFF", a copy of which plat is now or shortly to be recorded in the office of the Clerk of Superior Court of Camden County, as a tract of land containing 722.113 acres, which is described according to said plat as follows: Beginning at the iron pin set which marks the point of intersection of the boundary line between that part of the Seals Tract lying to the east of Interstate 95 with property now or formerly of George Avent Gross, and from said point running thence along the easterly right of way line of Interstate 95 along the following courses, distances and curves: north 21 degrees 49 minutes 33 seconds west for a distance of 926.52 feet to a point; thence running along line L3 north 16 degrees 06 minutes 55 seconds west for a distance of 201.00 feet to a point; thence running north 21 degrees 49 minutes 33 seconds west for a distance of 276.97 feet to a point; thence running along the arc of curve C4, concave to the northeast, and having a radius of 11,333.16 feet, for a distance of 1,110.68 feet to a point which is found by following the chord of said curve north 19 degrees 01 minutes 06 seconds west for a distance of 1110.24 feet; thence running north 21 degrees 28 minutes 45 seconds west for a distance of 198.98 feet to a point; thence running along the arc of curve C5, concave to the northeast and having a radius of 11353.16 feet, for a distance of 3087.14 feet to a point which is found by following the chord of said curve north 07 degrees 25 minutes 15 seconds west for a distance of 3077.64 feet; thence running north 00 degrees 22 minutes 09 seconds east for a distance of 1579.37 feet to a set iron pin (hereinafter in this description, the abbreviation "IPS" shall be taken to mean "set iron pin"), said set iron pin being located at the point of intersection of the easterly right of way line of Interstate 95 with the centerline of a private graded dirt road known as the Indian Camp Road; thence running along the centerline of said Indian Camp Road (which centerline of said road forms a boundary line between the tract herein described and a tract of land recently purchased by Alfred W. Jones, III from Synovus Bank, as Trustee of the Dr. Carl Dohn's IRA Account); thence running along the centerline of said Indian Camp Road along the following courses, distances and curves: south 78 degrees 11 minutes 05 seconds east for a distance of 2321.54 feet to an IPS; thence running along the arc of curve C1, concave to the southwest and having a radius of 750 feet, for a distance of 376.53 feet to an IPS which is found by following the chord of said curve south 63 degrees 48 minutes 08 seconds east for a distance of 372.59 feet; thence running south 49 degrees 25 minutes 10 seconds east for a distance of 1053.06 feet to an IPS; thence running along the arc of curve C2, concave to the northeast and having a radius of 850 feet, for a distance of 379.77 feet to an IPS which is found by following the chord of said curve south 62 degrees 13 minutes 09 seconds east for a distance of 376.62 feet; thence running south 75 degrees 01 minutes 08 seconds east for a distance of 1157.81 feet to an IPS; thence running along the arc of curve C3, concave to the southwest and having a radius of 1,500 feet, for a distance of 528.45 feet to an IPS which is found by following the chord of said curve south 64 degrees 55 minutes 34 seconds east for a distance of 525.72 feet; thence running south 54 degrees 50 minutes 01 seconds east for a distance of 1029.66 feet to an IPS; thence running along the boundary between the tract herein described and a tract of land now or formerly belonging to Melanie Jones Cranford south 03 degrees 04 minutes 47 seconds east for a distance of 1727.84 feet to an iron pin found; thence continuing along said boundary south 08 degrees 31 minutes 46 seconds west for a distance of 1453.29 feet to an iron pin found located on the boundary line between the tract of land herein described and a tract of land now or formerly of George Avent Gross; thence running along said boundary line along the following courses and distances: north 61 degrees 11 minutes 41 seconds west for a distance of 1181.52 feet to a concrete monument found (hereinafter, the abbreviation "CMF" shall be taken to mean "concrete monument found"; thence running south 29 degrees 08 minutes 45 seconds west for a distance of 781.91 feet to a CMF; thence running south 28 degrees 46 minutes 18 seconds

