UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al*., | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge John S. Dalis |
| | ) | |

**MOTION TO APPROVE COMPROMISES AND SETTLEMENTS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
AND MOTION TO APPROVE DISTRIBUTION OF FUNDS**

Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidation Trust" or "Trust") files the Motion to Approve Compromises and Settlements Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Motion to Approve Distribution of Funds (the "Motion"). In support of the Motion, the Liquidation Trustee shows the Court the following:

**INTRODUCTION**

1.      At the October 20, 2016 hearing, the Court noted that it thought that the dispute regarding the allowance of the claims of the Pension Benefit Guaranty Corporation (the "PBGC") should be resolved in such a way that non-PBGC, non-lender class 5 Beneficiaries (as defined below) would receive more than they would otherwise receive. The Court requested that the PBGC assign a portion of the proceeds from its claims to fund such enhanced distribution. The Court has also noted that it would be prudent for the cases to be largely resolved through an interim distributions commencing in 2016.

2.      Starting on November 17, 2016, only two days after the settlement conference during which it became clear to the Liquidation Trustee that he was unlikely to enter into a

beneficial settlement with the PBGC, the Liquidation Trustee renewed his efforts from the Spring of 2016 to pursue a settlement with the Lenders (as defined below). The Liquidation Trustee is pleased to report that he has entered into a settlement agreement with the Lenders that would effectuate all three results requested by the Court. *First*, the Lenders have agreed to fund a meaningful enhancement to the distribution to the non-PBGC, non-Lenders class 5 Beneficiaries, which the PBGC was unwilling to do. Specifically, the Lenders have agreed that—if they receive their interim distribution on or before December 30, 2016—they will assign $250,000.00 of such interim distribution to the non-PBGC, non-Lenders class 5 Beneficiaries in exchange for the allowance of the PBGC's claims. *Second*, the settlement would resolve the allowance of the PBGC's claims and prevent the incurrence of further fees and expenses associated with such claim litigation. *Third*, granting the requested relief will also result in the non-PBGC class 4 Beneficiaries receiving a 100% distribution on their claims—and the PBGC receiving a distribution on account of its purported class 4 claim—in 2016.

3.    A condition precedent to the effectiveness of the settlement agreement with the Lenders is the entry of a bar order to ensure that the Liquidation Trustee satisfies his obligation under the Trust Agreement (as defined below) to pay all accrued but unpaid "Trust Costs" (as that term is defined in section 1.1(k) of the Trust Agreement) and create a reserve for anticipated "Trust Costs." As to the former, the Liquidation Trustee requests that the Court bar the assertion of Trust Costs against the Liquidation Trust. As to the latter, the Liquidation Trustee requests that the Court bar the assertion of any claims against the Liquidation Trustee, his professionals, and any other party entitled to indemnification under section 3.10(b) of the Trust Agreement because—if such claims were ever asserted—they would certainly result in Trust Costs under such section of the Trust Agreement. Making a distribution to the Beneficiaries (as defined in

the Trust Agreement) under the Liquidation Trust without quantifying such Trust Costs would be just as imprudent as making a distribution to unsecured creditors before an administrative claims bar date.

4.      Should the Court decide to grant such relief, given the December 30, 2016 deadline for the Lenders' distribution and the fourteen day appeal period associated with any order granting the requested relief, the Liquidation Trustee requests that the Court grant the requested relief on an expedited basis on negative notice and, if there is an objection, that the Court hold the hearing early enough, so that—if the Court enters an order granting the requested relief—it will have time to become a Final Order on or before December 29, 2016.

## JURISDICTION

5.      The Court has *in rem* jurisdiction and jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b) and (e)(1) with respect to this Motion.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      The legal predicate for certain requested relief is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### The Filing of the Bankruptcy Cases
### and Appointment of the Liquidation Trustee

7.      The above-referenced debtors (the "Debtors") filed with the Court their voluntary petitions for relief under chapter 11 of the Bankruptcy Code on August 10, 2010.

8.      On September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was

confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order")[1].

9.      The Trust Agreement of Sea Island Company Creditors Liquidation Trust dated December 15, 2010 (the "Trust Agreement"), incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee.  *See* Bankr. Docket No. 449-1.

<u>The Disallowance of Claims and Distributions</u>

10.      At the outset of the cases, as the Court has observed, there were approximately 5,500 claims for the Liquidation Trustee to review.  *See* Bankr. Docket No. 883 at p. 2 of 4.  And according to the Debtors' disclosure statement, they had over a billion dollars of debt.  *See* Bankr. Docket No. 216 at pp. 17-19 of 85 (disclosure statement reflects that classes 2, 4, and 5 alone collectively amount to more than $1.1 billion).

11.      Indeed, as the late United States District Court Judge B. Avant Edenfield observed, these cases collectively are "one of the largest filings in this District's history."  *See McCrary v. Barnett* (*In re Sea Island Co.*), 486 B.R. 559, 561 (S.D. Ga. 2013).

12.      Despite the opposition of certain well-funded parties,[2] the Liquidation Trustee has obtained the disallowance of over 5,400 claims with an aggregate asserted face amount of over $480,000,000.00.   As of December 4, 2015, the Liquidation Trustee has obtained the disallowance of over 5,200 claims in the aggregate asserted amount of over $220,000,000.00.  *See* Bankr. Docket No. 1439 ¶ 19 & Ex. B (detailing the first twenty-four omnibus claims objections and resulting orders).  In addition, through settlements, the Liquidation Trustee has

---

[1] Capitalized, but undefined, terms shall have the meaning ascribed to them in the Plan (as defined below).

[2]  *See, e.g.,* Bankr. Docket No. 1439 n.2 (detailing some of the challenges posed by one such party).

obtained the disallowance of claims with an aggregate asserted face amount of over $130,000,000.00. *See id.* at ¶ 21 & Ex. C (detailing claim disallowance settlements).

13.     In 2016, the Liquidation Trustee obtained the disallowances of over 200 claims with an aggregate asserted amount of over $130,000,000.00.  *See* Bankr. Docket Nos. 1613, 1622, 1628, 1678, 1679, and 1703.

14.     In terms of recoveries, in 2016, the Liquidation Trustee has recovered over $1 million through real estate related settlements and sales as follows:

| Party/Parties | Description | Settlement or Sale Amount Benefit to the Trust | Result to Liquidation Trustee | Docket No. of Motion/ Date | Docket No. of Order/ Date |
|---|---|---|---|---|---|
| Hog Hammock, LLC and Katharine Jones O'Connor | Motion to Approve Compromise and Settlement<br><br>Real property - Camden Co. | $175,000.00 | Release of rights under the Liquidation Trustee's certain right of first refusal and release of claims | 1462 1/13/16 | 1463 1/14/16 |
| Bank of the Ozarks | Motion to Approve Compromise and Settlement<br><br>Parcel/real property – Camden Co. | $272,000.00 | Liquidation Trustee shall receive 32% of the gross sale proceeds from sale of the property in full satisfaction of Residual Rights | 1480 1/25/16 | 1484 1/28/16 |
| Gregory and Jennifer Holcomb | Motion for Expedited Approval of Sale<br><br>Lot 16 Sea Island Lake Cottages | $100,000.00 | Liquidation Trustee quitclaims the Trust's interest in the property | 1591 7/26/16 | 1594 7/27/16 |

| Party/Parties | Description | Settlement or Sale Amount Benefit to the Trust | Result to Liquidation Trustee | Docket No. of Motion/ Date | Docket No. of Order/ Date |
|---|---|---|---|---|---|
| Taylor S. Glover | Motion for Approval of Sale O'Connor property | $275,000.00 | Liquidation Trustee quitclaims his rights in the ROFR | 1666 9/23/16 | 1674 9/26/16 |
| MVMS, LLC | Motion for Expedited Approval of Sale Grassy Pond/Kit Swamp – Camden Co. | $250,000.00 | Sale/transfer of Liquidation Trust's rights to the property | 1670 9/23/16 | 1675 9/26/16 |

15.     There was not projected to be *any* distribution to class 5, and there was only projected to be a 6% distribution to class 4 Beneficiaries.[3]  But if the requested relief is granted, millions of dollars will be distributed to class 5 Beneficiaries, and the non-PBGC class 4 Beneficiaries will receive a 100% distribution.   And even the PBGC stands to receive a distribution of approximately 10% on its asserted claims.

<u>Claims Reconciliation</u>

16.     The Plan provides for three different classes of claims: (a) class 4 claims; (b) class 5 claims; and (c) class 6 claims.

---

[3] *See* Bankr. Docket No. 216 at p. 19 of 85 (disclosure statement projecting an "Estimated Percentage Recovery" for Class 5 as "0%").

{01526574.DOCXv1}

17.     The following is a summary of each of the classes of claims:

Class 4 Claims:  Class 4 claims consist of those claims for which a ballot was cast in favor of the Plan.  Class 4 claims are entitled to a *pro rata* share of the Accepting Unsecured Creditors Fund (as that term is defined in the Plan).  Any resulting deficiency is entitled to be treated as a class 5 claim.  *See* Plan § 3.09.

Class 5 Claims:  Class 5 claims consist of those claims for which a ballot was cast against the Plan, not cast at all, or cast without designating whether it was for or against the Plan.  Class 5 claims are entitled to a *pro rata* share of the General Unsecured Creditors Fund (as that term is defined in the Plan).  *See* Plan § 3.10.

Class 6 Claims:  Class 6 claims consist of those claims in amount equal to or less than $50.00.   *See* Plan §§ 1.01 (definition of "Convenience Claims" and "Convenience Class Cap") & 3.11.

18.     The bar date for prepetition claims was December 14, 2010.   *See* Order Establishing a Bar Date for Filing Proofs of Claim and Approving a Bar Date Notice and Procedures [Bankr. Docket No. 93] ¶ 2.

*Class 4 Reconciliation*

19.     On December 9, 2015, the Court entered an order on negative notice reconciling Class 4 claims.  *See* Order Granting, Subject to Objection on the Terms Set forth below, the Motion to Approve Reconciliation of Class 4 Claims [Bankr. Docket No. 1445] (the "Class 4 Reconciliation Order").  The Class 4 Reconciliation Order, among other things, limits the potential class 4 claims to those set forth on Exhibit "A" to the Motion to Approve the Reconciliation of class 4 Claims [Bankr. Docket No. 1430] (the "Class 4 Reconciliation Motion").  On January 22, 2016, the Court entered an order overruling the only objection to the Class 4 Reconciliation Order.  *See* Bankr. Docket No. 1476.

20.     Subsequently, because of the Liquidation Trustee's efforts, two of the claims set forth on the claims reconciliation attached as Exhibit "A" to the Class 4 Reconciliation Motion were withdrawn in May 2016.  *See* Bankr. Docket No. 1430 at p. 10 of 16; Bankr. Docket No.

