UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al.*, | ) | |
| | ) | Case No. 10-21034 - MJK |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Michele J. Kim |
| | ) | |

**MOTION FOR APPROVAL OF SALE
OF THE LIQUIDATION TRUST'S INTEREST IN THE
TURK PROPERTY TO COTTAGE 429, LLC**

Robert H. Barnett, as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidation Trust"), files the Motion for Approval of Sale of the Liquidation Trust's Interest in the Turk Property to Cottage 429, LLC (the "Motion"). In support of the Motion, the Liquidation Trustee shows the Court the following:

**<u>JURISDICTION</u>**

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.     The legal predicate for the requested relief is section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

## BACKGROUND

The Filing of the Bankruptcy Cases
and Appointment of the Liquidation Trustee

3.     The above-referenced debtors (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 10, 2010.

4.     On September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order").

5.     The Trust Agreement of Sea Island Company Creditors Liquidation Trust (the "Trust Agreement") dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee.  *See* Bankr. Docket No. 449-1.

The Role of the Liquidation Trustee

6.     One of the purposes of the Liquidation Trust is to marshal, liquidate, and sell Trust Assets (as defined in the Trust Agreement).  *See* Trust Agreement § 2.3(a).

7.     The Liquidation Trustee is expressly empowered "to manage, liquidate, sell, assign, transfer, or deal in any other manner with the Trust Assets or any part thereof or any interest therein, and to sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its discretion."  *See id.* at § 4.4(vi).

8.     Unless otherwise specified in the Plan or the Trust Agreement, the Liquidation Trustee "need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred" pursuant to the Trust Agreement.  *See id.* at § 4.3(a).

{01612276.DOCXv3}

9.      In his discretion and judgment, the Liquidation Trustee may, however, seek explicit approval of the Bankruptcy Court of proposed action to be taken by the Liquidation Trustee with regard to the Trust Assets. *See id.* at § 4.3(b). Indeed, the Trust Agreement specifically grants the Liquidation Trustee "the power and authority to seek Bankruptcy Court approval to *sell any Trust Asset . . .." See id.* at § 4.3(d) (emphasis added).

10.      The Trust Agreement is explicit that the Liquidation Trustee has *no* implied obligations. *See* Trust Agreement § 5.6.

11.      Based on the foregoing, the Court previously entered an order stating that the "Plan and Trust Agreement do *not* require the Liquidation Trustee to obtain the Court's approval" of a sale. *See In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1594, at *1 (Bankr. S.D. Ga. July 27, 2016)[1] (B.J., Dalis) (emphasis added).

<u>The Background as to the Proposed Sale</u>

12.      The Turk Property (as defined in the Sale Agreement, which is defined below) is an unimproved marsh-front parcel of real property.  Pictures are attached as Exhibits "A-1" through "A-4," and a survey of the property is attached to the deed, which is attached to the Sale Agreement.  Cottage 429, LLC (the "Buyer") has made various representations and warranties regarding access to the Turk Property and its suitability for development. *See* Sale Agreement ¶ f.

13.      As background, the Buyer initially approached the Liquidation Trustee about buying the Turk Property.  While the Liquidation Trustee has not subsequently marketed the Turk Property, he talked to a real estate developer about purchasing it.  At first, the developer was very interested in the property.  After the developer's lawyer—who practices at a prominent

---

[1]  Such order was entered on negative notice, and no parties filed an objection to it.

{01612276.DOCXv3}

Atlanta law firm—started conducting due diligence, however, such developer's enthusiasm waned considerably.  The developer advised the Liquidation Trustee that he is only interested in the Turk Property if the deal with the Buyer falls through.

14.     The Buyer has also made a representation and warranty that it owns an adjoining lot.[2]  *See id.* at ¶ f.  Upon information and belief, the Buyer wishes to buy the Turk Property to reduce the chance that it is developed thereby potentially obstructing the view of the marsh from its property.[3]  Based on the foregoing, in an exercise of his business judgment, the Liquidation Trustee has decided to go forward with the sale of the Turk Property to the Buyer without marketing the property or conducting any further due diligence.

## THE PROPOSED SALE

15.     Pursuant to the letter agreement attached as Exhibit "B" (the "Sale Agreement"),[4] the Buyer has agreed to buy, and the Liquidation Trustee has agreed to quitclaim, any interest of the Liquidation Trust in the Turk Property with no representations or warranties whatsoever on an "as is," "where is," and "with all faults" basis in exchange for the payment of $66,000.00 (the "Payment") to the Liquidation Trustee (collectively, the "Sale").  *See* Sale Agreement ¶ a.

16.     On September 5, 2017, the Sale Agreement was executed by the Buyer and—consistent with paragraph b of the Sale Agreement—the Buyer wired $66,000.00 of readily available funds to an account of the Liquidation Trustee.  *See* Sale Agreement ¶ b.

17.     Upon the Approval Order (as defined in the Sale Agreement) becoming a Final Order (as defined in the Plan), the Liquidation Trustee shall be immediately entitled to retain the

---

[2]  Such lot is depicted in Exhibit "A-1."
[3]  The view from such adjoining lot is set forth in Exhibit "A-4."
[4]  The description of the Sale Agreement contained in this Motion is a summary.  In all events, the terms set forth in the Sale Agreement shall control.

{01612276.DOCXv3}

Payment in the amount of $66,000.00 on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by any other person.  *See* Sale Agreement ¶ c.

## RELIEF REQUESTED

18.     The Liquidation Trustee requests that the Court enter an order approving the Sale and the Sale Agreement in substantially the same form as the proposed order attached as Exhibit "C."

## BASES FOR RELIEF REQUESTED

19.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, a trustee may sell property of the estate outside of the ordinary course of business.  *See* 11 U.S.C. § 363(b)(1).   In this district, the issue is whether the "[t]rustee exercised sound business judgment, as determined by his articulation of a good-faith basis for recommending the sale for the price offered and by his employment of adequate procedures in procuring the offer . . .."  *See In re Stuart*, No. 02-43724, 2003 WL 26099304, at *2 (Bankr. S.D. Ga. May 2, 2003) (approving trustee's sale of real property).