B-5 [GRASSY POND LAND MANAGEMENT, LLC - 722.113 ACRES]

1214`091

west for a distance of 730.94 feet to a CMF; thence running north 45 degrees 48 minutes 19 seconds west for a distance of 688.04 feet to a CMF; thence running south 32 degrees 40 minutes 36 seconds west for a distance of 1286.25 feet to a CMF; thence running along line L1 north 88 degrees 48 minutes 33 seconds west for a distance of 198.02 feet to a found iron pin; thence running along line L2 south 88 degrees 38 minutes 04 seconds west for a distance of 277.39 feet to a found iron pin; thence running south 85 degrees 41 minutes 02 seconds west for a distance of 290.28 feet to a found iron pin; and thence running south 89 degrees 03 minutes 39 seconds west for a distance of 1007.80 feet to the set iron pin which marks the point and place of beginning of the tract herein described.

RECORDED DEC 3 0 2005
DEPUTY CLERK SUPERIOR COURT . CAMDEN COUNTY, GEORGIA

B-6

# EXHIBIT "C"

EXHIBIT 'C'

**STATE OF GEORGIA**
**COUNTY OF CAMDEN**

## QUITCLAIM DEED

**THIS INDENTURE** made this _____of October, 2016, by and between **ROBERT H. BARNETT, solely as the Liquidation Trustee under the Sea Island Company Creditors Liquidation Trust** (the "Liquidation Trustee"), as established in the case of Sea Island Co., et al., Chapter 11 Case No. 10-21034-JSD, U. S. Bankruptcy Court for the Southern District of Georgia, as party or parties of the first part, hereinafter referred to as "Grantor", and **MVMS, LLC, a Florida Limited Liability Company,** as party or parties of the second part, hereinafter referred to as "Grantee."  (The words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits; and shall include the singular and plural, and the masculine, feminine and neuter, as the context requires).

**W I T N E S S E T H :**

**NOW, THEREFORE,** for and in consideration of the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Grantor has and by these presents does quitclaim, release, demise unto the Grantee, its successors and assigns, all the right, title, interest, claim or demand which the Grantor has or may have in and to the property hereinafter described, including, but not limited to, any rights the Grantor may have in and to said property as a result of that certain agreement dated May 15, 2002, between Sea Island Company and Katherine Kuntz Revels, et. al., recorded in Deed Book 880, Page 200, in the Clerk's Office of the Superior Court of Camden County, Georgia and that certain agreement dated August 1, 2002, between Sea Island Company and Postell Creek Partners, LLC, recorded in Deed Book 942, Page 187, in the Clerk's Office of the Superior Court of Camden County, Georgia, which property is described as follows:

**SEE EXHIBIT "A" attached hereto and incorporated herein by reference.**
**the following described property, to-wit:**

**TOGETHER WITH** all the rights, members, and appurtenances to the said described

property in anywise appertaining or belonging.

  **TO HAVE AND TO HOLD** the said property in order that neither the Grantor nor its successors or assigns nor any person or persons claiming under Grantor shall at any time claim or demand any right, title, or interest to the said property or its appurtenances.

  **IN WITNESS WHEREOF,** the Grantor has signed and sealed this deed, the day and year first above written.

       GRANTOR:
       **ROBERT H. BARNETT, solely as the Liquidation Trustee under the Sea Island Company Creditors Liquidation Trust**

       By: _____(Seal)
        Robert H. Barnett, Liquidation Trustee

Signed, sealed before me this
_____ day of _____, 2016.