{01526574.DOCXv1}

1521 (withdrawal of claim of Sue M. Sayer) and Bankr. Docket No. 1536 (withdrawal of claim of Eric Mark Davis).

21.    Under the terms of the PBGC class 4 settlement, such withdrawals resulted in a $228,335.85 benefit to the Liquidation Trust, which inured directly to the benefit of the PBGC.

*Class 5 & 6 Reconciliation*

22.    On February 23, 2016, the Court entered an order on negative notice reconciling class 5 and class 6 claims on negative notice.  *See* Order Granting, Subject to Objection on the Terms Set forth below, the Motion to Approve Reconciliation of Class 5 and Class 6 Claims [Bankr. Docket No. 1490] (the "Class 5 Reconciliation Order").  The Class 5 Reconciliation Order, among other things, limits the potential class 5 and class 6 claims to those set forth on Exhibit "A" to the Motion to Approve the Reconciliation of Class 5 and Class 6 Claims [Bankr. Docket No. 1489].

23.    Subsequently, the Liquidation Trustee objected to and obtained the disallowance of numerous additional claims.  *See* Bankr. Docket Nos. 1613, 1622, 1628, 1678, 1679, & 1703.

*The Remaining Claims*

24.    Accordingly, the Liquidation Trustee submits the following: (a) the claims set forth on Exhibit "A" are the only class 4 claims; (b) the claims set forth on Exhibit "B"[4] are the only class 5 claims; and (c) the claims set forth on Exhibit "C" are the only class 6 claims.

---

[4]  The Liquidation Trustee will file Exhibits "B" and "C" on or before December 6, 2016, and they will be served with the Motion.

<u>The Liquidation Trustee's Investigation of the PBGC's Claims</u>

25.     As a direct result of the Liquidation Trustee's investigation of the PBGC's claims, on July 18, 2016, on the very eve of the Claims Objection Deadline, the PBGC reduced its aggregate asserted claims by over $31 million.

26.     In fact, just *35 minutes* after the Court denied the jointly requested extension of the claims objection deadline, the PBGC withdrew one of its proofs in the amount of $17,779,154.00.[5]   Later that same day, the PBGC mailed to the claims agent two amended proofs, which further reduced the aggregate amount of the PBGC's claims by $13,408,096.00.[6]

27.     Based on the actuarial case memorandum, it appears that the PBGC knew—or should have known—that it had filed substantially overstated claims since at least September 30, 2014.   Despite the Liquidation Trustee's repeated requests for a meaningful explanation, in a letter dated August 16, 2016, from the PBGC's counsel, the PBGC made it clear that it did not intend to explain the circumstances for the over $31 million reduction in the PBGC's claims.[7]

28.     Indeed, the explanation that counsel for the PBGC gave at the October 20, 2016, hearing raises more questions.   For instance, counsel for the PBGC effectively admits that the "legal team" knew the information on May 25, 2016, but seeks to justify her failure to advise the Court at the July 9, 2016 hearing about it by pointing out that the report was in "draft form."   *See* Hearing Tr. 9:3-9, Oct. 20, 2016.   Counsel for the PBGC failed to disclose to the Court, however, that the PBGC's supervising actuary advised counsel for the PBGC that it was unlikely that there would be any "significant changes while in review."   *See* Bankr. Docket No. 1645-5 at 2.

---

[5] *See* Bankr. Docket No. 1577.
[6] *See* Epiq Claim Nos. 950 and 951.
[7] *See* Bankr. Docket No. 1690 ¶¶ 29-31.

{01526574.DOCXv1}

29.     The foregoing, among other information, demonstrates that further litigation of the PBGC's claims would not be a quick or efficient matter and that, now that the investigation of the Liquidation Trustee has already resulted in a substantial reduction of the claims asserted by the PBGC, entering a settlement is more advantageous for the Liquidation Trust than continued litigation.

**The Liquidation Trustee and His Counsel Have Given the
United States Trustee Numerous Unsolicited Reports**

30.     As the Court is aware, the Trust Agreement does not provide for an oversight committee.  As such, as the United States Trustee has acknowledged, the Liquidation Trustee and his counsel have actively sought to keep the United States Trustee apprised of the status of the cases.[8]

31.     Indeed, during the last year, as the United States Trustee has gotten more actively involved in these cases,[9] the Liquidation Trustee and his counsel have had numerous phone calls with—and sent even more e-mails to—the United States Trustee to keep him informed about the status of these cases and the issues confronting the Liquidation Trustee.

32.     As only one example, in advance of the February 11, 2016 status conference, counsel for the Liquidation Trustee shared the initial settlement correspondence with the United

---

[8] *See* Hearing Tr. 3:23-4:2,  Feb. 11, 2016 (United States Trustee: "During the course of the case, I will say that that the liquidation trustee and his attorney, at various times, have emailed me and called me and asked if I wanted know about what was happening in settlements with other parties and things like that."); *see also id.* at 41:12-14 (Undisputed statement from counsel for the Liquidation Trustee: "[O]n numerous occasions, without his prompting, we'll call him up, and we'll give him all the information he wants in terms of what's going on in the case."); Hearing Tr. 6:6-9, May 12, 2016 (Undisputed statement from counsel for the Liquidation Trustee: "[w]e've tried to keep the U.S. Trustee reasonable informed of what we're up to let him know what we're going on –what we're up to and to respond to his questions."); Hearing Tr. 54:2-3, Oct. 20, 2016 (Undisputed statement from counsel for the Liquidation Trustee: the Liquidation Trustee has given the United States Trustee "updates repeatedly.")
[9]  *See* Hearing Tr. 4:3-4:18, Feb. 11, 2016.

{01526574.DOCXv1}

States Trustee setting forth the legal challenges to the PBGC's claims.  After reviewing the letter, the United States Trustee stated that one of the challenges to the PBGC's claims asserted by the Liquidation Trustee should give the Liquidation Trust leverage.[10]

## THE PBGC CLASS 4 SETTLEMENT

33.     The Liquidation Trustee and the PBGC have, subject to approval by the Bankruptcy Court, entered into the settlement agreement dated June 21, 2016, attached as Exhibit "D"[11] to resolve all of the PBGC's claims against the Accepting Unsecured Creditors Fund.

34.     Pursuant to the PBGC Class 4 Settlement Agreement, the Liquidation Trustee will pay the PBGC $2,176,474.83 from the Accepting Unsecured Creditors Fund.  *See* PBGC Class 4 Settlement Agreement ¶ 1.

35.     The Liquidation Trustee will retain sufficient funds in the Accepting Unsecured Creditors Fund to pay the Non-PBGC Potential Class 4 Claims (as defined in the PBGC Class 4 Settlement Agreement), *see* PBGC Class 4 Settlement Agreement ¶ 2, and transfer $50,000.00 from the Accepting Unsecured Creditors Fund to the General Unsecured Creditors Fund, *see* PBGC Class 4 Settlement Agreement ¶ 3.

36.     The Liquidation Trustee will transfer the proceeds that are not paid to Non-PBGC Potential Class 4 Claims under paragraph 2 of the PBGC Class 4 Settlement Agreement from the

---

[10] *See* Hearing Tr. 18:1-19:3, Feb. 11, 2016 (Undisputed statement from counsel for the Liquidation Trustee: After reading letter to counsel for the PBGC dated Jan. 29, 2016, the United States Trustee commented that one of the challenges that the  Liquidation Trustee should give the trust a "lot of leverage.")

[11] The Settlement Agreement shall be referred to as the "PBGC Class 4 Settlement Agreement." The description of the PBGC Class 4 Settlement Agreement contained in this Motion is a partial summary.  To the extent of any ambiguity, conflict, or the like between the PBGC Class 4 Settlement Agreement and this Motion, the terms set forth in the PBGC Class 4 Settlement Agreement shall control.

{01526574.DOCXv1}

Accepting Unsecured Creditors Fund to the PBGC.  *See* PBGC Class 4 Settlement Agreement ¶ 4.  The payments to the PBGC pursuant to the PBGC Class 4 Settlement Agreement shall not be subject to disgorgement for any reason whatsoever.  *See* PBGC Class 4 Settlement Agreement ¶ 5.

37.    The PBGC shall maintain, and the settlement shall not prejudice, the PBGC's claims against the General Unsecured Creditors Fund including, without limitation, the allowance, amount, or priority of such claims; provided, however, that the PBGC's asserted claims against the General Unsecured Creditors Fund, to the extent allowed, shall be reduced by the amount of payments it receives as a result of its claims against the Accepting Unsecured Creditors Fund.  *See* PBGC Class 4 Settlement Agreement ¶ 6.

38.    The Liquidation Trustee shall maintain, and the settlement shall not prejudice, the Liquidation Trustee's right to object to or challenge the PBGC's asserted claims, including, without limitation, the allowance, amount, or priority of such claims, against the General Unsecured Creditors Fund on any basis whatsoever.  *See* PBGC Class 4 Settlement Agreement ¶ 7.

39.    Upon receipt of the payments set forth in paragraphs 1 and 4 of the PBGC Class 4 Settlement Agreement, the PBGC shall be deemed to have released all claims against the Accepting Unsecured Creditors Fund.  *See* PBGC Class 4 Settlement Agreement ¶ 8.

## THE LENDER SETTLEMENT

40.    The Liquidation Trustee and Synovus Bank, in its capacity as both lender and agent, Bank of America, N.A., as lender, and Bank of Scotland PLC, as lender (collectively, the

"Lenders") have, subject to approval by the Bankruptcy Court, entered into the settlement agreement attached as Exhibit "E."[12]

41.    The Liquidation Trustee shall make a distribution to the Lenders when the Approval Order become a "Final Order" (as defined in the Plan).

42.    Upon the receipt of the Lender Distribution, up to $250,000.00[13] from the Lenders distribution shall be transferred to the non-PBGC, non-Lenders class 5 Beneficiaries.  *See* Lender Settlement Agreement ¶ 2.  The Liquidation Trustee shall distribute such funds to the non-PBGC, non-Lenders class 5 Beneficiaries.  *See* Lender Settlement Agreement ¶ 3.

43.    The Lender Funds shall serve as consideration to the non-PBGC, non-Lenders class 5 Beneficiaries for the allowance of the PBGC's claims, *i.e.*, Epiq Claim Nos. 560, 950, and 951, and the resulting dilution of their claims, *see* Lender Settlement Agreement ¶ 4.