20.     This inquiry essentially amounts to a "business judgment test," *see In re Tom's Foods, Inc.*, No. 05-40683 RFH, 2005 WL 3022022, at *2 (Bankr. M.D. Ga. Sept. 23, 2005)[5], with a trustee's "judgment on the sale and the procedure for the sale" being "entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met," *see Stuart*, 2003 WL 26099304, at *3; *see also In re Diplomat Constr., Inc.* 481 B.R. 215, 219 (Bankr. N.D. Ga. 2012) (recognizing that trustee's judgment on sale was "entitled to respect and

---

[5] *See In re Bryan*, No. 12-31486, 2013 WL 4716194, *2 (Bankr. M.D. Ala. Sep. 3, 2013) ("The trustee's sale of estate property, and this his acceptance of any bid, is governed by the business judgment rule.").

{01612276.DOCXv3}

deference from the Court" and approving sale); *In re Gulf States Steel Inc. of Ala.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) (same).

21.     Deference is even more appropriate here given that the Trust Agreement provides for such deference.   Specifically, it expressly empowers the Liquidation Trustee to "sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its *discretion*."   *See* Trust Agreement § 4.4(vi) (emphasis added).   Indeed, as the Court previously ruled, the Liquidation Trustee does not need to obtain court approval to sell the property.  *See* Motion ¶11.

22.     In an exercise of his business judgment, the Liquidation Trustee believes that the Sale is in the best interests of the Liquidation Trust and the Beneficiaries (as that term is defined in the Trust Agreement).   While the Liquidation Trustee contends that the Turk Property could be very valuable, there is, among other things, a thin market for such property.

23.     Under the circumstances, the Liquidation Trustee submits that the Approval Order should be entered on negative notice.  Sales outside of the ordinary course of business generally require "notice and a hearing."  *See* 11 U.S.C. § 363(b)(1).  "But Bankruptcy Code § 102 defines 'notice and a hearing' as authorizing an act without a hearing as long as notice  is given and no party in interest requests a hearing."  *In re Stanton*, Case No. 8:11-bk-22675, 2017 WL 587983, *4 (Bankr. M.D. Fla. Feb. 2, 2017).[6]  And granting the requested relief on negative notice here is appropriate given that, as the Court has previously recognized, court approval is not even

---

[6] *See also Roberts v. Pierce* (*In re Pierce*), 435 F.3d 891, 892 (8th Cir. 2006) (discussing 11 U.S.C. § 102(1)(B)(i) and concluding: "[n]egative notices are therefore authorized by the Code.") (citation omitted); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617-18 (7th Cir. 2002) ("A requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing.") (emphasis in the original).

{01612276.DOCXv3}

required,[7]  the potential for avoiding the cost and expense of a hearing[8] (especially given the relatively small amount of money involved in the sale), and the deferential standard for approving the sale.[9]  And it is entirely consistent with how the Court has granted all of the sale motions filed by the Liquidation Trustee in the past.[10]  *See In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1675 (Bankr. S.D. Ga. Sep. 26, 2016); *In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket Nos. 1674-1 (Bankr. S.D. Ga. Sep. 26, 2016); *In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1594 (Bankr. S.D. Ga. July 27, 2016).

[remainder of page intentionally left blank]

---

[7]  *See* Motion ¶ 11.

[8]  *See* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and *inexpensive* determination of every case and proceeding.") (emphasis added).

[9]  *See* Motion ¶¶ 19-21.

[10]  It is also consistent with how the Court has granted settlement motions filed by the Liquidation Trustee.  *See, e.g., In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1484 (Bankr. S.D. Ga. Jan. 28, 2016).

{01612276.DOCXv3}

WHEREFORE, Robert H. Barnett as the Liquidation Trustee respectfully requests that the Court enter an order substantially in the form attached as Exhibit "B" and grant such other and further relief as the Court may deem just and proper.

Dated: September 7, 2017.

_____ */s/ Robert M.D. Mercer* _____
Robert M.D. Mercer
Georgia Bar No. 502317
SCHULTEN WARD TURNER & WEISS LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia  30303
(404) 688-6800 Telephone
(404) 688-6840 Facsimile

*Counsel for Robert H. Barnett as the*
*Liquidation Trustee under the Sea Island*
*Company Creditors Liquidation Trust*

{01612276.DOCXv3}

**EXHIBIT "A"**

**EXHIBIT "A-1"**



**EXHIBIT "A-2"**

{01612276.DOCXv3}



**EXHIBIT "A-3"**



**EXHIBIT "A-4"**



**EXHIBIT "B"**

ROBERT H. BARNETT

The Liquidation Trustee under the

Sea Island Company Creditors Liquidation Trust

1075 Peachtree Street, N.E., Suite 3675

Atlanta, Georgia  30309

September 1, 2017

Cottage 429, LLC
Attn:  Susan Turk Spratt, Chief Executive Officer
c/o David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326

Re:     *In re Sea Island Company, et al.*, Chapter 11 Bankruptcy; United States
        Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy
        Court"); Case No. 10-21034-JSD

Dear Ms. Spratt:

       I have set forth below the terms for the agreement between Robert H. Barnett as the
Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors
Liquidation Trust (the "Liquidating Trust") in the above-referenced jointly administered
bankruptcy cases pending in the Bankruptcy Court on the one hand and Cottage 429, LLC
("Cottage"), a Georgia limited liability company, on the other hand.  The Liquidation Trustee and
Cottage shall be collectively referred to as the "Parties" and individually as a "Party."  The
agreement set forth in this letter shall be referred to as the "Agreement."

       a.      Subject to the Approval Order (as defined below) becoming a Final Order (as that
term is defined in the Debtors' Amended and Restated Joint Chapter 11 Plan as of August 10,
2010 [Bankr. Doc. No. 217]), Cottage agrees to pay the Liquidation Trustee $66,000.00 (the
"Payment"), and the Liquidation Trustee agrees to sell and transfer to Cottage, or its assignee, the
Turk Property (as defined below) in exchange for the Liquidation Trustee retaining such payment.
The foregoing shall occur as set forth below.

       b.      Upon the execution of the Agreement, Cottage shall cause the Payment of readily
available funds to be transferred into the account of the Liquidation Trustee set forth on Exhibit
"1."  The Liquidation Trustee shall hold such funds in escrow in accordance with the Agreement.
To the extent not addressed in the Agreement, the funds shall be subject to direction by an order
entered by the Bankruptcy Court.  The Liquidation Trustee shall have no liability, and shall be

{01611682.DOCXv2}

Cottage 429, LLC
Attn:  Susan Turk Spratt
Chief Executive Officer
c/o David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
September 1, 2017
Page 2

exculpated, for complying with the terms of the Agreement or an order entered by the Bankruptcy Court.