_____
Witness


_____
Notary Public
My Commission Expires: _____
   [NOTARY SEAL]

# EXHIBIT "A"
## [Consisting of 6 Pages]

1253 454

All that certain lot, tract or parcel of land situate, lying and being in the 31st G.M. District, in Camden County, Georgia, and being the easterly portion of a tract of land conveyed by Sea Island Company to Melanie Jones Cranford, Katharine Kuntz Revels and Gordon Ray Revels, II by deed dated May 15, 2002, recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Deed Book 880, Page 185, which tract of land herein conveyed is described according to a plat of survey entitled "SUBDIVISION PLAT OF: PARCELS 30 & 31, AND PORTIONS OF PARCELS 16, 28, 29, 32 & 66, SEA ISLAND PRESERVE, CABIN BLUFF," by Robert N. Shupe, Georgia Registered Surveyor No. 2224, dated June 30, 2003, a copy of which is recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Plat Drawer No. 15, Map No. 68, as all of TRACT 2, containing 838.763 acres, according to said plat, which Tract 2 is described according to said plat as follows:  To locate the point of beginning, commence at the point of intersection of the southeasterly right of way line of Harrietts Bluff Road with the northeasterly right of way line of Saddler Cove Drive, both public rights-of-way, and from said point running thence north 10 degrees 14 minutes 30 seconds east across Harrietts Bluff Road for a distance of 168.56 feet to a point located on the southeasterly right of way line of Harrietts Bluff Road; thence running along the south boundary line of Compartment or Parcel Number 32 north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet to the point and place of beginning of Tract 2, as herein described, being the southeastern most corner of Tract 2 which contains 838.763 acres, according to said plat (said bearing and distance of north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet is actually shown on the plat of survey for Katharine Jones O'Connor of parcel 34 and a portion of parcels 32 and 33 by said Robert N. Shupe dated June 30, 2003, which is recorded in said Clerk's office at Plat Drawer No. 15, Map No. 66).

From said beginning point running thence along the southerly boundaries of Compartments 32, 31 and 30 along the following courses and distances: along line L10 north 88 degrees 23 minutes 24 seconds west for a distance of 357.09 feet to an iron pin; thence along line L11 north 88 degrees 15 minutes 28 seconds west for a distance of 664.36 feet to an iron pin; thence north 88 degrees 16 minutes 39 seconds west for a distance of 3026.67 feet to an iron pin; thence north 88 degrees 39 minutes 25 seconds west for a distance of 1950.78 feet to a found concrete monument; thence along line L12 south 67 degrees 06 minutes 22 seconds west for a distance of 34.73 feet to an iron pin; thence along line L13 south 88 degrees 55 minutes 28 west for a distance of 274.26 feet to an iron pin; thence along line L14 south 88 degrees 45 minutes 15 seconds west for a distance of 151.04 feet to a found concrete monument; thence south 59 degrees 33 minutes 15 seconds west for a distance of 1142.22 feet to an iron pin; thence north 00 degrees 00 minutes 00 seconds west for a distance of 6658.80 feet along the boundary line between Tract 2, as herein described, and Tract 1, as shown on said plat, to an iron pin; thence running along line L2 south 61 degrees 29 minutes 16 seconds east for a distance of 384.34 feet to an iron pin; thence south 61 degrees 40 minutes 54 seconds east for a distance of 892.27 feet to an iron pin; thence south 73 degrees 39 minutes 57 seconds east for a distance of 789.03 feet to an iron pin; thence along lines L3 through L7, consecutive and inclusive, along the courses and distances set out on Exhibit "A", attached, to the northeast end of line L7, which is on the centerline of Cubbard Road; thence running along said centerline of Cubbard Road along the

A-1 [Kit Swamp, LLC]