44.    As a condition precedent to the Lender Settlement Agreement, the Court shall enter an order (the "Approval Order") that, among other things, (i) approves the Lender Settlement Agreement; (ii) authorizes the Liquidation Trustee to take all steps reasonably necessary to effectuate the transactions set forth in the Settlement Agreement; (iii) bars the assertion of any claims, causes of action, or the like against the Liquidation Trustee in his personal capacity as well as against the Liquidation Trustee's current and former lawyers, law firms, financial advisors, financial advisory firms, and any other Entity (as that term is defined in

---

[12]   The settlement agreement shall be referred to as the "Lender Settlement Agreement." The description of the Lender Settlement Agreement contained in this Motion is a partial summary. To the extent of any ambiguity, conflict, or the like between the Lender Settlement Agreement and this Motion, the terms set forth in the Lender Settlement Agreement shall control.

[13]   The amount of Lender Funds to be assigned by the Lenders depends on the timing of the Lenders' receipt of their distribution as follows: (a) $250,000.00 if the Lenders receive their distribution on or before December 30, 2016; (b) $175,000.00 if the Lenders receive their distribution on or before March 31, 2017; (c) $100,000.00 if the Lenders receive their distribution on or before July 3, 2017; and (d) $0.00 if the Lenders receive their distribution after July 3, 2017.  *See* Lender Settlement Agreement ¶ 2.

the Bankruptcy Code) which has rights under section 3.10 of the Trust Agreement; (iv) allows the PBGC's claims—*i.e.*, Epiq Claim Nos. 560, 950, and 951; (v) approves the Settlement Agreement between the Liquidation Trustee and the PBGC dated as of June 21, 2016; and (vi) bars the assertion of any Trust Costs that have accrued on or before the date of the distribution to the Lenders unless the Liquidation Trustee agrees otherwise in writing; for the avoidance of doubt, the Liquidation Trustee can so agree at any point.  As a further condition to the Lender Settlement Agreement, the Approval Order shall become a Final Order.  *See* Lender Settlement Agreement ¶ 4.

## THE PROPOSED DISTRIBUTION

45.     The Liquidation Trustee intends to file an exhibit setting forth the terms and procedures associated with the distribution to the Beneficiaries (such terms and procedures shall be referred to as the "Proposed Distribution").  Such exhibit shall be Exhibit "E" and shall be served with the Motion.  The Liquidation Trustee requests the Court to approve the Proposed Distribution.

## RELIEF REQUESTED

46.     The Liquidation Trustee requests that the Court enter an order in substantially the same form as Exhibit "F" granting the Motion.

## BASES FOR RELIEF REQUESTED

I.      Approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure

The Standard for Approval

47.     Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes a bankruptcy court to approve a settlement agreement between interested parties.  *See* Fed. R. Bankr. P. 9019. "Compromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate and delay the administration of the case to the detriment of all creditors."  *In re Harbour E. Dev., Ltd.*, No. 10–20733–BKC–AJC, 2012 WL 1851015, at *5 (Bankr. S.D. Fla. May 21, 2012) (citations omitted); *see also Munford v. Munford, Inc.* (*In re Munford, Inc.*), 97 F.3d 449, 455 (11th Cir. 1996); 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (Alan N. Resnick & Henry J. Sommereds., 16th ed. 2015) ("Compromises are favored in bankruptcy.").

48.     Accordingly, "acting on [a Rule 9019] motion, an evidentiary hearing is not necessarily required."  *See Coleman v. Abdulla* (*In re Sportsman's Link, Inc.*), No. 07-10454, 2011 WL 7268047, at *11 (Bankr. S.D. Ga. Dec. 20, 2011) (citations omitted).  "Instead, the obligation of the court is to canvass [sic] the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *Brown v. Harris*, No. 3:11–CV–25 (CDL), 2011 WL 3473312, at *2 n.5 (M.D. Ga. Aug. 9, 2011) (citation and internal quotation marks omitted); *see also Martin v. Pahiakos*, 490 F.3d 1272, 1275 (11th Cir. 2007) (affirming approval of settlement because "it did not fall below the lowest point in the range of reasonableness").

49.     The decision to approve a settlement pursuant to Rule 9019 is within the sound discretion of the bankruptcy court.  *See, e.g., GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005) ("A bankruptcy court's decision to approve a

settlement is within its sound discretion, and will not be disturbed on appeal absent proven abuse of that discretion.").

50.     In *Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), the Eleventh Circuit articulated four factors that a court should evaluate in deciding whether to approve a proposed settlement: "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable view in the premises." *Id.* at 1549 (citations omitted).   "In examining the relevant factors, courts have deferred to the [t]rustee's business judgment when reasonable."  *Sportsman's Link*, 2011 WL 7268047, at *11 (citation omitted).

<u>The Settlements Should Be Approved.</u>

51.     Here, the Liquidation Trustee believes that the settlements are in the best interests of the Trust and the Beneficiaries.

52.     Both settlements have one overriding thing in common: collectively they will resolve the claims of the PBGC, which the Court previously recognized as the "lynchpin" of these cases.  The Liquidation Trustee still has serious concerns about the allowance of the PBGC's claims.  Incredibly, the PBGC has resisted giving the data—upon which it relies to support its asserted claims—to the Liquidation Trustee in an electronic file.  *See* email from counsel for the PBGC to counsel for Liquidation Trustee (Nov. 23, 2016 at 1:50 pm).

53.     The Lenders have agreed, however, to fund an increased distribution to enhance the distribution to the non-PBGC, non-Lenders class 5 Beneficiaries in exchange for the allowance of the PBGC's claims and the receipt of the Lenders' distribution. [14]

54.     Given that the claims of the non-PBGC, non-Lenders class 5 Beneficiaries amount to $6,691,638.00, such funding will result in a material increase in their distribution.

55.     Especially given the PBGC's approach to litigation, *see* supra ¶¶ 25-29, avoiding the protracted litigation associated with objecting to the PBGC's claims favors the approval of the proposed settlement, *see Justice Oaks*, 898 F.2d at 1549 (requiring consideration of, among other things, the "complexity of the litigation involved, and the expense . . . necessarily attending it"); *Harbour E. Dev., Ltd.*, 2012 WL 1851015, at *5 ("Compromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate  . . .  to the detriment of all creditors.").

56.     And in this context, courts have routinely approved settlements related to the claims of the PBGC especially where, as is the case here, there is a dispute regarding the prudent investor rule versus the PBGC regulation.  *See e.g., In re Wolverine, Proctor & Schwartz, LLC*, 436 B.R. 253, 262-63 (D. Mass. 2010); *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 96 (D. Del. 2006).

---

[14] The right of the Beneficiaries to receive a distribution under the Plan is contractual right.  *See In re Chatham Parkway Self Storage*, LLC, 507 B.R. 13, 18 (Bankr. S.D. Ga. 2014) ("'A confirmed plan of reorganization operates as a contract between a reorganized debtor and its creditors.") (citation omitted).  Under Georgia law—which governs the Plan, *see* Plan § 12.07, contract rights are freely assignable, *see Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 41, 502 S.E.2d 799, 803 (1998) (indicating that party had absolute right to transfer contract claim); O.C.G.A. § 44-12-22 ("[A]ll choses in action arising upon contract may be assigned so as to vest the title in the assignee").  So the Lenders may so assign a portion of the proceeds of their claim to such Beneficiaries.

{01526574.DOCXv1}

57.    The PBGC Class 4 Settlement:  From the standpoint of the non-PBGC class 4 Beneficiaries, the settlement with the PBGC is ideal for two reasons.  *First*, the settlement leaves behind sufficient funds in the Accepting Unsecured Creditors Fund to pay the Non-PBGC Potential Class 4 Claims in full.  *Second*, the settlement will allow the Liquidation Trustee to make a distribution to the allowed Beneficiaries from the Accepting Unsecured Creditors Fund on account of the allowed Non-PBGC Potential Class 4 Claims.  Of course, by foreclosing a challenge to the class 4 status of the PBGC's claims, the PBGC Class 4 Settlement Agreement, however, could prejudice class 5 Beneficiaries.  But the party that has the most to gain from such challenge—the Lenders—support the settlement agreement.

58.    The Lender Settlement Agreement:  Given the difficulty of—and his failed attempts at—negotiating with the PBGC, the Liquidation Trustee determined that it was prudent to negotiate a resolution of the PBGC's claims with the Lenders.  If the Approval Order becomes a Final Order on or before December 30, 2016, the enhanced distribution to the non-PBGC, non-Lenders class 5 Beneficiaries provides a material *guaranteed* benefit to such Beneficiaries that they will receive in the very near term.

II.    Entry of the Requested Bar Order

59.    The Liquidation Trustee requests the entry of a bar order pursuant to section 105(a) of the Bankruptcy Code because it is necessary and appropriate to carry out the *res judicata* effect of section 1141(a) of the Bankruptcy Code.[15, 16]  *See* 11 U.S.C. § 105(a); *Munford*, 97 F.3d at 455 (finding that bankruptcy court has the power under section 105(a) to

---

[15] On appeal, settlement bar orders are reviewed under an abuse of discretion.  *See Brophy v. Salkin*, 550 B.R. 595 (S.D. Fla. 2015) (holding that bankruptcy court did not abuse its discretion by approving settlement and entering bar order).

[16] *See In re S & I Investments*, 421 B.R. 569, 584 (Bankr. S.D. Fla. 2009) ("Procedurally, a party may seek a channeling injunction and bar order at the time that it requests the court's approval of its proposed settlement agreement.")

enter a bar order); *In re Fundamental Long Term Care, Inc.*, 492 B.R. 571, 576 (Bankr. M.D. Fla. 2013) (standard for approval for entry of a bar order includes whether it is "necessary to carry out the provisions of the Bankruptcy Code").[17]

60.     The entry of the requested bar order will do so because—as the Court has previously ruled—the terms of the Trust Agreement are *res judicata* and bind the parties based on section 1141(a) of the Bankruptcy Code.[18]

<u>The Trust Agreement Requires the Liquidation Trustee to Reserve</u>
<u>From Distribution Sufficient Funds to Pay Accrued and Anticipated Trust Costs</u>
<u>in an Amount that He Determines to Be "Reasonably Necessary"</u>

61.     As the Court has also previously ruled, the "Trust Agreement *instructs* the Liquidation Trustee to pay all Trust Costs from the Trust Assets prior to making distributions to any Beneficiaries."[19]   Indeed, the Trust Agreement *requires* the Liquidation Trustee to pay or provide for a reserve to pay existing and anticipated Trust Costs before making distributions to Beneficiaries.[20]   The Liquidation Trustee has the discretion to set the amount of such reserves in an amount he determines to be "reasonable necessary."[21]

---

[17] Plan confirmation bar orders are distinguishable from—and decisions arising out of them are not persuasive with respect to—settlement bar orders. *See, e.g. In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1076-1077 (11th Cir. 2015) (discussing the difference between bar orders in settlement context of *Munford* with plan confirmation bar orders and looking to out-of-circuit precedent for plan confirmation bar order involving an objection that would undermine the operations of the reorganized entity).   One court rejecting a checklist based approach typically used in the context of a confirmation proceeding indicated that "the Judge may, and should, make a pragmatic decision on the basis of all equitable factors."   *Romagosa v. Thomas*, No. 6:06-CV-301-ORL-19, 2006 WL 2085461, at *5-8 (M.D. Fla. July 25, 2006) (noting the strong policy favoring pretrial settlements and that tests developed in context of plan confirmation do not make sense and are different in other proceedings).