c.      Upon receipt of the Payment, the Liquidating Trustee shall promptly file the Motion for Approval of Sale of the Liquidation Trustee's Interest in the Turk Property to Cottage 429, LLC, a copy of which is attached hereto as Exhibit "2."

d.      The "Approval Order" shall mean an order entered by the Bankruptcy Court, which, among other things, approves the Liquidation Trustee's execution and delivery of the Quitclaim Deed (as defined below).  Upon the Approval Order becoming a Final Order, the Liquidation Trustee shall be immediately entitled to retain the Payment on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by any other entity (as that term is defined in the Bankruptcy Code).

e.      The "Turk Property" shall mean the Liquidation Trustee's interest in that certain tract or parcel of land lying and being on Sea Island, Glynn County, Georgia and identified and described in the legal description attached to the quitclaim deed attached as Exhibit "3" (the "Quitclaim Deed"). The Liquidation Trustee makes no representations, warranties, or the like in connection with the Turk Property.  The sale of the Turk Property shall be on an "as is," "where is," and "with all faults" basis.

f.      Cottage represents and warrants the following: (i) as shown on the survey, which is part of Exhibit "A" to Exhibit "3", the Turk Property can only be accessed through the adjoining Lot 4, Block 96, Sea Island Subdivision No. 1, Extension No. 1, which is currently owned by Cottage, or the salt marsh; (ii) the Debtors in the above referenced bankruptcy case ("Debtors") developed the Turk Property to dump construction waste with dumping starting around 1960 and continuing until 1970 when the Coastal Marshlands Protection Act of 1970, *see* O.C.G.A. § 12-5-280 *et seq.*, was enacted; (iii) the Turk Property contains a great deal of organic fill including tree stumps and other construction waste dumped there by the Debtors during construction of properties on Sea Island, Georgia; (iv) the dumping of large amounts of construction waste onto the Turk Property was confirmed by former employees of the Debtors and a resident of Sea Island, Georgia with knowledge of the matter; (v) to the best of its knowledge and belief, former employees of the Debtors believed that the Turk Property was unsuitable for development because it contained so much organic fill and construction waste and indicated that soil compaction tests would need to be performed to confirm; and (vi) to the best of its knowledge and belief, no soil compaction tests have been performed on the Turk Property.

Cottage 429, LLC
Attn:  Susan Turk Spratt
Chief Executive Officer
c/o David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
September 1, 2017
Page 3

Cottage acknowledges that the Liquidation Trustee is justifiably and detrimentally relying on such representations and warranties. Such representations and warranties shall survive closing.

g.       The Liquidation Trustee shall execute the Quitclaim Deed and deliver it to Cottage or its representative.  For the avoidance of doubt and all other provisions of the Agreement notwithstanding, after the Approval Order becomes a Final Order, the execution and delivery of the Quitclaim Deed shall satisfy all of the Liquidation Trustee's obligations under the Agreement, and Cottage shall be authorized to record the Quitclaim Deed.

h.       Both Parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of the Agreement.

i.       Without reliance on any promise or representation by the Liquidation Trustee, Cottage agrees to these terms based upon its own informed determination of title including, but not limited to, any and all encumbrances, which affect or may affect title.

j.       The Parties shall each bear their respective attorneys' fees, expenses, and costs relating to or associated with the Agreement.

k.       The Agreement may not be revised, superseded, or otherwise modified except in a written document that (i) explicitly refers to the Agreement, (ii) states explicitly therein that the writing is intended to modify the Agreement, and (iii) is signed by the Parties.

l.       No provision of this Agreement is intended to confer any rights or remedies under the Agreement upon any entity (as that term is defined in the Bankruptcy Code) other than the Parties.

m.       Each Party warrants and represents to the other Party that it is authorized to execute the Agreement and has full power and authority to enter into the Agreement and that the Agreement is duly executed and delivered and constitutes a valid, binding agreement in accordance with its terms.

n.       Each Party warrants and represents to the other Party that it is sophisticated and that its counsel has helped draft the Agreement.  As a consequence, the Parties do not intend that the presumptions relating to the interpretation of contracts against the drafter should be applied to the Agreement and, therefore, waive the effects of such presumption.  Each Party warrants and represents to the other Party that it has independently conducted its own diligence in connection with entering into the Agreement and is not relying upon any warranty, promise, or representation by the other Party unless explicitly set forth in the Agreement.

{01611682.DOCXv2}

Cottage 429, LLC
Attn:  Susan Turk Spratt
Chief Executive Officer
c/o David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
September 1, 2017
Page 4

o.    The Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties.  No understanding or oral representation not incorporated in the Agreement shall survive the Agreement, and no promises or representations not expressly stated in the Agreement are included by implication.  Unless explicitly set forth in the Agreement, neither Party is relying upon any promise or representation from the other Party to enter into the Agreement.   This Agreement may be executed in counterparts, each of which when taken together shall constitute an original.

If Cottage agrees to the foregoing terms, please execute the Agreement below.

Thank you for your attention to these matters.

Very truly yours,

Robert H. Barnett

Not individually, but
as the Liquidation Trustee

I have read and understand the terms and conditions set forth above and agree to them.

By:    _____
       Susan Turk Spratt as Chief Executive Officer of
       Cottage 429, LLC

Date:    _____

{01611682.DOCXv2}

4

Cottage 429, LLC
Attn:  Susan Turk Spratt
Chief Executive Officer
c/o David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
September 1, 2017
Page 4

   o.  The Agreement embodies the entire understanding and terms of the agreement between the Parties and supersedes, modifies, and replaces any prior written and/or oral agreements between the Parties.  No understanding or oral representation not incorporated in the Agreement shall survive the Agreement, and no promises or representations not expressly stated in the Agreement are included by implication.  Unless explicitly set forth in the Agreement, neither Party is relying upon any promise or representation from the other Party to enter into the Agreement.  This Agreement may be executed in counterparts, each of which when taken together shall constitute an original.

   If Cottage agrees to the foregoing terms, please execute the Agreement below.

   Thank you for your attention to these matters.


       Very truly yours,


       Robert H. Barnett

       Not individually, but
       as the Liquidation Trustee


I have read and understand the terms and conditions set forth above and agree to them.