1253 455

following courses, distances and curves: South 39 degrees 59 minutes 01 seconds east for a distance of 1059.46 feet to an iron pin; thence along the arc of curve C1, concave to the southwest and having curve data as set out on Exhibit "A", attached, for a distance of 311.03 feet to an iron pin; thence along line L8 south 29 degrees 51 minutes 29 seconds east for a distance of 466.72 feet to an iron pin; thence along the arc of curve C2, concave to the southwest and having curve data as set out on Exhibit "A", attached, for a distance of 121.24 feet to an iron pin; thence along line L9 south 12 degrees 29 minutes 32 seconds east for a distance of 430.98 feet to an iron pin; thence along the arc of curve C3, concave to the northeast and having curve data as set out in Exhibit "A", attached, for a distance of 161.72 feet to an iron pin; thence south 24 degrees 50 minutes 47 seconds east for a distance of 1384.48 feet to an iron pin; thence south 24 degrees 49 minutes 12 seconds east for a distance of 1642.71 feet to an iron pin; and thence south 11 degrees 53 minutes 44 seconds east for a distance of 1348.94 feet to the iron pin which marks the point and place of beginning of Tract 2, as herein conveyed.

The said Tract 2 contains portions of parcels or compartments number 29, 30, 31 and 32, according to the compartment map entitled "Cabin Bluff Tract Compartment Map-Camden County, Georgia", prepared by Sizemore & Sizemore, Inc., Job Number 5368, dated April 1995, a copy of which map is attached to and made a part of that certain deed from Forestree a Limited Partnership to A. W. Jones, III, dated November 28, 2000, recorded in the office of the Clerk of Superior Court of Camden County at Deed Book 788, Page 542.

Also conveyed hereby is a non-exclusive easement for purposes of vehicular and pedestrian for ingress and egress over the 60-foot private access easement shown on said plat as "Proctor Drive"; the intent hereof is to confirm that Proctor Drive is considered a "Private Road...adjoining the property" as referred to in the agreement between certain parties and Melanie Jones Cranford dated May 15, 2002, to which reference is made, below.

Reference is hereby made to said plats and to the record of each for further purposes of description and identification and for all other purposes.

A-2

1189 454

All that certain lot, tract or parcel of land situate, lying and being in the 31st G.M. District, in Camden County, Georgia, and being the easterly portion of a tract of land conveyed by Sea Island Company to Melanie Jones Cranford, Katharine Kuntz Revels and Gordon Ray Revels, II, by deed dated May 15, 2002, recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Deed Book 880, Page 185, which tract of land herein conveyed is described according to a plat of survey entitled "SUBDIVISION PLAT OF: PARCELS 30 & 31, AND PORTIONS OF PARCELS 16, 28, 29, 32 & 66, SEA ISLAND PRESERVE, CABIN BLUFF", by Robert N. Shupe, Georgia Registered Surveyor No. 2224, dated June 30, 2003, a copy of which is recorded in the office of the Clerk of Superior Court of Camden County, Georgia, at Plat Drawer No. 15, Map No. 68, as all of TRACT 1, containing 838.763 acres, according to said plat, which Tract 1 is described according to said plat as follows:  To locate the beginning point commence at the point of intersection of the southeasterly right of way line of Harrietts Bluff Road with the northeasterly right of way line of Saddler Cove Drive, both public rights-of-way, and from said point running thence north 10 degrees 14 minutes 30 seconds east across Harrietts Bluff Road for a distance of 168.56 feet to a point located on the southeasterly right of way line of Harrietts Bluff Road; thence running along the south boundary line of Compartment or Parcel Number 32 north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet to a point; thence running along line L10 north 88 degrees 23 minutes 24 seconds west for a distance of 357.09 feet to an iron pin; thence along line L11 north 88 degrees 15 minutes 28 seconds west for a distance of 664.36 feet to an iron pin; thence north 88 degrees 16 minutes 39 seconds west for a distance of 3026.67 feet to an iron pin; thence north 88 degrees 39 minutes 25 seconds west for a distance of 1950.78 feet to a found concrete monument; thence along line L12 south 67 degrees 06 minutes 22 seconds west for a distance of 34.73 feet to an iron pin; thence along line L13 south 88 degrees 55 minutes 28 seconds west for a distance of 274.26 feet to an iron pin; thence along line L14 south 88 degrees 45 minutes 15 seconds west for a distance of 151.04 feet to a found concrete monument; thence south 59 degrees 33 minutes 15 seconds west for a distance of 1142.22 feet to an iron pin which marks the point and place of beginning of TRACT 1, as herein conveyed (said bearing and distance of north 88 degrees 12 minutes 32 seconds west for a distance of 1,393.00 feet is actually shown on the plat of survey for Katharine Jones O'Connor of Parcel 34 and a portion of Parcels 32 and 33 by said Robert N. Shupe dated June 30, 2003, which is recorded in said Clerk's office at Plat Drawer No. 15, Map No. 66).