[18] *See In re Sea Island Co.*, Case No. 10-21034, Bankr. Docket No. 836, at *18 of 22 (Bankr. S.D. Ga. April 10, 2012) (B.J., Dalis) ("Pursuant to Bankruptcy Code § 1141, the parties are bound by the terms of . . . Trust Agreement.   *See* 11 U.S.C. § 1141(a).").

[19] *See id.* at *18 (citation omitted) (emphasis added).

[20] *See* Bankr. Docket No. 449-1 ¶ 5.8 ("From the Trust Assets, the Trustee *shall* pay all Trust Costs when due . . . or provide for payment of such Trust Costs *in full through reserve*, prior to

62.     Making a distribution to the Beneficiaries under the Liquidation Trust without the entry of a bar order would be just an imprudent as making a distribution to unsecured creditors with an administrative claims bar date order.

63.     So the Liquidation Trustee requests that the Court enter an order barring the assertion of Trust Costs that accrued on or before the requested approval order becomes a Final Order.  To ensure that the Liquidation Trustee does not have to reserve from distributions for Trust Costs that may arise in the future as a result of the indemnification and other obligations arising under section 3.10(b) of the Trust Agreement, the Liquidation Trustee further requests that the Court's order bar any claims against the Liquidation Trustee, his counsel, his financial advisors, and any other party entitled to assert Trust Costs by virtue of section 3.10(b) of the Trust Agreement.

---

making distributions to any Beneficiaries.") (emphasis added) & ¶ 7.1 (The "Trustee *shall* establish an Operating Reserve [as defined in the Trust Agreement] funded from time to time with Trust Cash . . . .")

[21] *See* Bankr. Docket No. 449-1 ¶ 7.1 ("The Trustee shall establish an Operating Reserve funded from time to time with Trust Cash *in an amount determined by the Trustee* to be reasonably necessary to pay existing and anticipated Trust Costs, to fund litigation, fund contingent liabilities, and otherwise conduct the affairs and satisfy existing and anticipated liabilities and obligations of the Trust.") (emphasis added); *see also id.* ¶ 4.4(xv) ("[E]stablish such funds, reserves and accounts within the Trust estate, as deemed by the Trustee in its discretion to be useful in carrying out the purposes of the Trust.") & ¶ 8.1 (the amount of the Operating Reserve "will be determined by the Trustee in its discretion"). Given that the drafters of the Trust Agreement specified that the Liquidation Trustee need not obtain approval of the Court other than as specified in the Trust Agreement or the Plan, *see* Bankr. Docket No. 449-1 ¶ 4.3(a), and clearly knew how to subject distributions to the approval of the Court, *see* Plan § 5.02 (court approval required to resolve identify of claimant) & Confirmation Order ¶ 45 ("Any dispute as between the Debtors and the Secured Lenders with respect to these reserves *shall be resolved by the Court*.") (emphasis added), the failure to subject the establishment of the reserve to the Court's approval "should be treated as a matter of considered choice," *see Flynt v. Life of the S. Ins. Co.*, 718 S.E.2d 343, 312 Ga. App. 430, 436 (2011) (construing a "matter of considered choice" not to restrict the effective date of one policy provision after restricting the effective date of another policy).  This is especially so given that—other than as specified in the Trust Agreement or the Plan—the "Trustee need *not* obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court."  *See* Bankr. Docket No. 449-1 ¶ 4.3(a) (emphasis added).

64.     The Liquidation Trustee believes that the entry of an order barring claims against the Liquidation Trustee and his professionals is an appropriate exercise of the Court's discretion for three reasons.[22]

*The Bar Order Will*
*Conserve Funds of the Liquidation Trust.*

65.     As noted above, if the Court approves the settlement and enters the requested bar order, the objection to the PBGC's claims will be resolved.   The resolution of such claims is significant because it will put an end to complex claim objection litigation and along with it the professional fees in connection with such litigation.   As the Court is well aware, the litigation between the Liquidation Trustee and the PBGC is complex and continued litigation will deplete the limited resources of the Trust.   *See In re Jiangbo Pharm., Inc.*, 520 B.R. 316, 324-25 (Bankr. S.D. Fla. 2014) (considering potential depletion of resources from continued litigation as part of granting 9019 motion and entering bar order); *Realan Investment Partners, LLLP v. Meininger (In re Land Resource, LLC)*, 505 B.R. 571, 584 (Bankr. M.D. Fla. 2014).   Courts have emphasized that approval of a settlement bar order should be a "pragmatic decision"[23] and should be based on a "practical reality."[24]   The most compelling evidence that granting such relief is prudent and in the best interest of the Beneficiaries is that the Lenders—which (as the largest class 5 Beneficiaries) have the most at stake as it relates to the requested bar order—support the requested relief.[25]

---

[22] In the interest of brevity, given that there is unlikely to be an objection to barring the assertion of Trust Costs, the Motion will address the bases for the Court to enter an order barring claims against the Liquidation Trustee and his professionals.

[23] *See Romagosa,* 2006 WL 2085461, at *5-8.

[24] *See In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR, 2010 WL 3743885, at *7 (Bankr. S.D. Fla. Sept. 22, 2010).

[25] *See Justice Oaks*, 898 F.2d at 1549 (requiring courts to consider the paramount interest of the creditors and a proper deference to their reasonable view").

*The Bar Order Is a Condition Precedent.*

66.     Entering a bar order is a condition precedent to the effectiveness of the Lender Settlement Agreement.  *See supra* ¶ 44.  According to the Eleventh Circuit, when a bar order is an integral part of a settlement, courts should not consider the request for a bar order in isolation. *See In re Oil & Gas Litigation*, 967 F.2d 489, 494-95 (11th Cir. 1992).  Instead, the settlement— including the request for a bar order—"must stand or fall as a whole."  *See id.* at 495 (quotations omitted).  And if the entry of the bar order is a condition precedent to a settlement agreement and is otherwise "fair and equitable," the "entry of a bar order is a proper exercise of the Court's power under section 105."  *See Jiangbo Pharm.*, 520 B.R. at 323.  Even if a bar order is not a condition precedent to a settlement, the entry of such bar order is still appropriate if it is consistent with facilitating settlement and decreasing litigation and expense.  Here, the entry of the bar order is not only a condition precedent, it will also help facilitate settlement and decrease litigation and expenses.

*There Are No Viable Claims Sought to Be Barred.*

67.     Courts in the Eleventh Circuit have quite sensibly recognized that there is no prejudice associated with barring non-viable claims.[26]  Here, there are no viable claims.

    a.     The Liquidation Trustee and His Professionals Have Obtained a Good Result for the Beneficiaries.

68.     As an initial matter, the Liquidation Trustee and his professionals have obtained a good result for the Beneficiaries.  Indeed, there was not projected to be *any* distribution to class 5 and there was only projected to be a 6% distribution to class 4 Beneficiaries.  But if the requested relief is granted, millions of dollars will be distributed to class 5 Beneficiaries, and the non-

---

[26] *See In re Solar Cosmetic Labs, Inc.*, No. 08-15793-BKC-LMI, 2010 WL 3447268, at *3 (Bankr. S.D. Fla. Aug. 27, 2010) ("[T]his Court finds, there being no claim that CRG could raise, the fact that any such attempt to raise the claim is barred is of no moment.")

PBGC class 4 Beneficiaries will receive a 100% distribution.  And even the PBGC is likely to receive a distribution of approximately 10%.[27]

       b.    The Court's Gatekeeper Role Under the *Barton* Doctrine.

69.    Under the *Barton* doctrine, as a jurisdictional prerequisite for a party to assert a viable claim against the Liquidation Trustee and his professionals, such party must obtain the Court's prior permission.  *See Fin. Indus. Assoc. v. SEC*, No. 6:10-cv-408-Orl-36KRS, 2013 WL 11327680, at *3 (M.D. Fla. July 24, 2013) (The Barton doctrine requires that plaintiff obtain permission from the appointing court regardless of whether the action is to be filed in the appointing court or another court.).  Whether to allow such a claim against a liquidation trustee or his professionals is within the sound discretion of the Court. *See SEC v. North Am. Clearing, Inc.*, No. 13-11804, 2016 WL 3878481, at *4 (11th Cir. July 18, 2016) (reviewing the denial of a *Barton* motion under the abuse of discretion standard); *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012) ("We review a bankruptcy court's decision to grant a motion for leave to sue a trustee under the deferential abuse of discretion standard."). Generally, before such leave is granted, the plaintiff must demonstrate that he has a viable claim.  *See VistaCare*, 678 F.3d at 232 ("A party seeking leave of court to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation.");  *Fin. Indus. Assoc.*, 2013 WL

---

[27] As a matter of fundamental fairness, courts have entered orders to protect professionals when—because of a distribution—there will be insufficient funds to indemnify such professionals.  *See, e.g., In re Xpedior Inc.*, 354 B.R. 210, 221 (Bankr. N.D. Ill. 2006); *In re B+H Ocean Carriers, Ltd.*, Case No. 12-12356, ¶ 9 (Bankr. S.D.N.Y. Dec. 18, 2015) ("[W]ithout further order of the Court, . . . the Liquidation Trustee and its professionals, consultants, and employees shall be discharged and released from all liability related to the Trust, such that thereafter, no entity or governmental unit shall have any claim against the Liquidation Trustee, its professionals, consultants and employees . . .."); *see also In re Firstline Corp.*, No. 06-70145, 2007 WL 269086, at *3 (Bankr. M.D. Ga. Jan. 25, 2007) (relief necessary to protect professionals).