By: _Susan Turk Spratt_

   Susan Turk Spratt as Chief Executive Officer of Cottage 429, LLC

Date: _9 . 5 . 17_


{01611682.DOCXv2}

4

**EXHIBIT "1"**

**Wiring Instructions:**
**<u>Account of the Liquidation Trustee</u>**


Bank Name:                          SunTrust Bank
Bank Address:                       3300 Northside Parkway NW, Atlanta, GA  30327
Wire Routing Number:                061000104
Beneficiary Account Name:           Sea Island Company Creditors Liquidation Trust
Beneficiary Account Number: 1000143424736
Beneficiary Address:                1075 Peachtree Street, Suite 3675, Atlanta, GA  30309

**EXHIBIT "2"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al.*, | ) | |
| | ) | Case No. 10-21034 - MJK |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Michele J. Kim |
| | ) | |

**MOTION FOR APPROVAL OF SALE
OF THE LIQUIDATION TRUST'S INTEREST IN THE
TURK PROPERTY TO COTTAGE 429, LLC**

Robert H. Barnett, as the Liquidation Trustee (the "Liquidation Trustee") under the Sea Island Company Creditors Liquidation Trust (the "Liquidation Trust"), files the Motion for Approval of Sale of the Liquidation Trust's Interest in the Turk Property to Cottage 429, LLC (the "Motion"). In support of the Motion, the Liquidation Trustee shows the Court the following:

**JURISDICTION**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. The legal predicate for the requested relief is section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

## BACKGROUND

The Filing of the Bankruptcy Cases
and Appointment of the Liquidation Trustee

3.      The above-referenced debtors (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 10, 2010.

4.      On September 24, 2010, the Debtors filed their Amended and Restated Joint Chapter 11 Plan as of August 10, 2010 [Bankr. Docket No. 217] (the "Plan"), which was confirmed pursuant to an order entered on or about November 8, 2010 [Bankr. Docket No. 372] (the "Confirmation Order").

5.      The Trust Agreement of Sea Island Company Creditors Liquidation Trust (the "Trust Agreement") dated December 15, 2010, incorporated by reference in the Confirmation Order, approved Robert H. Barnett as the Liquidation Trustee.  *See* Bankr. Docket No. 449-1.

The Role of the Liquidation Trustee

6.      One of the purposes of the Liquidation Trust is to marshal, liquidate, and sell Trust Assets (as defined in the Trust Agreement).  *See* Trust Agreement § 2.3(a).

7.      The Liquidation Trustee is expressly empowered "to manage, liquidate, sell, assign, transfer, or deal in any other manner with the Trust Assets or any part thereof or any interest therein, and to sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its discretion."  *See id.* at § 4.4(vi).

8.      Unless otherwise specified in the Plan or the Trust Agreement, the Liquidation Trustee "need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred" pursuant to the Trust Agreement.  *See id.* at § 4.3(a).

{01612276.DOCXv3}

9.     In his discretion and judgment, the Liquidation Trustee may, however, seek explicit approval of the Bankruptcy Court of proposed action to be taken by the Liquidation Trustee with regard to the Trust Assets. *See id.* at § 4.3(b). Indeed, the Trust Agreement specifically grants the Liquidation Trustee "the power and authority to seek Bankruptcy Court approval to *sell any Trust Asset . . ..*" *See id.* at § 4.3(d) (emphasis added).

10.    The Trust Agreement is explicit that the Liquidation Trustee has *no* implied obligations. *See* Trust Agreement § 5.6.

11.    Based on the foregoing, the Court previously entered an order stating that the "Plan and Trust Agreement do *not* require the Liquidation Trustee to obtain the Court's approval" of a sale. *See In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1594, at *1 (Bankr. S.D. Ga. July 27, 2016)[1] (B.J., Dalis) (emphasis added).

<u>The Background as to the Proposed Sale</u>

12.    The Turk Property (as defined in the Sale Agreement, which is defined below) is an unimproved marsh-front parcel of real property.  Pictures are attached as Exhibits "A-1" through "A-4," and a survey of the property is attached to the deed, which is attached to the Sale Agreement.  Cottage 429, LLC (the "Buyer") has made various representations and warranties regarding access to the Turk Property and its suitability for development. *See* Sale Agreement ¶ f.

13.    As background, the Buyer initially approached the Liquidation Trustee about buying the Turk Property.  While the Liquidation Trustee has not subsequently marketed the Turk Property, he talked to a real estate developer about purchasing it.  At first, the developer was very interested in the property.  After the developer's lawyer—who practices at a prominent

---

[1]  Such order was entered on negative notice, and no parties filed an objection to it.

{01612276.DOCXv3}

Atlanta law firm—started conducting due diligence, however, such developer's enthusiasm waned considerably.  The developer advised the Liquidation Trustee that he is only interested in the Turk Property if the deal with the Buyer falls through.

14.     The Buyer has also made a representation and warranty that it owns an adjoining lot.[2]  *See id.* at ¶ f.  Upon information and belief, the Buyer wishes to buy the Turk Property to reduce the chance that it is developed thereby potentially obstructing the view of the marsh from its property.[3]  Based on the foregoing, in an exercise of his business judgment, the Liquidation Trustee has decided to go forward with the sale of the Turk Property to the Buyer without marketing the property or conducting any further due diligence.

## THE PROPOSED SALE

15.     Pursuant to the letter agreement attached as Exhibit "B" (the "Sale Agreement"),[4] the Buyer has agreed to buy, and the Liquidation Trustee has agreed to quitclaim, any interest of the Liquidation Trust in the Turk Property with no representations or warranties whatsoever on an "as is," "where is," and "with all faults" basis in exchange for the payment of $66,000.00 (the "Payment") to the Liquidation Trustee (collectively, the "Sale").  *See* Sale Agreement ¶ a.

16.     On September __, 2017, the Sale Agreement was executed by the Buyer and—consistent with paragraph b of the Sale Agreement—the Buyer wired $66,000.00 of readily available funds to an account of the Liquidation Trustee.  *See* Sale Agreement ¶ b.

17.     Upon the Approval Order (as defined in the Sale Agreement) becoming a Final Order (as defined in the Plan), the Liquidation Trustee shall be immediately entitled to retain the

---

[2]  Such lot is depicted in Exhibit "A-1."
[3]  The view from such adjoining lot is set forth in Exhibit "A-4."
[4]  The description of the Sale Agreement contained in this Motion is a summary.  In all events, the terms set forth in the Sale Agreement shall control.

4

Payment in the amount of $66,000.00 on an irrevocable, unavoidable basis without the need for any further order by the Bankruptcy Court or action by any other person. *See* Sale Agreement ¶ c.

## RELIEF REQUESTED

18.     The Liquidation Trustee requests that the Court enter an order approving the Sale and the Sale Agreement in substantially the same form as the proposed order attached as Exhibit "B."