From said beginning point running thence along lines L15 through L22, consecutive and inclusive, along the bearings and distances set out on Exhibit "A", attached, in a general westerly direction to the concrete monument which is located at the westend of line L22; thence north 61 degrees 10 minutes 30 seconds west for a distance of 2388.60 feet to an iron pin; thence running along the boundary between Tract 1, as herein described, and property now or formerly of SunTrust Bank, Southeast Georgia, N.A., as Trustee for Carl W. Dohn, Jr. IRA Account No. 16065303, along the following courses and distances: north 08 degrees 31 minutes 46 seconds for a distance of 1453.29 feet to an iron pin; thence north 03 degrees 04 minutes 47 seconds west for a distance of 1872.54 feet to an iron pin; thence north 18 degrees 57 minutes 24 seconds west for a distance of 1048.93 feet to an iron pin; thence running north 02 degrees 43 minutes 39 seconds east for a distance of 1862.58 feet to an iron pin; thence running along the northerly boundary of Tract 1 along the

3

A-3 [Grassy Pond Land Management, LLC - 838.763 Acres]

1189 ·455

following courses and distances: south 79 degrees 23 minutes 20 seconds east for a distance of 1046.33 feet to an iron pin; thence south 79 degrees 25 minutes 16 seconds east for a distance of 4008.40 feet to an iron pin; thence along line L1 south 61 degrees 29 minutes 16 seconds east for a distance of 522.08 feet to an iron pin; and thence running along the boundary line between Tract 1, as herein described, and Tract 2, as shown on said plat, south 00 degrees 00 minutes 00 seconds east for a distance of 6658.80 feet to the iron pin which marks the point and place of beginning of Tract 1, as herein described.

Said Tract 1 contains portions of parcels or compartments number 16, 28, 29, 30, 31 and 66, according to the compartment map entitled "Cabin Bluff Tract Compartment Map-Camden County, Georgia", prepared by Sizemore & Sizemore, Inc., Job Number 5638, dated April, 1995, a copy of which map is attached to and made a part of that certain deed from Forestree a Limited Partnership to A.W. Jones, III, dated November 28, 2000, recorded in the office of the Clerk of Superior Court of Camden County at Deed Book 788, Page 542.

Also conveyed hereto is a non-exclusive easement for purposes of vehicular and pedestrian ingress and egress over that certain private access easement shown on said plat as Proctor Drive, running from Harrietts Bluff Road to the beginning point of Tract 1, as hereinabove described, which road is construed to be a "Private Road...adjoining the property" as defined in Item 4 of the agreement between the parties hereto, Katharine Kuntz Revels and Gordon Ray Revels, II dated May 15, 2002, recorded in said Clerk's office at Deed Book 880, Page 201.

Reference is hereby made to said plat and to the record thereof for further purposes of description and identification and for all other purposes.

THE INTENT AND PURPOSE HEREOF is to amplify and correct the description of the property conveyed in that certain deed from the First Party hereto, to the Second Parties hereto, Katharine Kuntz Revels and Gordon Ray Revels, II dated May 15, 2002, recorded in said Clerk's office at Deed Book 880, Page 185.

ALSO CONVEYED HEREBY is a sixty (60) foot private access easement shown as Proctor Drive on said Robert N. Shupe plat, it being the intent hereof to confirm that Proctor Drive, while not actually running down the south property line of Compartments Number 31 and 32, is considered to be a "Private Road...adjoining the property" as referred to in Item 4 of the agreement between the parties hereto and Melanie Jones Cranford dated May 15, 2002, to which reference has hereinabove been made.