11327680, at *3.  And it is appropriate to consider—as part of such determination—the hurdles to asserting a viable claim here.

        c.    <u>The Liquidation Trust Agreement Provides for Comprehensive Exculpation.</u>

70.    In addition to the fact that no party has ever articulated—or could articulate—a viable claim, it would be particularly difficult to do so here given that section 3.10(a) of the Trust Agreement provides exculpation "unless it is ultimately determined by Final Order" that their "acts or omissions constituted willful fraud, willful misconduct, or gross negligence."  *See* Bankr. Docket No. 449-1 ¶ 3.10(a).  Needless to say, the standard for successfully asserting such claims is incredibly high:

    a.    <u>Willful Fraud:</u>  "'[K]nowing and willful fraud' . . . can mean no less than clear, convincing proof of intentional fraud involving affirmative dishonesty, 'a deliberately planned and carefully executed scheme to defraud.'"  *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1384–85 (Fed. Cir. 1987).  In addition, a party alleging fraud "must state with particularity the circumstances constituting fraud."  *See* Fed. R. Civ. P. 9; *see also In Matter of Turner*, No. 15-40525-EJC, 2015 WL 9673501, at *2 (Bankr. S.D. Ga. Dec. 30, 2015) (noting that the court was compelled to grant motion to dismiss after applying standards of Rule 9 to the complaint as originally filed).

    b.    <u>Willful Misconduct:</u>  "Willful misconduct is much more than mere negligence, or even than gross negligence. It involves conduct of a quasi-criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences." *Liberty Mut. Ins. Co. v. Bray*, 136 Ga. App. 587, 589–90, 222 S.E.2d 70, 72 (1975) ("Willful misconduct includes all conscious or intentional violations of definite law or rules of conduct, obedience to which is not discretionary, as distinguished from inadvertent, unconscious, or involuntary violations."). Indeed, willful misconduct requires "an actual intention to do harm or inflict injury." *Schwartz v. Gwinnett Cty., Ga.*, 924 F. Supp. 2d 1362, 1378 (N.D. Ga. 2013).

    c.    <u>Gross Negligence:</u>  "[G]ross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise." *Wolfe v. Carter*, 314

Ga. App. 854, 859, 726 S.E.2d 122, 126 (2012) (referencing definition of "gross negligence" under O.C.G.A § 51–1–4 as the absence of even slight diligence, which is defined as "'that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances'").

71.     Given the high standard for "willful fraud," "willful misconduct," or "gross negligence," it is hardly surprising that such claims are routinely dismissed at the pleading stage under Georgia law[28] and against liquidation trustees.[29]    Indeed, given the prevalence of exculpation provisions in confirmed plans, courts routinely dismiss plan exculpated claims at the pleading stage claims.[30]

72.     In addition, exculpation provisions of the Trust Agreement foreclose the assertion of claims based on acts taken in "good faith with a reasonable basis for taking such action"[31] or in reliance on the advice of counsel.[32]

d.     The Liquidation Trustee and His Professionals Have Derived Judicial Immunity.

73.     A party attempting to assert such a claim could *not* rely on any acts or omissions approved by the Court because they are shielded both by *absolute* derived judicial immunity

---

[28] *See, e.g., Green v. Bank of Am. Corp.*, No. 1:12-CV-04177-AT-AJB, 2013 WL 12101067, at *10 (N.D. Ga. Aug. 6, 2013) (dismissing claims of gross negligence because "plaintiff has nothing more than allegations of an unfortunate event").

[29] *See, e.g., In re PSN USA, Inc.*, 426 B.R. 916, 922-23 (Bankr. S.D. Fla. 2010) (holding that conduct of liquidating trustee in failing to deposit funds into segregated, interest-bearing account as required and improperly making payments without approval did not constitute willful and deliberate conduct or gross negligence).

[30] *See, e.g., Lazo v. Roberts*, No. 215CV07037CASPJWX, 2015 WL 6513639, at *4 (C.D. Cal. Oct. 26, 2015) (dismissing complaint against claims agent based on exculpation provision in confirmation order); *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 198-203 (E.D.N.Y. 2010) (dismissing claims subject to exculpation clauses in plan and confirmation order because claims did not amount to willful misconduct).

[31] *See* Bankr. Docket No. 449-1 ¶ 3.10(a).

[32] *See* Bankr. Docket No. 449-1 ¶ 3.11.

(which the Eleventh Circuit has consistently recognized[33]) and section 3.10(a) of the Trust Agreement (which expressly incorporates such court-approved immunity into the Trust Agreement[34]).  Indeed, the Court has recognized derived judicial immunity and denied relief against a chapter 13 trustee—not acting pursuant to a court order—for a disbursement error.  *See Royals v. Massey* (*In re Denton*), 370 B.R. 441, 444 (Bankr. S.D. Ga. 2007) (B.J., Dalis) (denying relief based on derived judicial immunity against).[35, 36]

e.    Claims Cannot Be Merely Disguised Fee Objections.

74.    As the Court previously ruled, the Confirmation Order expressly authorizes the Liquidation Trustee to "pay any Professional fees and expenses incurred after the Effective Date without any application to the Bankruptcy Court."[37]  So claims should not be merely disguised

---

[33] "[C]ourt-appointed bankruptcy trustees are entitled to *absolute* quasi-judicial immunity where they act under the supervision and subject to the orders of the bankruptcy judge."  *See SEC v. North Am. Clearing,* 2016 WL 3878481, at *3 (emphasis added) (quotations omitted); *see also Bouillon v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) (affirming district court dismissal based on derived judicial immunity resulting from bankruptcy court approval and observing that plaintiff should have appealed the bankruptcy court order).

[34] *See* Bankr. Docket No. 449-1 ¶ 3.10(a) (exculpation for "action or inaction of the Trustee . . . authorized by the Bankruptcy Court").

[35] *See also Clark v. Bakst (In re Trafford Distrib. Ctr., Inc.)*, 520 B.R. 147, 157-58 (Bankr. S.D. Fla. 2014) (chapter 7 trustee's counsel entitled to qualified judicial immunity when not acting pursuant to a court order); *Walton v. Watts (In re Swift)*, 185 B.R. 963, 969-70 (Bankr. N.D. Ga. 1995) (dismissing counterclaim against U.S. Trustee based on quasi-judicial immunity when not acting pursuant to a court order).

[36] "The denial of a claim of absolute immunity, including quasi-judicial immunity, is immediately appealable under the collateral order doctrine." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994).

[37] *See In re Sea Island Co.*, Case No. 10-21034, Bankr. Docket No. 836, at *22 of 22 (Bankr. S.D. Ga. April 10, 2012) (B.J., Dalis) (citing ECF No. 372 at 38); *see also* Plan § 7.04 (indicating that the Liquidation Trustee shall have authority to "compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Bankruptcy Court").

fee objections.[38]   But even with court approval under section 330 of the Bankruptcy Code, objections that generically assert that fees are too high[39] or that rely on hindsight[40] are unavailing as a matter of law.

## Negative Notice & Expedited Consideration

75.     The Liquidation Trustee requests that the Motion be approved on negative notice with a shortened period of time to object.  Given the avoidance of expense associated with potentially avoiding a hearing and the exigency of time,[41] the Liquidation Trustee submits that approval on such basis is appropriate.[42]  And pursuant to Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure, the Liquidation Trustee requests that the Court shorten the objection period (if it is willing to enter the order on negative notice) with a hearing—if there is an objection—on or before December 15, 2016.  As set forth above, the Lenders' obligations to pay $250,000.00 to the non-PBGC, non-Lenders class 5 Beneficiaries requires that the Lenders receive their distribution on or before December 30, 2016.  If the Court were to enter the proposed order, such order would need to be entered no later than December 15, 2016 for the

---

[38] The standard under section 330 of the Bankruptcy Code is much different than the standard to assert an affirmative claim under the Trust Agreement.  *Compare* Bankr. Docket No. 449-1 ¶ 3.10 *with* 11 U.S.C. § 330(a).

[39] *See In re Chavis*, No. 02-40060, 2004 WL 6043272, at *3 (Bankr. S.D. Ga. Sept. 17, 2004) (citation and internal quotation omitted) ("'[A] gestalt reaction that there was too much time spent . . . isn't good enough.'").

[40] *Compare  In re Watts*, No. 09-30663-WRS, 2011 WL 565659, at *1 (Bankr. M.D. Ala. Feb. 8, 2011) (fee applications should not be reviewed based on hindsight) *with* Hearing Tr. 54:6-8, October 20, 2016 (Undisputed statement from counsel for the Liquidation Trustee: when the Liquidation Trustee and his counsel shared the challenges facing the Liquidation Trust, the United States Trustee never offered any suggested direction for the Liquidation Trustee.)

[41]  *See* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, *speedy*, and *inexpensive* determination of every case and proceeding.") (emphasis added).

[42]  *See* 11 U.S.C. § 102(1)(B)(i); *Roberts v. Pierce* (*In re Pierce*), 435 F.3d 891, 892 (8th Cir. 2006) (discussing 11 U.S.C. § 102(1)(B)(i) and concluding: "[n]egative notices are therefore authorized by the Code.") (citation omitted); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) ("A requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing.") (emphasis in the original).

fourteen day appeal period to pass in time to permit a distribution on December 30, 2016.  In addition, the Lenders can terminate the Agreement if the Approval Order is not entered before December 30, 2016.  So the Liquidation Trustee requests in the alternative that a hearing be set on or before December 30, 2016.  As noted above, the Liquidation Trustee has been diligently pursuing a settlement with the Lenders since November 17, 2016.   Given the intervening Thanksgiving holiday and the need for the multi-party approval associated with the lender group, however, the Liquidation Trustee was not able to enter into the settlement agreement any sooner than he did.   Under the circumstances, the Liquidation Trustee submits that the requested expedited consideration is appropriate under the circumstances.

WHEREFORE, Robert H. Barnett as the Liquidation Trustee respectfully requests that the Court (i) enter an order substantially in the form attached as Exhibit "F" granting the requested relief and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: December 5, 2016.

*/s/ Robert M.D. Mercer*
Robert M.D. Mercer
Georgia Bar No. 502317
Eric J. Silva (*admitted pro hac vice*)
Georgia Bar No. 442808
SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia  30303
(404) 688-6800 Telephone

*Counsel for Robert H. Barnett as the Liquidation Trustee Under the Sea Island Company Creditors Liquidation Trust*

## EXHIBIT "A"

CLASS 4 CLAIMS[1]

| CLAIM NUMBER | SCHEDULE NUMBER | CLAIM NAME | CLAIMED AMOUNT |
|---|---|---|---|
| 18 | 34016150 | G-K SERVICES | $ 1,471.35 |
| 86 | | BENEFIELD, JACKSON FITZGERALD | $ 250.00 |
| 87 | | BENEFIELD, HARRISON DELANEY | $ 250.00 |
| 93 | | WILLIAM CHRISTIAN & ASSOCIATE | $ 3,185.00 |
| 168 | | GASQUE, JAMES WALTER | $ 415.66 |
| 194 | | MITCHELL, JAY D | $ 500.00 |
| 197 | | SAINT SIMONS DRUG CO. | $ 201.61 |
| 262 | | ISLAND SITES LLC | $ 588.79 |
| 417 | | SUNCOAST SERVICES & SUPPLY INC | $ 2,189.40 |
| 509 | | COSTA DEL MAR SUNGLASSES INC | $ 1,649.01 |
| 577 | | SULLIVAN, LORI | $ 160.00 |
| | 34030870 | MCKINNEY, DAVID | $ 25,000.00 |
| | 34041850 | SHANE NEEL | $ 5,812.00 |
| Settlement | Settlement | ADAMS, TAYLOR | $ 225,000.00 |

[1] Epiq Claim Nos. 560, 950, and 951 of Pension Benefit Guaranty Corporation are addressed in the PBGC Class 4 Settlement Agreement.