## BASES FOR RELIEF REQUESTED

19.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, a trustee may sell property of the estate outside of the ordinary course of business. *See* 11 U.S.C. § 363(b)(1).   In this district, the issue is whether the "[t]rustee exercised sound business judgment, as determined by his articulation of a good-faith basis for recommending the sale for the price offered and by his employment of adequate procedures in procuring the offer . . .." *See In re Stuart*, No. 02-43724, 2003 WL 26099304, at *2 (Bankr. S.D. Ga. May 2, 2003) (approving trustee's sale of real property).

20.     This inquiry essentially amounts to a "business judgment test," *see In re Tom's Foods, Inc.*, No. 05-40683 RFH, 2005 WL 3022022, at *2 (Bankr. M.D. Ga. Sept. 23, 2005)[5], with a trustee's "judgment on the sale and the procedure for the sale" being "entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met," *see Stuart*, 2003 WL 26099304, at *3; *see also In re Diplomat Construction, Inc.* 461 B.R. 215, 219 (Bankr. N.D. Ga. 2012) (recognizing that trustee's judgment on sale was "entitled to respect

---

[5] *See In re Bryan*, No. 12-31486, 2013 WL 4716194, *2 (Bankr. M.D. Ala. Sep. 3, 2013) ("The trustee's sale of estate property, and this his acceptance of any bid, is governed by the business judgment rule.").

and deference from the Court" and approving sale); *In re Gulf States Steel Inc. of Ala.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) (same).

21.     Deference is even more appropriate here given that the Trust Agreement provides for such deference.  Specifically, it expressly empowers the Liquidation Trustee to "sell and dispose of the Trust Assets for cash or upon such terms and for such consideration as the Trustee deems proper in its *discretion*."  *See* Trust Agreement § 4.4(vi) (emphasis added).  Indeed, as the Court previously ruled, the Liquidation Trustee does not need to obtain court approval to sell the property.  *See* Motion ¶ 11.

22.     In an exercise of his business judgment, the Liquidation Trustee believes that the Sale is in the best interests of the Liquidation Trust and the Beneficiaries (as that term is defined in the Trust Agreement).  While the Liquidation Trustee contends that the Turk Property could be very valuable, there is, among other things, a thin market for such property.

23.     Under the circumstances, the Liquidation Trustee submits that the Approval Order should be entered on negative notice.  Sales outside of the ordinary course of business generally require "notice and a hearing."  *See* 11 U.S.C. § 363(b)(1).  "But Bankruptcy Code § 102 defines 'notice and a hearing' as authorizing an act without a hearing as long as notice  is given and no party in interest requests a hearing."  *In re Stanton*, Case No. 8:11-bk-22675, 2017 WL 587983, *4 (Bankr. M.D. Fla. Feb. 2, 2017).[6]  And granting the requested relief on negative notice here is appropriate given that, as the Court has previously recognized, court approval is not even

---

[6] *See also Roberts v. Pierce* (*In re Pierce*), 435 F.3d 891, 892 (8th Cir. 2006) (discussing 11 U.S.C. § 102(1)(B)(i) and concluding: "[n]egative notices are therefore authorized by the Code.") (citation omitted); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617-8 (7th Cir. 2002) ("A requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing.") (emphasis in the original).

required,[7] the potential for avoiding the cost and expense of a hearing[8] (especially given the relatively small amount of money involved in the sale), and the deferential standard for approving the sale.[9] And it is entirely consistent with how the Court has granted all of the sale motions in the past.[10] *See In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1675 (Bankr. S.D. Ga. Sep. 26, 2016); *In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket Nos. 1674-1 (Bankr. S.D. Ga. Sep. 26, 2016); *In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1594 (Bankr. S.D. Ga. July 27, 2016).

[remainder of page intentionally left blank]

---

[7] *See* Motion ¶ 11.
[8] *See* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and *inexpensive* determination of every case and proceeding.") (emphasis added).
[9] *See* Motion ¶¶ 19-21.
[10] It is also consistent with how the Court has granted settlement motions. *See In re Sea Island Co.,* Case No. 10-21034, Bankr. Docket No. 1484 (Bankr. S.D. Ga. Jan. 28, 2016).

{01612276.DOCXv3}

WHEREFORE, Robert H. Barnett as the Liquidation Trustee respectfully requests that the Court enter an order substantially in the form attached as Exhibit "B" and grant such other and further relief as the Court may deem just and proper.

Dated: September __, 2017.

_____
Robert M.D. Mercer
Georgia Bar No. 502317
SCHULTEN WARD TURNER & WEISS LLP
260 Peachtree Street, Suite 2700
Atlanta, Georgia  30303
(404) 688-6800 Telephone
(404) 688-6840 Facsimile

*Counsel for Robert H. Barnett as the Liquidation Trustee under the Sea Island Company Creditors Liquidation Trust*

{01612276.DOCXv3}

**EXHIBIT "A"**

**EXHIBIT "A-1"**



**EXHIBIT "A-2"**



**EXHIBIT "A-3"**



**<u>EXHIBIT "A-4"</u>**

{01612276.DOCXv3}



**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

In re: )
)                    Chapter 11
SEA ISLAND COMPANY, et al., )
)                    Case No. 10-21034 - MJK
)                    Jointly Administered
Debtors. )
)                    Judge Michele J. Kim
_____ )

### ORDER GRANTING, SUBJECT TO OBJECTION ON THE TERMS SET FORTH BELOW, MOTION FOR APPROVAL OF SALE OF THE LIQUIDATION TRUST'S INTEREST IN THE TURK PROPERTY TO COTTAGE 429, LLC

This matter came before the Court upon the Motion for Approval of Sale of the Liquidation Trust's Interest in the Turk Property to Cottage 429, LLC [Bankr. Docket No. __ ] (the "Motion").[1]  As indicated by the signature of its counsel below, Cottage 429, LLC (the "Buyer") consents to the relief granted below and agrees that this Order constitutes an "Approval Order" for purposes of the Sale Agreement.  Finding that cause exists to grant the relief requested, it is hereby:

ORDERED, ADJUDGED AND DECREED that the Motion is GRANTED as set forth below; and it is

**FURTHER ORDERED that the Sale Agreement, a copy of which is attached as Exhibit "A" to the Motion, and all of the terms of the Sale Agreement are hereby approved and incorporated in this Order by reference and the Sale is authorized in all respects, subject only to a party in interest with standing filing a written objection with the Court on or before noon on _____ (the "Objection Deadline"); and it is**

_____

[1]  Capitalized, but undefined, terms used in this Order have the meaning ascribed to such terms in the Motion.