RECORDED    OCT  5 2005    Charlene Cointo
DEPUTY CLERK SUPERIOR COURT    CAMDEN COUNTY, GEORGIA

4

A-4

1214 090

All that certain lot, tract or parcel of land situate, lying and being in the 31st G.M. District, in Camden County, Georgia, and being a part of the southwesternmost portion of the old Cabin Bluff Tract, together with the part of the tract known locally as the Seals Tract which lies to the east of Interstate Highway No. 95, which tract is described and identified according to a plat of survey by Robert W. Shupe, Georgia Registered Surveyor No. 2224, dated October 24, 2005, entitled "SURVEY OF: PARCEL 15, A PORTION OF PARCEL 66, & A PORTION OF THE SEALS TRACT, SEA ISLAND PRESERVE, CABIN BLUFF", a copy of which plat is now or shortly to be recorded in the office of the Clerk of Superior Court of Camden County, as a tract of land containing 722.113 acres, which is described according to said plat as follows: Beginning at the iron pin set which marks the point of intersection of the boundary line between that part of the Seals Tract lying to the east of Interstate 95 with property now or formerly of George Avent Gross, and from said point running thence along the easterly right of way line of Interstate 95 along the following courses, distances and curves: north 21 degrees 49 minutes 33 seconds west for a distance of 926.52 feet to a point; thence running along line L3 north 16 degrees 06 minutes 55 seconds west for a distance of 201.00 feet to a point; thence running north 21 degrees 49 minutes 33 seconds west for a distance of 276.97 feet to a point; thence running along the arc of curve C4, concave to the northeast, and having a radius of 11,333.16 feet, for a distance of 1,110.68 feet to a point which is found by following the chord of said curve north 19 degrees 01 minutes 06 seconds west for a distance of 1110.24 feet; thence running north 21 degrees 28 minutes 45 seconds west for a distance of 198.98 feet to a point; thence running along the arc of curve C5, concave to the northeast and having a radius of 11353.16 feet, for a distance of 3087.14 feet to a point which is found by following the chord of said curve north 07 degrees 25 minutes 15 seconds west for a distance of 3077.64 feet; thence running north 00 degrees 22 minutes 09 seconds east for a distance of 1579.37 feet to a set iron pin (hereinafter in this description, the abbreviation "IPS" shall be taken to mean "set iron pin"), said set iron pin being located at the point of intersection of the easterly right of way line of Interstate 95 with the centerline of a private graded dirt road known as the Indian Camp Road; thence running along the centerline of said Indian Camp Road (which centerline of said road forms a boundary line between the tract herein described and a tract of land recently purchased by Alfred W. Jones, III from Synovus Bank, as Trustee of the Dr. Carl Dohn's IRA Account); thence running along the centerline of said Indian Camp Road along the following courses, distances and curves: south 78 degrees 11 minutes 05 seconds east for a distance of 2321.54 feet to an IPS; thence running along the arc of curve C1, concave to the southwest and having a radius of 750 feet, for a distance of 376.53 feet to an IPS which is found by following the chord of said curve south 63 degrees 48 minutes 08 seconds east for a distance of 372.59 feet; thence running south 49 degrees 25 minutes 10 seconds east for a distance of 1053.06 feet to an IPS; thence running along the arc of curve C2, concave to the northeast and having a radius of 850 feet, for a distance of 379.77 feet to an IPS which is found by following the chord of said curve south 62 degrees 13 minutes 09 seconds east for a distance of 376.62 feet; thence running south 75 degrees 01 minutes 08 seconds east for a distance of 1157.81 feet to an IPS; thence running along the arc of curve C3, concave to the southwest and having a radius of 1,500 feet, for a distance of 528.45 feet to an IPS which is found by following the chord of said curve south 64 degrees 55 minutes 34 seconds east for a distance of 525.72 feet; thence running south 54 degrees 50 minutes 01 seconds east for a distance of 1029.66 feet to an IPS; thence running along the boundary between the tract herein described and a tract of land now or formerly belonging to Melanie Jones Cranford south 03 degrees 04 minutes 47 seconds east for a distance of 1727.84 feet to an iron pin found; thence continuing along said boundary south 08 degrees 31 minutes 46 seconds west for a distance of 1453.29 feet to an iron pin found located on the boundary line between the tract of land herein described and a tract of land now or formerly of George Avent Gross; thence running along said boundary line along the following courses and distances: north 61 degrees 11 minutes 41 seconds west for a distance of 1181.52 feet to a concrete monument found (hereinafter, the abbreviation "CMF" shall be taken to mean "concrete monument found"; thence running south 29 degrees 08 minutes 45 seconds west for a distance of 781.91 feet to a CMF; thence running south 28 degrees 46 minutes 18 seconds