# EXHIBIT "B"

## Such exhibit shall be filed on or before December 6, 2016.

# EXHIBIT "C"

**<u>Such exhibit shall be filed on or before December 6, 2016.</u>**

# EXHIBIT "D"

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "Agreement") is made as of the ~~21st~~ day of June, 2016 (the "Settlement Date"), by and between Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Liquidation Trust in the Sea Island Company, *et al.* bankruptcy cases, Case No. 10-21034-JSD, Jointly Administered (the "Bankruptcy Cases") pending in the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Court") and the Pension Benefit Guaranty Corporation ("PBGC" or the "Claimant") (the Liquidation Trustee and PBGC are collectively referred to as the "Parties" or individually as a "Party").

## WITNESSETH

**WHEREAS**, on August 10, 2010, Sea Island Company, *et al.* (the "Debtors") initiated the Bankruptcy Cases by filing their voluntary petitions under chapter 11 of the Bankruptcy Code[1] in the Bankruptcy Court and the Bankruptcy Cases are currently pending in the Bankruptcy Court;

**WHEREAS**, on September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order");

**WHEREAS**, the Trust Agreement of Sea Island Company Creditors Liquidation Trust dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee. *See* Bankr. Docket No. 449-1;

---

[1] All capitalized but undefined terms shall have the meaning ascribed to them in the Plan (as defined below).

WHEREAS, the Debtors filed a Notice of Effective Date indicating that the Plan became effective on December 16, 2010.  *See* Bankr. Docket No. 444;

WHEREAS, PBGC has filed four (4) proofs of claim in an aggregate asserted amount in excess of $66 million (collectively, the "Filed Claims").  *See* Epiq Claim Nos. 0000000560 through 0000000563;

WHEREAS, PBGC contends that the termination of Sea Island Company Retirement Plan occurred effective as of October 29, 2010, when Sea Island Company and PBGC executed the Agreement for Appointment of Trustee and Termination of Plan (a) terminating the plan and (b) appointing PBGC as its statutory trustee;

WHEREAS, PBGC contends that the Filed Claims are entitled to be treated as class 4 claims under the Plan based on having timely filed one ballot accepting the Plan, with any unpaid portion to be treated as a class 5 claim under the Plan;

WHEREAS, the Liquidation Trustee disputes the allowance, validity, and amount of the Filed Claims and further contends that the Filed Claims are not entitled to be paid from the Accepting Unsecured Creditors Fund; and

WHEREAS, the Parties have engaged in extensive negotiations and concluded that the execution and delivery by the respective Parties of this Agreement will avoid protracted and expensive litigation.

NOW THEREFORE, in consideration of the promises, releases, agreements, and covenants set forth in this Agreement, the Parties hereby stipulate and agree as follows:

1.     **Fixed Payment to PBGC**.  The Liquidation Trustee will pay PBGC $2,176,474.86 from the Accepting Unsecured Creditors Fund.

2.      **Retention of Sufficient Funds in Accepting Unsecured Creditors Fund**.  The
Liquidation Trustee will retain sufficient funds in the Accepting Unsecured Creditors Fund to pay
in full the Claims, other than the claim of the PBGC, set forth on Exhibit "A" of the Motion to
Approve Reconciliation of Class 4 Claims [Bankr. Docket No. 1430] (the "Non-PBGC Potential
Class 4 Claims"); *provided however* that the proceeds of Non-PBGC Potential Class 4 Claims that
are, or have been, withdrawn or disallowed will be transferred in accordance with Paragraph 4.

3.      **Transfer of Funds from the Accepting Unsecured Creditors Fund**.  The
Liquidation Trustee will transfer $50,000.00 from the Accepting Unsecured Creditors Fund to the
General Unsecured Creditors Fund.  For the avoidance of doubt, no additional funds will be
transferred from the Accepting Unsecured Creditors Fund to the General Unsecured Creditors
Fund.

4.      **Payment to PBGC Due to Withdrawal or Disallowance**.  The Liquidation
Trustee will transfer the proceeds that are not paid to Non-PBGC Potential Class 4 Claims under
Paragraph 2 (as a result of withdrawal, disallowance, or reduction, of Non-PBGC Potential Class
4 Claims or for any other reason) from the Accepting Unsecured Creditors Fund to PBGC.

5.      **No Disgorgement of Payments from PBGC**.  The payments to PBGC set forth
herein shall not be subject to disgorgement for any reason whatsoever.

6.      **PBGC Class 5 Claims Preserved**.  PBGC shall maintain, and the settlement shall
not prejudice, PBGC's claims against the General Unsecured Creditors Fund including, without
limitation, the allowance, amount, or priority of such claims; provided, however, that PBGC's
asserted claims against the General Unsecured Creditors Fund, to the extent allowed, shall be
reduced by the amount of payments it receives as a result of its claims against the Accepting
Unsecured Creditors Fund.

7.      **No Prejudice.** The Liquidation Trustee shall maintain, and the settlement shall not prejudice, the Liquidation Trustee's right to object to or challenge PBGC's asserted claims, including, without limitation, the allowance, amount, or priority of such claims, against the General Unsecured Creditors Fund on any basis whatsoever.

8.      **Release by PBGC of Accepting Unsecured Creditors Fund.**  Upon PBGC's receipt of the payments to PBGC set forth herein in Paragraphs 1 and 4, PBGC shall be deemed to hereby release all claims against the Accepting Unsecured Creditors Fund.

9.      **Bankruptcy Court Approval.**  This Agreement is subject to the Bankruptcy Court's entry of an order granting a motion filed by the Liquidation Trustee to approve the settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"). Within 14 days of the filing of the Motion, the Liquidation Trustee shall file a motion requesting authority to make the payments set forth herein.

10.     **Miscellaneous.** Any payments to the Claimant under this Agreement shall be made by initiating a wire transfer based on the wiring instructions set forth on Exhibit "A." The Parties understand that this Agreement is a compromise of disputed claims and that no statement contained herein shall be construed as an admission of any liability by any of the Parties. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together, shall constitute one agreement that shall be binding on the Parties. Signature or signature pages provided by facsimile or electronic mail shall have the same force and effect as originals. Each Party warrants and represents to the other Party that such Party has read this Agreement and that the terms and conditions of this Agreement have been read and explained to them by their counsel, and that this Agreement has been entered into willingly and voluntarily in order to settle and compromise disputed claims. Each Party warrants and represents to the other

Party that such Party is sophisticated and has been involved in the drafting of this Agreement. As a consequence, the Parties do not intend that the presumptions relating to the interpretation of contracts against the drafter should be applied to this Agreement and, therefore, waive the effects of such presumption. Each Party warrants and represents to the other Party that such Party has independently conducted its own diligence in connection with entering into the Agreement and is not relying upon any warranty, promise, or representation by the other Party except as otherwise expressly set forth herein. Each Party warrants and represents to the other Party that such Party is authorized to execute this Agreement and has full power and authority to enter into this Agreement and that this Agreement is duly executed and delivered and constitutes a valid, binding agreement in accordance with its terms. Except to any extent preempted by ERISA or other federal law, the Parties hereby consent and agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia (without giving effect to its principles of conflicts of law). To the knowledge of the Parties, they represent that they are unaware of any material effect that ERISA preemption would have on the interpretation or enforceability of this Agreement. The Parties also consent and agree that the Bankruptcy Court shall have exclusive venue and jurisdiction with regard to the enforcement and interpretation of this Agreement. The Claimant represents and warrants (i) that it is the sole owner and holder of the Filed Claims, (ii) that no party of which the Claimant is aware has a right to assert the Filed Claims (other than the Claimant) or object to the Claimant's authority to enter into this Agreement, and (iii) that the Claimant has not transferred or assigned the Filed Claims in any way whatsoever. Captions of the paragraphs of this Agreement are for convenience and reference only, and the words contained therein shall in no way be employed to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement. Where appropriate, to obtain the

broadest possible meaning, the singular form of a word should be interpreted in the plural and vice versa, and the gender neutral form of the word shall be interpreted to also include the masculine form. This Agreement may not be revised, superseded, or otherwise modified, except in a written document that (i) explicitly refers to this Agreement, (ii) states explicitly therein that the writing is intended to modify this Agreement, and (iii) is signed by the Party to be charged. This Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties. No understanding or oral representation not incorporated in this Agreement shall survive this Agreement, and no promises or representations not expressly stated in this Agreement are included by implication. Unless explicitly set forth in this Agreement, neither Party is relying upon any promise or representation from the other Party to enter into this Agreement.

[remainder of this page intentionally blank]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the

Settlement Date.

**The Liquidation Trustee under the Sea**
**Island Company Liquidation Trust**

By: _____

  *Robert H. Barnett, not individually,*
  *but as the Liquidation Trustee*

**Pension Benefit Guaranty Corporation**

By: _____

   Andrea Wong

Its: _____
   Deputy Chief Counsel, OCC
   *Pension Benefit Guaranty*
   *Corporation*

**Exhibit "A"**

Wiring Instructions

## TRANSFER INSTRUCTIONS – State Street Bank & Trust (#3801)

**CASH:**

**FEDERAL WIRE or ACH Transfer\***
State Street Bank and Trust Company
Boston, Massachusetts
ABA# 0110-0002-8
Account Number: 52166048
Account Name: PBGC State Street
F/F/C Account Number: 3801
F/F/C Account Name: PBGC Holding Account
Please Ref: Plan name and PBGC Case # in comments section

\*When transferring funds by the federal wire system, State Street Bank should be notified prior to the actual transfer. The PBGC Plan Name and Case Number must be in the comments section of the wire to assure proper credit.   Wires sent without this identifying information may be returned. Mr. Philip J. Rouse can be reached at 202-326-4000 (x-6312) to confirm the transfer. Please send an email identifying the wire amount, plan name, and PBGC case # prior to the date of wire transfer to Philip.Rouse@statestreet.com.