{01612276.DOCXv3}

**FURTHER ORDERED that, if a timely written objection is filed with the Court by a party in interest with standing, the Court shall hold a hearing at __:__ _.m. on _____ __, 2017, at U.S. Courthouse, 801 Gloucester Street, Third Floor, Brunswick, Georgia 31520, (the "Hearing"), and the Court shall consider at the Hearing whether to approve the Sale and grant the other relief set forth in this Order; and it is**

FURTHER ORDERED that, unless a written objection filed by a party with standing appears on the docket of the Clerk of Court (as reflected on Pacer) by the Objection Deadline, the relief granted in this Order shall become immediately enforceable without any further order of the Court or action by any party; and it is

FURTHER ORDERED that the Turk Property (as that term is defined in the Sale Agreement) shall consist of no more than 34,000 square feet of real property;[2] and it is

FURTHER ORDERED that any party filing an objection to the Motion shall set forth the legal and factual bases for the objection and shall identify by schedule (or proof of claim) number, the amount, and the bases for the claim(s) upon which it asserts standing; and it is

FURTHER ORDERED that only the Beneficiaries of the Liquidation Trust and the United States Trustee shall have standing to file an objection; and it is

FURTHER ORDERED that in accordance with the terms of the Sale Agreement, the Liquidation Trustee shall hereby be entitled to the Payment on an irrevocable, unavoidable basis; and it is

FURTHER ORDERED that in no event shall the Sale or any matter or event authorized under, contemplated by, or leading up to the entry of this Order or the execution of the Sale Agreement result in any liability to, any obligation for, or Trust Cost (as that term is defined in

---

[2]   The Plat incorporated into the Quitclaim Deed (as defined below) states the Turk Property is comprised of 31,384 square feet of real property.

2

the Trust Agreement) for the Liquidation Trust or the Liquidation Trustee other than the obligation to execute a deed conveying the Turk Property in substantially the same form as the quitclaim deed attached as an exhibit to the Sale Agreement (the "Quitclaim Deed"); and it is

FURTHER ORDERED that when the Order becomes a Final Order, the Liquidation Trustee shall promptly execute and deliver the Quitclaim Deed to the Buyer; and it is

FURTHER ORDERED that the Clerk of the Superior Court in Glynn County, Georgia is hereby ordered to accept this Order for filing in the Clerk's real property records, and this Order may be recorded in such real property records and shall be deemed to be in recordable form; and it is

FURTHER ORDERED that—in the event that the Court must construe the Order—the parties do not intend for there to be any—and there shall be no—presumption against the drafter; and it is

FURTHER ORDERED that any Federal Rule of Bankruptcy Procedure to the contrary notwithstanding, the Order shall be immediately enforceable as set forth above; and it is

FURTHER ORDERED that the Court hereby retains exclusive venue and jurisdiction to hear and determine all matters arising from or related to one or more of the following: the implementation, interpretation, and enforcement of the Sale Agreement or this Order; and it is

[remainder of the page intentionally left blank]

3

{01612276.DOCXv3}

FURTHER ORDERED that pursuant to ECF Local Rule 9, the Electronic Case File notice automatically sent to attorneys who have filed a pleading in these cases shall constitute service on such attorneys and their clients of the Motion and this Order.  No other or further notice or service of the Motion or this Order shall be required.

SO ORDERED this _____ day of _____, 2017.
Brunswick, Georgia


_____
MICHELE J. KIM
UNITED STATES BANKRUPTCY JUDGE



Prepared and presented by:                              Consented to by:



_____        _____
Robert M.D. Mercer                                  David W. Cranshaw
Georgia Bar No. 502317                          Georgia Bar No. 193450
SCHULTEN WARD TURNER & WEISS LLP     Morris, Manning & Martin, LLP
260 Peachtree Street, Suite 2700              1600 Atlanta Financial Center
Atlanta, Georgia  30303                          3343 Peachtree Road, NE
(404) 688-6800  Telephone                       Atlanta, Georgia 30326
(404) 688-6840  Facsimile                         (404) 233-7000 Telephone
                                                                (404) 365-9532 Facsimile

*Counsel for Robert H. Barnett as the*
*Liquidation Trustee under the Sea Island*      *Counsel for Cottage 429, LLC*
*Company Creditors Liquidation Trust*

4

{01612276.DOCXv3}

**<u>EXHIBIT "3"</u>**

---

**(Above this Line Reserved for Recording Official)**

After recording return to:

*David W. Cranshaw, Esq.*
*Morris, Manning & Martin, LLP*
*1600 Atlanta Financial Center*
*3343 Peachtree Road, NE*
*Atlanta, GA 30326, USA*

**STATE OF GEORGIA**

**COUNTY OF GLYNN**

## QUITCLAIM DEED

**THIS INDENTURE,** made this __ day of September, 2017, between **ROBERT H. BARNETT AS LIQUIDATION TRUSTEE UNDER THE SEA ISLAND COMPANY CREDITORS' LIQUIDATION TRUST,** First Party, and **COTTAGE 429, LLC,** a Georgia limited liability company, Second Party.

**WHEREAS,** Sea Island Company ("SIC") filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Georgia, on August 10, 2010 in the case styled *Sea Island Company, et al, Debtors, Chapter 11, Case No. 10-21034-JSD, in the United States Bankruptcy Court, Southern District of Georgia* (the

"Bankruptcy Case") and on November 8, 2010 SIC's Chapter 11 Plan was confirmed pursuant to a Confirmation Order (the "Confirmation Order"); and

**WHEREAS,** pursuant to the Confirmation Order, the Debtors under the Bankruptcy Case and Sea Island Acquisition, LLC ("SIA") entered into an Asset Purchase Agreement ("APA") dated October 19, 2010, and SIA ultimately purchased substantially—but not all—of the assets of SIC; and

**WHEREAS,** pursuant to the APA, SIC executed a deed (the "APA Deed") in favor of SIA whereby SIC conveyed to SIA all of its right, title and interest in various real estate parcels subject to the APA, but *specifically excepting* from the APA Deed certain real estate parcels (including the below-described parcel; hereinafter the "Premises"), which SIC reserved unto itself, including parcels which SIC stated in the APA Deed were subject to prescriptive rights of third parties; and

**WHEREAS,** First Party claims title to the Premises is an asset of the Sea Island Company Creditors' Liquidation Trust (the "Liquidation Trust"); and

**WHEREAS,** Second Party claims prescriptive title to the Premises; and

**WHEREAS,** First Party and Second Party have, in good faith, entered into a letter agreement for sale by First Party of all its right, title and interest in the Premises to Second Party (the "Sale Agreement"); and

**WHEREAS,** on _____, 2017, First Party filed a Motion for Approval of Sale of the Liquidation Trust's Interest in the Turk Property to Cottage 429, LLC [Doc. No. _____] (the

"Sale Motion") in the Bankruptcy Case (i) requesting approval of the Sale Agreement, and (ii) seeking authorization for First Party to convey to Second Party, pursuant to a quit claim deed in form substantially similar in all material respects to this Indenture, all of its right, title and interest in the Premises; and

**WHEREAS,** an order granting the Sale Motion [Doc. No. _____] was entered in the Bankruptcy Case on _____, 2017 and pursuant thereto, no objections having been filed, and in consideration of the amount to be paid by Second Party to the First Party under the terms of the Sale Agreement, First Party is executing this Quitclaim Deed in favor of the Second Party.