A-5 [Grassy Pond Land Management, LLC - 722.113 Acres]

1214 091

west for a distance of 730.94 feet to a CMF; thence running north 45 degrees 48 minutes 19 seconds west for a distance of 688.04 feet to a CMF; thence running south 32 degrees 40 minutes 36 seconds west for a distance of 1286.25 feet to a CMF; thence running along line L1 north 88 degrees 48 minutes 33 seconds west for a distance of 198.02 feet to a found iron pin; thence running along line L2 south 88 degrees 38 minutes 04 seconds west for a distance of 277.39 feet to a found iron pin; thence running south 85 degrees 41 minutes 02 seconds west for a distance of 290.28 feet to a found iron pin; and thence running south 89 degrees 03 minutes 39 seconds west for a distance of 1007.80 feet to the set iron pin which marks the point and place of beginning of the tract herein described.

RECORDED DEC 3 0 2005

DEPUTY CLERK SUPERIOR COURT    CAMDEN COUNTY, GEORGIA

A-6

**EXHIBIT "D"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, et al., | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge John S. Dalis |
| | ) | |

**ORDER GRANTING, SUBJECT TO OBJECTION ON THE TERMS SET
FORTH BELOW, MOTION FOR EXPEDITED APPROVAL OF SALE
OF THE LIQUIDATION TRUST'S INTEREST IN CERTAIN
<u>RIGHTS OF FIRST REFUSAL TO MVMS, LLC</u>**

This matter came before the Court upon the Motion for Expedited Approval of Sale of the Liquidation Trust's Interest in Certain Rights of First Refusal to MVMS, LLC [Bankr. Docket No. __ ] (the "Motion").[1] As indicated by the signature of its counsel below, MVMS, LLC (the "Buyer") consents to the relief granted below and agrees that this Order constitutes an "Approval Order" for purposes of the Sale Agreement. The Court's entry of this order on negative notice with a shortened objection period is appropriate given that neither the Plan nor the Trust Agreement require the Liquidation Trustee to obtain the Court's approval of the Sale. Finding that cause exists to grant the relief requested, it is hereby:

ORDERED, ADJUDGED AND DECREED that the Motion is GRANTED as set forth below; and it is

**FURTHER ORDERED that the Sale Agreement, a copy of which is attached as Exhibit "C" to the Motion, and all of the terms of the Sale Agreement are hereby approved and incorporated herein by reference and the Sale is authorized in all respects, subject only**

---

[1] Capitalized, but undefined, terms used herein have the meaning ascribed to such terms in the Motion.