**SECURITIES:**   Prior to transferring securities to State Street, an electronic file MUST be emailed to Philip J. Rouse at Philip.Rouse@statestreet.com with an attached Excel spreadsheet with a minimum of the following fields filled in:
Security Name / Cusip / Shares / Original Face / Settlement Location
Your delivery instruction should also be included in the email.

**DTC**
Agent Bank: 26022    Participant: 0997
SSB Custodian for PBGC fund 3801

**FED**
State St Bos/SPEC/3801 (Instructions must be given exactly as stated here.)

**MBS**
PTC code – SSFND - 98086

**PHYSICAL\***
DTCC
Newport Office Center
570 Washington Blvd
Jersey City, NJ 07310
5th floor / NY Window / Robert Mendez
Account: State Street ,  Account Name: PBGC , Account Number: 3801
\*Physical securities must be registered in State Street Bank's nominee name, "Beat & Co". Make checks representing dividends, interest, or other distributions from PBGC trust fund assets payable to "Beat & Co". Physical assets transferred by non-bank custodians must be sent by overnight mail. Each transfer MUST include the plan name, PBGC case number, and what the transfer represents.

# EXHIBIT "E"

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement" or the "Settlement Agreement") is made and entered into as of December _5_, 2016, by, between and among Robert H. Barnett as the Liquidation Trustee (the "Trustee") under the Sea Island Company Creditors Liquidation Trust and Synovus Bank, in its capacity as both lender and agent (in its capacity as agent, the "Agent"), Bank of America, N.A. as lender and Bank of Scotland PLC as lender (Synovus Bank, in its capacity as both lender and agent, Bank of America, N.A. as lender, and Bank of Scotland PLC as lender shall be collectively referred to as the "Lenders"). The Trustee and the Lenders are collectively referred to as the "Parties" and individually referred to as a "Party."

## WITNESSETH:

WHEREAS, on August 10, 2010, Sea Island Company Sea Island Coastal Properties, LLC; Sea Island Services, Inc.; Sea Island Resort Residences, LLC; Sea Island Apparel, LLC; First Sea Island, LLC; and SICAL, LLC (each a "Debtor" and collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Court"); and

WHEREAS, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 (as amended, the "Plan"); and

WHEREAS, on November 8, 2010, the Bankruptcy Court entered its order confirming the Plan (the "Confirmation Order"); and

WHEREAS, on October 22, 2010, the Debtors, the Lenders, and the Official Committee of Unsecured Creditors (the "Committee") entered into a settlement agreement (the "Plan Settlement") resolving certain disputes between the Debtors, the Lenders and the Committee; and

WHEREAS, the Bankruptcy Court entered an order approving the Plan Settlement; and

WHEREAS, the Plan Settlement revised the Plan to grant the Lenders Secured Lender Deficiency Claims equal to 50% of the funds distributed by the Trustee to the class 5 Beneficiaries (as that term is defined in the Trust Agreement (defined below)); and

WHEREAS, pursuant to the Plan and the Confirmation Order, the Trustee entered into that certain Trust Agreement (the "Trust Agreement") in respect of the Sea Island Company Creditors Liquidation Trust (the "Trust"); and

WHEREAS, the Liquidation Trustee has objected to the claims of the Pension Benefit Guaranty Corporation (the "PBGC"), *see* Bankr. Docket Nos. 1585 and 1643 (as amended, the "PBGC Claim Objection"); and

{01526301.DOCXv2}

WHEREAS, the Liquidation Trustee contends that the PBGC's claims are either invalid or overstated; and

WHEREAS, the Lenders would like the PBGC Claim Objection to be resolved because the fees and expenses associated with such litigation are decreasing their distribution; and

WHEREAS, to induce the Liquidation Trustee to resolve the PBGC Claim Objection, the lenders have agreed to transfer funds for the benefit of the non-PBGC, non-Lenders class 5 claimants if the Lenders receive their distribution before certain dates as set forth below.

## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and promises, including the releases set forth herein, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.      The recitals above are for background and definitional purposes only and shall not have any effect on the terms of the Agreement other than supplying defined terms.

2.      Subject to the terms and conditions of the Agreement, the Lenders agree that they will assign the following amount—depending on the timing of the Lenders' receipt of their distribution—to the non-PBGC, non-Lenders class 5 claimants: (a) $250,000.00 if the Lenders receive their distribution on or before December 30, 2016; (b) $175,000.00 if the Lenders receive their distribution on or before March 31, 2017; (c) $100,000.00 if the Lenders receive their distribution on or before July 3, 2017; and (d) $0.00 if the Lenders receive their distribution after July 3, 2017.

3.      The Liquidation Trustee shall take such assignment out of the Lenders' distribution and distribute it to the non-PBGC, non-Lenders class 5 claimants.

4.      The Agreement is expressly conditioned and contingent on the Bankruptcy Court's entry of the Approval Order on or before December 30, 2016 (the Lenders may, however, agree in writing to extend such deadline) and such order becoming a Final Order (as that term is defined in the Plan). The Liquidation Trustee shall file all necessary and appropriate motions and other papers with the Bankruptcy Court seeking the entry of the Approval Order. The "Approval Order" shall, among other things, meet the following requirements: (i) approve the Settlement Agreement; (ii) authorize the Liquidation Trustee to take all steps reasonably necessary to effectuate the transactions set forth in the Settlement Agreement; (iii) enjoin the assertion of any claims, causes of action, or the like against the Liquidation Trustee in his personal capacity as well as against the Liquidation Trustee's current and former lawyers, law firms, financial advisors, financial advisory firms, and any other Entity (as that term is defined in the Bankruptcy Code) which has rights under section 3.10 of the Trust Agreement; (iv) allow the PBGC's claims—*i.e.,* Epiq Claim Nos. 560, 950, and 951; (v) approve the Settlement Agreement

{01526301.DOCXv2}

2

between the Liquidation Trustee and the PBGC dated as of June 21, 2016; and (vi) enjoin the assertion of any "Trust Costs" (as that term is defined in the Trust Agreement) that have accrued on or before the date of the distribution to the Lenders unless the Liquidation Trustee agrees otherwise in writing; for the avoidance of doubt, the Liquidation Trustee can so agree at any point. The Lenders shall consent to—and shall not in any way oppose—the entry of the Approval Order. The Lenders shall evidence such consent by their counsel consenting on behalf of the Lenders to the entry of the proposed Approval Order, which shall be attached as an exhibit to a motion seeking the Bankruptcy Court to enter the Approval Order. With respect to the foregoing, the Lenders shall receive a draft and approve such proposed Approval Order. The Approval Order shall be in form and substance acceptable to the Liquidation Trustee and the Lenders. The proposed Approval Order—which the Lenders approve and is attached to the Liquidation Trustee's motion—shall satisfy such requirement. A further condition precedent to the Liquidation Trustee's obligation to make the distribution to the Lenders shall be the Lenders providing to the Liquidation Trustee such information as he may reasonably request to allow him to make the necessary reporting to taxing agencies. For the avoidance of doubt, if the Court enters the Approval Order, it shall not restrict the Liquidation Trustee's right to pay Trust Costs including the right to pay his fees and expenses and the fees and expenses of his professionals. The pre-contribution anticipated distribution—which does not include the contribution from paragraph two—to the Lenders is $2,708,045.00. If the pre-contribution actual distribution to the Lenders is less than 92% of the foregoing amount, the Lenders shall have the right to terminate the Agreement by sending written notice of such termination. The distribution to the Lenders will be calculated as follows: (cash available for distribution plus court ordered adjustments of $952,500.00) divided by two and then subtract the amount taken from the distribution to the Lenders pursuant to paragraph 2 above. Cash available for distribution shall mean the amount of money available for distribution from the General Accepting Unsecured Creditors Fund on the date of the distribution minus the $100,000.00 post-distribution reserve.

5.      Promptly after the filing of the motion seeking the Approval Order, counsel for the Liquidation Trustee shall send an electronic mail to the Deputy Clerk of the Bankruptcy Court requesting that the Notice of Status Conference [Bankr. Docket No. 1708] scheduled for 1:00 p.m. on December 8, 2016 be removed from the calendar given the filing of the motion.

6.      Upon receipt of their distribution, the Lenders individually and collectively fully, completely, unconditionally, absolutely and irrevocably waive, release, acquit, and discharge all manners of action, causes of action, suits, debts, liabilities, obligations, agreements, demands, accounts, promises, warranties, damages and consequential damages, costs, expenses, claims or demands whatsoever, of any kind or nature whether known or unknown, liquidated or unliquidated, asserted or un-asserted, disputed or undisputed, contingent, inchoate or matured, in law or in equity that the Lenders hold or may hold relating in any way to the Bankruptcy Cases or the Debtors against the Liquidation Trustee in his personal capacity as well as against the current and former attorneys, financial advisors, financial advisory firms, and other professionals representing or acting on behalf of the Liquidation Trustee; provided,

do not waive, release, acquit, or discharge their rights under this Agreement including, but not limited to, their right to receive a distribution.

7.     Upon Lender's grant of their release, the Liquidation Trustee fully, completely, unconditionally, absolutely and irrevocably waives, releases, acquits, and discharges all manners of action, causes of action, suits, debts, liabilities, obligations, agreements, demands, accounts, promises, warranties, damages and consequential damages, costs, expenses, claims or demands whatsoever, of any kind or nature whether known or unknown, liquidated or unliquidated, asserted or un-asserted, disputed or undisputed, contingent, inchoate or matured, in law or in equity that the Liquidation Trustee holds or may hold relating in any way to the Bankruptcy Cases or the Debtors against the Lenders as well as against the current and former attorneys, law firms, financial advisors, financial advisory firms, and other professionals representing or acting on behalf of the Lenders; provided, however, that the Liquidation Trustee does not waive, release, acquit, or discharge his rights under this Agreement.

8.     The Liquidation Trustee agrees that he will not reserve from distributions—contemplated by the Agreement—more than $100,000.00 for fees and expenses that are incurred by the Liquidation Trustee and his professionals on or after the date that the Approval Order becomes a Final Order.

9.     Any and all written notice under the Agreement to the Liquidation Trustee shall be made in writing to the Liquidation Trustee at the address and addressed as set forth below with a copy to counsel for the Liquidation Trustee at the address and addressed as set forth below both sent by overnight delivery by a reputable overnight delivery service (*e.g.*, Federal Express), with signed confirmation of receipt and both sent by electronic mail to such addresses set forth below:

> The Sea Island Liquidation Trustee
> Attn: Mr. Robert H. Barnett
> Conway MacKenzie, Inc.
> 1075 Peachtree Street, NE
> Suite 3675
> Atlanta, GA 30309
> RBarnett@ConwayMacKenzie.com
>
> Counsel for the The Sea Island Liquidation Trustee
> Attn: Robert M.D. Mercer, Esq.
> SCHULTEN WARD TURNER & WEISS, LLP
> 260 Peachtree Street, NW, Suite 2700
> Atlanta GA 30303
> r.mercer@swtwlaw.com

{01526301.DOCXv2}

10.     This Agreement may be executed in several counterparts, each of which shall be construed as an original, and all so executed will together constitute one agreement, subject to the limitations on effectiveness contained herein.  Signatures provided by facsimile or other electronic means shall be deemed to constitute original signature pages.