### WITNESSETH:

That First Party, for and in consideration of the sum of Ten Dollars ($10.00), in hand paid, the receipt of which is hereby acknowledged, by these presents does remise, release, and quit claim to Second Party, its successors and assigns, all the right, title, interest, claim or demand the said First Party has or may have had in and to the Premises, including, but not limited to, all rights the First Party may have as Liquidation Trustee Under the Liquidation Trust and all rights of the Liquidation Trust, from the beginning of time and including perpetuity, with all and singular the rights, members and appurtenances to the said First Party in any wise appertaining or belonging, which Premises are described as follows:

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

**TO HAVE AND TO HOLD** the said Premises to the said Second Party so that neither the said First Party nor its successors and assigns, nor any other person or persons claiming under the

First Party, shall at any time, by any means, or ways, claim or demand any right, title to the Premises or its appurtenances, or any rights thereof.

**IN WITNESS WHEREOF,** First Party has hereunto set its hand and affixed its seal, by and through its duly authorized officers, on the day and year first above written.

<u>**FIRST PARTY:**</u>

Signed and sealed before me  
this ____ day of _____, 2017

ROBERT H. BARNETT, LIQUIDATION TRUSTEE UNDER THE SEA ISLAND COMPANY CREDITORS' LIQUIDATION TRUST

_____  
Witness

By:_____  
Name:  Robert H. Barnett,  
        not individually, but as the Liquidation Trustee

_____  
Notary Public  
My Commission Expires:

NOTARIAL SEAL

<u>**EXHIBIT "A"**</u>

**ALL THAT TRACT OR PARCEL OF** land lying and being on Sea Island, Glynn County, Georgia, and being shown as *"Additional Property (Area – 31,384 sq. ft.)"* by that certain Plat of Survey for "Cottage 429, LLC", prepared by Shupe Surveying Company, sealed by Gary R. Nevill, Georgia RLS No. 2401, which plat is attached hereto and is incorporated herein by this reference for all purposes *(the "Cottage 429 Survey")*, and being more particularly described as follows:

**TO LOCATE THE TRUE POINT OF BEGINNING,** commence at a ½ inch iron rebar located at a point on the northern right of way of Cook Avenue (a 50' private right of way) where the line dividing Lots 3 and 4, Block 96, of Sea Island Subdivision No. 1, Extension No. 1, which point is a distance of 533.64' west, as measured along the northern right of way of Cook Avenue, from where same intersects the western right of way of Oglethorpe Drive; continuing thence along the right of way of Cook Avenue North 59°57'00" West a distance of 24.36 feet to a ½ inch iron rebar found at the northeast corner of the former Cook Avenue property conveyed by Sea Island Company to L. Newton Turk, III, and Martha B. Turk, by Deed dated December 11, 2006, recorded at Deed Book 2114, page 65, Glynn County Records; thence running South 18°03'00" West a distance of 25.56 feet to a ½ inch CIRF located on the center line of said former Cook Avenue right of way; thence running North 59°57'00" West a distance of 175.03 feet along the center line of the former Cook Avenue right-of-way to a ½ inch iron rebar found at **THE TRUE POINT OF BEGINNING**; **FROM SAID TRUE POINT OF BEGINNING,** running thence along property labeled "Marsh" of now or formerly "SIA Propco II, LLC", the following calls and distances: North 59°57'00" West a distance of 20.82 feet to a ½ inch CIRF found *(which point marks the beginning of the CMPA jurisdiction line per the Cottage 429 Survey referenced above); running thence* North 02°30'56" East a distance of 16.78 feet to a ½ inch CIRF found running thence South 81°16'10" West a distance of 34.69 feet to a ½ inch CIRF found; running thence North 53°03'29" West a distance of 20.68 feet to a ½ inch CIRF found; running thence South 78°27'34" West a distance of 10.71 feet to a ½ inch CIRF found; running thence North 28°37'02" West a distance of 21.03 feet to a ½ inch CIRF found; running thence North 32°55'45" West a distance of 37.38 feet to a ½ inch CIRF found; running thence North 30°03'00" West a

{01611682.DOCXv2}

distance of 44.94 feet to a ½ inch CIRF found; running thence North 41°55'48" West a distance of 42.20 feet to a ½ inch CIRF found; running thence North 33°56'13" West a distance of 46.61 feet to a ½ inch CIRF found; running thence North 64°07'19" West a distance of 10.18 feet to a ½ inch CIRF found; running thence North 10°20'55" West a distance of 43.02 feet to a ½ inch CIRF found;  running thence North 29°00'08" West a distance of 25.32 feet to a ½ inch CIRF found; running thence North 55°08'03" East a distance of 14.10 feet to a ½ inch CIRF found; running thence South 75°52'56" East a distance of 12.85 feet to a ½ inch CIRF found;  running thence South 39°04'04" East a distance of 21.99 feet to a ½ inch CIRF found; running thence South 45°09'50" East a distance of 30.61 feet to a ½ inch CIRF found; running thence South 67°53'29" East a distance of 33.73 feet to a ½ inch CIRF found; running thence South 78°20'17" East a distance of 75.23 feet to a ½ inch CIRF found; running thence South 75°04'07" East a distance of 26.10 feet to a ½ inch CIRF found; running thence South 79°48'37" East a distance of 30.62 feet to a ½ inch CIRF found; running thence North 85°24'37" East a distance of 8.00 feet to a ½ inch CIRF found *(which point marks the end of the CMPA jurisdiction line per the Cottage 429 Survey referenced above)*, running thence South 64°22'00" East a distance of 45.93 feet to a ½ inch iron rebar found at the northwest corner of the property known as Lot 4, Block 96, of Sea Island Subdivision No. 1, Extension No. 1; thence running South 18°03'00" West along the western line of said Lot 4, Block 96 a distance of 175.56 feet to ½ inch iron rebar found at **THE TRUE POINT OF BEGINNING.**