{01502138.DOCXv1}

to a party in interest with standing filing a written objection with the Court on or before noon on _____ (the "Objection Deadline"); and it is

       **FURTHER ORDERED that, if a timely written objection is filed with the Court by a party in interest with standing, the Court shall hold a hearing at \_\_:\_\_ \_.m. on _____ \_\_, 2016 at U.S. Courthouse, 801 Gloucester Street, Third Floor, Brunswick, Georgia 31520, (the "Hearing"), and the Court shall consider at the Hearing whether to approve the Sale and grant the other relief set forth in this Order; and it is**

       FURTHER ORDERED that, unless a written objection filed by a party with standing appears on the docket of the Clerk of Court (as reflected on Pacer) by the Objection Deadline, the relief granted in this Order shall become immediately enforceable without any further order of the Court or action by any party; and it is

       FURTHER ORDERED that any party filing an objection to the Motion shall set forth the legal and factual bases for the objection and shall identify by schedule (or proof of claim) number, the amount, and the bases for the claim(s) upon which it asserts standing; and it is

       FURTHER ORDERED that only the Beneficiaries of the Liquidation Trust and the United States Trustee shall have standing to file an objection; and it is

       FURTHER ORDERED that in accordance with the terms of the Sale Agreement, the Liquidation Trustee shall hereby be entitled to the Payment on an irrevocable, unavoidable basis and shall hereby be entitled to transfer such funds to the account for the General Unsecured Creditors Fund (as that term is defined in the Plan); and it is

       FURTHER ORDERED that the Sale Agreement shall be enforceable according to its terms without regard to otherwise applicable law; and it is

{01502138.DOCXv1}

FURTHER ORDERED that the property transferred as a result of the execution and delivery of the Quitclaim Deed (as defined in Sale Agreement) shall hereby be consistent with, and—if necessary—limited by, the representations and warranties by the Buyer in the Sale Agreement; and it is

FURTHER ORDERED that the definition of "Property" in the Sale Agreement shall hereby be consistent with, and—if necessary—amended by, the representations and warranties by the Buyer in the Sale Agreement; and it is

FURTHER ORDERED that in no event shall the Sale or any matter or event authorized under, contemplated by, or leading up to the entry of this Order or the Sale Agreement result in any liability to or any obligation for the Liquidation Trust or the Liquidation Trustee; and it is

FURTHER ORDERED that the Clerk of the Superior Court in Camden County, Georgia is hereby ordered to accept this Order for filing in the Clerk's real property records, and this Order may be recorded in such real property records and shall be deemed to be in recordable form; and it is

FURTHER ORDERED that—in the event that the Court must construe the Order—the parties do not intend for there to be any—and there shall be no—presumption against the drafter; and it is

FURTHER ORDERED that notwithstanding any Federal Rule of Bankruptcy Procedure to the contrary, the Order shall be immediately enforceable as set forth above; and it is

FURTHER ORDERED that the Court hereby retains exclusive venue and jurisdiction to hear and determine all matters arising from or related to one or more of the following: the implementation, interpretation, and enforcement of the Sale Agreement or this Order; and it is

3

FURTHER ORDERED that pursuant to ECF Local Rule 9, the Electronic Case File notice automatically sent to attorneys who have filed a pleading in these cases shall constitute service on such attorneys and their clients of the Motion and this Order.  No other or further notice or service shall be required.

SO ORDERED this ____ day of _____, 2016.
Brunswick, Georgia

_____
JOHN S. DALIS
UNITED STATES BANKRUPTCY JUDGE

Prepared and presented by:

_____*/s/ Robert M.D. Mercer*_____
Robert M.D. Mercer
Georgia Bar No. 502317
Eric J. Silva *(admitted pro hac vice)*
Georgia Bar No. 442808
SCHULTEN WARD TURNER & WEISS LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia  30303
(404) 688-6800  Telephone
(404) 688-6840  Facsimile

*Counsel for Robert H. Barnett as the
Liquidation Trustee under the Sea Island
Company Creditors Liquidation Trust*

Consented to by:

_____*/s/ R. Michael Souther*_____
R. Michael Souther
Georgia Bar No. 668325
R. MICHAEL SOUTHER, P.C.
P.O. Box 978
Brunswick, Georgia 31521
(912) 265-5544  Telephone
(912) 265-6244  Facsimile

*Counsel for MVMS, LLC*

4