11.     The Parties agree to execute any and all documents and to do and perform any and all acts and things reasonably necessary or proper to effectuate or further evidence the terms and provisions of this Agreement.

12.     The Bankruptcy Court shall retain exclusive jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issues relating to or concerning this Agreement. Any action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the Bankruptcy Court, which retains jurisdiction over the subject matter and Parties for these purposes.

13.     Each of the Parties represents and warrants to the other Parties that this Agreement has been signed by a duly authorized officer or representative of said party and this Agreement is binding and enforceable in accordance with its terms.

14.     This Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties. No understanding or oral representation not incorporated in this Agreement shall survive this Agreement, and no promises or representations not expressly stated in this Agreement are included by implication.  Unless explicitly set forth in this Agreement, neither Party is relying upon any promise or representation from the other Party to enter into this Agreement.

[remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

**TRUSTEE:**

By: _____

Name: Robert H. Barnett

Title:   Trustee of the Sea Island Company

Creditors Liquidation Trust

**SYNOVUS BANK as both Agent and Lender**

By:_____

Name: David A. Wender, Esq._____

Title: Counsel to Synovus_____


**BANK OF SCOTLAND PLC as Lender**

By:_____

Name:_____

Title:_____


**BANK OF AMERICA, N.A. as Lender**

By:_____

Name:_____

Title:_____

**SYNOVUS BANK as both Agent and Lender**

By:_____

Name:_____

Title:_____


**BANK OF SCOTLAND PLC as Lender**

By: *E. Walsh*_____

Name:_____Erin Walsh_____
Assistant Vice President

Title:_____Transaction Execution_____
Category A
W004


**BANK OF AMERICA, N.A. as Lender**

By:_____

Name:_____

Title:_____

**SYNOVUS BANK as both Agent and Lender**

By:_____

Name:_____

Title:_____


**BANK OF SCOTLAND PLC as Lender**

By:_____

Name:_____

Title:_____


**BANK OF AMERICA, N.A. as Lender**

By:_____ Sara Allen _____

Name:_____ Sara L Allen _____

Title:_____ Vice President _____

## EXHIBIT "F"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al.*, | ) | |
| | ) | Case No. 10-21034 - JSD |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge John S. Dalis |
| _____ | ) | |

**ORDER GRANTING, SUBJECT TO OBJECTION ON THE TERMS SET FORTH BELOW, THE MOTION TO APPROVE COMPROMISES AND SETTLEMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND MOTION TO APPROVE DISTRIBUTION OF FUNDS**

Upon the Motion to Approve Compromises and Settlements Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Motion to Approve Distribution of Funds [Bankr. Docket No. ____] (the "Motion") filed by Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidation Trust" or "Trust"), as evidenced by their counsel's signature below, the Lenders[1] hereby approve of and consent to the entry of this order, and finding that cause exists to grant the relief set forth below and that the Court has *in rem* jurisdiction and jurisdiction pursuant to 28 U.S.C. § 1334(b), it is hereby

ORDERED, ADJUDGED AND DECREED that the Motion is hereby GRANTED on the terms set forth below; and it is

FURTHER ORDERED that, if a timely written objection is filed with the Court, the Court shall hold a hearing at __:__ _.m. on _____ __, 2016 at U.S. Courthouse _____, (the "Hearing"), and the Court shall consider at the Hearing

---

[1] Capitalized but undefined terms shall have the meaning ascribed to them in the Motion.

1

whether to grant the relief set forth in this Order.  The Hearing may be rescheduled by the Court at the Hearing by oral notice without any further notice; and it is

FURTHER ORDERED that the relief set forth below is hereby granted subject to a written objection to the Motion of any entity (as that term is defined in section 101(15) of the Bankruptcy Code) filed with the Court no later than 5:00 p.m. two (2) business days before the Hearing (the "Objection Deadline"); and it is

FURTHER ORDERED that if a written objection is not filed on or before the Objection Deadline, the relief set forth in this Order shall immediately become effective and final; and it is

FURTHER ORDERED that if any entity (as that term is defined in section 101(15) of the Bankruptcy Code) in interest files a written objection, it must attach evidence to the written objection upon which it relies, cite specific supporting authority upon which it relies in the written objection, and appear at the Hearing to oppose the Motion.  Failure to do all of the foregoing may result in the overruling of such objection; and it is

FURTHER ORDERED that the PBGC Settlement Agreement, a copy of which is attached as Exhibit "__" to the Motion, and the Lender Settlement Agreement, a copy of which is attached as Exhibit "__" to the Motion, are approved and authorized in all respects, subject to a party in interest filing a written objection on or before the Objection Deadline as set forth above; and it is

FURTHER ORDERED that the PBGC Settlement Agreement and the Lender Settlement Agreement (collectively, the "Settlement Agreements") are adopted and incorporated in their entirety herein by reference; and it is

FURTHER ORDERED that the claims asserted in the following three proofs shall be hereby allowed when—but only if—this order becomes a Final Order (as defined in the Plan) and the Lenders receive their distribution under the Lender Settlement Agreement: Epiq Claim Nos.

{01526323.DOCXv2}

560, 950, and 951; at the same time that such claims are allowed, the Liquidation Trustee's objection to such claims shall be deemed permanently resolved with both parties bearing their own costs; for the avoidance of doubt, the foregoing allowance shall not affect in any way the PBGC Settlement Agreement or the distributions the Liquidation Trustee should make on account of such settlement agreement; and it is

FURTHER ORDERED that from the time that this order is entered until this order becomes a Final Order (as defined in the Plan) and the Lenders receive their distribution under the Lender Settlement Agreement, the Liquidation Trustee's objection to the claims of the Pension Benefit Guaranty Corporation shall be stayed; and it is

FURTHER ORDERED that the Notice of Status Conference [Bankr. Docket No. 1708] scheduled for 1:00 p.m. on December 8, 2016 be removed from the calendar and shall not be held; and it is

FURTHER ORDERED that all other provisions of the order notwithstanding, the Liquidation Trustee is hereby authorized and directed to take all actions contemplated by the Settlement Agreements; and it is

FURTHER ORDERED that the Proposed Distribution is hereby approved and the Liquidation Trustee is hereby authorized to distribute the funds in the Liquidation Trust pursuant to the Proposed Distribution; and it is

FURTHER ORDERED that every entity (as that term is defined in section 101(15) of the Bankruptcy Code) is hereby barred from asserting any "Trust Costs" (as that term is defined in the Trust Agreement) that have accrued on or before the date of the distribution to the Lenders unless the Liquidation Trustee agrees otherwise in writing; for the avoidance of doubt, the Liquidation Trustee can so agree at any point; and it is

FURTHER ORDERED that every entity (as that term is defined in section 101(15) of the Bankruptcy Code) is hereby barred from asserting any and all claims, causes of action, damages, liabilities, contentions, controversies, suits, demands, and any other assertion of liability of every kind and nature whatsoever including, but not limited to, any equitable or legal form of relief arising from or in any way related to the above-reference bankruptcy cases or the Liquidation Trust against the Liquidation Trust, Robert H. Barnett as well as the Liquidation Trustee's current and former employees, advisors, advisory firms, consultants, attorneys, law firms, accountants, professionals, professional service firms, agents, representatives, heirs and assigns; and it is

FURTHER ORDERED that Robert H. Barnett along with  the Liquidation Trustee's current and former employees, advisors, advisory firms, consultants, attorneys, law firms, accountants, professionals, professional service firms, agents, representatives, heirs and assigns are hereby forever exculpated and released from any and all claims, causes of action, damages, liabilities, contentions, controversies, suits, demands, and any other assertion of liability of every kind and nature whatsoever including, but not limited to, any equitable or legal form of relief arising from or in any way related to the above-reference bankruptcy cases or the Liquidation Trust;  and it is

FURTHER ORDERED that (a) the claims set forth on Exhibit A" to the Motion are the only class 4 claims; (b) the claims set forth on Exhibit "B" to the Motion are the only class 5 claims; and (c) the claims set forth on Exhibit "C" to the Motion are the only class 6 claims; and it is

FURTHER ORDERED that notwithstanding any Federal Rule of Bankruptcy Procedure to the contrary, the Order shall be immediately enforceable upon its entry; and it is

FURTHER ORDERED that the Court hereby retains the exclusive venue and jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of the this Order; and it is

FURTHER ORDERED that the provisions of this order are non-severable and mutually dependent; and it is

[remainder of page intentionally left blank]

FURTHER ORDERED that the Liquidation Trustee shall mail a copy of the Motion and this order within one (1) business day after its entry to the entities (as that term is defined in section 101(15) of the Bankruptcy Code) set forth on Exhibit "A" on Bankr. Docket No. 1430 or Exhibit "A" to Bankr. Docket No. 1490.  For the avoidance of doubt, however, if a claim has been disallowed, the Liquidation Trustee shall not be required to mail a copy of the Motion and this order to such claimant.  No other or further service or notice shall be required.

SO ORDERED this _____ day of _____, 2016.
Brunswick, Georgia

_____
JOHN S. DALIS
UNITED STATES BANKRUPTCY JUDGE

Prepared and presented by:                         Consented by:

_____ */s/ Robert M.D. Mercer* _____          _____ */s/ David S. Wender* _____
Robert M.D. Mercer                                 David A. Wender, GA Bar No. 748117
Georgia Bar No. 502317                             ALSTON & BIRD LLP
Eric J. Silva (*admitted pro hac vice*)            1201 West Peachtree Street
Georgia Bar No. 442808                             Atlanta, Georgia 30309-3424
SCHULTEN WARD TURNER & WEISS,                      david.wender@alston.com
LLP                                                Telephone:  (404) 881-7000
260 Peachtree Street, N.W., Suite 2700             Facsimile:   (404) 881-7777
Atlanta, Georgia  30303
(404) 688-6800 Telephone                           *Attorneys for Synovus Bank, for itself as a*
                                                   *Lender and in its capacity as Agent on behalf*
*Counsel for Robert H. Barnett as the*             *of itself, Bank of Scotland PLC, and Bank of*
*Liquidation Trustee Under the Sea Island*         *America, N.A., as signatories to the*
*Company Creditors Liquidation Trust*              *Restructuring Agreement, dated July 20, 2009*

{01526323.DOCXv2}                          6