*The above described Additional Property being as more fully shown by that certain Plat of Survey, having a completion date of September 7, 2016, for "Cottage 429, LLC", prepared by Shupe Surveying Company, sealed by Gary R. Nevill, Georgia RLS No. 2401, which plat is attached hereto and is incorporated herein by this reference for all purposes (the "Cottage 429 Survey").*



**EXHIBIT "C"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, et al., | ) | |
| | ) | Case No. 10-21034 - MJK |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Judge Michele J. Kim |
| | ) | |

### ORDER GRANTING, SUBJECT TO OBJECTION ON THE TERMS SET FORTH BELOW, MOTION FOR APPROVAL OF SALE OF THE LIQUIDATION TRUST'S INTEREST IN THE TURK PROPERTY TO COTTAGE 429, LLC

This matter came before the Court upon the Motion for Approval of Sale of the Liquidation Trust's Interest in the Turk Property to Cottage 429, LLC [Bankr. Docket No. __ ] (the "Motion").[1]  As indicated by the signature of its counsel below, Cottage 429, LLC (the "Buyer") consents to the relief granted below and agrees that this Order constitutes an "Approval Order" for purposes of the Sale Agreement.  Finding that cause exists to grant the relief requested, it is hereby:

ORDERED, ADJUDGED AND DECREED that the Motion is GRANTED as set forth below; and it is

**FURTHER ORDERED that the Sale Agreement, a copy of which is attached as Exhibit "A" to the Motion, and all of the terms of the Sale Agreement are hereby approved and incorporated in this Order by reference and the Sale is authorized in all respects, subject only to a party in interest with standing filing a written objection with the Court on or before noon on _____ (the "Objection Deadline"); and it is**

---

[1]  Capitalized, but undefined, terms used in this Order have the meaning ascribed to such terms in the Motion.

**FURTHER ORDERED that, if a timely written objection is filed with the Court by a party in interest with standing, the Court shall hold a hearing at __:__ _.m. on _____ __, 2017, at U.S. Courthouse, 801 Gloucester Street, Third Floor, Brunswick, Georgia 31520, (the "Hearing"), and the Court shall consider at the Hearing whether to approve the Sale and grant the other relief set forth in this Order; and it is**

FURTHER ORDERED that, unless a written objection filed by a party with standing appears on the docket of the Clerk of Court (as reflected on Pacer) by the Objection Deadline, the relief granted in this Order shall become immediately enforceable without any further order of the Court or action by any party; and it is

FURTHER ORDERED that the Turk Property (as that term is defined in the Sale Agreement) shall consist of no more than 34,000 square feet of real property;[2] and it is

FURTHER ORDERED that any party filing an objection to the Motion shall set forth the legal and factual bases for the objection and shall identify by schedule (or proof of claim) number, the amount, and the bases for the claim(s) upon which it asserts standing; and it is

FURTHER ORDERED that only the Beneficiaries of the Liquidation Trust and the United States Trustee shall have standing to file an objection; and it is

FURTHER ORDERED that in accordance with the terms of the Sale Agreement, the Liquidation Trustee shall hereby be entitled to the Payment on an irrevocable, unavoidable basis; and it is

FURTHER ORDERED that in no event shall the Sale or any matter or event authorized under, contemplated by, or leading up to the entry of this Order or the execution of the Sale Agreement result in any liability to, any obligation for, or Trust Cost (as that term is defined in

---

[2]   The Plat incorporated into the Quitclaim Deed (as defined below) states the Turk Property is comprised of 31,384 square feet of real property.

{01612276.DOCXv3}

the Trust Agreement) for the Liquidation Trust or the Liquidation Trustee other than the obligation to execute a deed conveying the Turk Property in substantially the same form as the quitclaim deed attached as an exhibit to the Sale Agreement (the "Quitclaim Deed"); and it is

FURTHER ORDERED that when the Order becomes a Final Order, the Liquidation Trustee shall promptly execute and deliver the Quitclaim Deed to the Buyer; and it is

FURTHER ORDERED that the Clerk of the Superior Court in Glynn County, Georgia is hereby ordered to accept this Order for filing in the Clerk's real property records, and this Order may be recorded in such real property records and shall be deemed to be in recordable form; and it is

FURTHER ORDERED that—in the event that the Court must construe the Order—the parties do not intend for there to be any—and there shall be no—presumption against the drafter; and it is

FURTHER ORDERED that any Federal Rule of Bankruptcy Procedure to the contrary notwithstanding, the Order shall be immediately enforceable as set forth above; and it is

FURTHER ORDERED that the Court hereby retains exclusive venue and jurisdiction to hear and determine all matters arising from or related to one or more of the following: the implementation, interpretation, and enforcement of the Sale Agreement or this Order; and it is

[remainder of the page intentionally left blank]

{01612276.DOCXv3}

FURTHER ORDERED that pursuant to ECF Local Rule 9, the Electronic Case File notice automatically sent to attorneys who have filed a pleading in these cases shall constitute service on such attorneys and their clients of the Motion and this Order. No other or further notice or service of the Motion or this Order shall be required.

SO ORDERED this _____ day of _____, 2017.
Brunswick, Georgia

_____
MICHELE J. KIM
UNITED STATES BANKRUPTCY JUDGE

Prepared and presented by:                                 Consented to by:

_____*/s/ Robert M.D. Mercer*_____          _____*/s/ David W. Cranshaw*_____
Robert M.D. Mercer                                        David W. Cranshaw
Georgia Bar No. 502317                                  Georgia Bar No. 193450
SCHULTEN WARD TURNER & WEISS LLP        Morris, Manning & Martin, LLP
260 Peachtree Street, Suite 2700                    1600 Atlanta Financial Center
Atlanta, Georgia  30303                                 3343 Peachtree Road, NE
(404) 688-6800  Telephone                            Atlanta, Georgia 30326
(404) 688-6840  Facsimile                             (404) 233-7000 Telephone
                                                                      (404) 365-9532 Facsimile

*Counsel for Robert H. Barnett as the*
*Liquidation Trustee under the Sea Island*        *Counsel for Cottage 429, LLC*
*Company Creditors Liquidation Trust*

{01612276.DOCXv3}